**HUESTON HENNIGAN LLP**
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Christine Woodin (SBN 295023)
cwoodin@hueston.com
Hagan Scotten (*Pro Hac Vice Pending*)
hscotten@hueston.com
Billy Joe McLain (SBN 290682)
bmclain@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:25-cv-09514<br><br>**AMAZON.COM SERVICES LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>**Date**: December 10, 2025<br>**Hearing Time**: TBD<br>**Courtroom**: TBD<br>**Judge**: TBD |

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on December 10, 2025, or as soon as the matter may be

3    heard, in the United States District Court for the Northern District of California, San Francisco

4    Division, Plaintiff Amazon.com Services LLC ("Amazon"), will and hereby does move for a

5    preliminary injunction under Federal Rule of Civil Procedure 65 and Local Rules 7-2 and 65-2.

6    This motion is based on this Notice of Motion and Motion; the following Memorandum of Points

7    and Authorities; the Declarations of Billy Joe McLain, David Evans, Aaron Fernandes, Matt

8    Garman, David Chen, and Llew Mason; documents incorporated by reference; the entire record in

9    this action; any matters of which the Court may take judicial notice; and any evidence or

10   argument presented at the hearing or on reply.

11   Amazon respectfully requests that the Court issue preliminary injunctive relief, enjoining

12   and restraining Perplexity AI, Inc. ("Perplexity" or "Defendant") and its agents, employees,

13   successors, and assigns, and all other persons acting in concert with or in conspiracy with or

14   affiliated with Perplexity, from:

15   a.    Accessing, attempting to access, or assisting, instructing, or providing a means for

16   others to access or attempt to access Amazon's protected computer systems using AI agents;

17   b.    Using any accounts, creating any new accounts, or taking over any existing

18   accounts, on Amazon's websites, for the purpose of allowing Perplexity's AI agents to access

19   Amazon's protected computer systems;

20   c.    Accessing, attempting to access, or assisting, instructing, or providing a means for

21   others to access Amazon's protected computer systems in excess of Amazon's authorization; and

22   d.    Violating or evading any restrictions Amazon puts on the use of AI agents or other

23   agentic activity on Amazon.com.

24   Amazon further requests that the Court order the following additional nonmonetary relief:

25   a.    Destruction of all copies of Amazon's data, including customer data, unlawfully

26   obtained by Perplexity, whether in the custody or control of Perplexity or its employees, agents,

27

28

1  assigns, or the third-party service providers (including, without limitation, web hosts, proxy

2  servers, privacy services, and domain registrars);

3        b.    Identification of each and every Amazon account ever accessed, used, or

4  controlled through or by Perplexity, or any of its employees, agents, and assigns, to engage in the

5  complained-of conduct; and

6        c.    That Perplexity certify and confirm, in writing and under oath, within thirty (30)

7  days of the issuance of any order of the Court providing a remedy to Amazon, that Perplexity has

8  complied fully and completely with all requirements of such order.

9

10

11  Dated: November 4, 2025                  HUESTON HENNIGAN LLP

12

13                           By: _____

14                             Moez M. Kaba

15                             Christine Woodin
                              Hagan Scotten

16                             Billy Joe McLain

17                             *Attorneys for Plaintiff*
                              *AMAZON.COM SERVICES LLC*

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.     INTRODUCTION ...................................................................................................... 1

II.    ISSUE TO BE DECIDED........................................................................................... 5

III.   STATEMENT OF FACTS .......................................................................................... 5

    A.     Background on the Amazon Store ........................................................................ 5

    B.     The Amazon Store's Conditions of Use................................................................ 6

    C.     Background on Perplexity and the Comet Browser............................................... 6

    D.     Perplexity's Covert and Unauthorized Access into the Amazon Store................. 6

       1.     Perplexity Fraudulently Sets Up Amazon Prime Accounts to Facilitate its "Buy with Pro" Feature ......................................................................................................... 7

       2.     Amazon Informs Perplexity that Access to the Amazon Store through "Buy with Pro" Is Unauthorized ............................................................................................................ 7

       3.     Perplexity Deploys its AI Agent in the Amazon Store through Comet ........................... 8

       4.     Amazon Informs Perplexity that Comet's Agentic Access Is Unauthorized and Implements a Technological Barrier, which Perplexity Evades ............................................... 9

       5.     Amazon Again Informs Perplexity that Comet's Agentic Access Is Unauthorized, and Perplexity Again Refuses to Cease Accessing the Amazon Store Without Authorization.... 10

       6.     Amazon Sends a Cease-and-Desist Letter to Perplexity, but Perplexity Refuses to Change Course ................................................................................................................ 11

IV.    LEGAL STANDARD................................................................................................ 11

V.     ARGUMENT ........................................................................................................... 11

    A.     Amazon Is Likely to Succeed on the Merits of its Claims................................. 12

       1.     Perplexity Violated the CFAA .......................................................... 12

          a.        Section 1030(a)(2)..................................................................... 12

          b.        Section 1030(a)(4) .................................................................... 16

          c.        *Van Buren* and *hiQ* Further Support Amazon's CFAA Claims ................ 17

       2.     Perplexity Violated the CDAFA ......................................................... 18

    B.     Perplexity's Conduct Causes Irreparable Harm to Amazon ............................. 20

    C.     The Balance of Hardships Favors Amazon......................................................... 23

1

D.    The Public Interest Favors Preliminary Injunctive Relief...................................................... 24

VI.   CONCLUSION............................................................................................................................. 25

MOTION FOR PRELIMINARY INJUNCTION – Case No. 3:25-cv-09514

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton Rouge,*
5    961 F. Supp. 936 (E.D. La. 1996) ............................................................................. 24

6 *All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011)..........................................................................11, 23
7

8 *Am., Inc. v. Skechers USA, Inc.,*
   890 F.3d 747 (9th Cir. 2018)....................................................................................21

9 *Apple Inc. v. NSO Grp. Techs. Ltd.,*
10    2024 WL 251448 (N.D. Cal. Jan. 23, 2024) .....................................................15, 18

11 *Baldor Elec. Co. v. Kelderman,*
   2013 WL 12253062 (S.D. Iowa Apr. 15, 2013) ...................................................... 23
12

13 *Biden v. Ziegler,*
   737 F. Supp. 3d 958 (C.D. Cal. 2024) ..............................................................14, 18

14 *Chegg, Inc. v. Doe,*
15    2023 WL 7392290 (N.D. Cal. Nov. 7, 2023)........................................................... 20

16 *ClearOne Advantage, LLC v. Kersen,*
   710 F. Supp. 3d 425 (D. Md. 2024) ........................................................................ 22
17

18 *eBay, Inc. v. Bidder's Edge, Inc.,*
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................. 23

19 *Facebook, Inc. v. Power Ventures, Inc.,*
20    252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) . 1, 3, 5, 20, 24

21 *Facebook, Inc. v. Power Ventures, Inc.,*
   844 F.3d 1058 (9th Cir. 2016)............................................................. 3, 12, 13, 14, 18, 20, 25
22

23 *Facebook, Inc. v. Sahinturk,*
   2022 WL 1304471 (N.D. Cal. May 2, 2022) ........................................................ 4, 23

24 *Fla. Atl. Univ. Bd. of Trs. v. Parsont,*
25    465 F. Supp. 3d 1279 (S.D. Fla. 2020) .............................................................. 20, 24

26 *Frisco Med. Ctr., L.L.P. v. Bledsoe,*
   147 F. Supp. 3d 646 (E.D. Tex. 2015) .................................................................... 17
27

28 *Google LLC v. Starovikov,*
   2021 WL 6754263 (S.D.N.Y. Dec. 16, 2021) ......................................................... 24

*Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*,
   776 F. Supp. 1454 (W.D. Wash. 1991) ................................................................ 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ....................................................... 14, 17, 18

