**HUESTON HENNIGAN LLP**
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Christine Woodin (SBN 295023)
cwoodin@hueston.com
Hagan Scotten (admitted *Pro Hac Vice*)
hscotten@hueston.com
Billy Joe McLain (SBN 290682)
bmclain@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:25-cv-09514-MMC<br><br>**AMAZON.COM SERVICES LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>**Date**:       January 9, 2025<br>**Hearing Time**:  9:00 a.m.<br>**Courtroom**:   7, 19th Floor<br>**Judge**:      Maxine M. Chesney |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARUGMENT ........................................................................................................................3

I.  AMAZON IS LIKELY TO SUCCEED ON THE MERITS ......................................3

    A.     Perplexity Is Violating Section 1030(a)(2) of the CFAA .......................3

    B.     Perplexity Is Violating the CDAFA ....................................................6

    C.     Perplexity's Other Arguments Fail .......................................................7

II.    AMAZON HAS SHOWN IRREPARABLE HARM ...................................................9

III.  THE BALANCE OF HARDSHIPS SUPPORTS AN INJUNCTION................................12

IV.  THE PUBLIC INTEREST SUPPORTS AN INJUNCTION ................................13

V.  THE REQUESTED INJUNCTION IS APPROPRIATELY NARROW.............................14

VI.  A BOND IS NOT NECESSARY .......................................................................15

VII. CONCLUSION ..............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdou v. Davita, Inc.*,
   734 F. App'x 506 (9th Cir. 2018) .................................................................... 12

*Apple Inc. v. NSO Grp. Techs. Ltd.*,
   2024 WL 251448 (N.D. Cal. Jan. 23, 2024) ..................................................... 5

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ......................................................................... 15

*CDK Glob., LLC v. Tekion Corp.*,
   2025 WL 1939951 (N.D. Cal. July 15, 2025) ............................................... 5, 8

*CLS Worldwide Servs., LLC v. Cartier Exec. Limo Serv.*,
   2006 WL 8563341 (C.D. Cal. June 15, 2006) ................................................ 14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   362 F. Supp. 3d 558 (N.D. Ill. 2019) ............................................................... 8

*Domain Name Comm'n Ltd. v. DomainTools, LLC*,
   781 F. App'x 604 (9th Cir. 2019) ..................................................................... 8

*Epic Games, Inc. v. Apple Inc.*,
   2021 WL 5205487 (N.D. Cal. Nov. 9, 2021) ................................................. 14

*Facebook, Inc. v. Power Ventures, Inc.*,
   252 F. Supp. 3d 765 (N.D. Cal. 2017)*, aff'd*, 749 F. App'x 557 (9th Cir. 2019) ............ *passim*

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ................................................................. *passim*

*Fiji Water Co., LLC v. Fiji Min. Water USA LLC*,
   2010 WL 11526801 (C.D. Cal. Oct. 19, 2010) .............................................. 14

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
   465 F. Supp. 3d 1279 (S.D. Fla. 2020) ............................................................ 9

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
   98 F.4th 1180 (9th Cir. 2024) ......................................................................... 15

*Galvez v. Jaddou*,
   52 F.4th 821 (9th Cir. 2022) ........................................................................... 14

*Gen. Motors Corp. v. Harry Brown's, LLC*,
   563 F.3d 312 (8th Cir. 2009) .......................................................................... 14

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

**Page(s)**

3

**Cases**

4

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,

5
 736 F.3d 1239 (9th Cir. 2013).................................................................................... 12

6
*hiQ Labs, Inc. v. LinkedIn Corp.*,
 31 F.4th 1180 (9th Cir. 2022)................................................................................... 5, 7

7

8
*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
 4 F.3d 819 (9th Cir. 1993)........................................................................................ 14

9
*Johnson v. Couturier*,

10
 572 F.3d 1067 (9th Cir. 2009)................................................................................ 11, 15

11
*LVRC Holdings LLC v. Brekka*,
 581 F.3d 1127 (9th Cir. 2009)..................................................................................... 2

12

13
*Meta Platforms, Inc. v. BrandTotal Ltd.*,
 605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................................. 3, 5

14
*Ramirez v. Ghilotti Bros. Inc.*,

15
 941 F. Supp. 2d 1197 (N.D. Cal. 2013) ...................................................................... 6

16
*Shamrock Foods Co. v. Gast*,
 535 F. Supp. 2d 962 (D. Ariz. 2008)........................................................................... 4

17

18
*Stewart v. City & Cnty. of San Francisco, Cal.*,
 608 F. Supp. 3d 902 (N.D. Cal. 2022), *aff'd*, 2023 WL 2064162 (9th Cir. Feb.

