QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Andrew Schapiro (admitted *Pro Hac Vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

Renita N. Sharma (admitted *Pro Hac Vice*)
renitasharma@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

William Pilon (Bar No. 326487)
williampilon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Defendant Perplexity AI, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>      vs.<br><br>PERPLEXITY AI, INC., a Delaware corporation,<br><br>            Defendant. | Case No. 3:25-cv-09514-MMC<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO AMAZON'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hon. Maxine M. Chesney<br>Courtroom 7<br><br>Hearing Date: February 13, 2026<br>Hearing Time: 9:00 a.m. |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................2

III. ARGUMENT ......................................................................................................................5

 A. Amazon's Buy For Me Program Undermines Its Argument That It Can Demonstrate A Likelihood of Success ......................................................................5

 B. Amazon's Buy For Me Program Undermines Its Arguments About Irreparable Harm ........................................................................................................6

 C. Amazon's Buy For Me Program Undermines Its Arguments That The Balance Of The Equities And The Public Interest Merit An Injunction ....................7

IV. CONCLUSION ..................................................................................................................10

## I.  INTRODUCTION

During the first week of 2026, business journalists broke extraordinary news:  Using agentic artificial intelligence, Amazon is listing for sale on Amazon.com hundreds of thousands of independent retailers' products **without the retailers' knowledge or consent**.  Posner Decl. Ex. A (Financial Times, "Amazon Accused of Listing Products from Independent Shops Without Permission," Jan. 6, 2026); *id.* Ex. B (CNBC, "Amazon's AI Shopping Tool Sparks Backlash from Online Retailers that Didn't Want Websites Scraped," Jan. 6, 2026).  Even more remarkably given Amazon's allegations against Perplexity, Amazon is using an agentic AI tool to visit the retailers' sites and complete purchases on behalf of Amazon customers—all without telling the retailers or the customers that it is doing so.  *Id.* Ex. F (Reddit, "'Buy It For Me' Scam," Nov. 2025).  Upon learning this, Perplexity searched Amazon.com and discovered that Amazon has even listed Perplexity's merchandise—which Perplexity sells exclusively through its official online store—as part of this program, called "Buy for Me."  Modisett Decl. ¶¶ 3-7.

These recent revelations that Amazon is using agentic AI to complete the purchase of products from third-party websites provide additional, independent grounds to deny Amazon's motion for a preliminary injunction.[1]  *First,* Amazon's argument that Perplexity's conduct violates the Computer Fraud and Abuse Act (CFAA), along with California's corollary statute, relies on accusations against Perplexity that more closely describe Amazon's own AI agent, undermining its argument that it is likely to succeed on the merits.  *Second*, Amazon's use of agentic AI to complete transactions on third-party retailer sites demonstrates that Amazon cannot bear its burden of demonstrating that Perplexity's use of agentic AI to complete transactions on Amazon.com will cause Amazon irreparable harm.  And *third*, Amazon's conduct demonstrates that Amazon cannot

---

[1]  The media has noted Amazon's hypocrisy in suing Perplexity for its use of agentic AI on Amazon.com while Amazon is apparently engaging in similar conduct.  The Financial Times, among others, noted that "Amazon has been accused of listing products from independent retailers without their consent, even as the ecommerce giant sues start-up Perplexity over its AI software shopping without permission."  Posner Decl. Ex. A at 2; *see also id.* Ex. B at 4 ("[W]hile investing in its homegrown AI tools, . . . [Amazon] sued Perplexity over an agent in the startup's Comet browser that allows it to make purchases on a user's behalf.").

meet its burden of demonstrating that the balance of the equities and public interest favor the issuance of an equitable injunction:  It is well-settled that "he who comes into equity must come with clean hands."  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  Amazon dirtied its hands through its inequitable use of agentic AI technology against Perplexity (and countless other nonconsenting merchants and customers)—all while seeking to bar Perplexity from deploying its own, much more transparent and limited Comet Assistant.  Amazon's unclean hands provide another, independent basis to deny Amazon's motion.

Perplexity is bringing this conduct to the Court's attention at the earliest opportunity after discovering it.  For all the reasons Perplexity has argued in its prior papers, and now also for the reasons addressed herein, Amazon cannot come close to meeting its heavy burden to show it is entitled to the extraordinary remedy of a preliminary injunction.

