**HUESTON HENNIGAN LLP**
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Christine Woodin (SBN 295023)
cwoodin@hueston.com
Hagan Scotten (admitted *Pro Hac Vice*)
hscotten@hueston.com
Billy Joe McLain (SBN 290682)
bmclain@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:25-cv-09514-MMC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF AMAZON'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

III. ARGUMENT ....................................................................................................... 4

  A.   Buy for Me Models the Behavior Amazon Seeks from Perplexity ..................... 4

     1.   Buy for Me transparently identifies itself; Comet does not. ............................. 4

     2.   Buy for Me accesses only public portions of websites; Comet does not. ........................ 5

     3.   Buy for Me respects other merchants' access restrictions; Comet does not. .................. 6

  B.   Amazon is Likely to Succeed on the Merits ....................................................... 6

  C.   Amazon Continues to Be Irreparably Harmed ................................................... 8

  D.   Amazon is Entitled to Equitable Relief .............................................................. 8

IV.  CONCLUSION ................................................................................................... 10

1

## I.    INTRODUCTION

2          The undisputed facts in this case establish that Amazon is entitled to injunctive relief:

3   Perplexity's Comet AI agent is programmed to enter the Amazon Store's password-protected areas,

4   despite repeated notice that such access is unauthorized and unlawful.  Perplexity's supplemental

5   brief does not dispute these basic facts regarding *Perplexity's* conduct.  Instead, Perplexity tries to

6   divert the Court's attention away from Comet to *Amazon's* Buy for Me feature.  But that comparison

7   underscores why injunctive relief is warranted.  As the Schermerhorn declaration demonstrates,

8   Amazon's Buy for Me feature operates exactly as Perplexity's Comet AI agent should—

9   transparently and respecting opt-out requests, technological restrictions, and blocks.  If Perplexity

10   believes Comet should be held to the same standard as Buy for Me, Amazon emphatically agrees.

11         **Amazon will succeed on the merits.**  Perplexity illogically claims that Amazon's

12   likelihood of establishing *Perplexity's* violations of the CFAA and CDAFA are diminished by

13   *Amazon's* alleged computer trespassing.  Suppl. Br. at 5–6.  But a trespasser cannot escape liability

14   by (baselessly) claiming he once saw the property owner trespassing too.  Moreover, unlike the

15   Comet AI agent, Buy for Me does not violate any computer trespassing laws because, among other

16   things, it operates *solely* on public parts of websites.  The undisputed facts establishing Perplexity's

17   unlawful trespassing are unchanged by Amazon's (lawful) activity on other merchants' websites.

18         **Amazon has been irreparably harmed.**  Perplexity argues that Amazon "cannot credibly

19   assert . . . that Perplexity is causing it 'irreparable harm' by using agentic AI . . . when Amazon is

20   doing the same thing[.]"  *Id.* at 7.  But Perplexity's generalization ignores Amazon's allegations of

21   specific harms and the key differences between Buy for Me and Comet.  Perplexity causes Amazon

22   irreparable harm not simply by "using agentic AI," but by interfering with Amazon's control of its

23   *private* computer systems.  And unlike Perplexity—which persistently refuses to identify its Comet

24   AI agent or respect Amazon's directives to stop—Amazon operates Buy for Me transparently and

25   respects opt-out requests from merchants who do not want Amazon to access their public stores.

26         **Amazon deserves equitable relief.**  Perplexity argues that Amazon should be barred from

27   injunctive relief under the unclean hands doctrine because Amazon itself has agentic AI technology.

28

1    *Id.* at 7–10.  But, again, the problem here is not that Perplexity offers agentic AI but rather that its

2    agentic AI operates unlawfully.   In Perplexity's misguided search for a "gotcha" moment,

3    Perplexity parrots unverified, hearsay reports that badly mischaracterize the way Buy for Me

4    *actually* operates.  Perplexity's claims about Buy for Me's conduct are false: Amazon respects

5    merchant opt-out preferences, does not access password-protected areas, and operates

6    transparently.  Perplexity has failed to prove Amazon engaged in *any* inequitable conduct, much

7    less with clear and convincing evidence.  *See Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359

8    (9th Cir. 1982) (unclean hands unavailable where no showing of "wrongfulness, willfulness, bad

9    faith, or gross negligence . . . by clear and convincing evidence").

