**HUESTON HENNIGAN LLP**
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Christine Woodin (SBN 295023)
cwoodin@hueston.com
Hagan Scotten (admitted *Pro Hac Vice*)
hscotten@hueston.com
Billy Joe McLain (SBN 290682)
bmclain@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825


Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443 3000
Facsimile:    (213) 443 3100

Andrew Schapiro (admitted *Pro Hac Vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone:    (312) 705 7400
Facsimile:    (312) 705 7401

Renita N. Sharma (admitted *Pro Hac Vice*)
renitasharma@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Attorneys for Defendant Perplexity AI, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> PERPLEXITY AI, INC., a Delaware corporation, <br><br> Defendant. | Case Number: 3:25-cv-09514-MMC <br><br> **STIPULATED AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this

1

case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate to the needs of the case.

Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.  Deleted, fragmented, or other data only reasonably accessible by forensic retrieval programs or methods.

    b.  Random access memory (RAM) or other ephemeral data that are difficult to preserve without disabling the operating system.

    c.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    d.  Back-up data that are duplicative of data that are more accessible elsewhere.

## 4. SEARCH

(a)    If a party uses search terms for custodial files or other similar repositories of information, the party will promptly disclose the search terms and search term hit counts upon request of any other party to allow the requesting party to evaluate the efficacy and burden of the proposed search terms. If a list of search terms is provided, the requesting party shall identify in writing any challenges to that list, identifying specific search terms it believes should be searched or not searched, or request to meet and confer to discuss their challenges. The parties agree to meet and confer regarding the application of additional or different terms and methods for assessing the efficacy or quality of proposed terms. If the parties are unable to

resolve disputes over search terms through the meet and confer process, the parties may submit the dispute to the Court. The parties shall endeavor to efficiently review and produce documents using search terms on which the parties have reached agreement, even if the parties have not agreed on whether other search terms shall also be used. For purposes of clarity, nothing in this Order shall be interpreted as limiting a party's right to review documents hitting on search terms or requiring a party to produce a document simply because it hits on a search term.

(b)    Following the initial production of ESI, a receiving party shall be entitled to make specific requests for additional or modified search terms, beyond those initially agreed to, as warranted by information provided in discovery; provided, however, that the receiving party must show that the additional or modified search terms are reasonably likely to lead to the identification of additional ESI that is relevant to this action.

(c)    Technology-Assisted Review ("TAR"). To the extent a party chooses to use a methodology for culling or relevance review in addition to search terms (*e.g.*, TAR or generative AI review), that party shall disclose its intent to use that methodology and the name of the tool(s) used to support the methodology. However, the party need not disclose the details of said methodology (such as seed sets, prompts, or validation processes) unless otherwise agreed upon or ordered by the Court for good cause shown. If a TAR methodology is provided, the requesting party shall identify in writing any challenges to that methodology or requests for additional information or request to meet and confer to discuss such challenges or requests. The parties agree to meet and confer regarding any TAR-related issues that may arise. If the parties are unable to resolve disputes over TAR methodologies through the meet and confer process, the parties may submit the dispute to the Court. Nothing in this paragraph requires a party to produce its work product or internal review methodology.

## 5. PRODUCTION FORMATS

The parties will make a good faith effort to produce documents, if reasonably feasible, in accordance with the production format set forth in Appendix A, attached hereto. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually

3

acceptable production of such documents. In conformance with Appendix A, the parties agree not to degrade the searchability and metadata of ESI and documents produced in this matter when reasonably feasible.

**6. PRIVILEGE**

(a)     A producing party shall create a privilege log of all documents or categories thereof identified and fully withheld from production in this matter on the basis of a privilege or protection, unless otherwise agreed or excepted by this Order. Privilege logs shall include a unique identification number for each document and the basis for the claim. Attorneys shall be identified as such, including whether the attorney is outside counsel or in-house counsel. For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata and identification of attorneys provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure and any other applicable orders and rules.

(b)     Where only a portion of a produced document is redacted on the basis of privilege, such redactions need not be logged so long as the particularized basis for each redaction is clear from the context of the redacted document as a whole.

(c)     With respect to privileged or work-product information generated after the filing of this action, the parties are not required to include any such information in privilege logs.

(d)     Other than on the basis of privilege, documents shall not be withheld from production if they contain or are attached to documents that contain responsive information.

