QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew Schapiro (admitted *Pro Hac Vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Renita N. Sharma (admitted *Pro Hac Vice*)
renitasharma@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

William Pilon (Bar No. 326487)
williampilon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant Perplexity AI, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

Plaintiff,

vs.

PERPLEXITY AI, INC., a Delaware corporation,

Defendant.

Case No. 3:25-cv-09514-MMC

**DEFENDANT'S MOTION TO DISMISS**

Hon. Maxine M. Chesney
Courtroom 7

Hearing Date: October 16, 2026
Hearing Time: 9:00 a.m.

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on October 16, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendant Perplexity AI, Inc. ("Perplexity") will and hereby does move this Court for an order under Federal Rule of Civil Procedure 12(b)(6), Federal Rule of Civil Procedure 9(b), and/or 28 U.S.C. § 1367(c)(3) dismissing the Complaint (Dkt. 1) filed by Plaintiff Amazon.com Services LLC ("Amazon"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the entire record of this action, including Perplexity's recent Ninth Circuit appeal of the Court's preliminary injunction in this action, Case No. 26-1444.

DATED: September 11, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *Is/ John B. Quinn*
John B. Quinn
*Attorneys for Defendant Perplexity AI, Inc.*

**TABLE OF CONTENTS**

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

ISSUES TO BE DECIDED .......... 3

STATEMENT OF FACTS .......... 3

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

I. AMAZON FAILS TO STATE A CLAIM .......... 7

A. Amazon Fails To State A Claim Under The CFAA .......... 8

1. Amazon has not plausibly alleged a violation of 18 U.S.C. § 1030(a)(2) .......... 8

(a) Amazon fails to plausibly allege that Perplexity "intentionally accesse[d]" an Amazon computer .......... 8

(b) Amazon fails to plausibly allege that Perplexity accessed its computers "without authorization" or "exceed[ed] authorized access" .......... 11

(c) Amazon fails to plausibly allege any of the remaining CFAA elements .......... 14

2. Amazon has not plausibly alleged a violation of 18 U.S.C. § 1030(a)(4) .......... 16

B. Amazon Fails To State A Claim Under The CDAFA .......... 18

II. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER AMAZON'S CDAFA CLAIM .......... 18

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Cases

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) (en banc) ... 19

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
184 F.4th 1083 (9th Cir. 2026) ... 1, 2, 5-11, 18, 19

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ... 6, 11

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*,
273 F.3d 1229 (9th Cir. 2001) ... 2, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 6

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ... 7

*Carne v. Stanislaus Cnty. Animal Servs. Agency*,
445 F. Supp. 3d 772 (E.D. Cal. 2020) ... 19

*Cox Commc'ns PCS, L.P. v. City of San Marcos*,
204 F. Supp. 2d 1272 (S.D. Cal. 2002) ... 19

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ... 12, 13

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (per curiam) ... 6, 10, 17

*Gastelum v. Kohl's Inc.*,
No. 21-cv-1740, 2023 WL 2575825 (E.D. Cal. Mar. 20, 2023) ... 19

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ... 13-15, 17

*Hummel v. Smith*,
2010 WL 415252 (W.D. Wash. Jan. 27, 2010) ... 20

*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025) ... 6

*LVRC Holdings v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ........ 8, 14-16

*Marcos v. Equity One Lenders Grp.*,
No. 11-cv-4000, 2011 WL 6225273 (N.D. Cal. Dec. 14, 2011) ........ 19

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) ........ 18

*Moxie Pest Control (Utah), LLC v. Nielsen*,
164 F.4th 1195 (10th Cir. 2026) ........ 16

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
305 F. Supp. 3d 1065 (N.D. Cal. 2018) ........ 7

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*,
499 F.3d 1108 (9th Cir. 2007) ........ 2, 10

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ........ 7

*Sepulveda v. Taqueria y Carniceria Martinez LLC*,
No. 23-cv-1781, 2024 WL 69066 (N.D. Cal. Jan. 5, 2024) ........ 19

*Stormans, Inc. v. Wiesman.*,
794 F.3d 1064 (9th Cir. 2015) ........ 10

*Teran v. Superior Ct.*,
334 Cal. Rptr. 3d 299 (Ct. App. 2025) ........ 18

*United States v. Castleman*,
572 U.S. 157 (2014) ........ 17

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ........ 11

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) ........ 2, 12, 13, 15

*United States v. Utz*,
886 F.2d 1148 (9th Cir. 1989) (per curiam) ........ 17

*Van Buren v. United States*,
593 U.S. 374 (2021) ........ 15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 7, 17

*Weisbuch v. County of Los Angeles*,
119 F.3d 778 (9th Cir. 1997) ........ 6

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 ........................................ 7, 17

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
724 F. Supp. 3d 948 (N.D. Cal. 2024) ........................................ 15

*Zomm, LLC v. Apple Inc.*,
391 F. Supp. 3d 946 (N.D. Cal. 2019) ........................................ 7

**Statutes**

Computer Fraud and Abuse Act ("CFAA")
(18 U.S.C. § 1030) ........................................ 1-3, 5-18

18 U.S.C. § 1030(a)(2) ........................................ 8, 9, 11-13, 16

18 U.S.C. § 1030(a)(2)(C) ........................................ 14

18 U.S.C. § 1030(a)(4) ........................................ 16, 17

18 U.S.C. § 1030(e)(11) ........................................ 15

18 U.S.C. § 1030(g) ........................................ 15

28 U.S.C. § 1367(c)(1) ........................................ 19

28 U.S.C. § 1367(c)(3) ........................................ 3, 7, 19

Cal. Civ. Code § 1798.105(a) ........................................ 17

California Comprehensive Computer Data Access and Fraud Act ("CDAFA")
(Cal. Penal Code § 502) ........................................ 2, 3, 5-8, 12, 18, 19

Cal. Penal Code § 502(c)(7) ........................................ 18

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................ 3, 7, 17

Fed. R. Civ. P. 12(b)(6) ........................................ 3, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

This case asks whether a dominant online platform can turn a criminal hacking statute into a tool for policing how its customers use the internet. The Ninth Circuit has answered with an unequivocal no.

