**HUESTON HENNIGAN LLP**
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Christine Woodin (SBN 295023)
cwoodin@hueston.com
Hagan Scotten (admitted *Pro Hac Vice)*
hscotten@hueston.com
Billy Joe McLain (SBN 290682)
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC., a Delaware corporation.<br><br>Defendant. | Case No.: 3:25-cv-09514-MMC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT;**<br><br>**(2) VIOLATIONS OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT; AND**<br><br>**(3) TORTIOUS INTERFERENCE WITH CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Amazon.com Services LLC ("Amazon") alleges as follows:

**INTRODUCTION**

1. Amazon brings this action to stop Perplexity AI, Inc.'s ("Perplexity" or "Defendant") persistent, covert, and unauthorized access into Amazon's protected computer systems in violation of federal and California computer fraud and abuse statutes. This case is not about stifling innovation; it is about unauthorized access and trespass. It is about a company that, after repeated notice, chose to disguise an automated "agentic" browser as a human user, to evade Amazon's technological barriers, and to access private customer accounts without Amazon's permission. Amazon's request is straightforward: Perplexity must be transparent when deploying its artificial intelligence ("AI") agent on Amazon.com (the "Amazon Store") and it must respect Amazon's right to exclude or limit the activity of Perplexity's AI agent in private customer accounts on the Amazon Store. No different than any other intruder, Perplexity is not allowed to go where it has been expressly told it cannot; that Perplexity's trespass involves code rather than a lockpick makes it no less unlawful.

2. Amazon also brings this action to stop and remedy Perplexity's ongoing tortious interference with the contractual relations between Amazon and its customers. Perplexity built an AI agent to operate inside the Amazon Store in precisely the ways Amazon's Conditions of Use forbid. It sent that AI agent into the Amazon Store and its password-protected areas after Amazon told Perplexity that the agent was not permitted there, and it shipped successive updates that defeated the technological measures Amazon deployed to stop it. Every time Perplexity's AI agent is deployed in the Amazon Store, that conduct breaches the contract between Amazon's customer and Amazon governing the customer's use of the Store—and Perplexity, which designed and deploys the AI agent and directs its every action from Perplexity's own servers, intends that result and profits from it.

3. Amazon operates the Amazon Store, an online store serving hundreds of millions of customers. The Amazon Store is more than a catalog of webpages: it is an integrated, dynamic environment that provides Amazon customers with a secure, curated, and individualized shopping

experience. To enable Amazon to provide the best customer experience, Amazon customers must register for an account using unique login credentials. After doing so, they can manage and track their orders, review their order history, receive personalized recommendations, store credit cards and delivery addresses, and process returns, among other things. To protect the Amazon Store and its customers' private information, and preserve customer trust, Amazon invests heavily in technical and organizational safeguards including numerous cybersecurity measures.

4. Perplexity operates AI-based products and services, including an application called Comet that includes "agentic AI" functionality. Unlike more familiar AI tools, which generate text or provide information in response to prompts from users, AI agents can, among other things, plan and carry out multi-step tasks for a user with little input. In practice, these AI tools can independently interact with third-party websites, use stored credentials, and perform actions on the users' behalf—executing sequences that resemble a human-controlled browser session even when no human is actively clicking. Relevant here, Comet allows users to browse the internet and to ask the Comet AI agent to carry out tasks, including making purchases. The Comet AI agent then executes those purchases by interacting with and placing orders on websites, including the Amazon Store, through private customer accounts. Sometimes these actions may occur in response to a user's request but without the user's knowledge or specific direction. But, at all relevant times, Comet is under Perplexity's control and direction. Perplexity supplies nearly everything that directs, operates, and controls the Comet AI agent. The Comet AI agent operates through Perplexity's servers, takes actions Perplexity's servers instruct, sends what it sees inside password-protected Amazon accounts back to Perplexity, and serves Perplexity's own commercial ends.

5. The Comet AI agent bears no resemblance to the operation of a conventional browser like Safari. The Comet AI agent is not a passive feature of a browser sitting on a user's desk. It is Perplexity's instrument, operated by Perplexity through Perplexity's servers. When a Comet user asks the AI agent to shop, Perplexity selects sites and pages to access, and Perplexity directs JPEG screenshots and HTML snapshots of secure, password-protected Amazon pages back to Perplexity's servers; Perplexity then decides which button to click, which field to fill, and where

to navigate next; and Perplexity's servers transmit those commands back to the user's Comet browser for execution inside the Amazon Store. Perplexity decides what the agent may and may not do, can stop it mid-task, and can change its behavior remotely without the user's knowledge or consent. Perplexity gains entry to Amazon's servers by directing the Comet AI agent to access them, view them, and transmit their contents to Perplexity and elsewhere.

6. On Comet for iOS (i.e., for Apple's mobile operating system), a newer Perplexity offering, Perplexity dispenses with the user's computer altogether: Perplexity's own cloud servers take the user's Amazon authentication cookies—which are the data files that tell Amazon's servers a customer has already signed in so that whoever holds them is treated as that customer without needing to re-enter a password—and use those cookies to browse the Amazon Store itself. From Comet for iOS's launch on March 18, 2026, until at least May 11, 2026, Perplexity's cloud servers connected directly to Amazon's computers in this way, including in the very weeks in which Perplexity was representing to the Ninth Circuit, in briefs filed on April 1 and May 6, 2026, that "no Perplexity computer ever has direct access to an Amazon computer." As explained further below, Perplexity's statements to the Ninth Circuit were false when made. Perplexity, which alone designed and operates Comet for iOS, must have known the facts when it made the false statements, but Perplexity has never corrected them.

7. The record developed so far makes it clear that Perplexity will say whatever suits it best rather than what is true. To this Court and to the Ninth Circuit, Perplexity has portrayed the Comet AI agent as a passive local tool: it has represented that "at no point does the Assistant contact Amazon's servers,"[1] that the agent "does not access any private or limited-access computer systems,"[2] that "no Perplexity computer ever has direct access to an Amazon computer,"[3] and that if the Comet AI agent "is an agent of anyone, it's an agent of the user."[4] To the public, however,

[1] Decl. of Dzianis Yarats ISO Opp. to PI Mot. (Dkt. 35-2) ¶ 19.

[2] Perplexity's Opp'n to Mot. for Prelim. Inj. (Dkt. 35) at 20.

[3] Perplexity's Opening Br. at 9, No. 26-1444 (9th Cir. Apr. 1, 2026).

[4] Mar. 6, 2026 Prelim. Inj. Hr'g Tr. (Dkt. 85) at 77:14–16 (misidentifying Perplexity's counsel as Amazon's counsel).

Perplexity tells the opposite story: it markets Comet as an autonomous agent that can "actively conduct[] entire browsing sessions," "click[] buttons . . . and navigat[e] websites autonomously," "buy something you forgot," "go[] beyond information processing to actively perform tasks," and "execute[] complete workflows while keeping perfect context."[5] Perplexity's Chief Executive Officer has said publicly that Perplexity built Comet to track everything its users do online so that Perplexity can build user profiles and sell advertising.[6] Both stories cannot be true. As alleged below, the Comet AI agent acts inside Amazon's password-protected systems because Perplexity decides, directs, and transmits everything the agent does there.

8. Because agentic AI tools like Comet can act within protected computer systems, including private customer accounts requiring a password, they present risks to Amazon's customers and the Amazon Store. Amazon reasonably requires automated AI agents—that is, AI tools (like Comet) that access Amazon's Store and private account information on behalf of registered Amazon customers—to transparently identify themselves. This is necessary for Amazon to, among other things, ensure the AI agents do not pose risks to Amazon's customers in the Amazon Store. Amazon has communicated these requirements directly to companies operating AI agents, including Perplexity. Such transparent identification of AI agents is also required under Amazon's Conditions of Use, which are publicly available to everyone. These requirements protect Amazon's right to know and control who is accessing its private servers and are integral to Amazon's ability to protect its customers' data.

9. Rather than be transparent, Perplexity has purposely configured its Comet AI software to not identify the Comet AI agent's activities in the Amazon Store: Perplexity falsely identifies its Comet AI agent activity as coming from Google Chrome, which is a separate, widely used web browser owned by Google. As a result, Perplexity's Comet AI agent covertly poses as a

---

[5] Ex. 1, Perplexity, *Introducing Comet* (Jul. 9, 2025), https://www.perplexity.ai/hub/blog/introducing-comet; Ex. 2, Perplexity, *Comet Assistant vs. Comet Agent*, https://www.perplexity.ai/comet/resources/articles/comet-assistant-vs-agent.

[6] Ex. 3, Julie Bort, *Perplexity CEO Says Its Browser Will Track Everything Users Do Online to Sell "Hyper Personalized" Ads*, TechCrunch (Apr. 24, 2025), https://techcrunch.com/2025/04/24/perplexity-ceo-says-its-browser-will-track-everything-users-do-online-to-sell-hyper-personalized-ads/.

human customer shopping in the Amazon Store on a Google Chrome browser.