*Luxottica Grp. S.p.A. v. Thornton*,
   2022 WL 2167685 (C.D. Cal. May 2, 2022) ....................................................... 23

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ............................................. 12, 14, 16, 17

*Meta Platforms, Inc. v. Ates*,
   2023 WL 4035611 (N.D. Cal. May 1, 2023) ....................................................... 19, 22

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....................................................... 15, 17

*Meta Platforms, Inc. v. Qibaa*,
   2025 WL 2496129 (N.D. Cal. Aug. 1, 2025) ....................................................... 19, 22

*Multiven, Inc. v. Cisco Sys., Inc.*,
   725 F. Supp. 2d 887 (N.D. Cal. 2010) ....................................................... 16

*MySpace, Inc. v. Wallace*,
   498 F. Supp. 2d 1293 (C.D. Cal. 2007) ....................................................... 23

*Reliable Prop. Servs., LLC v. Cap. Growth Partners, LLC*,
   1 F. Supp. 3d 961 (D. Minn. 2014) ....................................................... 4, 21, 22

*Rodriguez v. Google LLC*,
   772 F. Supp. 3d 1093 (N.D. Cal. 2025) ....................................................... 19

*Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*,
   2012 WL 5936214 (N.D. Cal. Nov. 27, 2012) ....................................................... 4, 24

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000) ....................................................... 16

*Stewart v. City & County of San Francisco, California*,
   608 F. Supp. 3d 902 (N.D. Cal. 2022), *aff'd,* 2023 WL 2064162 (9th Cir. Feb.
   17, 2023) ....................................................... 12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ....................................................... 4, 21

*T-Mobile USA, Inc. v. Terry*,
   862 F. Supp. 2d 1121 (W.D. Wash. 2012) ....................................................... 23

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................. 17

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ......................................................................... 14, 16

*Van Buren v. United States*,
    593 U.S. 374 (2021) ..................................................................................... 17, 18

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620
    (N.D. Cal. Nov. 5, 2019) ...................................................................................... 24

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................... 11

**Federal Statutes**

Computer Fraud and Abuse Act,
    18 U.S. Code § 1030 ............................... 3, 4, 5, 12, 13, 14, 15, 16, 17, 18, 20, 24, 25

**California Statutes**

California Comprehensive Data Access and Fraud Act,
    California Penal Code § 502 ................................................... 3, 5, 12, 18, 19, 20, 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Amazon seeks a preliminary injunction to halt Perplexity's persistent, unauthorized trespass into Amazon's protected computer systems through its automated "agentic" browser, Comet.  To maintain security and customer trust, Amazon requires automated agents like the Comet AI agent to identify themselves when accessing the Amazon.com store (the "Amazon Store") on behalf of registered Amazon customers and to respect any limits Amazon places on activities of these agents.  But Perplexity has refused to comply with these requirements.  Perplexity has deliberately disguised its Comet AI agent as a human user, ignored Amazon's express revocations of its access rights, and circumvented Amazon's technological barrier, in violation of federal and California computer fraud and abuse statutes.  Perplexity's ongoing incursion leaves only one adequate remedy:  a narrow preliminary injunction of the sort courts routinely impose in these circumstances; specifically, an injunction that requires Perplexity to abide by Amazon's decision to exclude the Comet AI agent from accessing non-public areas of the Amazon Store.  *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.* ("*Power Ventures II*"), 252 F. Supp. 3d 765, 781-86 (N.D. Cal. 2017) (enjoining unauthorized access to Facebook's systems), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

The Amazon Store serves hundreds of millions of customers and offers far more than a static catalog of products.  It is a dynamic system that provides Amazon customers with a personalized shopping experience that constantly evolves to serve their needs.  To facilitate this curated experience, Amazon customers must create an account using unique login credentials.  After doing so, they can make purchases, manage and track their orders, review their order history, receive personalized recommendations, store credit cards and delivery addresses, and process returns, among other things.  All this information is stored in and accessible only through customers' password-protected accounts.  To protect the Amazon Store and its customers' private information and preserve customer trust, Amazon invests heavily in technical and operational safeguards, including numerous cybersecurity measures.

Perplexity provides artificial intelligence ("AI") products and services, including its Comet

web browser, which features agentic AI functionality.  Unlike other AI tools, which provide information in response to prompts from users, AI agents can plan and carry out multistep tasks with little user input.  Among other things, these agents can independently interact with third-party websites, use stored user credentials, and perform actions on the user's behalf—executing sequences that resemble a human using a standard, non-agentic browser like Google Chrome.  As relevant here, the Comet AI agent can shop in the Amazon Store, buying products there on behalf of users through their private accounts.

Because the Comet AI agent and other agentic AI tools can act autonomously within protected computer systems, they present risks to the security and integrity of those systems.  To help manage those risks, Amazon requires all AI agents to identify themselves as such when they shop in the Amazon Store.  Amazon has communicated these requirements directly to companies offering AI agents, and they have respected Amazon's right to monitor and control access to its protected computer systems.

But Perplexity is an exception.  It has purposely configured Comet to hide its agentic activities in the Amazon Store.  Specifically, Perplexity designed Comet to falsely portray its activities as coming from Google Chrome—a widely used, non-agentic browser developed and owned by Google—so that when its AI agent enters the Amazon Store, it appears to be a human customer.  And Perplexity's deception did not stop there.  Amazon told Perplexity's executives on at least five separate occasions that its AI agents may not enter the Amazon Store.  Perplexity initially agreed, but then Amazon caught Perplexity using its Comet AI agent to covertly access the Amazon Store.  When Amazon again raised this issue, Perplexity responded by claiming, incredibly, that Comet was not agentic, despite its own marketing materials admitting otherwise.  Recognizing that Perplexity could not be trusted, Amazon adopted a new technological barrier restricting the Comet AI agent's access to the store.  But within 24 hours, Perplexity redesigned Comet to evade Amazon's barrier.  And when Amazon again confronted Perplexity about its unauthorized access (twice), Perplexity refused to stop.  Perplexity's CEO understood that Perplexity was deliberately flouting Amazon's rules, but had no legitimate justification for why

Perplexity would not act honestly and transparently. Finally, on October 31, 2025, Amazon sent a formal cease-and-desist letter reiterating that the Comet AI agent is not authorized to access the Amazon Store undisclosed. Despite the letter, Perplexity continues to access the Amazon Store through Comet disguised as Google Chrome and without authorization. The record is thus clear that Perplexity knows that Amazon prohibits its AI agents from entering the Amazon Store disguised as a human actor through private customer accounts, but Perplexity does not care and will not stop.

Perplexity's unauthorized access into the Amazon Store's private customer accounts violates the Computer Fraud and Abuse Act, 18 U.S. Code § 1030 ("CFAA"), and the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 ("CDAFA"). And its persistent pattern of misconduct creates intolerable, immediate, and ongoing risk to Amazon and its customers. A preliminary injunction is therefore necessary and appropriate, as demonstrated by each of the four factors considered by courts.