19
 17, 2023) ...................................................................................................................... 7

20
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
 240 F.3d 832 (9th Cir. 2001)..................................................................................... 12

21

22
*Theofel v. Farey-Jones*,
 359 F.3d 1066 (9th Cir. 2004).................................................................................. 2, 4

23
*United States v. Ali*,

24
 620 F.3d 1062 (9th Cir. 2010)..................................................................................... 8

25
*United States v. Christensen*,
 828 F.3d 763 (9th Cir. 2015)....................................................................................... 6

26

27
*United States v. Drew*,
 259 F.R.D. 449 (C.D. Cal. 2009) ............................................................................... 4

28

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

**Cases**

*United States v. Nosal*,
    930 F. Supp. 2d 1051 (N.D. Cal. 2013) ................................................................... 4

*Van Buren v. United States*,
    593 U.S. 374 (2021).............................................................................................. 5, 6

*Wagner Aeronautical, Inc. v. Dotzenroth*,
    2022 WL 6837701 (S.D. Cal. Oct. 7, 2022) ........................................................ 14

*WalkMe Ltd. v. Whatfix, Inc.*,
    2024 WL 3364019 (N.D. Cal. July 9, 2024)......................................................... 5

*Whatsapp Inc. v. NSO Grp. Techs. Ltd.*,
    2025 WL 2961368 (N.D. Cal. Oct. 17, 2025)........................................... 10, 11, 12

*X Corp. v. Ctr. For Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) .................................................................. 5

*Xiao v. Reno*,
    930 F. Supp. 1377 (N.D. Cal. 1996) ................................................................... 14

**Statutes**

18 U.S.C. § 1030 ........................................................................................................ 8

Cal. Penal Code § 502(c)(2)........................................................................................ 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Perplexity's opposition confirms that this Court should issue a preliminary injunction. Despite pages of misdirection, Perplexity does not dispute the governing law, and concedes the key facts justifying an injunction—then announces it will continue violating the law regardless. Consider Perplexity's claim that it lacked notice its incursions into the Amazon Store were unauthorized: Perplexity implausibly claims it didn't know its Comet AI agent was prohibited from entering the Amazon Store's non-public areas even after receiving Amazon's cease-and-desist letter. Opp. 12 n.7. Yet before filing its opposition, Perplexity publicly described that same letter as "demanding we prohibit Comet users from using their AI assistants on Amazon."[1] That contradiction speaks for itself. And in any event, Perplexity does not dispute that its Comet AI agent continued to enter the Amazon Store's password-protected areas even after Amazon filed its complaint and this motion. At that point, Perplexity was indisputably on notice that its access to those protected areas was unauthorized, yet it persisted in violating the law. Indeed, after the filing of the complaint and motion, Amazon *again* imposed a technical barrier to the Comet AI agent's unauthorized access, and informed Perplexity of the block, yet Perplexity *again* circumvented it. *See* McLain Rebuttal Decl. Ex. 44; Fernandes Rebuttal Decl. ¶ 7.

This pattern repeats throughout Perplexity's opposition. For each factor in the preliminary injunction analysis, Perplexity offers erroneous arguments that the Court need not even reach because the material facts are undisputed and their illegality clear under the relevant legal standard.

**Perplexity concedes the merits.** Perplexity claims it does not access the Amazon Store's non-public areas, yet admits its Comet AI agent ███████████████████████████████████ ████████████████████████████████████████ That is the textbook definition of unauthorized access under the CFAA. *Facebook, Inc. v. Power Ventures, Inc.* ("*Power Ventures I*"), 844 F.3d 1058, 1067 (9th Cir. 2016).[2] The same admission satisfies the CFAA's "obtain" element. By ███████████████████████████████████████ , Perplexity indisputably

---

[1] McLain Rebuttal Decl. Ex. 42 at 1.

[2] Unless otherwise noted, case quotations omit all internal quotation marks and citations and previous alterations.

1  "obtained information." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134–35 (9th Cir. 2009).

2  Perplexity's argument that this data "belongs to" Amazon customers is both unsupported and

3  irrelevant—the CFAA contains no "ownership or control requirement." *Theofel v. Farey-Jones*,

4  359 F.3d 1066, 1078 (9th Cir. 2004).  And Perplexity offers no independent defense at all to

5  Amazon's CDAFA claim, which alone suffices for an injunction.  *See* Mot. 19 (citing cases

6  enjoining CDAFA violations).

7  **Perplexity concedes irreparable harm.**  Perplexity does not dispute that "federal courts

8  around the country agree that the interference with an entity's control of its computer systems

9  constitutes irreparable injury." Mot. 20 (quoting *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp.

10  3d 1279, 1296 (S.D. Fla. 2020)).  Nor does Perplexity dispute that it continued ███████

11  ███████████████████████████ despite Amazon's written and technical

12  prohibitions.  That conduct interferes with Amazon's control of its computer systems, which is

13  alone sufficient to constitute irreparable harm.  *See also Facebook, Inc. v. Power Ventures, Inc.*

14  ("*Power Ventures II*"), 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017) ("Numerous courts have found

15  that unauthorized access of computers and the acquisition of data in violation of the CFAA

16  constitute irreparable harm."), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

17  **The balance of hardships and public interest favor Amazon.**  Perplexity abandons any

18  meaningful defense on these factors.  As Amazon's motion established, and Perplexity does not

19  dispute, courts do not recognize a public or equitable interest in breaking the law.  *See* Mot. 23–24

20  (collecting cases).  Because Perplexity is violating the law, these factors support an injunction.

21  **Amazon's requested relief is narrow.**  Perplexity's false claim that Amazon seeks to bar

22  Comet from accessing the "entire public Amazon Store," Opp. 25, mischaracterizes Amazon's

23  consistent request for a narrow, prohibitory injunction that stops Perplexity from trespassing into

24  the Amazon Store's *non-public* areas.  This relief is precisely tailored to remedy Perplexity's

25  textbook CFAA and CDAFA violations—nothing more.  And Perplexity's objections to ancillary

26  provisions—such as destroying the data it unlawfully sent to its servers—provide no basis to deny

27  the injunction.