## II.     BACKGROUND

In January 2026, news reports revealed that Amazon is listing hundreds of thousands of products sold by independent retailers on its own site without the sellers' consent, using a new agentic-AI driven program called "Buy for Me."  Posner Decl. Ex. A; *id.* Ex. E (ModernRetail, "Brands Are Upset that 'Buy For Me' is Featuring Their Products on Amazon Without Permission," Jan. 6, 2026).  Amazon markets Buy for Me as a feature that allows customers to buy products on Amazon.com "even if we don't sell them in our store."  *Id.* Ex. C (Amazon, "Helping Customers Discover Even More Selection on Amazon," Feb. 11, 2025) at 2.  Buy for Me accesses third-party merchant websites, generates product listings on Amazon.com, and—when an Amazon customer wishes to purchase—deploys an AI agent to "make the purchase from the [third-party] brand retailer's website on their behalf":

> Customers are taken to an Amazon checkout page where they confirm order details, including preferred delivery address, applicable taxes and shipping fees, and payment method.  **Using agentic AI capabilities**, Amazon makes the purchase by securely providing the customer's encrypted name, address, and payment details to complete the checkout process on the brand's website. . . .
> . . . Delivery, returns and exchanges, and customer service are managed by the brand store, and customers can contact the brand store with any questions regarding their order.

*Id.* Ex. D. (Amazon, "Amazon's New 'Buy For Me' Feature Helps Customers Find and Buy Products from Other Brands' Sites," Apr. 3, 2025) at 4 (emphasis added).

Amazon thus allegedly (i) harvests the data of nonconsenting merchants by scraping their websites; (ii) generates corresponding Buy for Me listings, which look like listings for products *actually sold* on Amazon.com; and (iii) utilizes its agentic AI tool to complete purchases for those products on the websites of those nonconsenting merchants. *Id.* Ex. G (PPC Land, "Amazon AI Scraping Project Creates Unauthorized Listings for Small Brands," Jan. 3, 2026). Buy for Me sends orders via placeholder email addresses from the domain "buyforme.amazon," which disguises each customer's identity. *Id.* Ex. B at 3; *id.* Ex. H at 3.

Amazon deployed Buy for Me without notifying affected merchants—and according to press reports, several merchants have complained that Amazon has listed, and completed orders for, products using outdated or inaccurate information. *Id.* Ex. A at 2-4; *id.* Ex. E at 4-5. Merchants have been receiving Buy for Me orders for items they do not sell, that were out of stock, or that Amazon mispriced and mislabeled, causing customers to complain. *Id*. Ex. E at 5. When one retailer received complaints and contacted Amazon, "there was no system set up by Amazon to resolve it," she said. "It's just, 'We set this up for you, you should be grateful, you fix it.'" *Id.* Ex. L (Seattle Times, "Amazon AI Tool Blindsides Merchants By Offering Products Without Their Knowledge," Jan. 12, 2026) at 1, 3.

Amazon's own written materials contemplate that its Buy for Me listings might be inaccurate. For example, Amazon advises that customers must "agree to pay an amount up to $15 more than the estimated total" and that the (nonconsenting) merchant will "calculate[] the final total." *Id.* Ex. J (Amazon, "Shop Other Stores Directly," (Customer FAQ)) at 3. Further, Amazon's Buy for Me terms of use "do not warrant that information displayed in this Service from Brand Sites is wholly accurate, complete, reliable, or up-to-date." *Id.* Ex. K (Amazon, "Terms of Use When You Shop Brand Sites By Directing Amazon to Complete a Purchase on Your Behalf," Apr. 3, 2025) at 1. The terms also disclose that (i) Buy for Me cannot honor discounts provided by the third-party merchants, (ii) Buy for Me does not allow users to use their accounts with such merchants and thereby accrue rewards such as points, and (iii) Amazon claims to act only as the customer's

"agent" rather than as the seller and Amazon "does not hold title to . . . any goods that you order through this Service, at any point." *Id.* Ex. K at 1-2.