10        Despite Perplexity's numerous attempts to misdirect the Court with extraneous briefing, *see*

11    Dkts. 44, 54, 60, Perplexity is unable to change the bottom line: Perplexity continuously trespasses

12    into private, password-protected areas of the Amazon Store despite Amazon's repeated demands

13    to stop.  This Court should issue the requested injunction and halt Perplexity's unlawful intrusions.

14   **II.    BACKGROUND**

15        The parties' prior briefing describes how Perplexity's Comet AI agent operates, and there

16    is little dispute on the basics.  Compl. ¶¶ 32–35; Mot. at 8–11, Opp. at 2–6.  But not all agentic AI

17    tools are the same, and Amazon's Buy for Me feature operates differently.  Unlike Comet's AI

18    agent, Buy for Me is not an agentic web browser.  Launched in April 2025, Buy for Me is a feature

19    that enables customers shopping in the Amazon Store to also purchase products from public, third-

20    party websites, operating transparently to both merchants and customers.[1]  Key facts include:

21    - Buy for Me only displays items listed on public webpages (i.e., not password-protected
22      webpages).  Schermerhorn Decl. ¶¶ 6, 25.

23    - Buy for Me respects website owners' access restrictions, including by offering a
      dedicated email address for merchants to opt out.  *Id.* ¶¶ 18–19.

24

25

---

26    [1] Perplexity claims that "newly discovered information" about "Amazon's 'Buy for Me' feature"
     compelled the filing of their brief, but Buy for Me was in operation for more than half a year before
27    this suit began.  And much of the "newly discovered information" in the supplemental brief was
     published well before Perplexity filed its opposition brief.  *Compare* Opp. (filed Nov. 25, 2025),
28    *with* Dkt. 60-6 Ex. D (published Apr. 3, 2025), *and* Dkt. 60-8, Ex. F (dated Nov. 10, 2025).

- Buy for Me does not circumvent authentication processes (such as CAPTCHA) or use user credentials to enter password-protected portions of websites.[2] *Id.* ¶¶ 14, 23, 27, 29.

- Buy for Me identifies itself on other websites using a user-agent string and only completes transactions from third-party merchants' public webpages. *Id.* ¶¶ 12, 23, 27.

- Amazon keeps records of merchants' removals to prevent reappearance. *Id.* ¶ 19.

As is apparent from these basic facts, Buy for Me and Comet AI are not remotely the same:

|  | Buy for Me | Comet |
|---|---|---|
| Identify itself as an AI agent through user-agent string | Yes | No |
| Only access public portions of websites | Yes | No |
| Respect website owners' request to opt out | Yes | No |

Comet and Buy for Me also perform very different functions. Comet is designed to perform a variety of agentic tasks on the web (e.g., writing emails), *see* Dkt. 40-3, Ex. 43, while Buy for Me serves a narrow purpose: to broaden the selection of products available to customers while shopping on Amazon, Schermerhorn Decl. ¶¶ 3–4. This allows Amazon's customers to find what they are looking for in a single, familiar experience. *Id.* ¶ 4. Third-party products are listed through an automated process called "crawling," whereby Amazon visits *public* websites to gather product information.[3] *Id.* ¶ 6. Amazon then conducts a real-time refresh of the product's availability and price when a customer clicks the listing and visits the full detail page for the product. *Id.* ¶ 7.

When Buy for Me places an order with a third-party merchant, the order is placed using an "@buyforme.amazon" email address, which tells the merchant that an Amazon AI agent placed the order on behalf of a customer. *Id.* ¶ 15. For each order, Amazon also transmits the customer's name, shipping address, and payment information to the third-party merchant through a process that has passed multiple security audits. *Id.* If a merchant does not know what Buy for Me is, searching for "buyforme.amazon" on the web or typing it into a browser's URL field takes the merchant to Amazon's public FAQ page. *Id.* ¶ 16. Amazon's FAQ page explains what Buy for Me is and links directly to instructions for opting out. Dkt. 60-12, Ex. J.

---

[2] Buy for Me does not have the capability to use or create user credentials for third-party websites. Schermerhorn Decl. ¶ 29.