(e)     The inadvertent production of any privileged or otherwise protected information shall not constitute a waiver or forfeiture of such privilege or protection, and shall be governed by the clawback and inadvertent-production procedures set forth in the Protective Order entered in this action.

///

4

## 7. BATES LABELING / CONFIDENTIALITY DESIGNATIONS

(a)    Each page of all images produced (whether originally maintained as hard copy or as ESI) shall be clearly labeled with an indelible, legible, unique Bates number. In addition, to the extent any image or file is to be designated with a confidentiality designation in accordance with the Protective Order entered in this action, each page of the image or file to be so marked shall include the appropriate confidentiality designation.

(b)    If a native file is produced, the Party producing such native file shall include a single image placeholder TIFF with a single Bates number on the image itself. The native file shall be linked to the placeholder TIFF and the Bates number assigned thereto. There shall be no Bates numbering of native files at the page level. The file name of each native file shall include its Bates number and, where applicable, its confidentiality designation.

## 8. PROCESSING OF THIRD-PARTY DOCUMENTS

(a)    If any party issues a subpoena to a third party, that party shall include a copy of this Order with the subpoena and state that the parties to the action have requested that third parties produce documents in accordance with the specifications set forth herein.

(b)    The subpoenaing party shall promptly produce any documents and/or ESI obtained pursuant to a subpoena to the other parties.

(c)    If the non-party production is not Bates-stamped, the subpoenaing party will endorse the non-party production with unique prefixes and Bates numbers prior to producing it to the other parties.

(d)    Nothing in this Order is intended to narrow, expand, or otherwise affect, or should be interpreted as narrowing, expanding, or otherwise affecting, the rights of the parties or third parties.

## 9. MODIFICATION

This Order may be modified by stipulation of the parties or by the Court for good cause shown.

///

///

5

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


DATED:        June 10, 2026                QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP

                                                   */s/ Daniel C. Posner*
                                           By _____
                                           Daniel C. Posner
                                           Attorneys for Perplexity AI, Inc.


DATED:        June 10, 2026                HUESTON HENNIGAN LLP

                                           By _____
                                           Moez M. Kaba
                                           Attorneys for Amazon.com Services LLC


       PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: _____        _____
                                   Judge Maxine M. Chesney
                                   United States District Judge

6

**APPENDIX A**

**PRODUCTION FORMAT PROTOCOL**

**DEFINITIONS**

A.	**The following definitions and terms shall apply in this Appendix A:**

1.	"Document" carries its broad meaning consistent with the Federal Rules of Civil Procedure and any other applicable orders and rules and includes ESI and hard copy material. A draft or non-identical copy is a separate Document within the meaning of this term.

2.	"Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

3.	"Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

4.	"Metadata" means: (i) information associated with or embedded in a Native File in a location or repository other than the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

5.	"Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

6.	"OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

7.	"Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34 or for any other reason.

8.	"Receiving Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34 or for any other reason.

9.	"Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) and Portable Document Format (PDF) images are examples of Static Images.

**OVERVIEW**

**B.      The production format has four main components.**

1.      A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2.      A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.      A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.      A directory containing database load files. ESI will be produced with a Metadata Load File containing Bates ranges and Metadata for each Document in Concordance (*.dat) format, and an Image Load File which associates each Bates number with its corresponding single-page TIFF image file for each Document included in the production in Opticon (*.opt) format.

**FORMAT FOR PRODUCTION**

A.      General Format of Production. Documents that are produced in this action, whether originally stored in paper or electronic form, shall be produced in electronic image form, in the manner described in Section B (Production Format) immediately below, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. Consent to such alternative formats or methods shall not be unreasonably withheld. If necessary, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

B.      Production Format. All documents shall be produced in the following formats when reasonably feasible:

1.      ESI will be produced to the Receiving Party with searchable text. Unless otherwise specified, Document images shall be generated from electronic Documents in a set of single page Group IV TIFF images that reflect the full and complete information contained on the original Document, In the event a Document is redacted, the Producing Party shall withhold the redacted text for

8

that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

2. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, audio, video, and drawing files, will be produced in Native Format. To the extent that a native spreadsheet must be redacted, the Producing Party should redact the Native File or, if such redaction is not practicable, produce TIFF images with redactions. If redacting TIFF images, the Producing Party should make reasonable efforts to cause such images to legibly present all information in the spreadsheet.

3. Each document image file shall be named with a unique number (Bates Number). Documents produced in native format will be assigned a Bates Number and be produced with a corresponding load file. File names should not be more than twenty characters long, excluding any necessary confidentiality designations, or contain spaces. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

4. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

5. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*i.e.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension). For any redacted documents that are produced as images, the Producing Party will also provide OCR text files for the nonredacted portions of those documents.