Perplexity has developed the Comet Assistant, an artificial intelligence tool that helps users perform tasks within Perplexity's Comet browser. In this lawsuit, Amazon implausibly asserts that Perplexity engages in computer hacking when Amazon customers deploy the Assistant to shop on Amazon.com. Under Amazon's theory, any shopper who uses software unapproved by Amazon to add an item to her shopping cart commits a federal crime. The Ninth Circuit rightly rejected this interpretation, and its decision in this case makes clear that Amazon's legal theory is untenable. The Court should dismiss the Complaint with prejudice.

This Court has rightly been skeptical of Amazon's claims. When the Court granted Amazon's motion for a preliminary injunction in March, it observed that the Assistant was a "helpful" tool and that Perplexity did not seem to be engaged in "the traditional egregious behavior that often is covered by a criminal statute." Dkt. 85 at 128. But, given the text of the Computer Fraud and Abuse Act ("CFAA"), which the Court viewed as very "broad," the Court felt compelled to rule in Amazon's favor. *Id.* at 133 ("[T]he statute is so broad and covers people who may be performing a beneficial act that I'm kind of stuck with it.").

The Court's reluctance was warranted. Reviewing the grant of the preliminary injunction against Perplexity, the Ninth Circuit instructed that the CFAA's requirement that the defendant "access" a computer system "contemplates access ***by a person***." Dkt. 114 [hereinafter CA9 Op.] at 15 (emphasis added). Thus, where access occurs by means of a computer tool like the Assistant, a court must ask whether the defendant is a "person" who "exercise[s] control" over the "tool" in such a way "as to gain entry to [the plaintiff's] servers." *Id.* The answer here is "no." *Id.* "It is ***the [Comet] user***," not Perplexity, who "'accesses' Amazon's computers" when she enlists the Assistant "to carry out specific acts on Amazon.com." *Id.* (emphasis added). Accordingly, it did not matter that "Perplexity may receive screenshots of the user's browser and may communicate instructions to the Assistant." *Id.* "[T]hose activities," the Ninth Circuit held, "do not mean that Perplexity has

'accessed' (gained entry) to Amazon's servers." *Id.* The Ninth Circuit reached the same conclusion under the California Comprehensive Computer Data Access and Fraud Act (CDAFA). *Id.* at 18 ("[T]he user (not Perplexity) accesses Amazon using the Assistant as an AI tool, and thus Amazon is unlikely to succeed on the merits of its CDAFA claim.").

Although it came in the context of a preliminary injunction, the Ninth Circuit's ruling dooms Amazon's Complaint. The panel's decision rests on its interpretation of the text and purpose of the CFAA, and its conclusions on these pure legal issues are the law of the case. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1241 (9th Cir. 2001) (the "interpretation of a statute" is a "purely legal issue"). This Court is thus bound to apply them. *Ranchers Cattlemen*, 499 F.3d at 1114.

Indeed, Amazon's Complaint alleges no facts that would avoid the Ninth Circuit's determination that Perplexity does not "access" Amazon where the Assistant interacts with Amazon in response to user prompts. The Complaint repeatedly acknowledges that only individual Comet users, not Perplexity, exercise control over the Assistant. *E.g.*, Dkt. 1 [hereinafter "Complaint" or "Compl."] ¶ 33 (alleging that the Assistant acts "in response to user prompts" and "on the user's behalf"). Under the theory of Amazon's Complaint, those users—Amazon's customers—would be "exposed . . . to criminal liability" under the CFAA. CA9 Op. at 17. The Ninth Circuit rejected that interpretation, cautioning courts against "transform[ing] whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved." *Id.* at 16 (alteration in original) (quoting *United States v. Nosal*, 676 F.3d 854, 860 (9th Cir. 2012) (en banc)); *accord* Dkt. 85 at 130 (this Court recognizing that "people ought to be allowed to bring these kinds of shopping assistants in").

Amazon cannot escape the Ninth Circuit's ruling by repleading. It has already admitted that the Assistant operates only in user-run browser sessions and in response to human users' prompts, and thus has pleaded itself out of court. Accordingly, and for the additional reasons below, Perplexity respectfully requests that the Court dismiss Amazon's Complaint with prejudice.

## ISSUES TO BE DECIDED

1. Whether the Court should dismiss Amazon's Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 9(b).

2. Whether, if the Court dismisses Amazon's CFAA claim but does not dismiss the CDAFA claim outright, the Court should decline to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(c)(3).

## STATEMENT OF FACTS

***Perplexity And The Comet Browser.*** Perplexity is an AI startup founded in 2022. Compl. ¶¶ 24-25. The company's mission is to "serve the world's curiosity" by designing "accurate and trustworthy" AI tools. *Id.* Ex. 5. One of Perplexity's core products is an AI-enabled web browser called Comet. *Id.* ¶ 25. Perplexity publicly launched Comet on October 2, 2025. *Id.* The Comet browser, like Google Chrome and Mozilla Firefox, is a software program that is downloaded onto a user's computer to navigate the Internet. *Id.* Ex. 6.

Comet includes an optional AI "Assistant" feature that is "embedded in the browser" and operates on the user's computer. *Id.* Ex. 1 (citation modified); *id.* Ex. 7 at 2 (citation modified) (Amazon cease-and-desist letter quoting article stating that the Comet Assistant is "embedded in the browser" (citation omitted)); *see id.* ¶ 33 (stating that the Assistant acts "[w]ithin a Comet browser session"). If, and only if, the user elects to activate the Assistant, the Assistant can perform tasks at the user's direction, such as browsing websites like Amazon.com to shop for requested goods. *Id.* ¶ 25 ("Comet users can ask the [Assistant] to independently perform actions on users' behalf, such as placing an order in the Amazon Store.").

Although the Assistant might broadly be described as "agentic AI," it is limited to executing instructions a user gives to it. *Id.* ¶ 3 (stating that the Assistant "perform[s] actions on users' behalf"); *see id.* ¶ 25; *id.* ¶ 33 (stating that the Assistant acts "in response to user prompts"); *id.* Ex. 6 ("Every new tab has a new Comet Assistant there to answer any question or take any action on your behalf. ***All you have to do is ask***." (emphasis added)). As an added safeguard, the Assistant requires additional user authorization before performing significant tasks like finalizing a purchase,

and the Assistant cannot log into a user's Amazon account by itself. *Id.* ¶ 33 (acknowledging that Assistant cannot "log into [users'] Amazon accounts" by itself).

***Amazon's Efforts To Exclude Comet Users.*** Amazon does not like the Comet Assistant because the Assistant allows users to shop without being bombarded by Amazon's relentless advertising, upselling, and sponsored product listings. *See id.* ¶ 55 (complaining that the Assistant "may not add products to existing deliveries to meet minimum free-shipping thresholds"). Accordingly, Amazon has sought to prevent Comet users from using the Assistant on Amazon.com. Amazon has repeatedly harassed Perplexity with meritless complaints about alleged "violat[ions] [of] Amazon's Conditions of Use," *id.* Ex. 7 at 1, even though Amazon knows that those Conditions of Use do not bind Perplexity, *id.* ¶ 46 (stating that Perplexity is a "third party[]" with respect to the Conditions of Use).

The Conditions of Use themselves make clear that they apply to Amazon's human users, not the developers of the browsers they use. The first paragraph of the Conditions of Use limits their applicability to those who "use any Amazon Service." *Id.* Ex. 2. Moreover, in the section governing the use of AI agents, the Conditions of Use provide that the "terms in this section . . . apply if ***you*** use, allow, enable or cause the deployment of an Agent to access, use, or interact with any Amazon Services." *Id.* ¶ 23 (emphasis added) (quoting *id.* Ex. 2). The Conditions of Use define an "Agent" as "any software or service that takes autonomous or semi-autonomous action ***on behalf of, or at the instruction of, any person*** or entity." *Id.* (emphasis added) (quoting *id.* Ex. 2).

Amazon alleges that its customers' use of the Comet Assistant on Amazon.com violates the Conditions of Use because the Comet browser does not affirmatively signal in HTTP/HTTPS requests that the Assistant had been activated. *See id.* ¶ 23 (quoting *id.* Ex. 2). Amazon would prefer that Comet do so by including certain information in the "user-agent" string the browser sends to identify itself to websites. *See id.* ¶ 23 (quoting *id.* Ex. 2); *id.* ¶ 34. Amazon "consider[s]" the use of its preferred user-agent string to be "responsible practice," but Perplexity has no legal duty to use the string and Amazon identifies none. *Id.* ¶ 35. Amazon alleges that Comet "transmits the same 'user-agent' string that is used by Google Chrome," *id.* ¶ 34; this is because Comet is "built on top of Chromium," the open-source codebase that powers Google Chrome, *id.* Ex. 10.

Amazon wants Perplexity to equip Comet with Amazon's preferred user-agent string so Amazon can more easily block its customers from using the Assistant. Indeed, in August 2025, Amazon tried to "implement[] a technological barrier" to do just that, but the barrier's effect was only temporary. *Id.* ¶ 38.[1]

***Procedural History.*** On October 31, 2025, Amazon sent Perplexity a letter accusing it of violating the CFAA and CDAFA. Compl. Ex. 7. The letter does not purport to revoke Perplexity's access to Amazon.com; rather, it purports to impose conditions on such access, demanding that Perplexity cease "disguising Comet as a Google Chrome browser" and that Perplexity "transparently identify Comet AI agents . . . when operating in the Amazon Store (as required by Amazon's Conditions of Use)." *Id.*

Days later, Amazon filed this lawsuit and moved for a preliminary injunction. *See* Dkts. 1, 4. On March 9, 2026, the Court granted the preliminary injunction but also granted Perplexity a seven-day stay so it could appeal and seek an emergency stay from the Ninth Circuit. Dkt. 81. Perplexity did so, and the Ninth Circuit granted an administrative stay on March 16. Dkt. 94. Two days later, the Ninth Circuit granted a stay pending appeal. *See* Dkt. 114 at 8-9. This Court then stayed Perplexity's deadline to respond to the Complaint, holding that Perplexity's deadline would be 21 days after the Ninth Circuit's resolution of the appeal of the preliminary injunction. Dkt. 106.

After full briefing and oral argument, the Ninth Circuit vacated the preliminary injunction in a published opinion dated August 4, 2026. CA9 Op. at 21; *see Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026). The Ninth Circuit held that Amazon was "unlikely to succeed in showing that Perplexity 'accessed' Amazon computers for CFAA purposes." CA9 Op. at 5. Indeed, because "Perplexity itself does not directly communicate with Amazon's servers" and because the Assistant "is a tool, not a person for statutory purposes," the Ninth Circuit held that "[i]t is the user who 'accesses' Amazon's computers, with the help of the Assistant to carry

---

[1] Amazon alleges that Perplexity has intentionally "evaded" technological barriers it has implemented to block the Assistant. *E.g.*, Compl. ¶ 48. These allegations are false, but they are immaterial to this Motion. Perplexity is under no legal duty to prevent the Assistant from operating on Amazon.com.

out specific acts on Amazon.com." *Id.* at 14-15. The Ninth Circuit then held that Amazon's "CFAA and CDAFA claims rise and fall together," concluding that under the CDAFA, as well, "the user (not Perplexity) accesses Amazon using the Assistant as an AI tool." *Id.* at 18. Finally, the Ninth Circuit held that the remaining preliminary injunction requirements favored Perplexity, concluding that Amazon's evidence of irreparable harm was "weak." *Id.* at 19-20; *see generally id.* at 18-21; *accord* Dkt. 85 at 137 (this Court stating that it "wasn't blown away" by Amazon's evidence of alleged cybersecurity harm).[2]

## LEGAL STANDARD

***Rule 12(b)(6).*** To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard" demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). In considering a motion to dismiss, the court may rely on facts in "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Jensen v. Brown*, 131 F.4th 677, 683 n.1 (9th Cir. 2025) (citation omitted).

Though well-pleaded factual allegations are assumed true and construed favorably to the nonmoving party, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. . . . [C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (citations omitted). Further, "a plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 969 (N.D. Cal. 2016) (citation modified) (quoting *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

[2] On September 10, 2026, the Ninth Circuit denied Amazon's petition to rehear the case en banc. *See* Order, *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, No. 26-1444 (9th Cir. Sept. 10, 2026), Dkt. No. 71.1.

***Rule 9(b).*** "Rule 9(b) imposes a heightened pleading standard for claims that 'sound in fraud.'" *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 951 (N.D. Cal. 2019); *see Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (same). A plaintiff alleging such claims must "state ***with particularity*** the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). To satisfy this requirement, the plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1048 (quoting *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)).

***28 U.S.C. § 1367(c)(3).*** "If a court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims." *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1077 (N.D. Cal. 2018); *see* 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *NorthBay Healthcare*, 305 F. Supp. 3d at 1077 (quoting *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)).

## ARGUMENT

Amazon cannot state a claim under the CFAA or CDAFA. Amazon's Complaint admits that the Assistant acts in response to user prompts. The Ninth Circuit held that such user-directed access cannot be attributed to Perplexity under the CFAA or CDAFA. In light of this and other incurable deficiencies in Amazon's claims, this Court should dismiss this case with prejudice. *See infra* Part I. Even if the Court does not dismiss Amazon's CDAFA claim, the Court should relinquish supplemental jurisdiction over that claim because this matter is still in its early stages, no significant discovery has been completed, and no California court has ruled on the CDAFA's applicability to the "nascent technology" of agentic AI. CA9 Op. at 21; *see infra* Part II.

### I. AMAZON FAILS TO STATE A CLAIM

The Ninth Circuit's decision vacating the preliminary injunction in this case dooms Amazon's claims. Amazon repeatedly admits that the Assistant performs tasks on the users' "behalf" and in response to their "prompts." Compl. ¶¶ 3, 4, 25, 33. But the Ninth Circuit held that, where a human user instructs the Assistant "to carry out specific acts," "[i]t is the user who

'accesses' Amazon's computers," not Perplexity. CA9 Op. at 15. In light of the Ninth Circuit's binding ruling, which applies to both Amazon's CFAA and CDAFA claims, *see id.* at 17-18, Amazon has pleaded itself out of court. Because the Ninth Circuit held that Amazon likely cannot satisfy the statutory requirement to show access by Perplexity, the Ninth Circuit did "not address" Perplexity's remaining arguments. *Id.* at 16 n.4. But Amazon's claims are fatally flawed for many other reasons. It has not plausibly alleged that any Perplexity access to Amazon.com was without authorization or in excess of authorized access, it has not alleged that Perplexity obtained information from an Amazon computer, it has not alleged cognizable damages under the CFAA, and it comes nowhere close to satisfying the prong of the CFAA criminalizing furtherance of an intended fraud. Because Amazon cannot remedy these defects in its claims through repleading, the Court should dismiss this matter with prejudice.

### A. Amazon Fails To State A Claim Under The CFAA

#### 1. Amazon has not plausibly alleged a violation of 18 U.S.C. § 1030(a)(2)

To plead a CFAA claim under 18 U.S.C. § 1030(a)(2), Amazon must allege each of five elements—that Perplexity **(a)** "intentionally accessed" an Amazon computer **(b)** "without authorization or exceeding authorized access," and that it **(c)** "thereby obtained information" **(d)** "from an[] [Amazon] computer," and that **(e)** "there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *LVRC Holdings v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Amazon fails to adequately allege even one of these elements.

(a) <u>Amazon fails to plausibly allege that Perplexity "intentionally accesse[d]" an Amazon computer</u>

Analysis of Amazon's § 1030(a)(2) claim begins and ends with the CFAA's access requirement. The Ninth Circuit held that Perplexity does not "access" Amazon's webpages when the Assistant interacts with them to fulfill a Comet user's directives. Rather, "[i]t is the user who 'accesses' Amazon[]." CA9 Op. at 15. This binding holding is dispositive, as the Assistant interacts with Amazon webpages ***only*** pursuant to human users' instructions.

The Ninth Circuit held that the Assistant's human-directed activities on Amazon cannot constitute "access" by Perplexity under the CFAA. *Id.* at 14-17. The court first concluded that the

Assistant itself was incapable of accessing Amazon because the statute requires access by a "person," which the Assistant, an AI program, is not. *Id.* at 15. The court asked "whether Perplexity accesses Amazon.com through the Assistant," *id.* at 14, and answered in the negative, *id.* at 15. The court reasoned that, where a human user engages the Assistant "to carry out specific acts," it is the user, not Perplexity, who "accesses" Amazon within the meaning of the statute, even where the Assistant communicates with Perplexity's servers to help satisfy the user's instructions. *Id.* at 15. That is because the human user "exercise[s] control" over the Assistant, *id.*, and "caus[es]" the Assistant to interact with Amazon's webpages, *id.* at 18. The Assistant and Perplexity's servers are merely the "tool[s]" that a human user employs to perform tasks. *Id.* at 15. A shovel does not dig a hole; the person wielding it does. Similarly, the Assistant and Perplexity's servers do not "access" Amazon—the user directing them does.

Relatedly, the CFAA requires that the defendant "***intentionally*** access[] a computer." 18 U.S.C. § 1030(a)(2) (emphasis added). Perplexity's servers and the Assistant are computer equipment and software programs that cannot form "intent." The Ninth Circuit thus held that the Assistant is simply a "tool," and that Perplexity does not "exercise control" over that tool where its servers merely send the Assistant instructions effectuating ***the user's*** intent. CA9 Op. at 5, 15. Rather, it is the human user who actively and intentionally "directs the Assistant" to perform actions. *Id.* at 7.

The CFAA's purposes and policy reinforce the Ninth Circuit's decision. The CFAA is a criminal statute, so "any ambiguity" in its provisions is to be construed "against liability." *Id.* at 16 (citation modified). The court held that criminalizing the use of online shopping assistants would "require a novel interpretation" of the CFAA "far afield" from its primary purpose of prohibiting computer hacking. *Id.* The court further noted that Amazon's theory would expose Comet users to "criminal liability . . . for facilitating Perplexity's purported unauthorized access to Amazon[]." *Id.* Common sense forbids this result. Congress obviously did not intend to make it a federal felony to use a software program to buy paper towels online. Such "innocuous behavior" is not the conduct the CFAA was meant to combat. *Id.* (citation omitted).

Though rendered in the preliminary injunction context, the Ninth Circuit's decision binds this Court. The decision rested on the Ninth Circuit's interpretation of the text and purpose of the CFAA and the meaning and scope of the statute's access requirement, and its conclusions on these pure legal issues are the law of the case. *See Ranchers Cattlemen*, 499 F.3d at 1114; *Ariz. Cattle Growers' Ass'n*, 273 F.3d at 1241 (the "interpretation of a statute" is a "purely legal issue"). Moreover, the Ninth Circuit's application of the CFAA in a published opinion to a particular factual situation—the Assistant's interaction with Amazon pursuant to the directions of a human user—constitutes the law of the circuit and binding precedent. *Stormans, Inc. v. Wiesman*., 794 F.3d 1064, 1076 n.5 (9th Cir. 2015).

Amazon's claims cannot survive the Ninth Circuit's decision. Though Amazon asserts that Perplexity "knowingly and intentionally accesse[s]" its website, Compl. ¶ 67, this "[t]hreadbare recital[]" of the CFAA's "access" element is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. The "well-pleaded facts" of Amazon's complaint, *id.* at 679, only confirm that the Assistant engages in the human-directed activity the Ninth Circuit held does not constitute "access" by Perplexity. The Assistant is "embedded" in the Comet browser, an application that, like Chrome or Safari, is operated by ***human users*** to connect to the Internet. Compl. ¶¶ 6, 25 (citation omitted). It is "download[ed]" onto human users' computers, *id.* Ex. 6, and it operates "[w]ithin . . . Comet browser session[s]." *Id.* ¶ 33. Given that the Assistant lives and runs on a browser application operated by human users on those users' computers, the only "reasonable inference" to be drawn from the Complaint, *Iqbal*, 556 U.S. at 678, is that users, not Perplexity, "exercise control" over the Assistant. CA9 Op. at 15. Any conclusion that Perplexity, which merely developed the Comet browser, somehow controls the Assistant within Comet sessions on users' computers would be precisely the sort of "unwarranted inference[]" that cannot defeat a motion to dismiss. *Fayer*, 649 F.3d at 1064 (citation omitted).

Amazon admits that the Assistant acts on human users' "behalf" and in response to their "prompts." Compl. ¶¶ 3, 4, 25, 33. That is the way the Assistant and other AI agents operate. As the very term "AI agents" suggests, they respond to what human users tell them to do. Amazon's own Conditions of Use acknowledge that Amazon customers—not the developers of the browsers

they use—access Amazon computers. *Id.* ¶ 23; *see also id.* Ex. 2 (providing that the "terms in this section . . . apply if ***you***"—*i.e.*, the Amazon customer—"use, allow, enable or cause the deployment of an Agent to access, use, or interact with any Amazon Services" (emphasis added)); *see also id.* (defining an "Agent" as "any software or service that takes autonomous or semi-autonomous action ***on behalf of, or at the instruction of, any person*** or entity" (emphasis added)).

Amazon cannot cure these deficiencies by repleading. The Ninth Circuit's decision rests on a broad, common-sense principle that, where a human user employs a software tool to perform actions, it is the user—not the developer of the tool—who performs those actions. *See* CA9 Op. at 15 (concluding that Perplexity does not "exercise control" over the Assistant when a user engages the Assistant to "carry out specific acts"). And Comet and the Assistant, for all their technical sophistication, are simply tools that respond to human inputs. Because, as discussed above, Amazon's Complaint has already admitted as much, Amazon has "establish[ed] that [it] cannot prevail on [its] claim." *Anthem*, 162 F. Supp. 3d at 969 (citation modified). Nor could Amazon gainsay its allegations about how the Assistant functions in an amended pleading. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." (citation omitted)). And no amended pleading by Amazon can overcome the reality that the Assistant and Perplexity's servers are pieces of technology that are not capable of acting with "intent[]" within the meaning of the CFAA, or that recasting online shopping as felony computer hacking would be inconsistent with the CFAA's purpose and policy. *See* CA9 Op. at 15-17. Accordingly, leave to amend would be futile. *See Corinthian Colls.*, 655 F.3d at 995.

For these reasons, the Court should dismiss Amazon's § 1030(a)(2) claim with prejudice.

(b) Amazon fails to plausibly allege that Perplexity accessed its computers "without authorization" or "exceed[ed] authorized access"

Even if Amazon's claims were not foreclosed by the Ninth Circuit's holding on access, they would nevertheless fail. To state a CFAA claim, Amazon must allege that Perplexity accessed its computers "without authorization" or "exceed[ed] authorized access." 18 U.S.C. § 1030(a)(2). This

element can be satisfied by showing either (i) that the defendant was an "inside hacker[]" who "exceed[ed] authorized access," in that the defendant had "initial access to a computer" but then "access[ed] unauthorized information or files"; or (ii) that the defendant was an "outside hacker[]" who accessed a computer "without authorization," in that the defendant "ha[d] no authorized access to the computer at all." *Nosal*, 676 F.3d at 858 (emphasis removed). Amazon has not plausibly pleaded either theory.

***"[E]xceeds authorized access."*** As an initial matter, both "authorization" theories require the defendant to have notice that its access was without authorization or in excess of authorized access. *See* 18 U.S.C. § 1030(a)(2) (stating that access without authorization must be "intentional[]"); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) (holding that CFAA liability did not begin until after defendant received cease-and-desist letter "expressly rescind[ing]" permission to access computers). Here, Amazon alleges that Perplexity received this notice when Amazon told Perplexity that "the Comet AI agent is not authorized to access the Amazon Store without transparently identifying itself" and then sent Perplexity its cease-and-desist letter. Compl. ¶ 42; *see id.* ¶ 44; *id.* Ex. 7 at 4 (demanding that Perplexity "transparently identify Comet AI when operating in the Amazon Store, consistent with Amazon's Conditions of Use").[3]

These communications make clear that Amazon's CFAA claim falls under the "inside hack[ing]" prong of the authorization element. *Nosal*, 676 F.3d at 858 (emphasis removed). In other words, Amazon alleges that Perplexity is operating on Amazon.com in excess of authorized

[3] The Court should disregard Amazon's irrelevant allegations about Perplexity's long-discontinued "Buy with Pro" feature. *See* Compl. ¶¶ 27-31. The Complaint does not allege that Perplexity accessed Amazon computers as part of "Buy with Pro" after Amazon first complained about it in November 2024. *See* Compl. ¶ 31. Thus, to the extent Amazon's CFAA and CDAFA claims are based on "Buy with Pro," they fail as a matter of law. *See Power Ventures*, 844 F.3d at 1067 & n.3 (no liability until access was "expressly rescinded" in "written cease and desist letter" so as to put defendant "on notice"); *id.* at 1069 (same under CDAFA). Further, Amazon identifies no damages it has suffered as a result of Buy with Pro's use. *See* Compl. ¶ 29 (alleging that Buy with Pro "***risked*** interfering with Amazon's customer relationships and ***potentially*** deprived Amazon of revenue" (emphasis added)). And in any event, Amazon alleges that Buy with Pro, like the Assistant, was an "agentic AI" tool that operated on users' "behalf," so Buy with Pro cannot support a CFAA or CDAFA claim for the same reasons the Ninth Circuit described in analyzing the Assistant. *Id.* ¶ 27.

access, not that it is operating on Amazon.com without any authorization at all. Indeed, Amazon's communications to Perplexity did not purport to completely revoke Perplexity's access to Amazon.com. Amazon demanded only that Perplexity "transparently identify Comet AI" by equipping it with a user-agent string compliant with Amazon's Conditions of Use. Compl. Ex. 7 at 4 (demanding that Perplexity "transparently identify Comet AI . . . consistent with Amazon's Conditions of Use"); *id.* Ex. 2 (Conditions of Use requiring "Agents" to adopt a particular "user agent string").

Amazon's notice to Perplexity thus merely amounts to a demand to comply with Amazon's Conditions of Use. And the Ninth Circuit has repeatedly held that "a violation of the terms of use of a website—without more—cannot establish liability under the CFAA." *Power Ventures*, 844 F.3d at 1067; *see Nosal*, 676 F.3d at 863 ("[W]e hold that the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions."). Amazon's CFAA claim must therefore be dismissed.

***"[W]ithout authorization."*** The result is the same even if Amazon's claim is construed to fall under the "outside hack[ing]" prong of the authorization element. *Nosal*, 676 F.3d at 858 (emphasis removed). Assuming Amazon has alleged that Perplexity accessed its computers "without" any "authorization" whatsoever, 18 U.S.C. § 1030(a)(2), its claim still fails because Perplexity's alleged access to Amazon.com—a retail website available to the general public—does not implicate Amazon's "private information" or any other information Amazon has an interest in protecting. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1197 (9th Cir. 2022) (holding that CFAA does not apply to websites that do not "prevent the general public from viewing the information").

As a criminal anti-hacking statute, the CFAA does not forbid a user's authorized agent—here, the Comet Assistant—from logging into a public website where the ***only*** information behind a password-protected "gate" either belongs to that user or is "available to anyone," logged in or not, "with an Internet connection." *Id.* at 1198-99. Where no third party's "expectation of privacy" is at issue, "the 'breaking and entering' analogue invoked so frequently during congressional consideration [of the CFAA] has no application, and the concept of 'without authorization' is inapt."

*Id.* at 1190, 1198. This is true regardless of whether the website owner—here, Amazon—purports to revoke the agent's authorization, and neither the Ninth Circuit nor the Supreme Court has held otherwise.

Amazon's Complaint acknowledges (*e.g.*, Compl. ¶ 33) that the Comet Assistant accesses only the Comet user's Amazon account, and it does so with the Comet user's permission. *See hiQ Labs*, 31 F.4th at 1201 (holding that access to "publicly available data" does "not constitute access without authorization under the CFAA"). No other information—*i.e.*, no information belonging to anyone else—is at issue. *See* Compl. ¶ 33 (alleging that the Assistant merely "has access" to the "private account information" of "***the user***[]" who "prompt[ed]" the Assistant and "logged in" to "their [own] Amazon account[]" (emphasis added)). The CFAA has never been held to criminalize benign access like that at issue here, where no one's "confidentiality" or "privacy" interests are at stake. *hiQ Labs*, 31 F.4th at 1197 (citation omitted). In short, Amazon's CFAA claim fails regardless of how Amazon frames the authorization element.

(c) <u>Amazon fails to plausibly allege any of the remaining CFAA elements</u>

Even if Amazon could allege that Perplexity accessed an Amazon computer without authorization or in excess of authorized access, the Complaint does not adequately allege the remaining CFAA elements.

***"[O]btain[ed] . . . information from any protected computer."*** Amazon cannot allege that Perplexity obtained information from any Amazon computer. The word "computer" appears in the CFAA twice, and access to a computer and obtaining information ***from that computer*** are therefore separate elements. *See* 18 U.S.C. § 1030(a)(2)(C); *Brekka*, 581 F.3d at 1132.[4]

Amazon's Complaint acknowledges that the Assistant is "embedded in the browser" on the user's computer. Compl. Ex. 7 at 2 (citation modified); *see id.* Ex. 6 (stating that Comet is "download[ed]" onto users' computers). And although Amazon alleges in conclusory fashion that the Assistant "transmits" user information "back to Perplexity's servers," Compl. ¶ 33, there is no

---

[4] Although the CFAA uses the phrase "any . . . computer" when describing the computer from which the defendant must have obtained information, Amazon's theory here is that its own computers are the computers at issue with respect to this element of the claim. *See* Compl. ¶ 67.

allegation that Perplexity obtained this information from any source other than that user's computer. And it is of no moment whether the information on the user's computer originally came in some sense from an Amazon computer. *See Nosal*, 676 F.3d at 863 ("If Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly."). Amazon's CFAA claim accordingly must be dismissed for this additional reason.

***"[L]oss."*** Under the CFAA's final element, Amazon must allege an annual "loss" of at least $5,000. 18 U.S.C. § 1030(g); *see id.* § 1030(c)(4)(A)(i)(I), (e)(11); *see also Brekka*, 581 F.3d at 1132. In *Van Buren v. United States*, the Supreme Court recognized that the CFAA's reference to "loss" focuses on "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," so that the term "loss" "relates to costs caused by harm to computer data, programs, systems, or information services." 593 U.S. 374, 391-92 (2021) (quoting 18 U.S.C. § 1030(e)(11)). The Court noted that "***[l]imiting*** 'damage' and 'loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'" *Id.* at 392 (emphasis added) (citation omitted). In *hiQ Labs*, the Ninth Circuit stated that after *Van Buren*, the CFAA "requires a showing" of the technological harms the Supreme Court identified. 31 F.4th at 1195 n.12; *see X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983-84 (N.D. Cal. 2024) (dismissing CFAA claim under *Van Buren* because alleged losses were "not technological in nature" and there was "no allegation that [data] was corrupted, changed, or deleted").

Amazon does not allege any technological harm and therefore has not stated a claim under *Van Buren* and *hiQ*. It alleges $260,000 in damages, but it is clear from the face of the Complaint that this figure represents only "effort and resources used to investigate and combat" Perplexity, Compl. ¶ 57, not the cost of any "corruption of files" or "harm to computer data, programs, systems, or information services." *Van Buren*, 593 U.S. at 391-92. Indeed, the Complaint pleads only that Amazon employees spent time trying to block Perplexity's access to Amazon.com, that the Assistant has impacted Amazon's relationships with its advertisers, and that Amazon has spent time blocking and unblocking users who accessed Amazon.com with the Assistant. Compl. ¶¶ 57-63. Amazon's CFAA claim thus must be dismissed.

Even if *Van Buren*'s and *hiQ Labs*'s discussions of technological harms were nonbinding, Amazon's alleged damages still do not suffice. In *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195 (10th Cir. 2026), the Tenth Circuit disagreed with the Ninth Circuit and held that *Van Buren* does not foreclose recovery of certain costs attributable to investigating a CFAA violation. *Id.* at 1201. But the court added that "expenses related to business harms" still do not qualify, even if they could otherwise be characterized as investigative costs. *Id.* (stating that not "***all*** investigative costs" are recoverable). The court said recoverable investigative costs must stem from efforts to "identify[] the perpetrator or the method by which the offender accessed the protected information." *Id.* (citation omitted).

The harms Amazon alleges are not recoverable "losses" even under the *Moxie Pest* standard. Amazon alleges $260,000 in damages, but it does not specify what portion of those damages stems from efforts to "identify[]" Perplexity "or the method by which" Perplexity "accessed . . . protected information." *Id.* Even assuming the $260,000 figure is accurate, Amazon does not show how it calculated that figure and gives the Court no reason to infer that those alleged damages did not result from the "engineering resources" that Amazon allegedly used to "detect and filter out . . . non-human impressions [from the Assistant] before billing advertisers." Compl. ¶ 61. And the alleged advertising damages are quintessential "business harms" that are not cognizable under *Moxie Pest*. 164 F.4th at 1201.

In short, Amazon fails to plausibly allege any element of a CFAA claim under 18 U.S.C. § 1030(a)(2).

**2. Amazon has not plausibly alleged a violation of 18 U.S.C. § 1030(a)(4)**

The elements of a claim under 18 U.S.C. § 1030(a)(4) are the same as under § 1030(a)(2), except that Amazon must also allege that Perplexity acted "knowingly" and with "intent to defraud" and that its access without or exceeding authorization "further[ed] the intended fraud." *Brekka*, 581 F.3d at 1132 (alteration in original) (quoting 18 U.S.C. § 1030(a)(4)). Amazon's claim under § 1030(a)(4) thus fails for the same reasons it fails under § 1030(a)(2).

But even if the Complaint adequately alleged a § 1030(a)(2) claim, the § 1030(a)(4) claim must be dismissed for two additional reasons. First, to adequately plead an intent to defraud,

Amazon must allege that Perplexity intended "to obtain money or property from the victim of the deceit." *United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989) (per curiam) (citation omitted); *see United States v. Castleman*, 572 U.S. 157, 162 (2014) ("It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." (citation modified)). Amazon alleges that Perplexity's "intended fraud" served the purpose of "obtain[ing] data from Amazon," Compl. ¶ 68, but the only data referenced in the Complaint is the customer's own data—data that Amazon does not even own. *See hiQ Labs*, 31 F.4th at 1201 (stating that "[t]he data hiQ seeks to access is not owned by LinkedIn"); *see also* Cal. Civ. Code § 1798.105(a) ("A consumer shall have the right to request that a business delete any personal information about the consumer which the business has collected from the consumer."). Moreover, Amazon alleges in only conclusory fashion that the value of this data exceeds $5,000. Compl. ¶ 68; *see Fayer*, 649 F.3d at 1064 (stating that conclusory allegations are insufficient to defeat a motion to dismiss).

Second, Amazon has not come close to satisfying the particularity requirements that apply to fraud allegations under Rule 9(b). *See* Fed. R. Civ. P. 9(b) (requiring that plaintiff "state ***with particularity*** the circumstances constituting fraud" (emphasis added)). Amazon's fraud allegations appear to stem from its objection to Comet's user-agent string, *see* Compl. ¶ 68, but Amazon does not allege that Perplexity was under any legal duty to adopt any particular user-agent string, and it does not explain why "using the same user-agent string as Google Chrome" constitutes a misleading or false statement, Compl. ¶ 35. The most Amazon can muster is that it "is considered" (by whom, Amazon does not say) "responsible practice on the web to use a user-agent string that distinguishes requests initiated by an AI agent from requests resulting directly from human action." *Id.* But alleging bad manners falls far short of alleging a false or misleading statement. Amazon has thus not "set forth what is false or misleading about" any Perplexity "statement, and why it is false." *Williams*, 384 F. Supp. 3d at 1048 (quoting *Vess*, 317 F.3d at 1106). The Court should dismiss the § 1030(a)(4) claim with prejudice.

**B. Amazon Fails To State A Claim Under The CDAFA**

As the Ninth Circuit recognized, "Amazon's CFAA and CDAFA claims rise and fall together." CA9 Op. at 18; *see Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) ("CDAFA claims generally rise or fall with CFAA claims because the [statutes'] necessary elements . . . do not differ materially" (citation modified)). The CDAFA, like the CFAA, "applies only to 'any person' who causes unauthorized access." CA9 Op. at 18 (citing Cal. Penal Code § 502(c)(7)). As discussed above with respect to the CFAA, where a human user engages the Assistant to perform tasks on Amazon, the "person . . . causing the access" is the user, not Perplexity. *Id.* Therefore, Amazon's CDAFA claim fails for the same reasons its CFAA claim does. *See id.* Though Amazon purports to raise claims pursuant to multiple subparagraphs under § 502(c) of the CDAFA, *see* Compl. ¶¶ 74-77, all those subparagraphs require that the defendant be the "person who commits" the relevant act (accessing or using computer services). Again, the Ninth Circuit determined that this "person" is the human user where the user directs the Assistant to interact with Amazon. CA9 Op. at 18. Thus, this Court should "arrive at the same conclusion" for Amazon's CFAA and CDAFA claims, *id.*—Amazon cannot state a claim under either statute.

Moreover, like its federal "analogue," the CDAFA is focused on "conduct such as hacking into and tampering with computer systems and data," not innocuous actions like the use of an online shopping assistant. *See* CA9 Op. at 17 (quoting *Teran v. Superior Ct.*, 334 Cal. Rptr. 3d 299, 308 (Ct. App. 2025)). California courts have cautioned against "unconstrained" interpretations of the statute that would lead to "arbitrary and unreasonable consequences." *Teran*, 334 Cal. Rptr. 3d at 311. Exposing Californian Comet users to felony criminal liability for using a browser tool to do online shopping is precisely the type of arbitrary and unreasonable outcome California courts caution against.

## II. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER AMAZON'S CDAFA CLAIM

The Court should relinquish supplemental jurisdiction over Amazon's CDAFA claim if it does not dismiss it outright. If the Court dismisses Amazon's CFAA claim, the only "claim[] over which it has original jurisdiction," then it "may decline to exercise supplemental jurisdiction" over

the CDAFA claim. 28 U.S.C. § 1367(c)(3). And where, as here, all federal claims are dismissed before trial, interests of "economy, convenience, fairness, and comity" presumptively "point toward declining" supplemental jurisdiction. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation omitted). This case is no exception.

First, economy and convenience do not favor supplemental jurisdiction because this matter has not cost the federal system much time or money. "This case has not advanced beyond the pleading stage," *Sepulveda v. Taqueria y Carniceria Martinez LLC*, No. 23-cv-1781, 2024 WL 69066, at *2 (N.D. Cal. Jan. 5, 2024) (declining supplemental jurisdiction), and "[f]ew federal resources have been expended" thus far, *Marcos v. Equity One Lenders Grp.*, No. 11-cv-4000, 2011 WL 6225273, at *2 (N.D. Cal. Dec. 14, 2011) (same). The parties' dispute over Amazon's preliminary injunction motion, as well as Perplexity's present motion to dismiss, constitute the totality of substantive progress in this litigation. The parties have not "engaged in substantial discovery." *Gastelum v. Kohl's Inc.*, No. 21-cv-1740, 2023 WL 2575825, at *11 (E.D. Cal. Mar. 20, 2023) (declining supplemental jurisdiction). They have not exchanged a single document, designated expert witnesses, prepared expert reports, or conducted depositions. Thus, few sunk federal costs would be wasted if the Court relinquished jurisdiction.

Second, Amazon's claims raise novel and complex issues concerning the CDAFA's scope, and comity demands that California courts be permitted to address those issues in the first instance. *See* 28 U.S.C. § 1367(c)(1). Agentic AI is still a "nascent technology." CA9 Op. at 21. Whether and how the CDAFA applies to this intricate, evolving technology is a question that no California court has "directly addressed." *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 778 (E.D. Cal. 2020) (declining supplemental jurisdiction). Rather than attempt to resolve this "difficult and novel issue . . . for the first time," the Court should permit California to develop its own law. *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1284 (S.D. Cal. 2002) (declining supplemental jurisdiction).

Finally, allowing Amazon to pursue its CDAFA claim in California court would not result in any unfairness to Amazon. Amazon has not spent significant resources on this case in federal court, and if anything, it would benefit from having its CDAFA claim heard by a California court

with specialized expertise in California law. *See Hummel v. Smith*, 2010 WL 415252, at *1 (W.D. Wash. Jan. 27, 2010) (declining supplemental jurisdiction "would not be unfair" where "[t]he state court more frequently handles issues involving state anti-discrimination law").

## CONCLUSION

Perplexity respectfully requests that the Court grant this motion and dismiss the Complaint with prejudice.

DATED: September 11, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *<u>/s/ John B. Quinn</u>*
John B. Quinn
*Attorneys for Defendant Perplexity AI, Inc.*