10. Perplexity creates considerable risks to Amazon's customers when it deploys its unauthorized and covert AI agent into the Amazon Store's private customer accounts. As just one example, Perplexity's Comet browser and AI agent are vulnerable to attacks from cyber criminals. These cyber criminals can exploit Perplexity's cybersecurity failures and leverage the Comet AI agent to compromise personal and private data from Amazon's customers who use the Comet AI agent. It has been publicly reported that cyber criminals and other bad actors can "hijack[] the AI assistant embedded in the browser to steal data."[7] Comet's vulnerabilities place the private data of Amazon customers who use the Comet AI agent, and by extension, Amazon's hard-won customer trust, at risk.

11. Beyond security risks to Amazon's customers, Perplexity's Comet AI agent has degraded Amazon customers' shopping experience and interfered with Amazon's ability to ensure customers who use the Comet AI agent receive the benefits of the individualized shopping experience that Amazon has spent decades curating.

12. Since November 19, 2024, Amazon has told Perplexity's executives on at least five separate occasions that its AI agents may not covertly access the Amazon Store without Amazon's permission. First Perplexity agreed, then went back on its word. Next, after Amazon detected the Comet AI agent covertly accessing private customer accounts and told Perplexity to stop, Perplexity claimed that Comet AI was not agentic when its own marketing materials admit otherwise. Amazon then set up a technological barrier to restrict the Comet AI agent from covertly accessing private customer accounts. In response, Perplexity released a Comet software update specifically designed so that the Comet AI agent could evade that technological barrier. And when Amazon again addressed Perplexity's unauthorized conduct with Perplexity on two separate occasions, Perplexity refused to stop. Perplexity's CEO understood that Perplexity was deliberately flouting Amazon's rules, but had no legitimate justification for why Perplexity would not act honestly and

[7] Ex. 4, Ravie Lakshmanan, *CometJacking: One Click Can Turn Perplexity's Comet AI Browser Into a Data Thief*, The Hacker News (Oct. 4, 2025), https://thehackernews.com/2025/10/cometjacking-one-click-can-turn.html.

transparently. Finally, on October 31, 2025, Amazon sent a cease-and-desist letter to Perplexity reiterating Amazon's prohibition against Perplexity using AI agents to covertly access Amazon's private customer accounts.

13. Perplexity's defiance did not end when Amazon filed this action on November 4, 2025. On December 5, 2025, Amazon implemented a second technological block that prevented the Comet AI agent from accessing pages in the Amazon Store in a logged-in state, and Amazon's counsel notified Perplexity's counsel in writing that same day, warning that any further attempt to evade the block "would be improper and illegal." Within two days, Perplexity circumvented that block too.

14. On March 9, 2026, this Court preliminarily enjoined Perplexity from "[a]ccessing, attempting to access, or assisting, instructing, or providing a means for others to access or attempt to access Amazon's protected computer systems using AI agents."[8] Nine days later, Perplexity launched Comet for iOS, whose AI agent copies users' Amazon-authenticated session data to Perplexity's own cloud servers and then accesses Amazon's servers directly. Through Comet for iOS, Perplexity's servers connected to Amazon's servers, without passing through any user's device, on a daily basis between March 18, 2026 and at least May 11, 2026—all while Perplexity was representing to the Ninth Circuit that "no Perplexity computer ever has direct access to an Amazon computer."[9]

15. Perplexity's pattern is clear: when confronted, it denies; when blocked, it evades; and when warned, it persists. Perplexity has made clear that it does not care about rules or the rights of others when it comes to its AI agent. Perplexity used Amazon Prime accounts in violation of the Prime terms to power its "Buy with Pro" service; it agreed in November 2024 not to deploy AI agents in the Amazon Store and then deployed one anyway; it built the Comet AI agent to operate in the Amazon Store despite being told it was not allowed there and in ways Amazon's Conditions of Use forbid; and, not once but twice, Perplexity redesigned Comet so as to circumvent Amazon's technological measures blocking Comet. The law does not require Amazon to tolerate

[8] Order Granting Amazon's Mot. for Prelim. Inj. (Dkt. 81) at 7.
[9] Perplexity's Opening Br. at 9, No. 26-1444 (9th Cir. Apr. 1, 2026).

a concealed, automated actor that refuses to identify itself, gains unauthorized access to private customer accounts, and defeats access controls to continue to do so. Amazon, through this lawsuit, seeks to immediately stop Perplexity from its continuing injurious actions, from which Amazon has suffered irreparable harm, and which will continue unless Perplexity is enjoined from further trespass into Amazon's protected servers.

## PARTIES

16. Plaintiff Amazon is a Delaware limited liability company.

17. Defendant Perplexity is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

18. This Court has federal question jurisdiction over the violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) alleged in this Complaint pursuant to 28 U.S.C. § 1331.

19. The Court has supplemental jurisdiction over the violation of the California Comprehensive Computer Data Access and Fraud Act (California Penal Code § 502) and over Amazon's state-law claims for tortious interference with contract pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Amazon's federal claim.

20. This Court has personal jurisdiction over Perplexity because Perplexity's headquarters and principal place of business are in San Francisco.

21. Venue is proper under 28 U.S.C. § 1391(b)(1) because Perplexity resides in San Francisco. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Amazon's claims occurred in San Francisco.

22. The California Penal Code § 502 creates a private civil cause of action. Jurisdiction and venue are also proper in this Court under California Penal Code § 502(j), which states: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

**BACKGROUND**

**I. Background on the Amazon Store**

23. Amazon owns and operates the Amazon Store, which is an online store accessible in the United States at www.amazon.com. Through the Amazon Store, customers can browse, select, and purchase a wide variety of products and services. From its inception as an online bookstore, the Amazon Store has built its business around a simple principle: putting customers first. This customer-centric focus has allowed the Amazon Store to consistently deliver for its customers.

24. Over decades, Amazon has developed a distinctive shopping experience in the Amazon Store for each individual customer. That shopping experience is designed to help customers find and discover products that cater to their needs based on key elements, including reviews, price, availability, delivery speed, measures of post-purchase satisfaction like return rates, and each customer's browsing and shopping history.

25. To access that individualized shopping experience, customers must register a private account in the Amazon Store secured with unique login credentials. Within each private account, customers can, among other things, manage and track their orders; save items for later purchases; receive personalized recommendations; store payment, personal address and contact information; and receive updates regarding their purchases.

26. Amazon employs a range of cybersecurity measures—including encryption, multi-factor authentication options, and suspicious activity monitoring—to protect the data in customers' private accounts. These cybersecurity measures place Amazon among the best major providers at protecting customer information.

**II. The Amazon Store's Conditions of Use**

27. All activities in the Amazon Store and use of related Amazon services and products are governed by the Amazon Store's Conditions of Use.[10]

28. The Conditions of Use form a binding contract between Amazon and its customers.

[10] Ex. 5, *Conditions of Use*, Amazon (May 30, 2025), https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM.

The Conditions of Use state: "By using the Amazon Services, you agree, on behalf of yourself and all members of your household and others who use any Amazon Service under your account, to the following conditions."

29. On May 30, 2025, Amazon updated the Amazon Store's Conditions of Use to add a dedicated section on AI Agents ("Agent Terms"). The Agent Terms require that AI agent providers like Perplexity clearly identify AI agents and refrain from any actions to conceal or obscure agentic activities. They also explain that Amazon limits AI agents' access to the Amazon Store and requires AI agent providers to abide by such limits.

30. Perplexity has had specific knowledge of the Conditions of Use, including the Agent Terms, at all relevant times. For example, in its opposition brief to Amazon's motion for preliminary injunction, Perplexity quoted the Agent Terms and acknowledged that they apply to any customer who "use[s], allow[s], enable[s], or cause[s] the deployment of an Agent" in the Amazon Store.[11] And at the March 6, 2026 hearing on Amazon's motion for a preliminary injunction, Perplexity's counsel acknowledged Perplexity's understanding that Amazon's terms of service "prevent users from using this AI Agent."[12]

31. Among other things, the Conditions of Use include the following provisions:

> **LICENSE AND ACCESS**
>
> Subject to your compliance with these Conditions of Use and any Service Terms, and your payment of any applicable fees, Amazon or its content providers grant you a limited, non-exclusive, non-transferable, non-sublicensable license to access and make personal and non-commercial use of the Amazon Services. This license does not include any resale or commercial use of any Amazon Service, or its contents; any collection and use of any product listings, descriptions, or prices; any derivative use of any Amazon Service or its contents; any downloading, copying, or other use of account information for the benefit of any third party; or any use of data mining, robots, or similar data gathering and extraction tools. . . . No Amazon Service, nor any part of any Amazon Service or its contents, may be reproduced, duplicated, copied, sold, resold, visited, or otherwise exploited for any commercial purpose without express

[11] Perplexity's Opp'n to Mot. for Prelim. Inj. (Dkt. 35) at 9.

[12] Mar. 6, 2026 Prelim. Inj. Hr'g Tr. (Dkt. 85) at 78:5–7 (misidentifying Perplexity's counsel as Amazon's counsel).

> written consent of Amazon. . . . You may not frame or utilize framing techniques to enclose any trademark, logo, or other proprietary information (including images, text, page layout, or form) of Amazon without express written consent. . . . You may use the Amazon Services only as permitted by law. The licenses granted by Amazon terminate if you do not comply with these Conditions of Use or any Service Terms.
>
> . . .
>
> **ADDITIONAL AMAZON SOFTWARE TERMS**
>
> The following terms ("Software Terms") apply to any software (including any updates or upgrades to the software) and any related documentation we make available to you in connection with Amazon Services (the "Amazon Software").
>
> 1. **Use of the Amazon Software**. You may use Amazon Software solely for purposes of enabling you to use the Amazon Services as provided by Amazon, and as permitted by these Conditions of Use and any Service Terms. You may not incorporate any portion of the Amazon Software into other programs or compile any portion of it in combination with other programs, or otherwise copy (except to exercise rights granted in this section), modify, create derivative works of, distribute, assign any rights to, or license the Amazon Software in whole or in part. All software used in any Amazon Service is the property of Amazon or its software suppliers and is protected by United States and international copyright laws.
>
> . . .
>
> 3. **No Reverse Engineering**. You may not reverse engineer, decompile or disassemble, tamper with, apply any other process or procedure to derive the source code or other underlying components (such as a model, model parameters, or model weights), or bypass any security associated with the Amazon Software, whether in whole or in part.
>
> . . .
>
> **AGENTS**
>
> The terms in this section ("Agent Terms") apply if you use, allow, enable, or cause the deployment of an Agent to access, use, or interact with any Amazon Services. For the purposes of these Agent Terms, "Agent" means any software or service that takes autonomous or semi-autonomous action on behalf of, or at the instruction of, any person or entity.
>
> 1. **Transparency and Consent**. No Agent may access, use, or interact with Amazon Services unless, at all times, it identifies

> itself and operates in strict accordance with the requirements in section 3 of these Agent Terms. In addition, no Agent may access, use, or interact with Amazon Services if we have requested that the Agent refrain from accessing, using, or interacting with any Amazon Service.
>
> 2. **Limitation on Access**. At our sole discretion, we may limit, including by technical measures, whether and how any Agent accesses, uses, and interacts with Amazon Services.
>
> 3. **Technical Requirements**. Agents must:
>
>     i. In all HTTP/HTTPS requests, identify that the request is from an Agent and disclose the name of the Agent by including the following in the request's user agent string:
>     "Agent/[agent name]" (e.g., Agent/AmazonAgent)
>
>     ii. Not conceal or obfuscate that any access, use, or interactions are from an Agent, such as by (a) mimicking the speed or pattern of human keystrokes, page navigation, or other interactions or (b) completing or circumventing CAPTCHAs or other measures intended to distinguish computers from humans.
>
>     iii. Respond truthfully to any question or prompt seeking to determine if interactions are coming from a human or a computer.
>
>     iv. Not circumvent or otherwise avoid any measure intended to block, limit, modify, or control whether and how Agents access, use, or interact with an Amazon Service.

## III. Background on Perplexity and the Comet Browser

32. Perplexity is a technology company founded in 2022.

33. Perplexity develops and operates AI-based products and services, including a web browser application called Comet that Perplexity first released to paying subscribers on July 9, 2025. Comet allows users to browse the internet and use Perplexity's AI tools, including the Comet AI agent. Comet users can ask the Comet AI agent to perform tasks in service of the user's end goals but under the direction of Perplexity, such as placing an order in the Amazon Store. On October 2, 2025, Perplexity made the Comet browser and Comet AI agent widely available to the public for free.

**A. How the Comet AI Agent Operates**

34. Perplexity designs, develops, and controls both the Comet browser and the Comet AI agent.

35. The Comet AI agent does not reason for itself on the user's device; it is operated and directed by Perplexity. When a user prompts the Comet AI agent to achieve some goal, the Comet browser captures the content of the webpages rendered in the browser—including secure, password-protected Amazon pages—and transmits that content to Perplexity's servers. Perplexity's servers process that information using its own AI models as well as by sending requests (containing the user's content) to external third-party AI models, determine what action the agent should take next, and return instructions to the Comet browser, which executes them in the Amazon Store. As Perplexity's Chief Technology Officer has confirmed in this litigation, the Comet AI agent "communicates with Perplexity's servers as necessary to process natural language instructions and determine appropriate actions." And as Perplexity has admitted in sworn interrogatory responses, "Perplexity's servers can play several roles on receipt of communications from the [AI agent] . . . , including processing the user's instructions, communicating to the [AI agent] regarding how to implement such user instructions, and collecting and processing user data." A user's prompt initiates a task and defines its goal, but Perplexity decides everything else, including whether the agent enters the Amazon Store, which pages it requests, what it clicks and types out once inside, and what it transmits back to Perplexity.

36. The user need not even choose the Amazon Store. A user may type only a generic request, and Perplexity decides whether the Comet AI agent enters the Amazon Store at all. On September 15, 2026, a user testing the Comet AI agent asked the agent to "shop for AA batteries." The Comet AI agent's initial response described types of batteries and linked to other websites but did not mention the Amazon Store. The user then typed "order for me," but did not ask the Comet AI agent to shop on the Amazon Store. Even though the user did not mention the Amazon Store or even have Amazon.com open on their web browser, the Comet AI agent opened the Amazon Store in a new tab, used the account's stored login session to access the password-protected areas

of the Amazon Store, and navigated to the product page for AA batteries. When the user typed "complete the order," the Comet AI agent announced that it would "use 'Buy Now' to go straight to checkout," clicked Buy Now, and proceeded to Amazon's secure checkout page inside the password-protected account, where the account's stored delivery address was displayed. In a separate case on September 15, 2026, a user asked the Comet AI agent to "buy" a particular book. The Comet AI agent first displayed the book on Barnes & Noble's website. Then, when the user chose "Yes, buy the paperback" from options the Comet AI agent itself proposed from Barnes & Noble, the Comet AI agent instead opened the Amazon Store, added the book to the user's cart, and proceeded to checkout. In each sequence the user never selected the Amazon Store and never navigated to it. The user merely identified a product; Perplexity chose the Amazon Store over every other retailer, chose the specific product, chose to use the account's stored Amazon session, and chose each page to request and each button to click. Perplexity made every decision, and the Comet AI agent executed every action. Perplexity thus orchestrates the actions taken inside the secure, password-protected areas of Amazon.com, and the Comet AI agent executes those actions.

37. Perplexity's control over the Comet AI agent is not general or advisory. It is exercised action by action. Independent security researchers have verified that Comet maintains a persistent, two-way connection between the user's machine and an endpoint that Perplexity operates.[13] Over that connection, Perplexity issues remote-procedure-call commands to a browser extension that Perplexity built into Comet. The extension reads the page the browser has rendered, using the browser's debugging interface to extract the page's full accessibility tree. Next, the extension returns to Perplexity's servers a machine-readable map of the page's interactive elements. Perplexity, via its own and/or third-party providers' frontier AI models, then selects the specific element to act upon, identified either by reference identifier or by on-screen coordinates. Perplexity's servers then transmit the corresponding command—click this, type that, navigate there—back to the extension, which carries it out against the live page. In this system, the Comet AI agent running in the user's browser just does what Perplexity directs it to do. It is an effector

[13] Ex. 6, Raul Klugman-Onitza, *Perplexity Comet: A Reversing Story*, Zenity Labs (Feb. 11, 2026), https://labs.zenity.io/post/perplexity-comet-a-reversing-story.

that performs, click by click and keystroke by keystroke, the actions Perplexity directs it to perform inside secure, password-protected Amazon pages. Perplexity has described the Comet AI agent in the same terms: it "navigat[es] purposefully through" the Amazon Store, "automates clicks within Amazon's user interface," and "behaves like an efficient human shopper."[14] Perplexity's commands specify the precise actions for the Comet AI agent to take and, where navigation is required, the precise Amazon.com URLs to visit. Those commands cause the Comet browser to transmit to Amazon's servers new requests that no human user composed or initiated.

38. Perplexity decides what the Comet AI agent may and may not do. Perplexity has publicly described classifiers running on Perplexity's servers that evaluate the agent's proposed actions as the agent works and that halt the agent before it acts when Perplexity's systems judge an action unsafe. Perplexity has likewise imposed code-level prohibitions that categorically bar the agent from certain conduct no matter what the user asks. Perplexity can also change the agent's behavior remotely and without a full software release: Perplexity's Chief Technology Officer has stated that "[b]etween builds, Perplexity can make incremental improvements to certain components of Comet, including Assistant, via browser extensions."[15] Perplexity controls the model that drives the agent, the instructions Perplexity's servers send it, the identifying information the agent transmits to Amazon, and the conditions under which the agent will act. Perplexity controls every one of those things.

39. On information and belief, Perplexity's own engineers and employees use the Comet agent to access password-protected areas in the Amazon Store to develop, test, validate, and approve Comet and its software updates. Perplexity asserts that its team of "nearly 100 engineers, designers, and product specialists" spent "seven months" building the agent and "ensuring that the Assistant could work reliably across thousands of different websites."[16] Perplexity further asserts that Amazon is consistently one of its users' "most frequently visited retail websites," and that "Comet's ability to function on Amazon is essential to one of its core value propositions: helping

---

[14] Decl. of Dzianis Yarats ISO Opp. to PI Mot. (Dkt. 35-2) ¶¶ 16, 20.

[15] Supp. Decl. of Dzianis Yarats (Dkt. 54) ¶ 8.

[16] Decl. of Dmitry Shevelenko (Dkt. 35-1) ¶¶ 10–11.

users shop more efficiently on the sites they already use."[17] In initially developing the Comet AI agent, then, Perplexity and its employees must have developed, tested, and validated the agent's functionality on Amazon, through validating functions that exist only after authentication, including accessing account-specific pages, adding products to a cart, navigating checkout, and interacting with Amazon's secure webpages.

40. On information and belief, Perplexity and its employees directed the Comet AI agent to Amazon's secure webpages when Perplexity twice made changes to its software that defeated Amazon's technological barriers. Perplexity represents that its software builds undergo "weeks of development and internal testing before our engineering team approves it for release to users," and that it releases software updates designed to improve the Comet AI agent's ability to interact with websites either through a full software build or "incremental improvements to certain components of Comet."[18] Both of Amazon's technological barriers stopped the agent's access to logged-in, password-protected pages of the Amazon Store, and Perplexity's employees could not have identified what Amazon had changed, engineered around it, or confirmed that its workaround had succeeded without directing the Comet AI agent to access those pages. Amazon's own traffic analysis bears this out. Amazon observed customer accounts that repeatedly submitted the same search parameters to the Amazon Store. On information and belief, that traffic was Perplexity's own testing of the Comet AI agent against the Amazon Store, conducted through accounts Perplexity or its employees controlled. Perplexity also had the means and experience to conduct that testing through accounts it controlled: before launching Comet, Perplexity operated its own Amazon Prime accounts and used those accounts to browse and place Amazon orders for subscribers through its Buy with Pro service.[19]

41. The Comet AI agent depends on a continuous connection to Perplexity's servers: if the Comet AI agent cannot communicate with Perplexity's servers, it stops operating. Each agentic browsing session in the Amazon Store is a session directed by Perplexity, transmitting commands

[17] *Id.* ¶ 22.
[18] Supp. Decl. of Dzianis Yarats (Dkt. 54) ¶ 5, 8.
[19] Decl. of Dmitry Shevelenko (Dkt. 35-1) ¶ 25.

from Perplexity's servers through the user's Comet browser. Within a Comet browser session, the Comet AI agent can perform numerous tasks at Perplexity's direction. To make purchases in the Amazon Store, the Comet AI agent either uses the user's credentials already stored in the Comet browser, or, if the user has not previously logged in, navigates users to the Amazon Store's sign-in page and instructs them to log into their Amazon account. Once the Comet AI agent has access to the user's credentials, it has access to the user's private account information, which the Comet AI agent transmits back to Perplexity's servers. The Comet AI agent will then add items to the user's shopping cart, make purchases, and take other agentic actions in the Amazon Store on the user's behalf but at Perplexity's control and direction. The agent does not ask the user's permission before using the user's stored Amazon session, transmitting the contents of the secure, password-protected Amazon pages to Perplexity's servers, or taking most actions in the Store. Where a user has previously signed in through Comet, the agent gains entry to the secure, password-protected Amazon pages without any new sign-in. And the agent does far more than read. Perplexity's agent navigates through specific pages and parts of Amazon's computer systems, types into Amazon's forms, submits requests, adds items to carts, places orders, and can alter stored account settings such as the shipping address associated with an Amazon account. Each of those actions can cause input to, and change data residing on, Amazon's servers.

42. Perplexity also goes far beyond simply using the Comet AI agent to fulfill the user's instructions. Rather, Perplexity built the Comet AI agent to take additional actions on Perplexity's behalf and to build Perplexity's own business and to profit from it. Perplexity receives and retains what the Comet AI agent sees inside Amazon customers' private accounts. Perplexity has admitted that the agent "may temporarily store a JPEG screenshot or HTML snapshot of the webpage" on "a Perplexity server"; and that this may occur when a password-protected page is visible. Perplexity has further admitted that "any content visible on the user's browser at the time the screenshot or snapshot is taken would be included in the screenshot or snapshot"; and that such material may be retained for up to thirty days. In testing, Amazon observed a single Comet session transmit to a Perplexity endpoint the full contents of a password-protected Amazon browsing-

history page—including the customer's account name and postal code—together with a separate transmission containing the browser's complete record of pages visited, even though this information is not necessary to complete the user's instructions. As Perplexity's Chief Executive Officer has publicly confirmed, Perplexity purposely built Comet this way to track everything users do online to build user profiles and sell advertising.[20] Amazon's customers' private account data is the raw material for that business. The customer does not direct or even know of these transmissions. And the information Perplexity obtains does not consist of data passively displayed in the ordinary course of browsing. The information originates on Amazon's protected sites and servers and is retrieved in response to requests the agent makes at Perplexity's direction. Through this practice, Perplexity accumulates on its own servers and for its own commercial use, account information belonging to many Amazon customers—an aggregation no individual customer could or does authorize.

43. When Perplexity, through its servers, directs the Comet AI agent to access the Amazon Store, the resulting requests do not identify themselves as coming from the Comet browser, the Comet AI agent, or Perplexity. Instead, the requests are designed to look indistinguishable from user-initiated requests in a Google Chrome browser. When the Comet AI agent accesses the Amazon Store, it does not use a unique browser identifier or include any headers that indicate it is an agent-initiated request; instead it transmits the same "user-agent" string that is used by Google Chrome. A "user-agent" string is a standard piece of information sent by a web browser to identify itself to a third-party website.

44. It is considered responsible practice on the web to use a user-agent string that distinguishes requests initiated by an AI agent from requests resulting directly from human action. Unlike Comet, other web browsers with agentic AI capabilities use unique user-agent strings to identify the browser identity. Thus, by using the same user-agent string as Google Chrome, the Comet AI agent deceptively makes it appear that a human user is visiting the Amazon Store using the Google Chrome browser.

[20] Ex. 3.

45. This user-agent string is Perplexity's misrepresentation, not the customer's. A Comet user cannot change what the Comet AI agent tells Amazon about itself. Perplexity chooses that value, Perplexity codes it into the software Perplexity distributes, and Perplexity has changed it, along with the agent's other identifying characteristics, each time Amazon learned to detect the agent. Because the string Perplexity sends is Google Chrome's, every request the Comet AI agent sends to Amazon's servers carries a false statement about who is sending it, and Perplexity is the author of that statement.

46. Perplexity has used the same technique against other website operators. In August 2025, the same month Perplexity circumvented Amazon's first technological barrier, a major internet infrastructure provider publicly reported that, when websites blocked Perplexity's declared crawler, Perplexity switched to an undeclared crawler that impersonated Google Chrome on macOS and rotated through network addresses and networks not publicly attributable to Perplexity, across tens of thousands of domains and millions of requests per day.[21] The provider removed Perplexity from its list of verified operators. Perplexity's conduct toward Amazon is not an aberration; it is Perplexity's modus operandi. Nor is Perplexity's modus operandi confined to evading technical measures and concealing the agent's identity. Perplexity has disregarded each of the contractual and other rules governing access to the Amazon Store as it has encountered them.

## IV. Perplexity's Covert and Unauthorized Access into the Amazon Store

47. Since at least November 2024, Perplexity has repeatedly and deliberately gained unauthorized access to the Amazon Store.

### A. Perplexity Fraudulently Sets Up Amazon Prime Accounts to Facilitate its "Buy with Pro" Feature

48. In November 2024, Perplexity launched its "Buy with Pro" feature, allowing its paying subscribers to ask Perplexity to make purchases on third-party websites on their behalf,

[21] Ex. 7, Gabriel Corral et al., *Perplexity Is Using Stealth, Undeclared Crawlers to Evade Website No-Crawl Directives*, Cloudflare Blog (Aug. 4, 2025), https://blog.cloudflare.com/perplexity-is-using-stealth-undeclared-crawlers-to-evade-website-no-crawl-directives/.

while promising to provide free shipping "as a thank-you for shopping with Perplexity."[22] Perplexity marketed the "Buy with Pro" function as powered by agentic AI.

49. Perplexity used Amazon accounts, including Amazon Prime accounts, to facilitate "Buy with Pro." When Perplexity's paying subscribers used the "Buy with Pro" feature in the Amazon Store, Perplexity would place orders using Perplexity's Amazon accounts, including its Amazon Prime accounts, thereby allowing subscribers to make purchases and receive Prime benefits, such as free shipping, without having to create their own Amazon accounts or pay for Prime.

50. Perplexity's "Buy with Pro" feature risked interfering with Amazon's customer relationships and potentially deprived Amazon of revenue by giving third parties Prime's benefits even though those third parties may not have had Prime memberships. In addition, because users of Perplexity's "Buy with Pro" feature did not transact using their own Amazon accounts, this created the risk that they would be unable to access all features of the Amazon Store. For example, they may not have received Amazon's timely updates about their orders and may have experienced difficulties with returns and exchanges through Amazon because they were not interacting directly with the Amazon Store.

51. On November 19, 2024, Amazon discovered Perplexity's misuse of Prime memberships.

### B. Amazon Informs Perplexity that Access to the Amazon Store Through "Buy with Pro" is Unauthorized

52. On November 19, 2024, Amazon contacted and informed Perplexity that its use of Amazon Prime accounts violated the terms and conditions for Amazon Prime, which forbid Prime members from "purchas[ing] products for the purpose of resale, rental, or to ship to their customers or potential customers using Prime benefits."[23] Amazon also advised Perplexity—given

---

[22] Ex. 8, *Shop like a Pro: Perplexity's new AI-powered shopping assistant*, Perplexity (Nov. 18, 2024), https://www.perplexity.ai/hub/blog/shop-like-a-pro.

[23] Ex. 9, *Amazon Prime Terms & Conditions*, Amazon (May 11, 2021), https://www.amazon.com/gp/help/customer/display.html?nodeId=G2B9L3YR7LR8J4XP.

Perplexity's advertising of "Buy with Pro" as an AI-powered shopping assistant—that it did not have permission to deploy any AI agents in the Amazon Store. In response, Perplexity agreed that it would halt the deployment of AI agents in the Amazon Store unless Amazon and Perplexity reached mutually agreed-upon terms for such deployment. Perplexity's conduct thus establishes that Perplexity had specific knowledge, before it ever released the Comet AI agent, that Amazon does not permit the deployment of AI agents in the Amazon Store without Amazon's consent—and that Perplexity had agreed to abide by that prohibition.

**C. Perplexity Deploys its AI Agent in the Amazon Store through Private Customer Accounts**

53. On July 9, 2025, Perplexity released Comet, a web browser application, to its paying subscribers. Without prior notice to Amazon, and without authorization, Perplexity deployed its Comet AI agent in the Amazon Store through private Amazon customer accounts, in contravention of Perplexity's prior agreement not to deploy AI agents in the Amazon Store without Amazon's consent to mutually-agreed terms. Perplexity concealed the Comet AI agent's identity with the same "user agent" string as Google Chrome, so that neither Amazon nor any other website operator can readily distinguish the Comet AI agent's requests from those of a human user browsing on Chrome.

54. Perplexity's covert deployment of the Comet AI agent into the Amazon Store through private customer accounts violates Amazon's License and Access Terms, the Amazon Software Terms, and the Agent Terms, as well as Amazon's prior request, to which Perplexity agreed, that Perplexity refrain from deploying covert AI agents in the Amazon Store.

**D. Amazon Informs Perplexity that Comet's Agentic Access Is Unauthorized and Implements a Technological Barrier, which Perplexity Evades**

55. On August 4, 2025, shortly after Amazon detected Perplexity's renewed and unauthorized deployment of the Comet AI agent in the Amazon Store, Amazon contacted Perplexity's CBO, Mr. Shevelenko, and explained that Amazon requires all AI agents to act transparently in the Amazon Store and that Perplexity was not permitted to deploy the Comet AI

agent in the Amazon Store. Mr. Shevelenko falsely asserted that Comet was not "agentic," contradicting Perplexity's public marketing materials touting Comet's agentic AI functions, including the ability to "actively conduct[] entire browsing sessions," "book[ing] a meeting or send[ing] an email," "buy[ing] something you forgot," and "execut[ing] complete workflows while keeping perfect context."[24]

56. Following Perplexity's covert and unauthorized access, numerous Amazon software engineers and other highly skilled employees spent significant time conducting a forensic analysis of network traffic and browser data to isolate the Comet AI agent's browser fingerprint from ordinary customer activities. On August 19, 2025, after dedicating substantial resources to tracking and identifying the activities of Perplexity's covert AI agent in the Amazon Store and in Amazon's servers, Amazon implemented a technological barrier to restrict the Comet AI agent's ability to access Amazon's private customer accounts.

57. Within 24 hours of Amazon implementing a technological barrier to protect Amazon's private customer accounts from Perplexity's unauthorized access, Perplexity released an updated version of Comet designed to evade the barrier by altering Comet's behavior so that the Comet AI agent no longer matched the digital fingerprint Amazon had developed to identify it. This software update allowed Perplexity to again obtain unauthorized agentic access to Amazon's private customer accounts. Comet's bypassing of Amazon's technological barrier also independently violates the Conditions of Use, which are published and available to everyone accessing the Amazon Store. Nor was Perplexity's evasion an accident: when Comet users complained that they could not access the Amazon Store after Amazon implemented its barrier, Perplexity publicly responded that it was "aware of this issue and currently working to resolve it." Perplexity then released the update that defeated Amazon's barrier.

[24] Ex. 1.

### E. Amazon Again Informs Perplexity that Comet's Agentic Access Is Unauthorized, and Perplexity Again Continued to Access Private Customer Accounts in the Amazon Store Without Authorization

58. After Perplexity's swift evasion of Amazon's technological barrier, Amazon twice confronted Perplexity about its unauthorized access into the Amazon Store.

59. On September 12, 2025, Amazon contacted Perplexity's CEO, Mr. Srinivas, and explained that the Comet AI agent is not authorized to access the Amazon Store. Amazon made it clear that if Perplexity continued to access the Amazon Store by not identifying the Comet AI agent, legal action would likely follow. Mr. Srinivas did not deny that Comet AI was accessing the Amazon Store without identifying itself. Perplexity has never identified the Comet AI agent, and thus has never met, and has consistently known itself not to have met, the express condition on which any authorization would have depended.

60. And on September 29, 2025, Amazon contacted Perplexity's CEO, Mr. Srinivas, as well as its CBO, Mr. Shevelenko, and explained that the Comet AI agent is not authorized to access the Amazon Store without transparently identifying itself. Mr. Srinivas and Mr. Shevelenko offered no legitimate justification for Perplexity's unauthorized conduct. After this call, Perplexity's Comet AI agent continued to impersonate Google Chrome and fail to identify itself when accessing the Amazon Store through private customer accounts.

61. On October 2, 2025, Perplexity made Comet widely available to the public for free.[25] Subsequently, Perplexity described Amazon.com as one of Comet users' most frequently visited websites.

### F. Amazon Sends a Cease-and-Desist Letter to Perplexity, but Perplexity Refuses to Change Course

62. On October 31, 2025, Amazon sent Perplexity a cease-and-desist letter, reaffirming that Perplexity is not authorized to covertly deploy unidentified AI agents in the Amazon Store and

[25] Ex. 10, *The Internet is Better on Comet*, Perplexity (Oct. 2, 2025), https://www.perplexity.ai/hub/blog/comet-is-now-available-to-everyone-worldwide.

that Amazon would seek all available legal and equitable remedies if this conduct did not stop.[26]

### G. Amazon Files This Action and Implements a Second Technological Block, Which Perplexity Circumvents Within Two Days

63. Nothing changed. Perplexity understood exactly what Amazon had demanded. In a public statement responding to Amazon's letter, Perplexity acknowledged that "Amazon [is] demanding we prohibit Comet users from using their AI assistants on Amazon."[27] On November 4, 2025, Amazon filed this action and moved for a preliminary injunction to stop Perplexity's unauthorized access.

64. On December 5, 2025, after expending additional engineering resources to detect and address the Comet AI agent's unauthorized access, Amazon implemented a second technological block that prevented the Comet AI agent from accessing pages in the Amazon Store in a logged-in state. That same day, Amazon's counsel notified Perplexity's counsel of the new block in writing, noting that Perplexity had continued to deploy the Comet AI agent in the Amazon Store without authorization, and warned: "Any further attempt by Perplexity to evade this gate would be improper and illegal."

65. Perplexity evaded the second block within two days. On December 7, 2025, Amazon's traffic engineering team observed that the Comet AI agent's behavior had changed, that Amazon's block no longer worked, and that traffic associated with the Comet AI agent was again gaining access to secure, password-protected Amazon pages. The Comet AI agent's unauthorized access continued thereafter.

### H. Perplexity Launches Comet for iOS, Which Results in Perplexity Directly Accessing the Amazon Store

66. On March 18, 2026—nine days after the Court entered a preliminary injunction in Amazon's favor—Perplexity launched Comet for iOS, extending the Comet AI agent to Apple mobile devices. Comet for iOS operates through an architecture even more invasive than its

---

[26] Ex. 11, Amazon's Cease and Desist Letter to Perplexity (Oct. 31, 2025).

[27] McLain Decl. ISO Reply to PI Mot. (Dkt. 40-3) at Ex. 42.

desktop counterpart. When a user activates Comet's agent mode on iOS, Comet copies the user's Amazon-authenticated cookie and session data to Perplexity's cloud servers, which host a virtual browser. Perplexity's cloud servers then request pages directly from Amazon's servers using that virtual browser and the user's copied cookie, receive Amazon's responses directly, and stream screenshots of the Perplexity-operated session back to the user's phone. No user device touches Amazon's servers. Amazon observed this traffic day after day. Amazon's engineers observed that, from shortly after Comet for iOS launched on March 18, 2026 until at least May 11, 2026, Comet for iOS sessions repeatedly accessed the Amazon Store from Perplexity-controlled servers. Those sessions did not identify themselves as Comet or as Perplexity. Although each request originated on a Perplexity server acting for an iOS user, it presented Amazon with the user-agent string of Google Chrome running on a Windows desktop computer. Perplexity's own product confirms the architecture: when a user activates agent mode in Comet for iOS, Comet displays a notice that "[t]his request will be handled by a virtual cloud browser." Put simply, on iOS Perplexity's own computers directly gain entry to Amazon's computers, using Amazon customers' authentication credentials. Amazon's servers subsequently respond to the request impersonating the user that came from Perplexity. Throughout the period when Comet for iOS's agent mode was enabled, Perplexity also obtained information from Amazon's protected computers through Comet for iOS. Amazon's servers returned the contents of requested pages—including secure, password-protected pages—directly to Perplexity's cloud servers.

67. In its opening brief to the United States Court of Appeals for the Ninth Circuit—filed on April 1, 2026, two weeks after Comet for iOS launched—Perplexity represented, in the present tense, that "[i]t is undisputed that, in the course of a user's use of the Assistant on Amazon.com, no Perplexity computer ever has direct access to an Amazon computer." Perplexity further represented that "Perplexity does not connect to, and obtains no information from, Amazon's servers or computer systems"; that "it is undisputed that Perplexity never 'gain[ed] entry to' an Amazon computer"; that "[a]ccess to Amazon.com by the user using the Assistant is not

access by Perplexity"; and that Perplexity "'obtains' nothing from Amazon's computers."[28] Each of these statements was false when made. Comet for iOS had been available in Apple's App Store for two weeks when Perplexity filed its opening brief. On Comet for iOS, a Perplexity computer has direct access to an Amazon computer every time the agent operates in the Amazon Store. Perplexity designed that architecture, operates the cloud servers that carry it out, and disclosed the direct access to the Amazon Store by its own users. Perplexity therefore knew that the account it was giving the Ninth Circuit was untrue as to the product it had just launched—and it nonetheless presented that account as "undisputed."

68. On May 6, 2026, before Perplexity filed its reply brief, counsel for Amazon wrote to counsel for Perplexity, pointing out the inconsistencies between the ways in which Comet for iOS operates and Perplexity's representations to the Ninth Circuit. Amazon's letter identified each misstatement by page, reminded Perplexity's counsel of their duty of candor, and asked Perplexity to correct the record.[29] Nevertheless, even after receiving Amazon's counsel's letter, Perplexity repeated its statements—which were, by then, false for seven weeks—without qualification or correction in its reply brief, filed later that day. Counsel for Perplexity responded to Amazon's counsel's letter on May 11, stating that "[a]s a measure of good-faith, Perplexity has *temporarily disabled* the assistant feature on Amazon.com in Comet for iOS" (emphasis added).[30] Perplexity's response did not deny that Comet for iOS had been connecting Perplexity's servers directly to Amazon's, did not defend the accuracy of a single one of the misstatements Amazon had identified, and did not commit that the practice would not resume. Perplexity never informed the Ninth Circuit that Comet for iOS operated in the precise manner Perplexity's prior statement to that Court had denied.

## V. Perplexity's Conduct Has Caused Irreparable Harm to Amazon

69. Amazon is entitled to control access to the Amazon Store's private user accounts and private customer data. Perplexity's continual covert and unauthorized access into the Amazon

[28] Perplexity's Opening Br. at 9, 17, 24, 27, 34–35, No. 26-1444 (9th Cir. Apr. 1, 2026).

[29] Ex. 12, Amazon's Letter to Perplexity (May 6, 2026).

[30] Ex. 13, Perplexity Letter to Amazon (May 11, 2026).

Store through private customer accounts irreparably harms Amazon.

70. Under Amazon's Conditions of Use, the License and Access Terms prohibit the downloading, copying, or use of account information for a third party's—like Perplexity's—benefit and the use of data mining, robots, or similar data gathering and extraction tools; the Amazon Software Terms prohibit bypassing any technological measures associated with Amazon Software; and the Agent Terms expressly require AI agents to transparently identify themselves when they operate within the Amazon Store and to comply with any request by Amazon that they refrain from accessing the Store. The Agent Terms also prohibit AI agents from circumventing any measure intended to block, limit, or control whether and how they access the Store. Amazon has expressly and repeatedly put Perplexity on notice of all these Conditions of Use.

71. Amazon has repeatedly asked Perplexity to stop its unauthorized access into Amazon's Store, filed a complaint, and sought a preliminary injunction against Perplexity.

72. To date, Perplexity has not heeded any of Amazon's attempts to maintain control of the Amazon Store and its private customer accounts. Rather, Perplexity has continually and without authorization obtained access to all data available in the private Amazon Store accounts of Amazon customers who use the Comet AI agent in the Amazon Store, including those users' account details, shopping history, billing information, and other personal and financial data.

73. Amazon's harms are increased by Comet's well-documented security vulnerabilities and the danger those vulnerabilities create for Amazon customers who use the Comet AI agent to access their private accounts in the Amazon Store. Perplexity's Terms of Use and Privacy Notice grant it sweeping rights to collect passwords, security keys, payment methods, shopping histories, and other sensitive data from customers when they use Comet to access the Amazon Store or other third-party websites, while at the same time disclaiming any responsibility for data security.[31]

74. This is troubling because Comet is reported to be uniquely vulnerable to security attacks, including the ability for malicious attackers to use the Comet AI agent to "siphon sensitive

---

[31] *See* Ex. 14, *Comet Privacy Notice*, Perplexity (Jul. 8, 2025), https://www.perplexity.ai/hub/legal/comet-privacy-notice; Ex. 15, *Perplexity's Privacy Policy*, Perplexity (Feb. 2, 2025), https://www.perplexity.ai/hub/legal/privacy-policy.

data . . . from connected services" like the Amazon Store.[32] Indeed, Perplexity's Comet browser is vulnerable to "even the oldest tricks in the scammer's playbook," including "scan[ning] an obvious phishing email, visit[ing] the malicious website, and prompt[ing] its user for their banking account credentials without any indication that something might be amiss."[33]

75. Perplexity's unauthorized access and illegal conduct increase the risk that the private account data of Amazon customers who use the Comet AI agent to access the Amazon Store will be targeted for data theft and stolen by cyber criminals. This is particularly concerning because Perplexity is intentionally evading Amazon's identification of the Comet AI agent when it accesses the Amazon Store through private customer accounts, and thereby directly interfering with Amazon's ability to protect the data of Amazon's customers who use the Comet AI agent to access the Amazon Store.

76. After an Amazon customer experiences fraud or a takeover issue with their account, it is too late. Amazon will also suffer great reputational harm, a loss of customers as well as customer trust, and a loss of goodwill regardless of the fact that any such customer harm will be entirely attributable to the illegal conduct of Perplexity and its refusal to heed Amazon's repeated requests that it conduct agentic AI activities with transparency.

77. Lastly, Perplexity's misconduct further harms Amazon's reputation and goodwill by misappropriating Amazon's services, degrading the shopping experience on the Amazon Store, and disrupting Amazon's customer relationships. Amazon has invested decades of time and resources into creating a curated, individualized shopping experience on the Amazon Store. The Comet AI agent prevents Amazon from controlling access to the Amazon Store and, therefore, the quality of the Amazon shopping experience for its customers. When the Comet AI agent shops and makes purchases from the Amazon Store through private customer accounts, it may not select the

[32] Ex. 4.

[33] Ex. 16, Nathaniel Mott, *Perplexity's AI-Powered Comet Browser Leaves Users Vulnerable to Phishing Scams and Malicious Code Injection —Brave and Guardio's Security Audits Call Out Paid AI Browser*, Tom's Hardware (Aug. 25, 2025), https://www.tomshardware.com/tech-industry/cyber-security/perplexitys-ai-powered-comet-browser-leaves-users-vulnerable-to-phishing-scams-and-malicious-code-injection-brave-and-guardios-security-audits-call-out-paid-ai-browser.

best price, delivery method, or product for the customer. The Comet AI agent also may not add products to existing deliveries to meet minimum free-shipping thresholds, which, if done, could result in cheaper and/or faster delivery options for customers. Thus, Perplexity's agentic activity within the Amazon Store harms Amazon's business reputation and customer goodwill.

78. When customers who use the Comet AI agent cannot trust that their personal account information is secure, or when they suffer from a degraded shopping experience, their confidence in the Amazon brand is diminished. Perplexity's interference with Amazon's ability to offer a secure and positive customer experience, and the corresponding erosion in customer trust, is a quintessential irreparable harm.

## VI. Perplexity's Covert and Unauthorized Access into the Amazon Store Has Caused Significant Economic and Technological Harm to Amazon

79. Amazon has also suffered economic and technological damages well in excess of $260,000.

80. Since July 2025, eight members of Amazon's Traffic Engineering team have spent at least 1,280 hours investigating, monitoring, and remediating Comet's agentic activity within the Amazon Store. None of that work fell within those engineers' ordinary responsibilities. Amazon has continued to incur losses of the same kind since November 4, 2025, including in developing a new digital fingerprint for the Comet AI agent and deploying a second technological barrier in December 2025. Amazon incurred further losses detecting and analyzing Comet for iOS's direct server-to-server access in 2026. Amazon's response to Comet for iOS imposed a separate and independent loss. Between March 18 and May 11, 2026, Amazon's Ad Traffic Quality and Traffic Engineering teams were forced to detect Comet for iOS's server-to-server traffic, tracing it to Perplexity-controlled servers despite its Google Chrome desktop user-agent string, assessing what account information Perplexity's servers had obtained, and monitoring the traffic day after day until Perplexity disabled the feature. None of those tasks fell within the engineers' ordinary responsibilities, and none of those tasks are included in the 1,280 hours described above; those tasks by themselves caused Amazon over $5,000 in losses.

81. Amazon incurred costs identifying the Comet AI agent's intrusion and its method of access. Because the agent presents Google Chrome's user-agent string, Amazon's engineers could not readily distinguish its requests from a human customer's. From approximately July 9 through August 19, 2025, the Traffic Engineering team conducted a sustained forensic analysis of network traffic and browser data to determine that the unidentified traffic entering password-protected customer accounts came from the Comet AI agent and to develop a digital fingerprint capable of identifying it. That six-week analysis, together with the deployment of the resulting barrier on August 19, 2025, consumed approximately 240 hours of engineer time. And Amazon had to repeat the identification work after Perplexity's August 2025 update changed the Comet AI agent's behavior so Amazon's fingerprint no longer worked, and again to develop the new fingerprint on which the December 5, 2025 barrier depended. Perplexity's actions caused Amazon over $5,000 in losses.

82. Amazon incurred costs remediating the Comet AI agent's intrusion. Amazon incurred costs designing, deploying, and maintaining technological barriers to prevent Perplexity's Comet AI agent from covertly accessing the Amazon Store through private customer accounts. Amazon's Traffic Engineering team implemented those barriers on August 19 and December 5, 2025 to restrict the Comet AI agent's access to Amazon's private customer accounts. The team also conducted ongoing forensic monitoring to detect the agent's continued and evolving access after Perplexity evaded each barrier. Perplexity's actions caused Amazon over $5,000 in losses.

83. Amazon incurred costs restoring impaired accounts and data to their condition before Perplexity's conduct. Perplexity's actions caused Amazon over $5,000 in losses. The agentic traffic coming from the Comet AI agent has disrupted and caused damage to Amazon's technology and automated computer systems in at least two ways.

84. First, traffic from automated agents, such as that from the Comet AI agent, imposes operational burdens and costs on Amazon's advertising systems. Amazon's advertisers pay for their ads to be shown to humans, with billing based on valid ad impressions. When automated agents, such as the Comet AI agent, generate ad traffic, Amazon must invest engineering resources

to detect and filter out these non-human impressions before billing advertisers. This requires modifications to Amazon's advertising systems, including developing new detection mechanisms to identify and exclude automated traffic. These system adaptations are necessary to maintain contractual obligations with advertisers who pay only for legitimate human impressions.

85. Second, Perplexity has damaged the Amazon accounts of Amazon customers who also use the Comet AI agent to access the Amazon Store. Because Amazon customers were accessing the Amazon Store through Comet's AI agent, Amazon has previously had to implement a block to prevent these customers' accounts from accessing the Amazon Store. Once this happened, numerous Amazon users could not access the Amazon Store through Comet, impairing the availability of data and of the account services Amazon's systems provide. As a result, Amazon had to repair and unblock these accounts in order to restore the accounts to their condition prior to Perplexity's conduct when these customers wanted to re-access their Amazon accounts through non-agentic browsing. Amazon's cost of conducting that damage assessment and restoring those accounts itself caused at least $5,000 in losses. This imposed operational burdens and costs on Amazon that would have been unnecessary if the Comet AI agent identified itself through its user-agent string when accessing the Amazon Store because that would allow Amazon to block traffic associated with just the Comet AI agent, instead of blocking a customer account. These burdens are magnified by the scale of Perplexity's activity: as of June 15, 2026, the Comet AI agent has conducted at least 185,712 sessions on Amazon.com.

86. The economic burden on Amazon to investigate and remediate Perplexity's conduct is exacerbated because the Traffic Engineering team members working on this effort have diverted their attention away from their regular tasks of operating and maintaining Amazon's servers to ensure reliable customer satisfaction across Amazon's many services.

## <u>COUNT ONE</u>

### Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*

87. Amazon repeats and re-alleges every allegation contained above as if set forth fully

herein.

88. Perplexity violated 18 U.S.C. § 1030.

89. Amazon's computers are involved in interstate and foreign commerce and communication and are protected computers as defined under 18 U.S.C. § 1030(e)(2)(B).

90. Perplexity violated 18 U.S.C. § 1030(a)(2) because it knowingly and intentionally accessed, and continues to access, Amazon's computers without authorization or in excess of authorization, obtaining private customer information from Amazon's protected computers. Perplexity obtained information from Amazon's protected computers in transactions involving interstate and foreign commerce that included, among other things, Amazon's customers' private account details, shopping history, billing information, and other sensitive customer personal and financial data. And on Comet for iOS, Perplexity's own cloud servers access Amazon's password-protected pages directly from Amazon's servers and return that protected information directly to Perplexity.

91. Perplexity exercises control over the Comet AI agent in such a way that Perplexity itself gains entry to Amazon's servers.

92. Perplexity intentionally accesses Amazon's protected computers when the Comet AI agent operates on a customer's device. Perplexity selects each action the agent takes inside secure, password-protected Amazon pages and transmits the command that causes the agent to take it. The agent cannot act at all without a connection to Perplexity's servers. Perplexity determines what the agent may and may not do and can change its behavior remotely. Perplexity built the Comet AI agent to take actions beyond and independent from users' instructions, including taking contextual information and private user information for advertising purposes. Perplexity—not the customer—composes the false identification the agent presents to Amazon with every request. And Perplexity receives, processes, and retains the contents of the Amazon pages the agent reaches. Perplexity's access is the product of decisions made by Perplexity's engineers and executives: Perplexity designed the Comet AI agent to operate in the Amazon Store; and chose to deploy it there after Amazon prohibited it from doing so. Perplexity then chose to redeploy the agent there

after each of Amazon's technological barriers, telling its users that it was working to resolve the barrier and then shipping the update that defeated it. The Comet AI agent is Perplexity's instrumentality, and its entry into Amazon's computers is Perplexity's entry.

93. Perplexity also gains entry to Amazon's protected computers directly, without any intervening user computer. Through Comet for iOS, Perplexity's own cloud-hosted browser transmits requests to, and receives responses from, Amazon's servers using Amazon customers' authentication cookies. In this configuration, which Perplexity has "temporarily disabled" upon Amazon's complaint, Perplexity's servers connected directly to Amazon's protected computers without using a user's computer as a conduit, and Perplexity directly obtained information from Amazon's protected computers.

94. Amazon revoked any authorization Perplexity might otherwise have claimed, repeatedly and in writing, and enforced that revocation with successive technological barriers, each of which Perplexity circumvented. Amazon told Perplexity that Perplexity had no permission to deploy any AI agent in the Amazon Store, that Perplexity was not permitted to deploy the Comet AI agent there, and that the agent was not authorized to access the Store. Perplexity publicly acknowledged that Amazon was "demanding we prohibit Comet users from using their AI assistants on Amazon."[34] The areas the Comet AI agent enters are not public. They sit behind Amazon's authentication and on Amazon's servers. Whatever permission an individual customer may give Perplexity to operate within that customer's own account, such permission cannot supply the separate authorization Perplexity requires from Amazon, which owns and operates the computers on which those accounts reside and which has withheld that authorization.

95. Perplexity's conduct has caused a loss to Amazon as defined by 18 U.S.C. § 1030(e)(11), during a one-year period in excess of $5,000, including the expenditure of resources to investigate and remediate Perplexity's conduct, and including, independently, more than $5,000 in losses to detect, analyze, and monitor Perplexity's direct server-to-server access through Comet for iOS.

---

[34] McLain Decl. ISO Reply to PI Mot. (Dkt. 40-3) at Ex. 42.

96. Amazon seeks compensatory damages in amount to be proven at trial and injunctive relief under 18 U.S.C. § 1030(g).

97. Amazon has suffered irreparable and incalculable harm and injuries resulting from Perplexity's conduct, and this harm will continue unless Perplexity is enjoined from further unauthorized use of Amazon's protected computers. Amazon has no adequate remedy in law.

## COUNT TWO

### California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502

98. Amazon repeats and re-alleges every allegation contained above as if set forth fully herein.

99. Perplexity violated California Penal Code § 502.

100. Perplexity knowingly accessed and without permission took, copied, and/or used data from Amazon's computers, computer systems, and/or computer network in violation of California Penal Code § 502(c)(2).

101. Perplexity knowingly and without permission used or caused to be used Amazon's computer services in violation of California Penal Code § 502(c)(3).

102. Perplexity knowingly and without permission accessed and added and altered data to Amazon's computer, computer systems, and/or computer network, including by creating browsing and shopping history data while logged into customer accounts, in violation of California Penal Code § 502(c)(4).

103. Perplexity knowingly and without permission accessed or caused to be accessed Amazon's computers, computer systems, and/or computer network in violation of California Penal Code § 502(c)(7). Among other things, Perplexity, from its servers, issues the commands that cause each request to be transmitted to Amazon's servers, and Perplexity's software—designed, distributed, and remotely maintained by Perplexity—causes those requests to be sent.

104. Perplexity's conduct constitutes "access" as California Penal Code § 502(b)(1) defines that term, because Perplexity "gain[s] entry to, instruct[s], cause[s] input to, cause[s] output from, cause[s] data processing with, [and] communicate[s] with, the logical, arithmetical, and

memory function resources of" Amazon's computers, computer systems, and computer network, including by entering search terms and form data, adding items to shopping carts, placing orders, clicking and navigating webpages, and transmitting and obtaining account data.

105. Amazon suffered and continues to suffer damages as a result of Perplexity's violations of the California Penal Code § 502 identified above.

106. Perplexity's conduct also caused irreparable and incalculable harm and injuries to Amazon, and, unless enjoined, will cause further irreparable and incalculable injury, for which Amazon has no adequate remedy at law.

107. Perplexity willfully violated California Penal Code § 502 in disregard and derogation of Amazon's rights, and Perplexity's actions, as alleged above, were carried out with oppression, fraud, or malice.

108. Pursuant to California Penal Code § 502(e), Amazon is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs, and other equitable relief.

## COUNT THREE

### Tortious Interference with Contractual Relations (California Law)

109. Amazon repeats and re-alleges every allegation contained above as if set forth fully herein.

110. Valid and enforceable contracts exist between Amazon and each of its registered customers. Every Amazon customer agrees to the Conditions of Use—including the Agent Terms, the License and Access Terms, and the Additional Amazon Software Terms—when registering for and/or using an Amazon account. Customers manifest their assent to the Conditions of Use at multiple points, including when they register for an account and each time they place an order in the Amazon Store. On the order page, Amazon states, adjacent to the button used to place the order, that by placing the order the customer agrees to the Conditions of Use. The Conditions of Use also expressly reserve Amazon's right to make changes to them at any time, and customers who use the Amazon Services after a change is posted use those services subject to the then-current

Conditions of Use.

111. Perplexity has had specific knowledge of those contracts at all relevant times. Perplexity has known since at least November 19, 2024—when Amazon informed Perplexity that its “Buy with Pro” feature violated the terms and conditions for Amazon Prime—that customers’ access to and use of the Amazon Store are governed by binding contractual terms. The Conditions of Use, including the Agent Terms that Amazon added on May 30, 2025, before Perplexity first released Comet, are publicly available. Amazon invoked the Conditions of Use in business-to-business communications with Perplexity’s executives and in its October 31, 2025 cease-and-desist letter. Perplexity’s own filings in this action also quote the Agent Terms and other provisions of the Conditions of Use. And Perplexity’s counsel acknowledged at the March 6, 2026 hearing on Amazon’s motion for a preliminary injunction that Amazon’s terms of service “prevent users from using this AI Agent.”

112. Perplexity committed intentional acts designed to induce breaches and disruptions of Amazon’s contracts with its customers. The Agent Terms apply to every customer who, among other things, “use[s],” “allow[s],” or “enable[s]” the “deployment of an Agent” on the Amazon Services. They provide that no Agent may access the Amazon Services “if we have requested that the Agent refrain from accessing, using, or interacting with any Amazon Service.” They also reserve to Amazon the right to limit Agent access “including by technical measures,” and they forbid agents that “circumvent or otherwise avoid any measure intended to block, limit, modify, or control” agent access. The License and Access Terms separately prohibit any “downloading, copying, or other use of account information for the benefit of any third party.” Perplexity built a product that does each of those forbidden things, tested it on the Amazon Store, distributed it to millions of users, marketed its use for shopping, and directed its operation on the Amazon Store from Perplexity’s own servers. Insofar as an independently wrongful act is necessary, Perplexity also has committed independently wrongful acts, including but not limited to the CFAA and CDAFA violations described above.

113. The breaching conduct reflects Perplexity’s intentional design. Perplexity’s servers

decide whether the Comet AI agent enters the Amazon Store, present the customer's stored credentials there, and select each action the agent takes inside the customer's account—and they do so even if a user does not direct the Comet AI agent there and despite Amazon's request that the agent stay out. Moreover, Perplexity modified Comet AI agent's code so as to defeat Amazon's first technological barrier in August 2025 and defeat the second in December 2025. Perplexity knew, including because Amazon informed it, that because, among other things, it was circumventing Amazon's technological measures and refusing to respect Amazon's direction that Comet refrain from accessing the Amazon Store. Perplexity therefore knew that a customer's breach of the Conditions of Use was certain or substantially certain to result from every Comet AI agent session in the Amazon Store.

114. Perplexity acted for its own commercial gain. Perplexity has stated that Amazon.com is among the most frequently visited retail websites among Comet users, and that Comet's ability to function on the Amazon Store is essential to one of Comet's core value propositions. Perplexity also purposefully built Comet to gather contextual and private user information to improve Comet.

115. Perplexity's Comet Terms of Service deny the user any control over that software and disclaim any duty by Perplexity to the user. The software is licensed "AS IS" and "WITH ALL FAULTS," with the user to "BEAR THE RISK OF USING IT"; it updates itself "without any additional notice" and may not be modified by the user. By Perplexity's express terms, it owes its users no duty, acts on its own judgment rather than theirs, may sever the Comet AI agent from any website at will, and shifts to its users the risk of the conduct its own servers direct. Thus, the Comet AI agent is a product that Perplexity builds, distributes, and controls, not a legal relationship between Perplexity and its users.

116. No customer directed Perplexity to release the August 2025 and December 2025 updates that defeated Amazon's technological barriers; Perplexity did that on its own and for its own benefit. Among other things, Perplexity retains screenshots and HTML snapshots of customers' password-protected Amazon pages on its own servers to improve the Comet AI agent,

and it treats the agent's ability to operate in the Amazon Store as essential to the value of Perplexity's own product—benefits it derives from Amazon's systems and from advertisers, not as compensation from users, who pay Perplexity nothing for Comet. Perplexity deployed the Comet AI agent into the Amazon Store after Amazon told Perplexity itself that Perplexity was not permitted to do so, a prohibition that no customer could waive on Amazon's behalf.

117. Perplexity's conduct caused actual breaches and disruptions of Amazon's contracts with its customers. For example, each time a Perplexity user made a request to Comet, and Perplexity decided to deploy the Comet AI agent in the Amazon Store using that customer's Amazon account, Perplexity caused the Amazon customer to breach the Conditions of Use, which bind any customer who, among other things, uses, allows, or enables the deployment of an Agent. Thus, every session after Amazon requested that Perplexity's agent stay out of the Amazon Store breached the Agent Terms' prohibition on access following such a request. As another example, every session after Perplexity defeated Amazon's technological barriers in August and December 2025 breached the prohibition on circumventing measures intended to block or limit Agent access. Perplexity's conduct also disrupted Amazon's contractual relationships with its customers: among other things, Amazon was forced to block customer accounts associated with the Comet AI agent's activity and then to repair and unblock those accounts. Amazon's performance of its own obligations—providing a secure, curated, and individualized shopping experience—was also made more expensive and more burdensome because Amazon was forced to deploy substantial engineering resources to monitor and ensure the integrity of the Amazon Store. And Amazon's obligations to its advertisers, who pay only for impressions delivered to human beings, required Amazon to build new systems to identify and exclude the non-human impressions the Comet AI agent generates.

118. As a direct and proximate result of Perplexity's intentional interference, Amazon has suffered damages in an amount to be proven at trial, including, without limitation, the engineering, investigation, and remediation costs described above, and lost advertising revenue attributable to non-human ad impressions that the Comet AI agent generated and for which Amazon

could not bill its advertisers. Amazon has also suffered harm to its customer relationships, reputation, and goodwill.

119. Perplexity acted with oppression, fraud, or malice, and in conscious disregard of Amazon's rights, entitling Amazon to punitive damages under California Civil Code § 3294.

120. Perplexity's ongoing interference also causes Amazon irreparable harm for which there is no adequate remedy at law, entitling Amazon to injunctive relief.

## PRAYER FOR RELIEF

121. Amazon respectfully requests that judgment be entered in its favor and against Perplexity on all counts.

122. Amazon requests that the Court issue preliminary, interim, and permanent injunctive relief, enjoining and restraining Perplexity and its agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Perplexity, from:

a. Accessing, attempting to access, or assisting, instructing, or providing a means for others to access or attempt to access Amazon's protected computer systems using AI agents;

b. Using any accounts, creating any new accounts, or taking over any existing accounts, on Amazon's websites, for the purpose of allowing Perplexity's AI agents to access Amazon's protected computer systems;

c. Accessing, attempting to access, or assisting, instructing, or providing a means for others to access Amazon's protected computer systems in excess of Amazon's authorization; and

d. Violating or evading any restrictions or limits Amazon puts on the use of AI agents or other agentic activity on the Amazon Store.

123. Amazon further requests that the Court order the following additional nonmonetary relief:

a. Destruction of all copies of Amazon's data, including customer data, unlawfully obtained by Perplexity, whether in the custody or control of

Perplexity or its employees, agents, assigns, or the third-party service providers (including, without limitation, web hosts, proxy servers, privacy services, and domain registrars);

b. Identification of each and every Amazon account ever accessed, used, or controlled through or by Perplexity, or any of its employees, agents, and assigns, to engage in the complained-of conduct; and

c. That Perplexity certify and confirm, in writing and under oath, within thirty (30) days of the issuance of any order of the Court providing a remedy to Amazon, that Perplexity has complied fully and completely with all requirements of such order.

124. Amazon further requests that the court award to Amazon as permitted by law and in such amounts to be proven at trial:

a. Monetary damages, including but not limited to compensatory, consequential, statutory, and punitive damages;

b. Amazon's reasonable costs, including reasonable attorneys' fees; and

c. Pre- and post-judgment interest.

125. Amazon further requests such other relief as the Court may deem just and proper.

**JURY DEMAND**

126. Plaintiff Amazon.com Services LLC hereby demands a trial by jury on all issues.

Dated: September 21, 2026

Respectfully submitted,

HUESTON HENNIGAN LLP

By: ______________________________

Moez M. Kaba
Christine Woodin
Hagan Scotten (admitted *Pro Hac Vice*)
Billy Joe McLain

*Attorneys for Plaintiff*
*AMAZON.COM SERVICES LLC*