*First*, Amazon is highly likely to succeed on the merits of its claims. Perplexity is engaged in textbook computer trespass and fraud that violates the CFAA and CDAFA. The record unequivocally shows that Perplexity "knew that it no longer had authorization to access [Amazon]'s computers, but [it] continued to do so anyway," even going so far as to bypass Amazon's technological barrier against the Comet AI agent. *Facebook, Inc. v. Power Ventures, Inc.* ("*Power Ventures I*"), 844 F.3d 1058, 1067 (9th Cir. 2016) (affirming finding of CFAA violation); *see id.* at 1069 (same with respect to CDAFA); *see also Power Ventures II*, 252 F. Supp. 3d at 781-86 (imposing permanent injunction based on these violations).[1]

*Second*, Perplexity has caused and will continue to cause Amazon irreparable harm. "Numerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm." *Power Ventures II*, 252 F. Supp. 3d at 782 (collecting cases). And Perplexity's Comet AI agent poses considerable risk to Amazon's customers because Perplexity is vulnerable to attacks from cyber criminals, who reportedly can,

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks and citations and previous alterations.

among other things, "flip" the Comet AI agent "to an insider threat" and "trick" it "into interacting with phishing landing pages or counterfeit e-commerce storefronts without the human user's knowledge or intervention." McLain Decl. Ex. 1. In other words, bad actors can easily manipulate the Comet browser and AI agent to access all of a user's stored credentials, including bank accounts, credit card payment information, order history, and other sensitive data. The Comet AI agent also damages Amazon's reputation and customer relationships by degrading Amazon customers' shopping experience and interfering with Amazon's ability to ensure that all customers receive the benefits of the individualized options and services that Amazon has spent decades curating. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Reliable Prop. Servs., LLC v. Cap. Growth Partners, LLC*, 1 F. Supp. 3d 961, 965 (D. Minn. 2014) (granting preliminary injunction where CFAA violation was "highly likely to damage [the plaintiff's] goodwill and its relationship with its customers").

**Third**, the balance of hardships tips in Amazon's favor. Whereas Amazon faces irreparable harm from Perplexity's conduct, an injunction would prevent the Comet AI agent only from unlawfully invading Amazon's protected computer systems, causing no meaningful reduction in Comet's overall access across the rest of the internet. *See Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 2012 WL 5936214, at \*12 (N.D. Cal. Nov. 27, 2012) (finding that balance of hardships tips in plaintiff's favor where there was "no evidence which suggests that Defendants' overall business will be significantly impacted by the injunction"). Moreover, Perplexity will suffer no cognizable hardship because the conduct Amazon is seeking to stop is illegal. *See Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at \*11 (N.D. Cal. May 2, 2022) (granting injunction where "the only apparent hardship to [defendant] is ceasing the unlawful conduct").

**Fourth**, the public interest supports an injunction to uphold the laws protecting online systems from unauthorized access, protecting consumers' private data, and stopping companies like Perplexity that both refuse to transparently identify their agentic agent when accessing private customer accounts in the Amazon Store and intentionally evade Amazon's technological barriers

to continue gaining unauthorized access. *See, e.g.*, *Power Ventures II*, 252 F. Supp. 3d at 785 ("The Court also finds that the public interest weighs in favor of an injunction, as courts have consistently held in CFAA cases.").

## II.    ISSUE TO BE DECIDED

Whether Amazon is entitled to a preliminary injunction stopping Perplexity's unlawful access into Amazon's computers in violation of the CFAA and CDAFA.

## III.    STATEMENT OF FACTS

### A.    Background on the Amazon Store

Amazon owns and operates the Amazon Store, an online store accessible in the United States at www.amazon.com. Mason Decl. ¶ 3. Through the Amazon Store, customers can browse, select, and purchase a wide variety of products and services. *Id.* From its inception as an online bookstore, the Amazon Store has built its business around a simple principle: putting customers first. *Id.* This customer-centric focus has allowed the Amazon Store to consistently deliver for its customers. *Id.*

Over decades, Amazon has developed a unique and personalized shopping experience designed to help customers find and discover products that meet their needs based on key data points, including customer reviews, price, availability, delivery speed, measures of post-purchase satisfaction like return rates, and each customer's browsing and shopping history. *Id.* ¶ 4.

To access this personalized shopping experience, customers must create a private account in the Amazon Store secured with unique login credentials. *Id.* ¶ 5. Within each private account, customers can, among other things, manage and track their orders; save items for later purchases; receive personalized recommendations; store payment, personal address, and contact information; and receive updates regarding their purchases. *Id.*

Amazon employs a range of cybersecurity measures—including encryption, multi-factor authentication options, and suspicious activity monitoring—to protect the data in customers' private accounts. Fernandes Decl. ¶ 3. These cybersecurity measures place Amazon among the best major providers at protecting customer information.

**B.**     **The Amazon Store's Conditions of Use**

All activities in the Amazon Store and use of related Amazon services and products are governed by the Amazon Store's Conditions of Use.  McLain Decl. Ex. 2.  Three provisions in the Conditions of Use put Perplexity on notice that the Comet AI agent's actions were unauthorized.  The License and Access Terms prohibit the downloading, copying, or use of account information for a third party's—like Perplexity's—benefit, and the use of robots or similar data gathering tools.  *See id.* ("This license does not include . . . any downloading, copying, or other use of account information for the benefit of any third party; or any use of data mining, robots, or similar data gathering and extraction tools. . . .").  The Amazon Software Terms prohibit the "bypass[ing of] any security associated with the Amazon Software, whether in whole or in part" and require use of the "Amazon Software solely for purposes of enabling you to use the Amazon Services as provided by Amazon."  *Id.*  Lastly, the Agent Terms expressly require AI agents to identify themselves in the user-agent string, which is a standard piece of information web browsers send to third-party websites, and to "[n]ot conceal or obfuscate that any access, use, or interactions are from an Agent."  *Id.*  The Agent Terms also state that "Agents must . . . [n]ot circumvent or otherwise avoid any measure intended to block, limit, modify, or control whether and how Agents access, use, or interact with an Amazon Service."  *Id.*

**C.**     **Background on Perplexity and the Comet Browser**

Perplexity is a technology company founded in 2022.  Perplexity develops and operates AI-based products and services, including a web browser called Comet that Perplexity released to paying subscribers on July 9, 2025.  McLain Decl. Ex. 5.  Comet allows users to browse the internet and use Perplexity's AI tools, including the Comet AI agent.  *Id.*  Comet users can ask the Comet AI agent to independently perform actions on users' behalf, such as placing an order in the Amazon Store.  *See id.*  On October 2, 2025, Perplexity made Comet widely available for free.  *Id.* Ex. 6.

**D.**     **Perplexity's Covert and Unauthorized Access into the Amazon Store**

Since at least November 2024, Perplexity has repeatedly and deliberately gained unauthorized access to the Amazon Store through private customer accounts.

1
2

**1.      Perplexity Fraudulently Sets Up Amazon Prime Accounts to Facilitate its "Buy with Pro" Feature**

3      In November 2024, Perplexity launched its "Buy with Pro" feature, allowing its paying

4  subscribers to ask Perplexity to make purchases on third-party websites on their behalf, while

5  promising to provide free shipping "as a thank-you for shopping with Perplexity." *Id.* Ex. 3.

6      Perplexity used Amazon accounts, including Amazon Prime accounts, to facilitate "Buy

7  with Pro."  Fernandes Decl. ¶ 7.  These accounts allowed Perplexity users to ask Perplexity to

8  browse and make purchases in the Amazon Store.  *Id.*  Perplexity marketed the "Buy with Pro"

9  function as powered by agentic AI.  *See* McLain Decl. Ex. 3 ("Shop like a Pro: Perplexity's new

10  AI-powered shopping assistant . . . . It marks a big leap forward in how we serve our users –

11  empowering seamless native actions right from an answer.").

12      When Perplexity's paying subscribers used the "Buy with Pro" function in the Amazon

13  Store, Perplexity would place orders using Perplexity's Amazon accounts, including its Amazon

14  Prime accounts, thereby allowing some of those subscribers to make purchases and receive Prime

15  benefits, such as free shipping, without having to create their own Amazon accounts or pay for

16  Prime.  Fernandes Decl. ¶ 7.

17      Perplexity's "Buy with Pro" feature risked interfering with Amazon's customer

18  relationships and potentially deprived Amazon of revenue by giving third parties Prime's benefits

19  even though those third parties may not have had Prime memberships.  *Id.* ¶ 8.  In addition, because

20  users of Perplexity's "Buy with Pro" feature did not transact using their own Amazon accounts,

21  this created the risk that they would be unable to access all features of the Amazon Store.  *Id.*  For

22  example, they may not have received Amazon's timely updates about their orders and may have

23  experienced difficulties with returns and exchanges because they were not interacting directly with

24  the Amazon Store.  *Id.*

25      **2.      Amazon Informs Perplexity that Access to the Amazon Store through "Buy with Pro" Is Unauthorized**
26

27      On November 19, 2024, Amazon discovered Perplexity's misuse of Prime memberships.

28

*Id.* ¶ 6.  And on the same day, Amazon contacted and informed Perplexity that its use of Amazon Prime accounts violated the terms and conditions for Amazon Prime, which forbid Prime members from "purchas[ing] products for the purpose of resale, rental, or to ship to their customers or potential customers using Prime benefits."  Garman Decl. ¶ 3; McLain Decl. Ex. 4, (Amazon Prime Terms & Conditions).  Amazon also advised Perplexity—given Perplexity's advertising of "Buy with Pro" as an AI-powered shopping assistant—that it did not have permission to deploy any AI agents in the Amazon Store.  Garman Decl. ¶ 3.  In response, Perplexity agreed that it would not deploy AI agents in the Amazon Store unless Amazon and Perplexity reached mutually agreed-upon terms for such deployment.  *Id.*

On May 30, 2025, Amazon updated the Amazon Store's Conditions of Use to add a dedicated section on AI Agents ("Agent Terms").  Fernandes Decl. ¶ 9; *see also supra* at 6.

The Agent Terms require that AI agent providers like Perplexity clearly identify AI agents and refrain from any actions to conceal or obscure agentic activities.  McLain Decl. Ex. 2.  They also explain that Amazon limits AI agents' access to the Amazon Store and requires AI agent providers to abide by such limits.  *Id.*

### 3. Perplexity Deploys its AI Agent in the Amazon Store through Comet

On July 9, 2025, Perplexity released Comet, a web browser, to its paying subscribers. Without prior notice to Amazon, and without authorization, Perplexity deployed its Comet AI agent in the Amazon Store through private customer accounts, in contravention of Perplexity's prior agreement not to deploy AI agents in the Amazon Store without Amazon's consent to mutually agreed terms.  Fernandes Decl. ¶ 10; Garman Decl. ¶ 3.

Within a Comet browser session, the Comet AI agent can perform numerous tasks in response to user prompts.  Fernandes Decl. ¶ 10.  Before making purchases in the Amazon Store, the Comet AI agent directs users to the Amazon Store's sign-in page and instructs them to log into their Amazon accounts (if the user has not already logged in).  *Id.*  Once a user is logged in, however, no further human action is required in the Amazon Store:  the Comet AI agent has access to the user's private account information (that the Comet AI agent transmits back to Perplexity's

servers for processing), and the Comet AI agent will add items to the user's shopping cart, make purchases, and take other agentic actions in the Amazon Store on the user's behalf, all without the user having to make another click in the Amazon Store.  *Id.*; Evans Decl. ¶ 4.

Perplexity does not identify the Comet AI agent when it has deployed, but rather fraudulently conceals its agentic activities.  Fernandes Decl. ¶ 11.  When the Comet AI agent accesses the Amazon Store, it does not use a unique browser identifier and, instead, transmits the same "user-agent" string that is used by Google Chrome.  *Id.*; Evans Decl. ¶ 12.  A "user-agent" string is a standard piece of information sent by a web browser to identify itself to a third-party website.  Fernandes Decl. ¶ 11; Evans Decl. ¶ 12.  It is considered responsible practice on the web to use a user-agent string that distinguishes requests initiated by an AI agent from requests resulting directly from human action.  Evans Decl. ¶ 12.

Unlike Comet, other web browsers with agentic AI capabilities use unique user-agent strings to identify both the browser identity *and* whether browsing activity is being conducted by an AI agent.  Fernandes Decl. ¶ 13.  Thus, by using the same user-agent string as Google Chrome, the Comet AI agent makes it deceptively appear that a human user is visiting the Amazon Store using the Google Chrome browser.  *Id.* ¶ 12.  Perplexity's covert deployment of the Comet AI agent into the Amazon Store through private customer accounts violates Amazon's License and Access Terms, the Amazon Software Terms, and the Agent Terms, as well as Perplexity's agreement that Perplexity refrain from deploying covert AI agents in this manner.  McLain Decl. Ex. 2; Garman Decl. ¶ 3.

### 4. Amazon Informs Perplexity that Comet's Agentic Access Is Unauthorized and Implements a Technological Barrier, which Perplexity Evades

On August 4, 2025, shortly after Amazon detected Perplexity's unauthorized deployment of the Comet AI agent in the Amazon Store, Amazon contacted Perplexity's CBO, Mr. Shevelenko, and explained that Amazon requires all AI agents to act transparently in the Amazon Store and that Perplexity was not permitted to deploy the Comet AI agent in the Amazon Store.  Chen Decl. ¶ 3.

1  Mr. Shevelenko asserted that Comet was not "an agent," *id.*, contradicting Perplexity's public
2  marketing materials touting Comet's agentic AI functions, including the ability to "actively
3  conduct[] entire browsing sessions," "book a meeting or send an email," "buy something you
4  forgot," and "execute[] complete workflows while keeping perfect context."  McLain Decl. Ex. 5.

5        On August 19, 2025, after dedicating substantial resources to tracking and identifying the
6  activities of Perplexity's covert AI agent in the Amazon Store and in Amazon's servers, Amazon
7  implemented a technological barrier to block the Comet AI agent's ability to access the Amazon
8  Store through private customer accounts.  Fernandes Decl. ¶¶ 15-16.  Numerous Amazon software
9  engineers and other highly skilled employees spent significant time conducting a forensic analysis
10 of network traffic and browser data to isolate the Comet AI agent's browser fingerprint from
11 ordinary customer activities.  *Id.* ¶¶ 15-16, 21.

12       Following the implementation of the technological barrier, Amazon observed comments on
13 an online discussion forum stating the Comet AI agent could no longer access the Amazon Store.
14 *Id.* ¶ 16.  Moderators who appeared to be associated with Perplexity announced that they would
15 address the issue.  *Id.*  Within 24 hours, Perplexity released an updated version of Comet designed
16 to evade the barrier by altering Comet's behavior so that the Comet AI agent no longer matched
17 the digital fingerprint Amazon had developed to identify it.  *Id.* ¶ 17.  This software update allowed
18 Perplexity to regain unauthorized agentic access to the Amazon Store through private customer
19 accounts. *Id.*

20              **5.      Amazon Again Informs Perplexity that Comet's Agentic Access Is**
21                     **Unauthorized, and Perplexity Again Refuses to Cease Accessing the**
22                     **Amazon Store Without Authorization**

23       After Perplexity's swift evasion of Amazon's technological barrier, Amazon twice
24 confronted Perplexity about its unauthorized access into the Amazon Store through private
25 customer accounts.  On September 12, 2025, Amazon contacted Perplexity's CEO, Mr. Srinivas,
26 and explained that the Comet AI agent is not authorized to access the Amazon Store.  Garman Decl.
27 ¶ 4.  Amazon made it clear that if Perplexity continues to access the Amazon Store by not

28

identifying the Comet AI agent, legal action would likely follow.  *Id.*  Mr. Srinivas did not deny that Comet AI was accessing the Amazon Store without identifying itself.  *Id.*  And on September 29, 2025, Amazon contacted Perplexity's CEO, Mr. Srinivas, and CBO, Mr. Shevelenko, and stated again that the Comet AI agent is not authorized to access the Amazon Store without transparently identifying itself.  Mason Decl. ¶ 6.  Mr. Srinivas and Mr. Shevelenko offered no legitimate justification for Perplexity's unauthorized conduct.  *Id.*  After this call, Perplexity's Comet AI agent continued to impersonate Google Chrome and fail to identify itself.  Fernandes Decl. ¶ 20.

On October 2, 2025, Perplexity made the Comet browser and its Comet AI agent widely available to the public free of charge.  McLain Decl. Ex. 6.

### 6.   Amazon Sends a Cease-and-Desist Letter to Perplexity, but Perplexity Refuses to Change Course

On October 31, 2025, Amazon sent Perplexity a cease-and-desist letter, reaffirming that Perplexity is not authorized to deploy AI agents in the Amazon Store and that Amazon would seek all available legal and equitable remedies if this conduct did not stop.  *Id.* Ex. 7.  Perplexity continues to covertly deploy the Comet AI agent into the Amazon Store.  Fernandes Decl. ¶ 20.

## IV.   LEGAL STANDARD

A preliminary injunction may be issued if a plaintiff establishes it (1) "is likely to succeed on the merits;" (2) "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  In the Ninth Circuit, courts apply a sliding scale in which "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction" provided that "the other two elements of the *Winter* test are also met."  *All. for the Wild Rockies*, 632 F.3d at 1132.

## V.   ARGUMENT

Perplexity's misconduct satisfies each of the preliminary injunction factors.  Its recurrent, covert incursions into the Amazon Store through private customer accounts—after being repeatedly

1  and unequivocally told these trespasses are unauthorized—plainly violate the CFAA and CDAFA.

2  The dangers and damages imposed by this plainly unauthorized access inflict the types of harm

3  courts regularly recognize as irreparable in computer fraud cases.  And all the equities favor

4  enjoining Perplexity's patently unlawful conduct.

5         **A.**       **Amazon Is Likely to Succeed on the Merits of its Claims**

6       Because Perplexity's actions constitute textbook violations of the computer fraud and abuse

7  statutes, Amazon has shown far more than the "fair chance of success" required by the first factor,

8  which does not require plaintiffs to "conclusively prove their case or show that they are more likely

9  than not to prevail." *Stewart v. City & County of San Francisco, California*, 608 F. Supp. 3d 902,

10  911 (N.D. Cal. 2022), *aff'd,* 2023 WL 2064162 (9th Cir. Feb. 17, 2023).

11         **1.**       **Perplexity Violated the CFAA**

12       The CFAA "prohibits acts of computer trespass by those who are not authorized users or

13  who exceed authorized use." *Power Ventures I*, 844 F.3d at 1065.  Perplexity's unauthorized

14  access violates both the "unauthorized access" and "fraud" provisions of the CFAA.  18 U.S.C.

15  §§ 1030(a)(2) and 1030(a)(4), respectively.

16         **a.  Section 1030(a)(2)**

17       Perplexity's misconduct meets the elements of a § 1030(a)(2) claim, which requires

18  Amazon to show that Perplexity "**(1)** intentionally accessed a computer, **(2)** without authorization

19  or exceeding authorized access, and that [Perplexity] **(3)** thereby obtained information **(4)** from any

20  protected computer (if the conduct involved an interstate or foreign communication), and that **(5)**

21  there was loss to one or more persons during any one-year period aggregating at least $5,000 in

22  value." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (emphasis added).

23       There can be no real dispute that Perplexity **(1)** "intentionally accessed [Amazon's]

24  computer[s,]" *id.*, when deploying its Comet AI agent into the Amazon Store through Amazon's

25  private customer accounts.

26       This access to Amazon's computers was also **(2)** "without authorization."  *Id.*  Perplexity

27  has known that it did not have permission to use AI agents in the Amazon Store since at least

28

November 19, 2024, when Perplexity consented to Amazon's request not to deploy AI agents into the Amazon Store without reaching mutually agreed-upon terms for such deployment.  Garman Decl. ¶ 3.  Instead of abiding by its agreement, Perplexity proceeded to release its Comet AI agent intentionally cloaked to appear as if a human actor was using Google Chrome, a widespread browser.  After Amazon caught the Comet AI agent in private customer accounts, Amazon's senior executives told Perplexity's senior executives three more times that AI agents are not allowed to access the Amazon Store.  *See* Chen Decl. ¶ 3; Garman Decl. ¶ 4; Mason Decl. ¶ 6.  Amazon also implemented a technological barrier to stop the Comet AI agent from accessing the Amazon Store through private customer accounts, which Perplexity redesigned Comet to evade.  *See* Fernandes Decl. ¶¶ 15-17.  And on October 31, Amazon sent a cease-and-desist letter to Perplexity reiterating that Perplexity's Comet AI agent is not allowed to access the Amazon Store.  McLain Decl. Ex. 7.

Despite these efforts, Perplexity continues to access Amazon's computers through private customer accounts using the Comet AI agent.  Courts routinely find CFAA violations in these circumstances.  For example, *Power Ventures I* is closely on point.  There, the Ninth Circuit found that the defendant violated the CFAA by continuing to access and use information from Facebook users' password-protected profiles to promote the defendant's rival social media service, even after Facebook sent a cease-and-desist letter regarding these unauthorized intrusions.  844 F.3d at 1063.  The defendant—like Perplexity here—also engaged in "technological gamesmanship" to conceal its identity and circumvent a technological block implemented by Facebook.  *Id*. at 1067.  In affirming the district court's ruling that this conduct violated the CFAA, the Ninth Circuit rejected the same argument Perplexity has made here and concluded that it did not matter that individual Facebook users had given the defendant permission to access their accounts, ***because Facebook's permission was also required.***  *Id*. at 1067-68.  As the court explained, even if the owner of a safe deposit box gives their friend a key to the box, that does not permit the friend to enter the bank where the box is located without the bank's permission.  *Id*. at 1068.  Perplexity never had Amazon's permission to access the Amazon store through private customer accounts and now is also ignoring Amazon's express revocation.  *See id*. at 1068 (explaining that defendant "needed

authorization both from individual . . . users (who controlled their data and personal pages) and from Facebook (which stored this data on its physical servers)"); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 n.17 (9th Cir. 2022) ("[C]omputers and servers hosting public websites may contain areas that require authorization to access.  Accessing those areas 'without authorization' would violate the CFAA.").

Perplexity **(3)** "obtained information," *Brekka*, 581 F.3d at 1132, when the Comet AI agent accessed Amazon's computers using customer credentials.  Specifically, Perplexity obtained access to all private data available in the Amazon Store accounts of those customers, including their account details, shopping history, billing information, and other personal data.  Fernandes Decl. ¶ 24.  Beyond using confidential customer information to make purchases in the Amazon Store, Perplexity also takes the information back to its own servers.  *Id.* ¶ 10.  Moreover, Perplexity expressly grants itself sweeping rights to use the confidential information obtained this way.  *See* McLain Decl. Exs. 8 and 9.

Amazon's computers are **(4)** "protected computer[s]" under the CFAA because they are connected to the internet and thus "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2); *see also United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) ("protected computer[s]" cover "effectively all computers with Internet access"); Fernandes Decl. ¶ 4.

Finally, Amazon has **(5)** suffered "loss . . . during [a] one-year period aggregating at least $5,000 in value."  *Brekka*, 581 F.3d at 1132.  In the last 12 months, Amazon's employees have spent hundreds of full workdays, costing well over $260,000, investigating and responding to Perplexity's covert behavior in the Amazon Store.  Fernandes Decl. ¶ 21.  Such costs, which began to accumulate after Amazon discovered that Perplexity gained unauthorized access to the Amazon Store via the Comet AI agent, flow directly from Perplexity's misconduct and therefore qualify under the CFAA.  18 U.S.C. § 1030(c)(4)(A)(i)(I); *see also Power Ventures I,* 844 F.3d at 1066 (investigative costs qualify as loss under the CFAA); *Biden v. Ziegler*, 737 F. Supp. 3d 958, 975

(C.D. Cal. 2024) (same); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1265 (N.D. Cal. 2022) (same).

Perplexity has also caused Amazon other kinds of technological harm. For example, traffic from automated agents, such as that from the Comet AI agent, imposes operational burdens and costs on Amazon's advertising systems. Fernandes Decl. ¶ 22. Amazon's advertisers pay for their ads to be shown to humans, with billing based on valid ad impressions. *Id.* When automated agents, such as the Comet AI agent, generate ad traffic, Amazon must invest engineering resources to detect and filter out these non-human impressions before billing advertisers. *Id.* This requires modifications to Amazon's advertising systems, including developing new detection mechanisms to identify and exclude automated traffic. *Id.* These system adaptations are necessary to maintain contractual obligations with advertisers who pay only for legitimate human impressions. *Id.*

Additionally, Perplexity has damaged the accounts of Amazon customers who use the Comet AI agent to access the Amazon Store. When Amazon customers access the Amazon Store through Comet's AI agent, Amazon has previously had to block those customers' accounts after Amazon identified Comet's agentic activity. *Id.* ¶ 23. Once this happened, these users could not access the Amazon Store through Comet. As a result, Amazon had to repair and unblock these accounts when these customers wanted to re-access their Amazon accounts through non-agentic browsing. *Id.* This imposed operational burdens and costs on Amazon that would likely have been unnecessary if the Comet AI agent identified itself through its user-agent string when accessing the Amazon Store because that would allow Amazon to block traffic associated with just the Comet AI agent, instead of blocking a customer account. *Id.*

All these kinds of damage are technological harms to Amazon's computer systems that are recoverable under the CFAA. 18 U.S.C. § 1030(e)(11) (defining "loss" under the CFAA to include "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense"); *see also, e.g.*, *Apple Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 251448, at *4 (N.D. Cal. Jan. 23, 2024) ("[T]he definition of 'loss' expressly includes the cost of investigating and restoring a 'program' or 'system.'").

**b. Section 1030(a)(4)**

Perplexity's misconduct also satisfies the elements of § 1030(a)(4) of the CFAA. Those elements are the same as in § 1030(a)(2) except that they also require that Perplexity acted "knowingly and with intent to defraud, and thereby [] furthered the intended fraud and obtained anything of value." *Brekka*, 581 F.3d at 1132.[2] The term "fraud" under the CFAA "simply means wrongdoing and does not require proof of common law fraud." *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010).

Perplexity's incursions began with fraud. Even before Comet, Perplexity fraudulently schemed to access the Amazon Store and place orders for its users through Perplexity's Amazon accounts, including its Amazon Prime accounts, thereby potentially allowing some of Perplexity's paid subscribers to make purchases and receive free shipping without having to create or pay for their own Amazon Prime accounts. Fernandes Decl. ¶ 7. And to now allow the Comet AI agent to access the Amazon Store through private customer accounts, Perplexity fraudulently identifies its agent using the same "user-agent" string—a standard piece of information sent by a web browser to identify itself to a third-party website—as Google Chrome. *Id.* ¶ 11. The purpose and effect of this subterfuge is to falsely make it appear that a human is visiting the Amazon Store using the Google Chrome browser, so that Perplexity's Comet AI agent can—against Amazon's express prohibition—gain access to the Amazon Store and its private customer accounts. *Id.* ¶ 12. Nor does Perplexity merely use this confidential information to make purchases in the Amazon Store; it also takes the information back to its own servers. *Id.* ¶ 10. All that conduct is fraudulent under § 1030(a)(4). *Multiven.*, 725 F. Supp. 2d at 892–94 (granting summary judgment under § 1030(a)(4) where defendant used another's credentials to access and gather information from plaintiff's protected computers); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000) (plaintiff made viable § 1030(a)(4) claim where "the defendant participated in dishonest methods to obtain the plaintiff's secret information").

---

[2] The phrase "without authorization" carries the same meaning under § 1030(a)(4) and § 1030(a)(2). *See Brekka*, 581 F.3d at 1132; *Nosal*, 676 F.3d at 859 ("Congress obviously meant 'exceeds authorized access' to have the same meaning throughout section 1030.").

That fraud also "obtained anything of value." *Brekka*, 581 F.3d at 1132.  The confidential customer information Perplexity has obtained with its Comet AI agent "undeniably ha[s] value, or else [Perplexity] would not be running an ever-increasingly sophisticated business operation to obtain [it]." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018); *see also Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 660 (E.D. Tex. 2015) ("Identifying the misappropriated data or information is sufficient to show that a defendant obtained valuable information under the CFAA.").

### c. *Van Buren* and *hiQ* Further Support Amazon's CFAA Claims

Perplexity's violations of the CFAA, and Amazon's likelihood of proving it, are reinforced by the recent decisions in *Van Buren v. United States*, 593 U.S. 374 (2021) and *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022).  Both decisions draw a line between permitted and unauthorized access by "adopt[ing] a gates-up-or-down approach [that] aligns with the computer-context understanding of access as entry." *Van Buren*, 593 U.S. at 390; *see also hiQ*, 31 F. 4th at 1199.  Perplexity has gone well beyond that line.  While "the concept of 'without authorization' does not apply to public websites" that lack limitations to access, *hiQ*, 31 F. 4th at 1199, Perplexity did more than just access the publicly available sections of the Amazon Store; it used deceptive means to enter password-protected private customer accounts where Amazon has erected gates to prevent unauthorized access.  Perplexity's continuing trespass into these protected spaces—after Amazon has repeatedly and unequivocally revoked its permission to enter—violates the CFAA. *Id.* at 1199 n.17 ("Of course, even computers and servers hosting public websites may contain areas that require authorization to access.  Accessing those areas 'without authorization' would violate the CFAA.").

*Van Buren* and *hiQ* also held that the CFAA is meant to address "technological harms." *Van Buren*, 593 U.S. at 392.  Since those decisions, federal courts in California and this District have affirmed that technological harms encompass costs such as the work of Amazon engineers attempting to detect, monitor, prevent, and mitigate the actions of the Comet AI agent, because the statute specifically incorporates "the cost of responding to an offense." *BrandTotal*, 605 F. Supp.

3d at 1265 ("The Court declines to construe *Van Buren* and *hiQ* as foreclosing a loss based on Facebook's investigative costs."); *Apple Inc.*, 2024 WL 251448, at *4 (similar); *see also Biden*, 737 F. Supp. 3d at 975 ("The CFAA permits the recovery of losses incurred as a result of investigating and responding to Defendants' violations of the CFAA.").  In any case, the damage Perplexity has caused to Amazon's automated payment processing and customer accounts, and the costs Amazon has incurred to repair that damage are technological harms that meet the statutory loss definition.

### 2.    Perplexity Violated the CDAFA

Perplexity's conduct also violates the CDAFA, which "is broader than CFAA in many respects," and an independent and additional basis upon which to issue a preliminary injunction. *Biden*, 737 F. Supp. 3d at 975.  Perplexity violates at least three provisions of the statute:  Perplexity **(1)** "[k]nowingly accesses and without permission takes, copies, or makes use of any data from [an Amazon] computer, computer system, or computer network," Cal. Penal Code § 502(c)(2); **(2)** "[k]nowingly and without permission uses or causes to be used [Amazon's] computer services," *id*. at § 502(c)(3); and **(3)** "[k]nowingly and without permission accesses or causes to be accessed any [Amazon] computer, computer system, or computer network," *id*. at § 502(c)(7).

As an initial matter, Perplexity has acted "knowingly and without permission"—an element common to all three CDAFA provisions.  Perplexity has not had permission to use AI agents to access the Amazon Store since at least November 19, 2024, when Amazon expressly told Perplexity exactly that—and Amazon has reiterated this same prohibition at least four more times since then. Garman Decl. ¶¶ 3-4; Chen Decl. ¶ 3; Mason Decl. ¶ 6; McLain Decl. Ex. 7; *see also Power Ventures I*, 844 F.3d at 1069 (affirming a CDAFA violation and noting that "when [the provider] sent the cease and desist letter" the defendant "knew that it no longer had permission to access [the provider's] computers at all.").

Perplexity's knowing conduct includes unauthorized taking or use of Amazon's information in violation of the CDAFA.  *See Biden*, 737 F. Supp. 3d at 976.  Perplexity also has been using, and continues to use, the Comet AI agent to "access[]" Amazon's private "computer, computer system, [and] computer network," as required by the first and third CDAFA provisions, Cal. Penal Code §§

502(c)(2) and (c)(7), and "takes, copies, or makes use of" Amazon's private customer account data, as required by the first, *id*. § 502(c)(2).  Along these same lines, Perplexity knowingly deploys the Comet AI agent to "use[] or cause[] to be used [Amazon's] computers services," *id*. § 502(c)(3), as required by the second provision.  *See also id*. § 502(b)(4) (defining "computer services" as "computer time, data processing, or storage functions, internet services, electronic mail services, electronic message services, or other uses . . . .").

Finally, Amazon has also suffered "damage or loss by reason of" Perplexity's violations, as is required to establish each of the CDAFA provisions at issue.  *Id*. § 502(e)(1).  "[U]nder the plain language of the statute, any amount of damage or loss may be sufficient."  *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025).  Perplexity caused damage and loss to Amazon when it gained unauthorized access to the private account information of Amazon customers who used the Comet AI agent.  *See id*. at 1110 ("damage or loss" is cognizable under the CDAFA where defendant "failed to pay for the data it collected despite there being a market for it").  The CDAFA expressly contemplates this sort of "damage," awarding "damages [for] any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access."  Cal. Penal Code § 502(e)(1).  The many hours Amazon employees spent investigating and responding to Perplexity's trespass into the Amazon Stores as well as making repairs to Amazon's automated payment processing system and customer accounts, easily satisfy this threshold.

As a result, Amazon is highly likely to succeed on the merits of its CDAFA claim, as courts have routinely found violations in similar circumstances.  *See Meta Platforms, Inc. v. Qibaa*, 2025 WL 2496129, at *9 (N.D. Cal. Aug. 1, 2025) (granting permanent injunction on CDAFA claim where "Defendant access[ed] and used [plaintiff's service] . . . after [plaintiff] sent them a cease-and-desist letter and revoked their access"), *report and recommendation adopted with modifications on other grounds*, 2025 WL 2494241 (N.D. Cal. Aug. 29, 2025); *Meta Platforms, Inc. v. Ates*, 2023 WL 4035611, at *8 (N.D. Cal. May 1, 2023) (same), *report and recommendation adopted*, 2023 WL 4995717 (N.D. Cal. June 27, 2023).

**B.    Perplexity's Conduct Causes Irreparable Harm to Amazon**

Perplexity's unauthorized access into Amazon's protected computers has already irreparably harmed Amazon, and—absent a preliminary injunction—will cause further irreparable harm if the Court does not intervene, including unlawful trespass, risks to Amazon's customers' private data, degradation of the Amazon customer shopping experience, and resulting damage to Amazon's goodwill and reputation.

To start, "federal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury." *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1296 (S.D. Fla. 2020) (collecting cases).  For example, in *Power Ventures I*, the defendant "took, copied, or made use of data from the Facebook website" after Facebook had expressly denied it permission to do so in a cease-and-desist letter and by erecting technological barriers, which the defendant—like Perplexity here—swiftly evaded.  844 F.3d 1058 at 1067-68.  The Ninth Circuit affirmed the district court's grant of summary judgment under the CFAA and CDAFA, *id.* at 1067-69, and on remand, the district court entered a permanent injunction under both statutes, *see Power Ventures II*, 252 F. Supp. 3d at 782.  As the district court found, Facebook suffered irreparable harm because the defendant "interfered with Facebook's right to control access to its own computers and . . . acquired data to which Defendants have no lawful right." *Id.*, *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

Here, despite being given repeated and clear notice that Amazon does not permit AI agents to enter the Amazon Store without identifying themselves, Perplexity chose to disguise an automated agentic browser as a human user, circumvent Amazon's technical barrier, and access the private accounts of Amazon customers who use the Comet AI agent.  In doing so, Perplexity "interfered with [Amazon's] right to control access to its own computers," causing Amazon irreparable harm.  *Power Ventures II*, 252 F. Supp. 3d at 782.  This interference alone constitutes irreparable harm; indeed, courts routinely "grant[] injunctive relief upon a showing that a defendant continued to access a plaintiff's computers, in an unauthorized manner, regardless of attempts to halt the access." *Chegg, Inc. v. Doe*, 2023 WL 7392290, at *8 (N.D. Cal. Nov. 7, 2023) (collecting

-20-

1    cases).

2          Perplexity's misconduct also damages Amazon's goodwill and reputation, which numerous

3    courts recognize is a quintessential irreparable harm because it is inherently unquantifiable.  *See,*

4    *e.g.*, *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) ("[L]oss of control

5    over business reputation and damage to goodwill can constitute irreparable harm."); *Stuhlbarg*

6    *Intern. Sales Co., Inc.*, 240 F.3d at 841 (affirming preliminary injunction and noting "[e]vidence of

7    threatened loss of prospective customers or goodwill certainly supports a finding of the possibility

8    of irreparable harm"); *Reliable Prop. Servs., LLC*, 1 F. Supp. 3d at 965 (granting preliminary

9    injunction and finding irreparable harm because defendant's conduct was "highly likely to damage

10   [plaintiff's] goodwill and its relationship with its customers").   Perplexity harms Amazon's

11   goodwill and reputation in two ways.

12         First, Perplexity creates an immediate risk to the private data of Amazon customers who

13   use the Comet AI agent.  Once an Amazon customer uses the Comet AI agent to shop in the Amazon

14   Store, Perplexity obtains all available data in that user's Amazon account, including account details,

15   shopping history, payment information, shipping addresses, and other personal and financial data.

16   *See* Fernandes Decl. ¶ 24; Evans Decl. ¶ 4; *see also* McClain Decl. Exs. 8 and 9 (disclaiming any

17   responsibility for data security, yet granting Perplexity sweeping rights to collect data from

18   customers when they use Comet to access third-party websites like the Amazon Store).  This puts

19   private Amazon customer data and by extension, Amazon's hard-won customer trust, at risk,

20   because Perplexity's Comet browser is vulnerable to cyberattacks in which bad actors using the

21   Comet AI agent can "siphon sensitive data . . . from connected services" like Amazon.  McLain

22   Decl. Ex. 1.  The Comet AI agent "operates with the user's full privileges across authenticated

23   sessions, providing [attackers] potential access to banking accounts, corporate systems, private

24   emails, cloud storage, and other services" like the Amazon Store.  *Id.* Ex. 10.  This is particularly

25   concerning because Defendant is intentionally evading Amazon's identification of the Comet AI

26   agent when it accesses the Amazon Store through private customer accounts, and thereby directly

27   interfering with Amazon's ability to protect the data of Amazon's customers who use the Comet

28

AI agent to access the Amazon Store. In the event of a Perplexity data breach, regardless of Amazon's lack of fault, Amazon's goodwill and relationships with customers will be damaged when Amazon customers inevitably blame Amazon for not keeping their data safe.

Courts recognize such risks as irreparable harm. *See, e.g.*, *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 436–37 (D. Md. 2024); *Reliable Prop. Servs.*, 1 F. Supp. 3d at 965 (granting preliminary injunction and finding irreparable harm because defendant "unlawfully took volumes of detailed data about [the plaintiff's] customers" and "publicize[d] [the plaintiff's] customer information" which was "highly likely to damage [the plaintiff's] goodwill and its relationships with its customers"); *Qibaa*, 2025 WL 2496129, at *9 (granting permanent injunction on CDAFA claim where "Meta has suffered—and continues to suffer—irreparable harm to its reputation and goodwill as a result of Defendant's unauthorized access and use of Meta's platform that monetary damages cannot rectify."); *Ates*, 2023 WL 4035611, at *8 (same).

Second, Perplexity and its Comet AI agent inflict and continue to create an intolerable risk of irreparable harm to Amazon's goodwill and reputation by degrading Amazon customers' shopping experience. Amazon has invested decades of time and resources into creating an individualized shopping experience on the Amazon Store, providing unique value to its shoppers and earning repeat business for Amazon. Mason Decl. ¶¶ 3-4. The Comet AI agent prevents Amazon from managing how customers access the Amazon Store and, therefore, prevents Amazon from ensuring the quality of those customers' Amazon shopping experience. For example, the Comet AI agent may not select the best price, delivery method, or product recommendations for a customer when shopping on the Amazon Store. Fernandes Decl. ¶ 14. The Comet AI agent also may not add selected products to existing deliveries to meet minimum free-shipping thresholds, which, if done, could result in cheaper and/or faster delivery options for customers. *Id.* The Comet AI agent also dissuades Amazon's customers from visiting the Amazon Store themselves, thereby depriving Amazon of opportunities to build loyalty by providing a superior experience and to sell additional products by making recommendations or offering promotional benefits to actual humans.

When customers who use the Comet AI agent to access the Amazon Store cannot trust that their private account information is secure, or when they suffer from a degraded shopping experience with the Comet AI agent, their confidence in the Amazon brand as a whole is diminished, even when this has nothing to do with Amazon failing to serve its customers and everything to do with Perplexity's illegal incursion into the Amazon Store. Such interference with Amazon's ability to offer a secure and positive customer experience is a recognized irreparable harm. *See T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1126 (W.D. Wash. 2012) (finding irreparable harm where defendant's actions "deprive[d] T–Mobile of the means to control the quality of its product"); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) (finding irreparable harm where defendant "degraded the user experience" on plaintiff's website).

Finally, the breadth of these irreparable harms will only increase because Perplexity has recently made the Comet browser and Comet AI agent free to the public. *See eBay, Inc. v. Bidder's Edge, Inc*., 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Where, as here, the denial of preliminary injunctive relief would encourage an increase in the complained of activity, and such an increase would present a strong likelihood of irreparable harm, the plaintiff has at least established a possibility of irreparable harm.").

## C.    The Balance of Hardships Favors Amazon

The "balance of hardships between the parties," *All. for the Wild Rockies*, 632 F.3d at 1137, weighs heavily in favor of a preliminary injunction. The harms to Amazon from Perplexity's conduct, as just discussed, are serious and severe. Perplexity faces no corresponding hardship if enjoined. For one thing, Perplexity's conduct is illegal, which means it "is not a hardship for purposes of [an] injunction analysis." *Sahinturk*, 2022 WL 1304471, at *11; *Luxottica Grp. S.p.A. v. Thornton*, 2022 WL 2167685, at *9 (C.D. Cal. May 2, 2022) (granting permanent injunction where "defendant will only be proscribed from conducting illegal activities."); *Baldor Elec. Co. v. Kelderman*, 2013 WL 12253062, at *9 (S.D. Iowa Apr. 15, 2013) (granting preliminary injunction where "[t]here is no harm to [the defendant] in preventing his use and possession of information that he accessed beyond the scope of his authorization").

For another, the requested injunction is limited in scope and does not prevent Perplexity from engaging in the same conduct in any other online store or otherwise restrict the Comet AI agent from performing any number of other activities across the internet. *See Rovio Ent. Ltd.*, 2012 WL 5936214 at *12 (finding balance of hardships favored plaintiff where there was "no evidence which suggests that Defendants' overall business will be significantly impacted by the injunction"); *Acme Refrigeration Supplies, Inc. v. Acme Refrigeration of Baton Rouge*, 961 F. Supp. 936, 941 (E.D. La. 1996) (finding balance of hardships favored plaintiff where defendant had access to revenue "outside the disputed marketplace"); *Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*, 776 F. Supp. 1454, 1463 (W.D. Wash. 1991) (noting that sale of defendant's enjoined product "is less than one percent of [the defendant's] business[,]" and "[o]n that ground alone the balance of hardships tips decidedly in favor of the [plaintiff]").

### D.    The Public Interest Favors Preliminary Injunctive Relief

Enjoining Perplexity's unauthorized access "necessarily advances the public interest" because "the injunction does nothing more than prevent conduct that Congress has already deemed criminal." *Parsont*, 465 F. Supp. 3d at 1298 (imposing preliminary injunction to prevent further CFAA violations); *Google LLC v. Starovikov*, 2021 WL 6754263, at *4 (S.D.N.Y. Dec. 16, 2021) (granting preliminary injunction where "the public interest is clearly served by enforcing statutes designed to protect the public, such as" the CFAA); *Power Ventures II*, 252 F. Supp. 3d at 785 ("The public has an interest in ensuring that computers are not accessed without authorization."). Moreover, unlike other companies that have respected Amazon's right to monitor and control access to its protected computer systems, Perplexity has both refused to transparently identify its AI agent when accessing private customer accounts in the Amazon Store and intentionally evaded Amazon's technological barrier to continue gaining unauthorized access. It is in the public interest to enjoin illegal conduct and irresponsible practice that unfairly benefits Perplexity. *See WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019) (granting preliminary injunction where "an injunction would also promote fair and lawful competition in an emerging market"), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019).

1    VI.    <u>**CONCLUSION**</u>

2         This is not a case about AI, innovation, or the opportunities offered by agentic browsers.  It

3    is a case about misconduct as plainly unlawful as trespassing, and as obviously forbidden as

4    breaking into a bank just because a customer gave you the key to a safe deposit box.  *See Power*

5    *Ventures I*, 844 F.3d at 1068 (using similar analogy to explain CFAA violation).  Perplexity's

6    conduct—covertly sending the Comet AI agent into the Amazon Store through private customer

7    accounts, fraudulently concealing the agent's identity, intentionally bypassing Amazon's

8    technological barrier, and illicitly obtaining confidential and sensitive information—crosses a clear

9    legal line.  Courts confronting such behavior readily find violations of the computer fraud statutes.

10   And Perplexity's unwillingness to stop could scarcely be clearer:  when confronted, it denies; when

11   blocked, it evades; and when warned, it persists.  Perplexity's leadership has rebuffed Amazon's

12   repeated efforts to engage in good faith; ignored its requests, warnings, and demands to stop

13   unauthorized access; and gone so far as to release a software update to specifically circumvent

14   Amazon's technological barrier within 24 hours of those measures being put in place.  These

15   deliberate, unauthorized, and deceptive incursions into Amazon's protected computers leave no

16   doubt that the limited preliminary injunctive relief Amazon seeks is the only remedy that can

17   prevent Perplexity's ongoing violations of law and stop further irreparable harm to Amazon.

18   Dated: November 4, 2025                    HUESTON HENNIGAN LLP

19

20                                             By: _____

21                                                Moez M. Kaba
                                                  Christine Woodin
22                                                Hagan Scotten
                                                  Billy Joe McLain
23
                                                 *Attorneys for Plaintiff*
24                                               *AMAZON.COM SERVICES LLC*

25

26

27

28