28

1

<u>ARGUMENT</u>

2

I.      <u>AMAZON IS LIKELY TO SUCCEED ON THE MERITS</u>

3

A.      **Perplexity Is Violating Section 1030(a)(2) of the CFAA**

4

Perplexity's admissions and omissions satisfy each element of Section 1030(a)(2) of the

5

CFAA.  *See* Mot. 12–13, 18–19; Opp. 7, 19 (describing these elements).

6

*Perplexity "intentionally accessed" Amazon's computers*.  Perplexity describes the Comet

7

AI agent, which it labels "the Assistant," as "navigating purposefully through the site"—referring

8

to the Amazon Store—and states that "[t]he Assistant simply behaves like an efficient human

9

shopper."  Yarats Decl. ¶ 16.  Given there is no dispute that human shoppers intentionally access

10

the Amazon Store, Perplexity's admissions satisfy this element.  Perplexity's contrary argument

11

only reinforces that conclusion.  It notes that a court found no "access" to Meta's computers where

12

a defendant merely retrieved data from the computers of Meta users who accumulated that data on

13

their personal computers during "their normal use of the website" in *Meta Platforms, Inc. v.

14

BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022).  But the whole point of an AI agent

15

is that the agent, not the user, performs the "normal use of the website."  *Id*.  Perplexity's Comet

16

AI agent of course accesses the Amazon Store *through* a user's computer—and through fiber optic

17

cables, and through an internet service provider's systems, and so on—but it is the agent, which

18

exists on Perplexity's system, that does the sending and receiving.  Thus, if a user's computer loses

19

its ability to transmit information from the Amazon Store to Perplexity's servers, the Comet AI

20

agent instantly stops working, like a puppet with its strings cut.  *See* Evans Rebuttal Decl. ¶ 13.

21

And there can be no reasonable dispute that Perplexity's "access to [Amazon's] servers using its

22

own computers" satisfies this element of Section 1030(a)(2).  *BrandTotal*, 605 F. Supp. 3d at 1261.

23

*Perplexity accessed Amazon's computers "without authorization*."  Perplexity

24

acknowledges that courts analyze whether access is authorized using the "gates" metaphor and that

25

password requirements are a widely recognized "gate."  Opp. 8, 11.  It does not deny that the Comet

26

AI agent operates "past the gate," requiring users to manually enter or authorize the use of their

27

credentials.  *Id.*  Nor does it deny that *Power Ventures I* held that a defendant employing a user's

28

credentials to operate "past the gate" does so without authorization if the plaintiff has revoked the defendant's permission to do so—regardless of whether the user permits the defendant to use her credentials. *See* 844 F.3d at 1068 ("Permission from the users alone was not sufficient to constitute authorization after Facebook issued the cease and desist letter."). Instead, Perplexity argues that the facts here make the users' "delegation of their Amazon authorization to the Assistant valid." Opp. 11–12. But that delegation is no different from the delegation in *Power Ventures I*. There, the Ninth Circuit found that Facebook users "arguably" consented to the defendant using their credentials to send messages from their Facebook accounts, and that the defendant "reasonably could have thought that consent" gave it permission to access Facebook's computers for that purpose. 844 F.3d at 1067. The Ninth Circuit did not question whether this delegation was "valid," Opp. 12, but rather held that it "was not sufficient" because Facebook had revoked access, regardless of its users' consent, 844 F.3d at 1068. So too here.

> *Perplexity "obtained information."* Perplexity admits ██ ███████ ████ ████ ████████████████████████████████████████████████████████████ ████████████████████████ Opp. 3–4. That is obviously obtaining information, even under Perplexity's unduly narrow definition of the term.[3] Perplexity's only defense is its conclusory claim that the ███████████████████████████████████████████ ██████ Opp. 15. But the CFAA contains no "ownership or control requirement," *Theofel*, 359 F.3d at 1078, rendering Perplexity's unsubstantiated assertion irrelevant. In *Power Ventures*, for example, the information was private email addresses belonging to individual Facebook users, which defendants nonetheless "obtained in violation of the CFAA." *Power Ventures II*, 252 F. Supp. 3d at 779. Perplexity also derives no support from its repetition of the Ninth Circuit's

---

[3] Perplexity says that "obtaining information" requires more than viewing it. Opp. 15–16. Courts understandably disagree, given that viewing information is often how one obtains it. "Obtaining information from a computer has been described as including mere observation of the data. Actual asp[ort]ation need not be proved in order to establish a violation." *United States v. Drew*, 259 F.R.D. 449, 457 (C.D. Cal. 2009); *see also United States v. Nosal*, 930 F. Supp. 2d 1051, 1062 (N.D. Cal. 2013) ("the term 'obtaining information' includes merely reading it"); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008) ("the legislative history confirms that the CFAA was intended to prohibit electronic trespassing, not the subsequent use or misuse of information").

observation in *hiQ* that the data was "not owned by LinkedIn," Opp. 15, 21.   Perplexity

misleadingly omits the remainder of the sentence, which reads in full: "The data hiQ seeks to access

is not owned by LinkedIn ***and has not been demarcated by LinkedIn as private using such an***

***authorization system***," referring to "access permissions, such as username and password

requirements." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022) (emphasis

added).   That makes all the difference.   As Perplexity's own description of *hiQ* confirms, the data

there was information "users shared on their *public* LinkedIn profiles."  Opp. 15 (emphasis added).

The data at issue here, by contrast, ***is*** "demarcated" by Amazon as private using an authorization

system.

> *Amazon's computers are "protected computers*."   Amazon's computers are protected
because they affect interstate commerce, Mot. 14, and Perplexity does not contend otherwise.

> *Amazon has suffered "loss" of "at least $5,000 in value*."   Perplexity does not dispute that
Amazon has spent over $260,000 responding to the Comet AI agent's activities in the Amazon

Store.  *See* Mot. 14.  Instead, Perplexity claims that such losses do not satisfy the CFAA under *X*

*Corp. v. Ctr. For Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983 (N.D. Cal. 2024).   But

in *X Corp* the court found that a plaintiff's investigative costs did not constitute a loss because the

data was stored on a third party's servers.  *See* 724 F. Supp. 3d at 983–84.  Here, by contrast,

Amazon incurred costs investigating unauthorized access to ***its own servers***.  *See* Fernandes Decl.

¶¶ 21–23.

> Perplexity's reliance on *Van Buren v. United States*, 593 U.S. 374 (2021), fares no better.
Courts in this District have overwhelmingly rejected the argument that investigative costs no longer

qualify as losses after *Van Buren*.[4]  But that argument is also irrelevant here.  Amazon did not

---

[4] *See, e.g.*, *CDK Glob., LLC v. Tekion Corp.*, 2025 WL 1939951, at *8 (N.D. Cal. July 15, 2025) ("CDK plausibly alleges loss in the form of its investigation and response to InDesign's conduct"); *Apple Inc. v. NSO Grp. Techs. Ltd.*, 2024 WL 251448, at *4 (N.D. Cal. Jan. 23, 2024) ("[T]he definition of 'loss' expressly includes the cost of investigating and restoring a 'program' or 'system.'"); *BrandTotal*, 605 F. Supp. 3d at 1265 (declining "to construe *Van Buren* and *hiQ* as foreclosing a loss based on Facebook's investigative costs"); *WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 3364019, at *7 (N.D. Cal. July 9, 2024) (plaintiff adequately pleaded loss by alleging that "when it discovered an initial unauthorized intrusion, [plaintiff] spent time to investigate and document subsequent intrusions").

merely investigate the effects of the Comet AI agent's incursions—it spent considerable time and money *repairing* those effects, such as by developing methods to avoid charging advertisers for ads "seen" only by an AI agent. *See* Mot. 15 (citing Fernandes Decl. ¶¶ 22–23). Those are plainly expenditures on "technological harms." *Van Buren*, 593 U.S. at 392.[5]

### B.    Perplexity Is Violating the CDAFA

Perplexity acknowledges that the CDAFA does not contain the CFAA's limitation on cognizable loss, yet offers no argument specific to the CDAFA, claiming that its elements do not otherwise differ from the CFAA. Opp. 19. The Ninth Circuit has rejected that approach, refusing to "interpret the state statute consistent with the federal statute" because the "statutes are different." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). Where Perplexity's CFAA arguments are erroneous and immaterial, its CDAFA arguments are often non-existent.

For example, Perplexity violates Section 502(c)(2) of the CDAFA because it "[k]nowingly accesses and without permission . . . makes use of any data from [an Amazon] . . . computer system." Cal. Penal Code § 502(c)(2). "In contrast to the CFAA, the California statute does not require *unauthorized* access[;] it merely requires *knowing* access." *Christensen*, 828 F.3d at 789. Nor does the California statute require the defendant to have "obtained information"; it requires only that the defendant "make use of" the data without permission. Cal. Penal Code § 502(c)(2). As described above, Perplexity knowingly accesses the Amazon Store and makes use of Amazon data each time its Comet AI agent "navigat[es]" the Store on behalf of customers and ███████████ ████████████████████. *See supra* at 3 (quoting Yarats Decl. ¶ 16). And Amazon has repeatedly told Perplexity that it does not have permission to do so, including by sending the cease-and-desist letter and filing this motion. Nothing more is required.

For every other element of its CDAFA claims, Amazon's opening brief explained how the facts here satisfy each, Mot. 18–19, and Perplexity has failed to respond, thereby conceding these points. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) ("In

---

[5] Perplexity's only response is to call these costs "self-imposed." Opp. 17. That makes as much sense as saying an accident victim endures the self-imposed medical costs of not wanting his leg to remain broken.

1  most circumstances, failure to respond in an opposition brief to an argument put forward in an

2  opening brief constitutes waiver or abandonment in regard to the uncontested issue.").[6]

3       **C.    Perplexity's Other Arguments Fail**

4       Because the textual requirements of Section 1030(a)(2) and the CDAFA are satisfied,

5  Amazon has shown far more than the requisite "fair chance of success."  *Stewart v. City & Cnty. of*

6  *San Francisco, Cal.*, 608 F. Supp. 3d 902, 911 (N.D. Cal. 2022), *aff'd*, 2023 WL 2064162 (9th Cir.

7  Feb. 17, 2023).  None of Perplexity's atextual arguments can alter that.

8       Perplexity opens with the baseless claim that the CFAA does not apply to Amazon at all,

9  because it is "a public retail website."  Opp. 7–8.  But websites are called "public" because "their

10  publicly available *sections* lack limitations on access."  *hiQ*, 31 F.4th at 1199 (emphasis added).

11  That label does not suggest that the public can access every section of such a website, because "if

12  authorization is required and has *not* been given, the gates are down."  *Id.*  Amazon submitted a

13  declaration identifying the many "private" areas of the Amazon Store that cannot be entered without

14  "unique login credentials."  Mot. 5 (citing Mason Decl. ¶ 5).  Perplexity has not disputed the

15  accuracy of that declaration, which merely confirms what millions of Amazon shoppers know: you

16  cannot access the pages where you complete a purchase, return an item, view your order history,

17  or perform countless other functions without being logged in to a password-protected account.

18  Given that—and Perplexity's discussion of the Comet AI agent's actions when it reaches password

19  gates in the Amazon Store, *see* Opp. 8, 11—Perplexity cannot credibly pretend that the Store does

20  not contain areas "demarcated . . . as private using [] an authorization system."  *hiQ*, 31 F.4th at

21  1201.

22       Next, Perplexity claims that its conduct must fall outside the CFAA because the Assistant

23  operates with the user's permission and thus cannot be considered "hacking."  Opp. 8–9.  But this

24  is just another version of the "delegation" argument that the Ninth Circuit rejected in *Power*

25  *Ventures I.  See supra* at 4.  Moreover, although the CFAA is an anti-hacking statute, it does not

26

27  ___
[6] Given that Amazon's likelihood of success on Section 1030(a)(2) and the CDAFA is so clear,
Amazon will not further address Section 1030(a)(4) of the CFAA here.  *See, e.g.*, *hiQ*, 31 F.4th at
28  1194 (not examining all claims because a single claim suffices to show likelihood of success).

contain the word "hacking." *See* 18 U.S.C. § 1030. Rather, it defines prohibited conduct by its statutory language. And as *Power Ventures I* explains, a defendant who accesses a computer system without the owner's permission violates the statute even if a user gave the defendant his password and permission to do exactly what the defendant did. *See* 844 F.3d at 1067. Perplexity fails to cite a single case recognizing its "the user let me do it" defense, and *Power Ventures I* is hardly alone in holding that conduct violating the elements of the CFAA is actionable even when done with a user-provided password. *See, e.g.*, *CDK Glob.*, 2025 WL 1939951, at *6–7 (finding CFAA violation where plaintiff's customers "voluntarily shared their authorized access" with the defendant); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 570 (N.D. Ill. 2019) ("The CFAA doesn't say permission by anyone. If I have an account with AOL, to get access to AOL's system, you need AOL's permission, not my permission.").[7]

  With respect to the Amazon Store's conditions of use—which require AI agents to identify themselves and abide by Amazon's restrictions on their operations in the store, Mot. 6—Perplexity twists itself into knots trying to explain away its conduct. At one point, it claims that the conditions do not bind it because they are "addressed to Amazon users," yet elsewhere Perplexity asserts that "the Assistant stands in the shoes of Amazon's customers and acts exactly as they could and would." Opp. 9–12. If that's the case, then it would be entirely reasonable to enjoin Perplexity from violating those conditions. *See, e.g.*, *Domain Name Comm'n Ltd. v. DomainTools, LLC*, 781 F. App'x 604, 606 (9th Cir. 2019) (enjoining defendant from violating website's conditions of use). Regardless, the key point for which Amazon cited the conditions of use remains undisputed: They are one of the myriad ways—including phone calls, technical blocks, a cease-and-desist letter, Amazon's complaint, and this motion—in which Amazon told Perplexity that the Comet AI agent's actions in the Amazon Store were prohibited, yet Perplexity persisted nonetheless. *See* Mot. 8.

---

[7] Perplexity's rule of lenity argument fails for similar reasons. "The rule of lenity only applies when the application of a term is ambiguous." *United States v. Ali*, 620 F.3d 1062, 1069 (9th Cir. 2010). Perplexity does not identify what statutory term in the CFAA is ambiguous as to its conduct, *see* Opp. 9, and in any event, even accepting Perplexity's interpretation of statutory phrases such as "access" and "obtain information," Perplexity still loses on the undisputed facts. *Supra* at 3–6.

Finally, Perplexity struggles mightily to distinguish *Power Ventures I*.  It notes that no preliminary injunction was issued in that case.  Opp. 13.  But no preliminary injunction was *sought*, and the defendant there ceased the offending conduct without the need for an injunction shortly after the complaint was filed.  *See* 844 F.3d at 1063.  That distinction only reinforces the need to enjoin Perplexity's more inveterate misconduct here.  Perplexity also claims that *Power Ventures I* "is materially different" because it proceeded to summary judgment.  Opp. 14.  Absent is any explanation of **how** that constitutes a material difference, given that preliminary injunctions are typically considered before summary judgment, and, in any event, the materially identical facts in *Power Ventures* warranted a permanent injunction.  *See Power Ventures II*, 749 F. App'x at 557–58.  Perplexity also claims that "Amazon misrepresents the *Power Ventures* court's 'bank' analogy" because the Motion "omits the shotgun" which was carried by the analogy's hypothetical visitor, causing him to lose permission to enter the bank.  Opp. 13–14.  But the point of the analogy is that although the visitor's friend could give him a key to her safe deposit box, the bank where the box was located could still set conditions on the visitor's entrance—such as no shotguns in the bank— just as Facebook could restrict Power Ventures' access to its site even if Facebook users gave it their passwords.  *See Power Ventures I*, 844 F.3d at 1068.  Claiming that the "shotgun is the most important part" of the analogy, Opp. 14, misses the point entirely.  After all, Power Ventures was not trying to force its way into Facebook accounts with a firearm; it was accessing Facebook accounts to send emails inviting people to visit a website.  844 F.3d at 1063.  And just as accessing those accounts despite Facebook's prohibition was done without authorization, so too is entering a bank (armed or otherwise) despite the bank's prohibition, as is sending the Comet AI agent into the Amazon Store despite Amazon's prohibition.

## II.    AMAZON HAS SHOWN IRREPARABLE HARM

There is no dispute that interference with Amazon's control of its computer systems constitutes irreparable injury.  *Compare* Mot. 20 *with* Opp. 20.  Perplexity argues only that its Comet AI agent does not perform the *exact same acts* found to constitute interference in other cases, such as sending the unwanted emails in *Power Ventures* or the unsolicited advertising in *Parsont*.

Opp. 20.  But neither law nor logic suggests that interference is limited to the specific forms it took in the three cases Perplexity cites.  And here is some of what Perplexity admits the Comet AI agent does in the Amazon Store: ███████████████████████████████████████████████████████ ████████████████████████ Yarats Decl. ¶ 15; creates the inaccurate impression that it is a human customer, thereby creating the risk that Amazon's software will overcharge advertisers absent costly repairs by Amazon, Opp. 16–17;[8] and conducts transactions inside the non-public areas of the Amazon Store despite Amazon explicitly barring the deployment of unidentified agents and making technical changes to block the Comet AI agent from entering those areas, Mot. 8–10, Opp. 3–4, 6.[9]  That constitutes "interference" under any understanding of the word.  *See, e.g.*, *Whatsapp Inc. v. NSO Grp. Techs. Ltd*., 2025 WL 2961368, at *5 (N.D. Cal. Oct. 17, 2025) (unauthorized access to customer data interferes with systems where that data was stored, constituting irreparable harm under the CFAA).  The Court should find the irreparable harm requirement satisfied on this basis alone.  *See id.*; *Power Ventures II*, 252 F. Supp. 3d at 782 ("Facebook has suffered irreparable harm" because defendants "interfered with Facebook's right to control access to its own computers and have acquired data to which Defendants have no lawful right in violation of the CFAA and § 502" of the CDAFA.).

---

[8] Perplexity contends that it has no "legal duty" to use the common "user-agent string" that would identify its AI agent as such.  Opp. 18–19.  For purposes of the irreparable harm inquiry, that is irrelevant:  The Assistant's unauthorized, concealed operations in the Amazon Store interfere with Amazon's systems to the same extent regardless of whether the concealment itself forms an additional violation.  But to be clear, Perplexity refuses to identify its agent in the way that more responsible actors do, allowing Perplexity to conceal its AI agent where others operate transparently.  *See* Evans Rebuttal Decl. ¶¶ 41–47.

[9] According to Perplexity, circumventing Amazon's first technical barrier was the unintentional result of a routine update.  Opp. 5–6.  That too is irrelevant for present purposes.  There is no dispute that the Assistant has continued to access the Amazon Store well after Perplexity became aware that Amazon put in place a barrier intended to exclude it.  But—again to be clear—Perplexity's claim of innocence taxes credulity.  Shortly before the Assistant began circumventing the barrier, Perplexity responded to user complaints about the barrier by posting "we're aware of this issue and currently working to resolve it."  Fernandes Decl. ¶ 5.  This Court need not believe that Perplexity accidentally did exactly what it said it was planning to do.  Moreover, on December 5, 2025, Amazon again put in place a technical block on the Comet AI agent's access to the Amazon Store, and expressly informed Perplexity that it had done so.  *See* McLain Rebuttal Decl. Ex. 44. Perplexity again chose to disregard the block.  *See* Fernandes Rebuttal Decl. ¶ 7.

If, however, the Court nonetheless reaches Perplexity's other arguments, it should reject them as well. Perplexity claims, for example, that there is "no evidence that user data is any safer with Amazon than with Perplexity." Opp. 20. That is incorrect. Amazon has outlined its extensive security measures, *see* Mot. 5, which Perplexity does not dispute, and submitted expert analysis explaining the Comet AI agent's publicly documented security vulnerabilities. *See* Fernandes Decl. ¶ 24; Evans Decl. ¶¶ 6–16.[10] It is also the wrong question. Perplexity is not transferring customer data away from Amazon for safekeeping; it is sending copies of the data to a second location, which would increase the risk of exposure even if Perplexity were not particularly vulnerable. *See* Evans Rebuttal Decl. ¶¶ 13–22. Moreover, Perplexity collects private data that its more responsible agentic AI competitors refuse to access in the Amazon Store, even with user permission, to protect users' privacy and security. *Id.* ¶¶ 9–12. That Perplexity claims not to send *some* of that data to its servers, such as full credit card numbers, does not remedy the privacy and security harms. Opp. 21.[11] Perplexity does not deny that it ████████████████████████████████████████████████████████████████████████████████. *Compare* Fernandes Decl. ¶ 24 *with* Yarats Decl. ¶ 15.

It is also no defense for Perplexity to claim that the data "belongs to the users, not Amazon." Opp. 21. That distinction is irrelevant under the CFAA. *Supra* at 5. And it does not negate the risk Perplexity's Comet AI agent poses to Amazon's customer relationships, goodwill, and reputation. As the court explained in *Whatsapp*, a technology company suffers irreparable business and reputational harm when its customers' information is threatened, thus satisfying the

---

[10] That Perplexity criticizes those declarations, Opp. 21, does not render them "no evidence." *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (affirming district court's reliance on contested declarations when issuing preliminary injunction). And although the Court need not reach this question given that Perplexity's interference with Amazon's systems alone constitutes irreparable harm, Perplexity's self-serving criticisms are founded on basic fallacies long rejected by computer security experts. *See* Evans Rebuttal Decl. ¶¶ 23–31.

[11] In yet another attempt to create a melee on an issue the Court need not resolve, Perplexity dramatically describes Amazon's declarations on this point as "false." Opp. 14. In fact, the declarations accurately describe how Comet functioned at the time they were written, and to the extent Comet now functions differently, that is because Perplexity altered it after the Complaint was filed, such as now requiring user approval to complete a purchase, when it did not previously do so. *See* Fernandes Decl. Rebuttal Decl. ¶ 10.

1    requirement for evidence of likely irreparable harm under *Herb Reed Enters., LLC v. Fla. Ent.*

2    *Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). *See* 2025 WL 2961368, at *5.

3         Finally, Perplexity's arguments about Amazon's advertising practices contradict

4    themselves. Perplexity claims to shield Amazon's customers from ads, Opp. 1, 22, but its expert

5    avers that users continue to see Amazon's advertising when using the Comet AI agent. *See*

6    Rucinski Decl. ¶¶ 12–13. Amazon's concern is not that its customers will miss out on advertising,

7    but that its reputation will suffer when customers miss valuable opportunities to find cheaper

8    products, reduce shipping costs, schedule faster delivery, and see recommendations for products

9    they are more likely to want. Mot. 22. Perplexity suggests that any lost sales from these harms can

10   be compensated by money damages, Opp. 22, but offers no explanation as to how the Court could

11   calculate the number of customers who did *not* visit the Amazon Store due to lost goodwill. That

12   is why damage to goodwill and reputation are classic irreparable injuries: They are "difficult to

13   measure." *Abdou v. Davita, Inc.*, 734 F. App'x 506, 506–07 (9th Cir. 2018); *Stuhlbarg Int'l Sales*

14   *Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (that plaintiff "stood to lose its

15   newfound customers and accompanying goodwill and revenue" constituted irreparable harm).

16   **III.    THE BALANCE OF HARDSHIPS SUPPORTS AN INJUNCTION**

17        Amazon's motion established that settled law does not consider enjoining unlawful conduct

18   to impose a hardship on the wrongdoer. Mot. 23 (collecting cases). Perplexity does not disagree

19   with that rule. *See* Opp. 23–24. Thus, if the Court agrees that Perplexity is violating the CFAA or

20   the CDAFA—as it should for the reasons described above—then the Court should disregard

21   Perplexity's claims that it will suffer hardship if barred from trespassing in the Amazon Store. *See*

22   *Power Ventures II*, 252 F. Supp. 3d at 784 (balance of hardships favored "an injunction [that] would

23   simply serve to force Defendants' compliance with the law").

24        Perplexity's hardship claims also fail on their own terms. Perplexity speculates that if its

25   Comet AI agent cannot enter the password-protected sections of the Amazon Store without

26   Amazon's permission, then Comet will likely fail completely. Opp. 2, 23. That depiction of Comet

27   as a one-trick pony—useful only for shopping at Amazon—cannot be squared with Perplexity's

28

-12-

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION – Case No. 3:25-cv-09514

public proclamations that users can "Do anything with Comet," such as build websites, draft emails, analyze current events, and organize information—none of which has anything to do with shopping or the Amazon Store.  McLain Rebuttal Decl. Ex. 43.  Perplexity's description of Amazon's sole hardship as profiting from purchases made through an un-enjoined Comet AI agent is equally divorced from reality.  Perplexity ignores both the real harms to Amazon discussed in the prior section and the high likelihood that if an injunction were issued, the same customers would make their purchases directly, thus protecting Amazon's reputation and goodwill, and avoiding the security and privacy risks imposed by Perplexity's AI agent.

## IV.  THE PUBLIC INTEREST SUPPORTS AN INJUNCTION

Similar to the prior factor, Amazon's Motion established that enjoining unlawful conduct necessarily furthers the public interest.  Mot. 24 (collecting cases).  Perplexity does not contest that rule, instead arguing that it is not breaking the law.  Opp. 23.  Because the facts show otherwise, this factor favors Amazon.  *See Power Ventures II*, 252 F. Supp. 3d at 785 ("The Court also finds that the public interest weighs in favor of an injunction, as courts have consistently held in CFAA cases.  The public has an interest in ensuring that computers are not accessed without authorization.").

In any event, Perplexity's public interest claims would lack merit even if it wasn't breaking the law.  Perplexity opens with the assertion that "Amazon admits it wants to shut Comet down so that its customers cannot use the Assistant to bypass Amazon's advertising and upselling."  Opp. 22.  It's unclear what "admission" Perplexity is referring to.  Amazon does not seek to "shut Comet down," only to prevent its AI agent from entering non-public parts of the Amazon Store.  Nor can Perplexity—a $14 billion enterprise by its own account, Shevelenko Decl. ¶ 41—credibly claim that it will go out of business if its Comet AI agent is barred from unlawfully accessing parts of the Amazon Store.  Perplexity thus gains nothing by citing cases (at Opp. 22) where courts declined to

-13-

1 | issue injunctions against businesses that were likely *not* violating the law,[12] or where injunctions

2 | would have destroyed small enterprises.[13]

3 |      Perplexity also cannot credibly argue that generalized public interests in consumer choice,

4 | competition, and innovation bar injunctive relief. Any business facing an injunction can claim

5 | there will be less of each if it is prevented from providing whatever good or service is at issue, but

6 | injunctions issue nonetheless. *See, e.g.*, *Fiji Water Co., LLC v. Fiji Min. Water USA LLC*, 2010

7 | WL 11526801, at *1 (C.D. Cal. Oct. 19, 2010) (issuing injunction despite defendant's "general

8 | assertions of a broad public interest in competition and a choice of products"). Moreover, the

9 | declaration of Perplexity's chief business officer directly asserts that it has many well-resourced

10 | agentic AI competitors, which contradicts Perplexity's public interest arguments here. *See*

11 | Shevelenko Decl. ¶¶ 36–40.

12 | **V.     THE REQUESTED INJUNCTION IS APPROPRIATELY NARROW**

13 |      Perplexity cannot escape injunctive relief by claiming that Amazon's proposed injunction

14 | is overbroad. From the start, Amazon has made a clear, narrow request: "an injunction that requires

15 | Perplexity to abide by Amazon's decision to exclude the Comet AI agent from accessing non-public

16 | areas of the Amazon Store." Mot. 1. Such an order is "tailored to remedy the specific harm

17 | alleged." *Galvez v. Jaddou*, 52 F.4th 821, 834 (9th Cir. 2022). Amazon is obviously not seeking

18 | an injunction that would "prohibit the Comet Assistant from accessing the entire public Amazon

19 | Store." Opp. 25. With respect to the secondary requests to which Perplexity objects—such as

20 | requiring Perplexity to destroy the data it unlawfully sent to its servers—that "ancillary relief" is

21 | "necessary to provide [Amazon] full and effective relief under the [proposed] injunction." *Xiao v.*

22 | *Reno*, 930 F. Supp. 1377, 1379 (N.D. Cal. 1996). And even if that were not so, the appropriate

23 | remedy would be to withhold only that relief this Court finds unnecessary while imposing the

---

[12] *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993); *Epic Games, Inc. v. Apple Inc.*, 2021 WL 5205487, at *2 (N.D. Cal. Nov. 9, 2021); *CLS Worldwide Servs., LLC v. Cartier Exec. Limo Serv.*, 2006 WL 8563341, at *18 (C.D. Cal. June 15, 2006).

[13] *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 321 (8th Cir. 2009); *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 6837701, at *10 (S.D. Cal. Oct. 7, 2022).

1    clearly appropriate core injunction.  *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,

2    98 F.4th 1180, 1184 (9th Cir. 2024).

3    **VI.      A BOND IS NOT NECESSARY**

4         Perplexity's request for a bond in the outlandish amount of "at least $1 billion," Opp. 25,

5    should be denied.  "Rule 65(c) invests the district court with discretion as to the amount of security

6    required, *if any*."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  Perplexity asserts

7    that its overall value has "increased $5 billion on the strength of Comet," Opp. 25, but provides no

8    evidence that explains why Perplexity's value purportedly increased, much less that at least $1

9    billion of that supposed value derives from the Comet AI agent's ability to access non-public parts

10    of the Amazon Store.  To the contrary, Perplexity's recent press release touting Comet's capabilities

11    made no mention of agentic shopping or the Amazon Store.[14]  Perplexity thus falls far short of

12    demonstrating the need for a bond, much less in the amount it seeks.  *See, e.g.*, *Barahona-Gomez*

13    *v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (affirming district court's decision to require only a

14    nominal bond of $1,000 because "defendants did not tender any evidence on the issue" despite

15    arguing "that its costs . . . were substantial").

16    **VII.     CONCLUSION**

17         Perplexity knows that its agent is unwelcome in the non-public parts of the Amazon Store.

18    It sends it there anyway—even boasting of its purported ability to "intentionally evade[] Amazon's

19    block."  Opp. 6.  It tells this Court that it did not understand the cease-and-desist letter while

20    publicly announcing that it did.  Then it ignores the letter anyway.  ████████████████████████

21    ████████████████████████████████████████████████████████████████████████████████████

22    ████████████████████.  Opp. 14–15.  Strip away these red herrings, and the truth is simple:

23    Perplexity's repeated incursions into private sections of the Amazon Store violate the law and

24    satisfy every preliminary injunction factor.  This Court should issue the requested injunction.

25

26

27

28    ────────────────────────────
     [14] McLain Decl. Ex. 6.

1  Dated: December 10, 2025

HUESTON HENNIGAN LLP

By: _____
Moez M. Kaba
Christine Woodin
Hagan Scotten
Billy Joe McLain

*Attorneys for Plaintiff*
*AMAZON.COM SERVICES LLC*