Amazon's AI agent has also apparently bypassed access controls on the third-party retailer sites. Merchant Sammy Gorin told a reporter that Amazon's agentic AI accessed her password-protected wholesale portal:

> Gorin sells wholesale **through a password-protected section of her website**, where retailers must submit resale or exemption certificates so orders are properly exempted from sales tax. She said **she was still able to complete a "Buy for Me" purchase of a product pulled from her wholesale site despite never opting into the program**—a scenario that could expose her business to tax liability if individual shoppers were able to place tax-exempt orders. Gorin also worries that surfacing wholesale pricing could undermine profit margins, allow competitors to undercut her prices or bypass minimum order requirements designed to keep wholesale sales viable.
> 
> "*I keep my wholesale pricing hidden from those without approved accounts* to protect my profit margins and the profit margins of my wholesale clients," she said.

*Id.* Ex. E at 5-6 (emphasis added).

Through its Buy for Me program, Amazon is alleged to have damaged these third-party merchants' relationships and reputations. One apparel retailer reported that a wholesaler who "explicitly does not allow its products to be sold on Amazon" contacted her "after discovering its products listed on the marketplace." As a result, she "had to reassure the [wholesaler] that [she] had not intentionally listed the items on Amazon." *Id.* Ex. E at 4. Others who had avoided selling on Amazon for reputational reasons raised similar concerns. *Id.* Ex. E at 3-4. Amazon has likewise confused consumers. One complained that "there is nowhere near enough information to make it clear that Amazon is purchasing something through a third party for you. . . . [N]o customer support, doesn't show up in your order history[.] . . . Their customer support team doesn't even seem to know about it. I am fighting to cancel an order I didn't intend to place because of this." *Id.* Ex. F at 1.

Amazon's Buy for Me program has affected Perplexity too. Perplexity operates an official merchandise store at https://perplexity.supply/. Modisett Decl. ¶ 3. Perplexity has never authorized Amazon to list Perplexity merchandise on Amazon.com, to reproduce the Perplexity logo, or to sell Perplexity products through Buy for Me or any other program. *Id.* ¶¶ 4, 7. Amazon provided no

1  notice to Perplexity about Buy for Me, and Perplexity never consented to participate. *Id.* ¶ 8. When
2  Perplexity discovered its merchandise on Amazon.com in January 2026, Perplexity found that
3  Amazon had reproduced its logo and listed products without authorization:

14 *Id.* ¶ 7.

15 **III.    ARGUMENT**

16    Amazon's newly revealed use of agentic AI to list and purchase merchandise from third-
17 party merchants without their or their customers' knowledge or consent, and while apparently
18 circumventing the merchants' security measures, undermines Amazon's positions on each element
19 it must establish to obtain a preliminary injunction.

20    **A.    Amazon's Buy For Me Program Undermines Its Argument That It Can
21         Demonstrate A Likelihood of Success**

22    As Perplexity explained in its Opposition (ECF 34-3), the Comet Assistant does not violate
23 the CFAA. Amazon argued in conclusory fashion that Perplexity "intentionally accessed" Amazon
24 computers and thereby "obtained information" in violation of the CFAA. Mot. (ECF 4) 12, 14
25 (citations omitted). In response, Perplexity showed that the Comet Assistant runs entirely on end-
26 users' local devices. The Assistant does not "access" Amazon.com because no Perplexity server
27 ever contacts an Amazon server. Nor does it "obtain" anything from Amazon.com: It sends no
28

information from Amazon computers to Perplexity servers and never transmits data such as user passwords or payment information. Opp. 10-11, 14-15.

In other words, Amazon mistakenly attributed to the Comet Assistant the features of its own Buy for Me program, which—presumably operating from Amazon computers—actually *accesses* countless merchants' (including Perplexity's) computers to *obtain* and retrieve information from which Amazon generated product listings on Amazon.com. Further—unlike the Comet Assistant, which requires the user to manually enter or authorize the use of her own credentials when reaching any Amazon password gate, Opp. 8—Amazon's AI agent has apparently accessed and obtained information from third-party merchants *without* those merchants' *authorizations*, allegedly even bypassing a password gate in at least one instance.

Given its own use of agentic AI in manners it alleged (but has not shown) Perplexity uses AI in violation of the CFAA, Amazon cannot credibly maintain any argument that Perplexity has violated the CFAA. Accordingly, the recent revelations of Amazon's Buy for Me program undermine Amazon's attempt to show likely success on the merits of its claims.

**B.     Amazon's Buy For Me Program Undermines Its Arguments About Irreparable Harm**

Amazon argued, without providing any evidence, that Perplexity's Comet Assistant "degrad[es] Amazon customers' shopping experience" because it "prevents Amazon from managing how customers access the Amazon Store and, therefore, prevents Amazon from ensuring the quality of those customers' Amazon shopping experience." Mot. 22. But Amazon is doing the same thing to Perplexity and countless other retailers. And Amazon has admitted as much, stating that when using Buy for Me, "[c]ustomers are taken *to an Amazon checkout page* where they confirm order details [before] . . . [u]sing agentic AI capabilities, Amazon makes the purchase by securely providing the customer's encrypted name, address, and payment details to complete the checkout process on the brand's website." Posner Decl. Ex. D at 4 (emphasis added). Put another way, Buy For Me prevents customers from accessing those third-party merchants' (including Perplexity's) websites directly, which "prevents [those merchants] from managing how customers access the[ir] Store[s]." Mot. 22. Thus, when applied to those third-party merchants, Amazon does not believe

the use of agentic AI constitutes harm (irreparable or otherwise).  Instead, Amazon claims they should welcome Buy for Me because it "uses agentic AI to help customers seamlessly purchase from other brands within the familiar Amazon Shopping app, while also giving brands increased exposure and seamless conversion."  Posner Decl. Ex. D at 3; *see id.* Ex. L at 3 (reporting that Amazon's attitude toward retailer was, "We set this up for you, you should be grateful, you fix it.").

Amazon cannot credibly assert, let alone prove, that Perplexity is causing it "irreparable harm" by using agentic AI on its website to facilitate product purchases when Amazon is doing the same thing (albeit deceptively) to countless third-party retailers—and maintaining that they should welcome it.

### C. Amazon's Buy For Me Program Undermines Its Arguments That The Balance Of The Equities And The Public Interest Merit An Injunction

The balance of equities and public interest already weighed against Amazon; these new revelations only further tip the scale against granting an injunction.  Amazon, as it turns out, is using the same technology it complains about in this lawsuit against small businesses across the country, flooding them with erroneous orders, bypassing their access controls, and disclaiming responsibility for the resulting chaos.  Granting Amazon an injunction under these circumstances would reward inequitable conduct and excuse Amazon's unclean hands.

A plaintiff seeking equity "must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Prasad v. CJ Inv. Servs., Inc.*, No. 23-cv-6532, 2024 WL 3646954, at *4 (N.D. Cal. Aug. 1, 2024) (citations omitted) (denying preliminary injunction based on the plaintiff's unclean hands).  "[U]nclean hands may militate against issuing an injunction that otherwise meets *Winter*'s requirements." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 947 (9th Cir. 2013) (discussing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  A plaintiff acts with unclean hands when (1) "the plaintiff's conduct is inequitable;" and (2) "the conduct relates to the subject matter of [the plaintiff's] claims." *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016) (alteration in original) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)).  Amazon's conduct here meets both requirements.

***First***, Amazon has acted inequitably.  To satisfy this element, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct" is "sufficient cause for the invocation of the [unclean hands] maxim." *Precision Instrument*, 324 U.S. at 815; *see id.* (stating that defendant "need not" show that plaintiff's "misconduct" would "be punishable as a crime or [would] justify legal proceedings of any character"); *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 728 F. Supp. 3d 1034, 1046 (N.D. Cal. 2024) (stating that "the party against whom unclean hands is enforced need not have acted unlawfully").  Here, Amazon, the world's largest marketplace and online retailer, "transgress[ed] equitable standards of conduct" by (i) generating misleading or erroneous product listings for unsuspecting small businesses; (ii) reproducing trademarks without authorization; (iii) allegedly using agentic AI to bypass password-protected systems; (iv) routing customer communications through masked email addresses that sever relationships between merchants and their customers; (v) misleading customers about the nature of their transactions; and (vi) disclaiming all responsibility for accuracy, fulfillment, and customer service while leaving merchants to bear the consequences.  *Precision Instrument*, 324 U.S. at 815; *see* Posner Decl. Exs. G, H, K.  Moreover, Amazon did this while claiming that Perplexity's more limited use of agentic AI was so egregious as to necessitate extraordinary emergency relief.

Moreover, Amazon has directed this conduct at Perplexity itself.  Without notice or authorization, Amazon listed Perplexity merchandise on Amazon.com and reproduced Perplexity's logo in doing so.  Modisett Decl. ¶¶ 7-8.  Unlike the Comet Assistant, which uses a specific, identifiable user's log-in credentials—***with their authorization and at their instruction***—to complete purchases through Amazon, Amazon's masked email system prevents Perplexity from identifying any customers who buy Perplexity items using Buy for Me and from establishing ongoing relationships with them.  Posner Decl. Ex. I (Amazon, "Shop Other Stores Directly," (Merchant FAQ)) at 2.  And of course, most brazenly, Amazon sued Perplexity while deploying Buy for Me against Perplexity's own products.

Amazon's Buy for Me program has disrupted the commercial relationships between countless independent merchants and their customers by injecting misleading and erroneous information into listings, using false e-mail addresses to limit the ability of merchants to contact

customers, and pushing responsibility for fixing any mistakes generated by Buy for Me onto the nonconsenting retailers and customers. *Id.* Ex. I at 2; *id.* Ex. L at 1, 3. Amazon admits that its Buy for Me listings may be inaccurate and may interfere with merchant communications. *Id.* Ex. K at 1 (terms stating that Amazon does "not warrant that information displayed in this Service from Brand Sites is wholly accurate, complete, reliable, or up-to-date"); *id.* Ex. I at 2 (Amazon FAQ stating that Amazon's buyforme.amazon email system "may reduce duplicative promotional emails to reduce customer frustration"). Buy for Me also misrepresents to consumers that independent merchants "associat[e] with and endorse[]" Amazon.com. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997) (stating that Lanham Act prohibits "the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person"); *see* Posner Decl. Ex. F at 1 ("[T]here is nowhere near enough information to make it clear that Amazon is purchasing something through a third party for you."). At least two complaining merchants noted that they did not sell on Amazon specifically because they did not want their brands to be associated with Amazon. Posner Decl. Ex. E at 3-4.

In addition, Amazon may be violating the CFAA by hacking into password-protected websites using its own agentic AI tool. Ms. Gorin, the wholesaler discussed in Section II, said she uses a password gate on her website to hide wholesale pricing from people without approved accounts. Yet she was "still able to complete a 'Buy for Me' purchase of a product pulled from her wholesale site despite never opting into the program—a scenario that could expose her business to tax liability . . . and undermine profit margins." Posner Decl. Ex. E at 5-6. This conduct is far likelier to implicate the CFAA, an "anti-hacking statute," Opp. 8, than any alleged actions Amazon attributes to Perplexity. As Perplexity has explained, Perplexity does not violate the CFAA. *See* Opp. 7-19. Amazon has not argued (and could not argue) that the Comet Assistant (i) performs actions that would be objectionable if carried out by Comet users directly, (ii) accessed any Amazon account without authorization from the account holder, or (iii) facilitated the purchase of any item unavailable to the general public. Amazon's AI agent, by contrast, is alleged to carry out actions, such as obtaining password-protected wholesale pricing without an approved account, that the website owner *would* prohibit even if a human carried it out.

***Second***, Amazon's conduct "relates to the subject matter of [its] claims." *POM Wonderful*, 166 F. Supp. 3d at 1092 (citation omitted).  Through the Buy for Me program, Amazon is widely deploying agentic AI—the very technology at issue in this lawsuit—to allow its users to purchase goods through third-party websites without needing to access those sites directly.  Indeed, the Buy for Me revelations show that Amazon's conduct mirrors its (false) allegations against Perplexity—but worse.  Amazon uses an agentic AI shopper to access third-party websites without authorization from either the shopper or the merchant and is alleged to bypass password-protected systems to access information merchants sought to hide from the public.  The agent disguises the customer's identity, routing all communications through masked email addresses.  *Cf.* Mot. 20 (misleadingly accusing Perplexity of disguising Comet browser).  Moreover, as explained above, Amazon's customers have complained to merchants, to Amazon, and to news reporters about the harms they have suffered.

Accordingly, the recent revelations about Amazon's Buy for Me program satisfy the requirements of unclean hands, and thus present an independent bar to Amazon's request for injunctive relief against Perplexity.

## IV.     CONCLUSION

For the reasons above and as set forth in Perplexity's Opposition (ECF 34-3) and other submissions, the Court should deny Amazon's motion for a preliminary injunction (ECF 4).

DATED:  January 15, 2026                    QUINN EMANUEL URQUHART &
                                                                        SULLIVAN, LLP


By  */s/ Daniel C. Posner*
    Daniel C. Posner
    *Attorneys for Defendant Perplexity AI, Inc.*