[3] It is standard industry practice to use a file called "robots.txt" that provides certain code instructions regarding which parts of a website may be crawled. Schermerhorn Decl. ¶ 13. Amazon reads and respects robots.txt code crawling instructions. *Id.*

1    **III.    ARGUMENT**

2        Amazon's seeks to have Perplexity cease its unauthorized access to password-protected

3    areas of the Amazon Store.  If Perplexity abided by legal requirements like Buy for Me does,

4    Amazon would not have had to bring this suit.  Namely, Perplexity does not: (1) provide transparent

5    identification when Comet is operating; (2) limit Comet's access to only public, non-password-

6    protected portions of the Amazon Store; or (3) respect Amazon's lawful restrictions on agentic AI

7    tools.  By contrast, Buy for Me operates transparently, only accesses public websites, and respects

8    merchant restrictions and opt-outs.  Buy for Me therefore does not undermine Amazon's motion.

9    It strengthens it and demonstrates how an AI shopping agent can operate responsibly.

10        **A.    Buy for Me Models the Behavior Amazon Seeks from Perplexity**

11            1.    <u>Buy for Me transparently identifies itself; Comet does not.</u>

12        *Transparent identification.* Amazon operates the Buy for Me experience transparently by

13    identifying itself when visiting other websites.  First, like other companies offering agentic AI—

14    and as is considered "responsible practice" on the web for distinguishing actions taken by AI agents

15    from humans, Mot. at 9—Buy for Me identifies itself as an AI agent through a "user-agent" string

16    on third-party websites, Schermerhorn Decl. ¶ 12; Dkt. 40-1, Evans Rebut. Decl. ¶¶ 43–44.  Comet

17    does not identify itself as an AI agent to other websites; instead, it "impersonate[s]" the Chrome

18    browser and "masquerade[s]" as a human user.  Dkt. 40-1, Evans Rebut. Decl. ¶¶ 40–46.

19        Further, Buy for Me uses an "@buyforme.amazon" email so that merchants know it placed

20    the order.  Schermerhorn Decl. ¶ 15.  Amazon then relays all emails to the Amazon customer, who

21    can respond directly to the merchant.  *Id.*  Aside from the "@buyforme.amazon" email, Amazon

22    securely transmits to the merchant the customer's name, shipping address, and payment

23    information. *Id.*  Thus, Perplexity's unsupported assertion that Amazon "disguises each customer's

24    identity" is false.  Suppl. Br. at 3.  Moreover, when merchants search for "buyforme.amazon" on

25    the web or type it into their browser, they will be directed to Amazon's public FAQ page which

26    explains what Buy for Me is and directly links to instructions for opting out.  Schermerhorn Decl.

27    ¶ 16; Dkt. 60-12, Ex. J.  Because Comet impersonates the Chrome browser and does not otherwise

28

1  identify itself with a Comet email address; merchants, including Amazon, do not know that Comet

2  placed the order instead of an actual user.

3      *Respect for instructions.*  Buy for Me respects other websites' instructions for how computer

4  programs should behave on their sites.  If a merchant's robots.txt file requests that the parts of the

5  website containing product information not be crawled, Buy for Me follows those instructions.

6  Schermerhorn Decl. ¶ 13.  Further, if a merchant requires a CAPTCHA—a test designed to

7  distinguish computers from humans—Buy for Me does not complete the CAPTCHA and instead

8  halts operations.  *Id.* ¶ 14.  In contrast, Comet has repeatedly evaded Amazon's technical blocks.

9  *See* Reply at 10 n.9.

10                    2.    Buy for Me accesses only public portions of websites; Comet does not.

11      The Comet AI agent continues to access password-protected portions of the Amazon Store

12  despite repeated notices of no authorization.  Mot. 6–11.  Buy for Me, on the other hand (and like

13  other companies in the industry with AI agents), does not circumvent authentication or use anyone's

14  credentials to secure access to password-protected portions of a website in excess of the website

15  owner's authorization.  Schermerhorn Decl. ¶ 29; Dkt. 40-1, Evans Rebut. Decl. ¶ 12 (Microsoft's

16  Copilot AI agent responding "I don't have the ability to log in to websites or view your private

17  account information" when asked to access password-protected Amazon customer accounts).

18      Referencing a single anecdote, from merchant Sammy Gorin Art, Perplexity alleges that

19  Buy for Me accessed a password-protected website.  *See* Suppl. Br. at 4.  That is false.  Buy for Me

20  did not access any password-protected areas of Sammy Gorin Art's website.  *Compare id.*, *with*

21  Schermerhorn Decl. ¶¶ 24–27.  Although that website had some password-protected webpages, the

22  full product catalog, including wholesale products, was housed on different, *public* webpages.

23  Schermerhorn Decl. ¶ 26; *see also id.* Ex. 3.  Amazon accessed only those public webpages.  *Id.* ¶

24  26.  And even though it was accessing only public webpages, when Sammy Gorin Art requested

25  to opt out of Buy for Me, Amazon removed the merchant's products from Buy for Me, consistent

26  with all opt out notices received.  *Id.* ¶ 28.  This is a stark contrast to Comet's continuing—and

27  indeed expressly revoked—access to password protected areas of the Amazon Store.

28

3.      Buy for Me respects other merchants' access restrictions; Comet does not.

Amazon respects merchants' choices about participation in Buy for Me.  *Id.* ¶ 18. Merchants who seek to opt out of Buy for Me simply email branddirect@amazon.com, *id.* ¶ 19; Dkt. No. 60-11, Ex. I, and Amazon responds to these opt-out requests within two business days, Schermerhorn Decl. ¶ 19.  Perplexity's own briefing confirms this fact, describing numerous examples of merchants successfully opting out of Buy for Me.[4]  *See, e.g.*, Dkt. 60-4, Ex. B (reporting that merchant opted out of Buy for Me using "Amazon's instructions in an FAQ" and "listings were taken down within a few days"); Dkt. 60-14, Ex. L (merchant "asked Amazon to take [her pieces] down" and products were removed within two business days).

Amazon respects Perplexity's preferences as a merchant.  Perplexity claims that "Amazon listed Perplexity merchandise on Amazon.com" without its authorization.  Suppl. Br. at 8. However, Amazon did not need authorization to collect product data from Perplexity's public website.  *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F. 4th 1180, 1199 (9th Cir. 2022) ("the concept of 'without authorization' does not apply to public websites" that lack access limitations); Schermerhorn Decl. ¶ 20.  Further, Perplexity's robots.txt file did not contain any industry-accepted instructions barring automated crawling.[5]  *Id.* ¶ 20; *id.* Ex. 1 (April 2025 Perplexity robots.txt file). In fact, to date, Perplexity has not contacted branddirect@amazon.com to opt out.  *Id.* ¶ 21. Nevertheless, once Amazon learned about Perplexity's (surprising) preference through its briefing, Amazon removed Perplexity's products from the Buy for Me experience.  *Id.*

**B.     Amazon is Likely to Succeed on the Merits**

The undisputed facts still show that Amazon is likely to succeed on the merits of its CFAA and CDAFA claims.  Perplexity regurgitates the same arguments from its opposition, claiming that the Comet AI agent does not "access" Amazon's servers or "obtain" information "without

[4] Perplexity references a merchant, Bobo Design, who requested to opt out of Buy for Me but continued to see incomplete listings. *See* Dkt. 60-7, Ex. E.  However, *all* of Bobo Design's products were fully removed within two business days and no remnant listings remained.  *Id.* ¶ 22.
[5] Perplexity appears to have recently included its robots.txt file to include a plain English comment: "Checkouts are for humans."  Schermerhorn Decl. Ex. 2.  Ironically, Perplexity argues in this case that its AI agent should be allowed to do as it wishes on any website it wishes, Opp. at 2; *see also* Dkt. 40-3, Ex. 42, but Perplexity seeks to impose restrictions on its own website.  Nevertheless, Amazon respects Perplexity's restrictions and has ceased accessing Perplexity's store.

authorization." Suppl. Br. at 5–6 (citing Opp. at 10–11, 14–15). Even if Perplexity's allegations regarding Buy for Me had merit, there is no reason why Amazon's use of agentic AI has any bearing on Amazon's claims, which turn on *Perplexity's* use of agentic AI. Perplexity does not cite any case law for its argument that Amazon's likelihood of success is impacted in any way because of Amazon's use of agentic AI—nor can it. The undisputed facts showing Perplexity's (illegal) intrusions into the Amazon Store are unchanged by Amazon's (legal) activity on other merchants' websites. Perplexity's arguments should be rejected both procedurally[6] and substantively.

*Perplexity intentionally accesses Amazon.com.* Perplexity again claims that the Comet AI agent "does not 'access' Amazon.com" because it "runs entirely on end-users' local devices." *Id.* at 5. But Perplexity also concedes that Perplexity's servers *directly* access the Amazon Store, including when Comet "requires contextual information to perform a[n] action." Dkt. 35-2, Yarats Decl. ¶ 15. Indeed the "Comet AI Assistant is fully dependent on Perplexity's servers to operate" and "is unable to perform any actions" "when network access to Perplexity's servers is blocked." Dkt. 40-1, Evans Rebut. Decl. ¶ 13.

*Perplexity obtains information from Amazon.com.* Perplexity repeats its argument that "[i]t sends no information from Amazon computers to Perplexity servers and never transmits . . . user passwords or payment information." Suppl. Br. at 6. But the undisputed facts prove this assertion to be false. Yarats admits so, Dkt. 35-2, Yarats Decl. ¶ 15, and Evans's independent tests confirm that the Comet AI agent transmits a host of Amazon's information to Perplexity's servers—all without user authorization, Dkt. 40-1, Evans Rebut. Decl. ¶¶ 9–10.

Lastly, Perplexity asserts in a conclusory sentence that Amazon's use of agentic AI means "Amazon cannot credibly maintain any argument that Perplexity has violated the CFAA." Suppl. Br. at 6. But as already explained, Buy for Me does not access password-protected webpages and respects merchants' requests to opt out. *See hiQ*, 31 F. 4th at 1199. Buy for Me does not operate like Comet's AI agent, which continues to access password-protected areas of the Amazon Store, evade technical blocks, and ignore repeated direct requests to stop. *See* Mot. at 7–11, Reply at 10

---

[6] Perplexity's repetitive arguments should be ignored as they go beyond "newly discovered information" about "Amazon's 'Buy for Me' feature." Dkt. 59, Joint Stipulation at 2.

n.9; *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1268 (N.D. Cal. 2022) (holding access to "password-protected areas" of plaintiff's website violated CFAA and CDAFA).

## C.    Amazon Continues to Be Irreparably Harmed

Contrary to Perplexity's suggestion, Amazon's Buy for Me reinforces—rather than lessens—Amazon's arguments for irreparable harm.  Amazon has identified multiple categories of irreparable harm caused by Perplexity's conduct.  First, Perplexity's interference with Amazon's "right to control access to its own computers," standing alone, "constitutes irreparable harm."  Mot. at 20 (citing *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017), *aff'd*, 749 App'x 557 (9th Cir. 2019)); *see also Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1296 (S.D. Fla. 2020) ("[F]ederal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable [harm]").  Amazon's operation of Buy for Me changes nothing about Perplexity's unauthorized access.

Second, there is no question that the "[l]oss of control over business reputation and damage to goodwill can constitute irreparable harm."  Mot. at 21 (quoting *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018)).  Perplexity claims that Amazon cannot assert that "using agentic AI" causes irreparable harm "when Amazon is doing the same thing." Suppl. Br. at 7.  But Perplexity misses the point. Amazon has made it straightforward for merchants to opt out of Buy for Me whereas there is ***no ability to opt out of Comet***.  Merchants who like Buy for Me can (and do) participate.  Schermerhorn Decl. ¶ 19.  And merchants who do not like Buy for Me can (and do) simply opt out.  *Id.*; Dkt. 60-11, Ex. I; Dkt. 60-4, Ex. B (Bobo Design opting out); Dkt. 60-14, Ex. L (jewelry artist opting out).  Thus, Buy for Me merchants maintain full "control over [their] business reputation and . . . goodwill."  *adidas Am., Inc.*, 890 F.3d at 756.  In contrast, Amazon continues to suffer irreparable harm because Perplexity refuses to respect Amazon's restriction that the Comet AI agent not access Amazon's password-protected Store.

## D.    Amazon is Entitled to Equitable Relief

The balance of equities and public interest still weigh in Amazon's favor.  "[T]he unclean hands doctrine requires that the plaintiff have dirtied [his hands] in acquiring the right he now

1    asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the

2    defendant." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 947 (9th

3    Cir. 2013) (quotation marks omitted).  Neither is true here.

4    Amazon has not dirtied its hands in acquiring the right it now asserts.  The right to control

5    access to the password-protected pages of the Amazon Store are provided "automatically" by the

6    CFAA and CDAFA.  *Id.* (reversing district court and restoring preliminary injunction protecting

7    plaintiff's rights where plaintiff "has done nothing to acquire the rights . . .; they flow automatically

8    from customary international law and treaties").  Nor would it be inequitable to stop Perplexity

9    from intruding into the password-protected portions of the Amazon Store because of Amazon's

10   separate Buy for Me feature.  In fact, Buy for Me models the standards of equitable conduct that

11   Amazon is seeking from Perplexity—an AI agent that operates transparently, with respect for

12   technological restrictions and merchant preferences, and only within public portions of websites.

13   Perplexity's hearsay allegations do not meet the "clear and convincing" evidentiary burden

14   required by the unclean hands doctrine.   Perplexity argues that Amazon "transgress[ed] equitable

15   standards of conduct," based solely on myriad inaccurate hearsay allegations.  Suppl. Br. at 8.  But

16   "only a showing of wrongfulness, willfulness, bad faith, or gross negligence, *proved by clear and*

17   *convincing evidence*, will establish sufficient culpability for invocation of the doctrine of unclean

18   hands."  *Pfizer, Inc.*, 685 F.2d at 359 (emphasis added) (affirming district court's rejection of

19   unclean hands argument).  None of Perplexity's speculative hearsay allegations, based almost

20   exclusively on news articles, meet that high evidentiary standard.  *See* Opp. at 21 n.11 (quoting

21   *Musk v. OpenAI, Inc.*, 769 F. Supp. 3d 1017, 1026 (N.D. Cal. 2025) ("Newspaper articles are classic

22   hearsay . . .  the Court here affords the articles little weight.")).  By contrast, Amazon has submitted

23   a sworn declaration from the employee who oversees Buy for Me and has direct personal

24   knowledge of its operations.  *See* Schermerhorn Decl.  That credible, competent evidence should

25   be afforded far greater weight than Perplexity's hearsay allegations.

26   Moreover, Perplexity's allegations are false.  Buy for Me's product listings are pulled

27   directly from merchants' websites and reflect real-time pricing and availability.  *Id.* ¶¶ 6–7.  The

28

1  Buy for Me program has never accessed any password-protected webpages. *Id.* ¶¶ 6, 23. And

2  merchants can opt out of Buy for Me at any time and maintain control of their businesses. *Id.* ¶¶

3  18–19, 21. In sum, Perplexity has failed to prove Amazon has engaged in *any* inequitable conduct,

4  much less with clear and convincing evidence.

5       As a final irrelevant distraction, Perplexity vaguely gestures at some sort of trademark

6  infringement allegation on behalf of others. Suppl. Br. at 8; Dkt. 60-7, Ex. E at 5. But to show that

7  Amazon has unclean hands, Perplexity's claims must "relate[] to the subject matter of [Amazon's]

8  claims.'" Suppl. Br. at 10 (citation omitted); *see also Pom Wonderful LLC v. Welch Foods, Inc.*,

9  737 F. Supp. 2d 1105, 1109 (C.D. Cal. 2010) (unclean hands is "a valid defense only if it relates

10  . . . to the subject matter in litigation" and "is not a search warrant . . . to probe into all the possible

11  types of inequitable conduct ever engaged in by the plaintiff"). Simply put, Amazon is not asserting

12  any trademark claims against Perplexity in this lawsuit, and Perplexity's (invalid) trademark

13  allegations[7] are not related to the legal claims in this case. Perplexity's unclean hands defense

14  should be denied. *See Pom Wonderful*, 737 F. Supp. 2d at 1109 (denying unclean hands defense).

15  **IV.   CONCLUSION**

16       As explained in Amazon's Complaint, this is not a case about stifling innovation or a global

17  objection to agentic AI shopping tools: it is a case about unauthorized access and trespass. Amazon

18  seeks only to require "Perplexity to abide by Amazon's decision to exclude the Comet AI agent

19  from accessing non-public areas of the Amazon Store." Mot. at 1. Amazon has spent months

20  making such requests in many ways, imploring Perplexity to abide by that simple legal requirement.

21  Perplexity has no legitimate justification for refusing to do so. And Amazon's Buy for Me program

22  shows exactly how Perplexity can comply with the law. The Buy for Me agent only accesses the

23  public portions of merchant websites and follows responsible industry practices by transparently

24  identifying itself when on other merchants' websites and respecting merchants' preferences. This

25  Court should compel the Comet AI agent to do the same.

26  

27  ———————————
[7] Perplexity's trademark claims also have no merit. There is no risk of consumer confusion,
Amazon clearly states that the product is from an independent, third-party merchant. Schermerhorn

28  Decl. ¶¶ 8–10; *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053
(9th Cir. 1999) ("[Th]e core element of trademark infringement is the likelihood of confusion[.]").

-10-

1

2    Dated:  January 26, 2026                    HUESTON HENNIGAN LLP

3

4                                                By: _____
                                                     Moez M. Kaba
5                                                    Christine Woodin
                                                     Hagan Scotten
6                                                    Billy Joe McLain

7                                                *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-