6. Mobile and Collaboration-Platform Messages. Messages from mobile devices or communication/collaboration platforms, including SMS, MMS, iMessage, Microsoft Teams, Slack, or similar platforms, shall be produced in 24-hour segments.

7. Color. For any non-native documents, production will be in color where color is material to the understanding of the document or parts thereof (*e.g.*, pie and bar charts) or documents that need to be produced in color can be produced in native format. Otherwise, non-native document images may be produced in black and white. A Receiving Party may request the re-production of documents in color where necessary to understand the document.

C.    De-duplication. A Producing Party who has more than one identical copy of an electronic Document (*i.e.*, the Documents are actual duplicates) need only produce a single copy of that Document. For avoidance of doubt, a Producing Party may de-duplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians field, and the file path of each document should be populated in the All Paths metadata field. A Producing Party need not review or produce non-inclusive e-mails, which is an e-mail whose text and attachments are fully contained in another email that is being reviewed for responsiveness.

D.    Email threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude less inclusive copies. However, in all events the Producing Party shall produce all copies of emails with attachments, whether or not such emails constitute less inclusive copies. Upon reasonable request, the Producing Party will produce a less inclusive copy and/or missing metadata.

E.    Electronic Production of Paper Documents. The production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned individually as separate files, with each document scanned as a distinct unit. Scanning will use Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the Producing Party can show that the burden of scanning would outweigh its usefulness (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with unique Bates Number (e.g. the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

F.    File Structure. The Producing Party shall produce the following sets of files with each production.

///

a.   Image Load File.

(1)   Every document referenced in a production image load file must have all corresponding images, text and metadata.

(2)   The name of the image load file must mirror the name of the delivery volume and should have an .OPT file extension.

(3)   The volume names must be reasonably consecutive (*e.g.* VOL001, VOL002…).

(4)   The load file must contain one line per image.

(5)   Every image in the delivery volume must be contained in the image load file.

(6)   The image key must be named the same as the Bates number of the image.

(7)   Load files must not span across media.

(8)   File should be placed in the root directory or a directory labeled "DATA."

b.   Metadata Load File.

(1)   Each production has one load file, in "Concordance" style .DAT format.

(2)   Values must be enclosed by þ (ASCII Decimal 254).

(3)   Values must be separated by the "Device Control 4" character, ASCII decimal 20.

(4)   First line must contain the column/field names (set forth in the Metadata Fields section, below).

(5)   The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

(6)   The field NativePath must be present if native files are included in the document production.

(7)   Each subsequent row must contain the Metadata for one Document.

(8)   Every row must have the same number of columns/fields (empty values are acceptable).

(9) Text must be encoded in UTF-8.

(10) File should be placed in the root directory or a directory labeled "DATA."

c. OCR and Extracted Text Files (.TXT Files).

(1) A single text file for each Document containing all the Document's pages, in text.

(2) Pages separated by form feed character (decimal 12, hex 0xC).

(3) Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document.

(4) Text must be encoded in UTF-8.

(5) Files should be placed in a directory labeled "TEXT."

d. Image Files.

(1) Single-page Group IV TIFF images for each Document, containing all images for that document.

(2) Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the Bates number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.pdf or .tiff).

(3) Files should be placed in the "IMAGES" subdirectory.

e. Native Files.

(1) Document-level native file for each native file included in the document production.

(2) Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the Bates number of the document. Confidentiality designations may be included in the filenames, after the Bates number.

(3) A relative link to the location of the native file in the document productions shall be produced in NATIVEPATH metadata field in the .DAT load file.

(4) Files should be placed in a directory named "NATIVES."

G.      Illegible Documents. Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s).

H.      Production Media. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

## METADATA FIELDS

A.      For scanned hard copy documents, the Producing Party will provide the Metadata fields below, to the extent it is reasonably accessible and non-privileged.

| FIELD NAME | FIELD DESCRIPTION |
| --- | --- |
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Placeholder | Identifies a Document has a placeholder image. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |

13

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

B.    For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent it is reasonably accessible and non-privileged. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the Producing Party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| SHA1 Hash | The SHA1 hash value of a Document. |
| Placeholder | Whether a Document has a placeholder image (Y/N). |

14

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Confidentiality | Level of Confidentiality assigned. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |