QUINN EMANUEL URQUHART &
SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew Schapiro (admitted *Pro Hac Vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Renita N. Sharma (admitted *Pro Hac Vice*)
renitasharma@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

William Pilon (Bar No. 326487)
williampilon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant Perplexity AI, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

Plaintiff,

vs.

PERPLEXITY AI, INC., a Delaware corporation,

Defendant.

Case No. 3:25-cv-09514-MMC

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STAY DISCOVERY**

Hon. Maxine M. Chesney
Courtroom 7

Hearing Date: November 20, 2026
Hearing Time: 9:00 a.m.

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on November 20, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendant Perplexity AI, Inc. ("Perplexity") will, and hereby does, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6) and/or 28 U.S.C. § 1367(c)(3) dismissing the First Amended Complaint (Dkt. 122) filed by Plaintiff Amazon.com Services LLC ("Amazon") and an order under Rule 26(c)(1) staying discovery in this action pending the resolution of the motion to dismiss. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Daniel C. Posner, and the entire record of this action, including the record of Perplexity's Ninth Circuit appeal of the Court's preliminary injunction in this action, Case No. 26-1444.

Perplexity respectfully requests that the Court dismiss the First Amended Complaint with prejudice and stay discovery pending resolution of the motion to dismiss.

DATED: October 13, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By *\/s/ Daniel C. Posner*
Daniel C. Posner
*Attorneys for Defendant Perplexity AI, Inc.*

**TABLE OF CONTENTS**

**Page**


INTRODUCTION ........ 1

ISSUES TO BE DECIDED ........ 2

STATEMENT OF FACTS ........ 2

LEGAL STANDARD ........ 7

ARGUMENT ........ 8

I. AMAZON'S FAC FAILS TO STATE A CLAIM ........ 8

A. Amazon Fails To State A Claim Under The CFAA ........ 9

1. Amazon still cannot plausibly allege "intentional[] access[]" ........ 9

2. Amazon fails to plausibly allege lack of authorization ........ 16

3. Amazon fails to plausibly allege cognizable "loss" ........ 17

B. Amazon Fails To State A Claim Under The CDAFA ........ 19

C. Amazon Fails To State A Claim For Tortious Interference With Contract ........ 20

1. Amazon fails to plausibly allege an independently wrongful act ........ 21

2. Amazon fails to specify a contractual counterparty ........ 22

3. Amazon fails to plausibly allege intentional interference ........ 22

II. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION ........ 23

III. THE COURT SHOULD STAY DISCOVERY WHILE THIS MOTION IS PENDING ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

## Cases

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) (en banc)........................................................................23

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
184 F.4th 1083 (9th Cir. 2026).......................................1, 3, 5, 6, 8-13, 15, 16, 19, 20, 24, 25

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*,
No. 26-1444 (9th Cir. Mar. 16 and 18, 2026) .......................................................................3

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019).........................................................................................17, 18

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .....................................................................................8

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*,
273 F.3d 1229 (9th Cir. 2001).........................................................................................12, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................7, 25

*Baldoza v. Bank of Am., N.A.*,
2013 WL 978268 (N.D. Cal. Mar. 12, 2013)...........................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................7

*Carne v. Stanislaus Cnty. Animal Servs. Agency*,
445 F. Supp. 3d 772 (E.D. Cal. 2020).....................................................................................24

*Cox Commc'ns PCS, L.P. v. City of San Marcos*,
204 F. Supp. 2d 1272 (S.D. Cal. 2002) ...................................................................................24

*DeSoto Cab Co. v. Uber Techs., Inc.*,
2018 WL 10247483 (N.D. Cal. Sept. 24, 2018)...............................................................21, 22

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016)..................................................................................................16

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (per curiam)......................................................................8, 10

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-1495 (W.D. Wash. Sept. 26, 2023) .......................................................................3

*FTC v. Amazon.com, Inc.*,
No. 2:26-cv-3097 (W.D. Wash. Aug. 31, 2026) .......... 3

*Gastelum v. Kohl's Inc.*,
2023 WL 2575825 (E.D. Cal. Mar. 20, 2023) .......... 23

*Gershman v. Bayer HealthCare LLC*,
2015 WL 2170214 (N.D. Cal. May 8, 2015) .......... 13, 15

*Green Crush LLC v. Paradise Splash I, Inc.*,
2018 WL 4940825 (C.D. Cal. May 3, 2018) .......... 22

*Greenspan v. Musk*,
2024 WL 4933334 (N.D. Cal. Dec. 2, 2024) (Chesney, J.) .......... 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) .......... 17, 18

*Hummel v. Smith*,
2010 WL 415252 (W.D. Wash. Jan. 27, 2010) .......... 24

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) .......... 21, 22

*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025) .......... 7

*Ledwidge v. FDIC*,
2025 WL 885845 (N.D. Cal. Mar. 21, 2025) .......... 24, 25

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) .......... 20

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .......... 9, 14

*Marcos v. Equity One Lenders Grp.*,
2011 WL 6225273 (N.D. Cal. Dec. 14, 2011) .......... 23

*Marquez v. Amazon.com, Inc.*,
69 F.4th 1262 (11th Cir. 2023) .......... 21

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) .......... 11, 19

*Miller v. City of Los Angeles*,
2014 WL 12610195 (C.D. Cal. Aug. 7, 2014) .......... 14

*Moxie Pest Control (Utah), LLC v. Nielsen*,
164 F.4th 1195 (10th Cir. 2026) .......... 18, 19

*In re Netflix Antitrust Litig.*,
506 F. Supp. 2d 308 (N.D. Cal. 2007) .......... 2, 8

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
305 F. Supp. 3d 1065 (N.D. Cal. 2018) .......... 8

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
305 F. Supp. 3d 1065 (N.D. Cal. 2018) .......... 8

*Pearl v. Coinbase Glob., Inc.*,
2024 WL 3048490 (N.D. Cal. June 17, 2024) (Chesney, J.) .......... 24

*Porretti v. Dzurenda*,
11 F.4th 1037 (9th Cir. 2021) .......... 6

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*,
499 F.3d 1108 (9th Cir. 2007) .......... 12, 25

*Saldana v. Wells Fargo Bank, N.A.*,
367 F. Supp. 3d 1063 (N.D. Cal. 2019) .......... 14

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .......... 8

*Sepulveda v. Taqueria y Carniceria Martinez LLC*,
2024 WL 69066 (N.D. Cal. Jan. 5, 2024) .......... 23

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) .......... 15

*Teran v. Superior Ct.*,
334 Cal. Rptr. 3d 299 (Ct. App. 2025) .......... 20

*UMG Recordings, Inc. v. Glob. Eagle Ent.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......... 22

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) .......... 18

*United States v. H.B.*,
695 F.3d 931 (9th Cir. 2012) .......... 13

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) .......... 13, 16, 20

*Upper Deck Co. v. Miller*,
2024 WL 5119805 (W.D. Wash. Dec. 16, 2024) .......... 21

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 18

*Wagner v. Nat'l City Bank*,
2010 WL 2108408 (D. Conn. May 24, 2010) ............ 25

*Weisbuch v. County of Los Angeles*,
119 F.3d 778 (9th Cir. 1997) ............ 8

*In re Wells Fargo Mortg. Modification Litig.*,
No. 3:24-cv-1358 (N.D. Cal. Oct. 20, 2025) (Chesney, J.) ............ 24, 25

*Wenger v. Monroe*,
282 F.3d 1068 (9th Cir. 2002) ............ 7

**Statutes**

Computer Fraud and Abuse Act ("CFAA")
(18 U.S.C. § 1030) ............ 1, 2, 5, 6, 8, 9, 11-23, 25

18 U.S.C. § 1030(a)(2) ............ 1, 9, 11, 16

18 U.S.C. § 1030(a)(4) ............ 9

18 U.S.C. § 1030(e)(11) ............ 17, 18

18 U.S.C. § 1030(g) ............ 17

28 U.S.C. § 1367 ............ 2, 8, 23, 24

California Comprehensive Computer Data Access and Fraud Act ("CDAFA")
Cal. Penal Code § 502 ............ 1, 2, 5, 6, 9, 20-25

**Other Authorities**

Fed. R. Civ. P. 8 ............ 25

Fed. R. Civ. P. 12 ............ 2, 7, 14

Fed. R. Civ. P. 26 ............ 7, 8

## INTRODUCTION

Two months ago, in this very case, the Ninth Circuit rejected the legal theory underlying Amazon's complaint. In a published opinion based on an extensive evidentiary record, the Court of Appeals held that the Computer Fraud and Abuse Act (CFAA), a criminal hacking statute, does not criminalize ordinary customers' use of Perplexity's AI Assistant to help them shop on Amazon.com. Dkt. 114 [hereinafter CA9 Op.] at 16-17; *see Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026). The Ninth Circuit applied the same conclusion to the CFAA's California analogue, the Comprehensive Computer Data Access and Fraud Act (CDAFA). CA9 Op. at 18. The court therefore held that Amazon was unlikely to succeed on the claims in its complaint.

Recognizing the Ninth Circuit's ruling rendered its original complaint a dead letter, Amazon filed its First Amended Complaint. Dkt. 122 [hereinafter FAC]. But Amazon does not—because it cannot—plead around the Ninth Circuit's ruling. The little new material in the FAC consists mostly of legal argument that the Ninth Circuit already considered and rejected, not new facts that would permit Amazon to prevail on its claims. *See infra* pp. 10-14. Ultimately, Amazon's core theory is the same one it pressed unsuccessfully in the Ninth Circuit: Any shopper who uses software that Amazon has not approved to browse Amazon.com commits a federal crime. Such a theory, if credited, would criminalize "whole categories of otherwise innocuous behavior"—exactly the result the Ninth Circuit prohibited. CA9 Op. at 16 (citation omitted). And it would contravene the "CFAA's plain language," which makes clear that only a "person," not a computer "tool," is capable of "'intentional[] access[]' . . . for statutory purposes." *Id.* at 14-15 (quoting 18 U.S.C. § 1030(a)(2)). Even under Amazon's new allegations, "[i]t is the user who 'accesses' Amazon's computers," not Perplexity. *Id.* at 15. Amazon's updated CFAA and CDAFA claims are as flawed as its earlier versions, and should be dismissed for the same reasons.

Amazon's newly asserted state-law claim for tortious interference with contract—which Amazon could have asserted in its original complaint but chose not to—likewise fails. This tenuous claim is based on prolix, adhesive "Conditions of Use"—an at-will contract that Amazon imposes on ordinary consumers, few (if any) of whom read it. The claim is legally insufficient because, among other reasons, Amazon does not identify any specific contract with which Perplexity

allegedly interfered, nor any independently wrongful act by Perplexity other than the conduct underlying Amazon's failed CFAA and CDAFA claims. There is thus no limiting principle on Amazon's expansive theory of tortious interference—Amazon could pursue claims against ***any*** third party who interacts with ***any*** (even unidentified) Amazon customer in a way purportedly contrary to dense, one-sided contracts Amazon drafted for Amazon's sole benefit. That theory would grant Amazon free rein to weaponize contract law to shackle its customers and stifle competition.

Finally, the Court should stay discovery while it considers this dispositive motion. *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) ("District courts have broad discretion to stay discovery pending the resolution of a potentially dispositive motion, including a motion to dismiss."). Perplexity advocated for such a stay after the Ninth Circuit ruling, and Amazon appeared to agree, declining for nearly two months to pursue any discovery. But now that Perplexity must respond to the FAC, Amazon has changed course and demands sweeping discovery to save its legally insufficient claims. Discovery is unnecessary to conclude that Amazon's claims fail under Rule 12(b)(6). This Court should dismiss the FAC with prejudice and stay discovery pending resolution of this motion.

## ISSUES TO BE DECIDED

1. Whether Amazon's FAC fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

2. Whether, if the Court dismisses Amazon's CFAA claim but does not dismiss the state-law claims outright, the Court should decline to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

3. Whether discovery should be stayed pending resolution of this motion to dismiss.

## STATEMENT OF FACTS

***Perplexity And The Comet Browser.*** Perplexity is an AI startup founded in 2022. FAC ¶¶ 32-33. Its mission is to "serve the world's curiosity" by designing "accurate and trustworthy" AI tools. *Id.* Ex. 1. One of Perplexity's core products is an AI-enabled web browser called Comet, the desktop version of which was initially released on July 9, 2025, and widely released on October 2, 2025. *Id.* ¶ 33; *id.* Ex. 10. Like Google Chrome or Mozilla Firefox, Comet's desktop version is a

software program downloaded onto the user's computer to navigate the Internet. *Id.* On March 18, 2026—after the Ninth Circuit stayed the preliminary injunction this Court entered on March 9—Perplexity launched Comet for iOS, extending Comet to Apple mobile devices. *Id.* ¶ 66; *see Amazon.com Servs., LLC v. Perplexity AI, Inc.*, No. 26-1444 (9th Cir. Mar. 16 and 18, 2026), Dkts. 18-19 (granting administrative stay and then full stay pending appeal).

Although Amazon's amended allegations call attention to Comet for iOS's alleged use of "cloud servers," FAC ¶ 66, the desktop and iOS products work the same way in all legally relevant respects. Both products include an optional AI feature, the Assistant, which can perform tasks at the user's direction and "on the user's behalf," such as browsing websites like Amazon.com. *Id.* ¶ 41; *see id.* ¶ 35 (calling the Assistant the "Comet AI agent"). The Assistant acts if, and only if, the user activates it and "prompts" it to "achieve [a] goal" the user has "define[d]." *Id.* ¶ 35 (acknowledging that the Assistant is only "initiate[d]" by a "user's prompt" and that its "goal" is "define[d]" by the user); *id.* Ex. 10 (stating that for the Assistant to "take any action," users "have to . . . ask" it to do so). As an added safeguard, even after a user prompts it, the Assistant cannot perform certain significant tasks, such as logging into a user's Amazon account or completing a purchase, by itself. *Id.* ¶ 41 (acknowledging that, "if the user has not previously logged in," the Assistant pauses and asks the user "to log into their Amazon account"). To "implement [the] user's instructions," the Assistant "communicates with Perplexity's servers as necessary to process [those] instructions and determine appropriate actions." *Id.* ¶ 35. All these facts were before the Ninth Circuit when it held Amazon's claims unlikely to succeed on their merits. *See infra* pp. 10-14.

***Amazon's Efforts To Exclude Comet Users.*** Amazon is the world's largest online retailer and has been sued by federal executive-branch agencies and state attorneys general of both political parties for maintaining monopolies and unfair trade practices.[1] Because tools like the Assistant threaten its efforts to extend its market dominance into the AI space, Amazon wants to "block traffic associated with" the Assistant and other AI tools, such as the Muse agent developed by Facebook

---

[1] *See FTC v. Amazon.com, Inc.*, No. 2:23-cv-1495 (W.D. Wash. Sept. 26, 2023); *FTC v. Amazon.com, Inc.*, No. 2:26-cv-3097 (W.D. Wash. Aug. 31, 2026).

owner Meta and agents from OpenAI, Google, and Anthropic. FAC ¶ 85.[2] Both the original and amended complaints highlight Amazon's true concern with the Assistant—it empowers users to avoid Amazon's relentless advertisements, sponsored product listings, and upselling "opportunities." *See* FAC ¶ 77 (alleging that the Assistant "may not add products to existing deliveries to meet minimum free-shipping thresholds").

Accordingly, Amazon has sought to prevent Comet users from using the Assistant on Amazon.com. Before filing its original complaint, Amazon repeatedly harassed Perplexity with meritless accusations about alleged "violat[ions] [of] Amazon's Conditions of Use," *id.* Ex. 11 at 1, even though Amazon knows that those Conditions of Use do not bind Perplexity, *id.* ¶ 70 (stating that Perplexity is a "third party[]" with respect to Conditions of Use). The Conditions of Use—which form a purported "agree[ment]" that Amazon unilaterally applies to anyone who visits Amazon.com, and which Amazon reserves the right to amend "at any time," *id.* ¶ 110—themselves make clear that they apply to Amazon's human users, not to the developers of the AI agents they use. *See id.* ¶ 31 (stating that "Agent Terms" apply "if ***you*** use, allow, enable or cause the deployment of an Agent to access, use, or interact with any Amazon Services" (emphasis added) (quoting *id.* Ex. 5 at p. 5 of 7)).

Amazon alleges that its customers' use of the Comet Assistant on Amazon.com violates the Conditions of Use because the Comet browser does not affirmatively signal in HTTP/HTTPS requests that the Assistant had been activated. *See id.* (quoting *id.* Ex. 5 at p. 5 of 7). Amazon would prefer that Comet do so by including certain information in the "user-agent" string the browser sends to identify itself to websites. *See id.* ¶ 43. Amazon "consider[s]" the use of its preferred user-agent string to be "responsible practice," but Perplexity has no legal duty to use the

[2] *See* Spencer Soper, *Why Amazon Shuns AI Agents Like Meta's Muse for Shopping*, Bloomberg (Sept. 29, 2026), https://www.bloomberg.com/news/newsletters/2026-09-29/why-amazon-shuns-ai-agents-like-meta-s-muse-for-shopping (Amazon owns "the most valuable" share of the "US digital advertising market . . . triopoly" and is blocking Perplexity's and Meta's AI agents to protect that asset from "erod[ing]"); Patrick Coffee, *AI Agents Aim to Change Shopping. Some Retailers Are Locking the Doors*, Wall St. J. (Oct. 2, 2026), https://www.wsj.com/cmo-today/ai-agents-aim-to-change-shopping-some-retailers-are-locking-the-doors-666a1ed4 (Amazon "released Buy for Me, a semiautonomous agentic shopping tool, last year" and blocks other companies' AI agents).

string. *Id.* ¶ 44. Although Amazon alleges that "other web browsers with agentic AI capabilities use unique user-agent strings," *id.*, it gives no examples of this, and it also blocked Meta's AI agent, purportedly because Meta's agent, too, failed to "identify itself" to Amazon's liking.[3] Amazon alleges that Comet "transmits the same 'user-agent' string that is used by Google Chrome," *id.* ¶ 43; this is because Comet is "built on top of Chromium," the open-source codebase that powers Google Chrome, *id.* Ex. 16 at p. 3 of 15.[4]

***Procedural History.*** On October 31, 2025, Amazon sent Perplexity a letter accusing it of violating the CFAA and CDAFA. FAC Ex. 11. The letter does not purport to revoke Perplexity's or Comet's access to Amazon.com; rather, it purports to impose conditions on such access, demanding that Perplexity cease "disguising Comet as a Google Chrome browser" and "transparently identify Comet AI agents . . . when operating in the Amazon Store (as required by Amazon's Conditions of Use)." *Id.* at 1.

Days later, Amazon filed this lawsuit and moved for a preliminary injunction. Dkts. 1, 4. On March 9, 2026, the Court granted the preliminary injunction—albeit reluctantly, *see* Dkt. 85 at 133 (stating that, although Perplexity's tool is "beneficial," the Court was "stuck" with "broad" statutory language)—and also granted Perplexity a seven-day stay so it could appeal and seek an emergency stay from the Ninth Circuit. Dkt. 81. Perplexity did so, and the Ninth Circuit granted an administrative stay on March 16. Dkt. 94. Two days later, the Ninth Circuit granted a stay pending appeal. *See* CA9 Op. at 8-9. This Court then stayed Perplexity's deadline to respond to the complaint until after the Ninth Circuit's resolution of the appeal. Dkt. 106.

After full briefing and oral argument, the Ninth Circuit vacated the preliminary injunction in a published opinion dated August 4, 2026. CA9 Op. at 21. The Ninth Circuit held that Amazon was "unlikely to succeed in showing that Perplexity 'accessed' Amazon computers for CFAA purposes." CA9 Op. at 5. Indeed, because the Assistant "is a tool, not a person for statutory

---

[3] Coffee, *supra* note 2.

[4] Amazon alleges that Perplexity intentionally "evaded" technological barriers Amazon allegedly implemented to block the Assistant. These allegations are false, as shown by documents Amazon incorporated into the FAC. *See infra* pp. 14-15.

purposes," the Ninth Circuit held that "[i]t is the user who 'accesses' Amazon's computers, with the help of the Assistant to carry out specific acts on Amazon.com." *Id.* at 15. The Ninth Circuit then held that Amazon's "CFAA and CDAFA claims rise and fall together," concluding that under the CDAFA, as well, "the user (not Perplexity) accesses Amazon using the Assistant as an AI tool." *Id.* at 18. Finally, the Ninth Circuit held that the remaining preliminary injunction requirements favored Perplexity, concluding that Amazon's evidence of irreparable harm was "weak." *Id.* at 19-20; *see generally id.* at 18-21; *accord* Dkt. 85 at 137 (this Court stating that it "wasn't blown away" by Amazon's evidence of alleged cybersecurity harm). The Ninth Circuit denied Amazon's petition to rehear the case en banc without asking Perplexity to respond. Dkt. 121 (mandate).

Amazon then filed the First Amended Complaint (FAC). Dkt. 122. Amazon adds a state-law claim for tortious interference with contract (based on the same allegations underlying the original complaint) and otherwise recycles legal contentions the Ninth Circuit already rejected.[5]

***Amazon's Belated Demands For Discovery.***[6] Amazon first served discovery in this case on May 4, 2026. At the Initial Case Management Conference on May 15, the Court asked the parties to be mindful that discovery not get "out of hand" before Perplexity responds to the complaint and stayed the deadline for such response until after resolution of the Ninth Circuit appeal. *See* Dkt. 106. Perplexity first served discovery on May 27, 2026.

After the Ninth Circuit held on August 4 that Amazon's complaint was unlikely to succeed on the merits because the CFAA's text and purpose foreclose Amazon's legal theory, Perplexity

---

[5] To distract from its claims' fatal defects, the FAC falsely asserts that Perplexity made misstatements to the Ninth Circuit about Comet for iOS. FAC ¶¶ 6-7, 14, 67-68. Perplexity launched Comet for iOS ***after*** the entry of this Court's preliminary injunction, which was the sole basis for the Ninth Circuit appeal. *Id.* ¶ 66. Accordingly, Comet for iOS was beyond the scope of the appeal, so Perplexity's statements about "Comet" and the "Assistant" on appeal did not encompass Comet for iOS. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (Ninth Circuit's review "at the preliminary injunction stage" is "restricted to the record available to the district court"). Perplexity explained this to Amazon in a letter dated May 11, 2026. *See* FAC ¶ 68. Amazon could have raised the issue to the Ninth Circuit afterward, including at oral argument and at the en banc stage, but it said nothing—instead attempting to belatedly sandbag Perplexity with inaccurate, inflammatory, and ultimately irrelevant allegations.

[6] The facts supporting Perplexity's motion to stay discovery are set forth in the accompanying Declaration of Daniel C. Posner.

served discovery responses, dated August 13 and 20, informing Amazon that further discovery was not warranted in light of the ruling. *See* Fed. R. Civ. P. 26(b)(1) ("benefit" of discovery must "outweigh[]" the "burden" and "expense"). Perplexity also informed Amazon it would soon move to dismiss the complaint. *See* Dkt. 115 at 3 (joint statement); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) ("A district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." (citation modified)).

Amazon did not ask to meet and confer or otherwise complain about Perplexity's responses to Amazon's requests for almost two months. Then, after it filed the FAC on September 21, Amazon belatedly complained on September 25 about the discovery responses Perplexity had served more than a month earlier. Amazon also tried to condition a brief extension of Perplexity's deadline to respond to the FAC on a substantive concession from Perplexity that further discovery should continue immediately, threatening to file a motion to compel if Perplexity did not agree.

The parties met and conferred on October 1. Perplexity proposed a compromise under which it would respond to certain discovery requests Amazon had identified, while deferring additional discovery until after the hearing on this motion to dismiss, although Perplexity maintained that a full stay of discovery was consistent with Ninth Circuit law. Amazon rejected that compromise and filed a motion to compel discovery on October 12, the day before Perplexity's response to the FAC was due.

## LEGAL STANDARD

***Rule 12(b)(6).*** To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard" demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). In considering a motion to dismiss, the court may rely on facts in "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Jensen v. Brown*, 131 F.4th 677, 683 n.1 (9th Cir. 2025) (citation omitted).

Though well-pleaded factual allegations are assumed true and construed favorably to the nonmoving party, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations. . . . [C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (citations omitted). Further, "a plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 969 (N.D. Cal. 2016) (citation modified) (quoting *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

***28 U.S.C. § 1367(c)(3).*** "If a court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims." *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1077 (N.D. Cal. 2018); *see* 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *NorthBay Healthcare*, 305 F. Supp. 3d at 1077 (quoting *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)).

***Motion To Stay.*** For "good cause," the Court may forbid discovery or specify when discovery may and may not occur. Fed. R. Civ. P. 26(c)(1)(A)–(B). "District courts have broad discretion to stay discovery pending the resolution of a potentially dispositive motion, including a motion to dismiss." *Netflix*, 506 F. Supp. 2d at 321.

## ARGUMENT

### I. AMAZON'S FAC FAILS TO STATE A CLAIM

The Court should dismiss the FAC in its entirety, with prejudice. The Ninth Circuit has instructed that the CFAA's requirement that the defendant "access" a computer system "contemplates access ***by a person***." CA9 Op. at 15 (emphasis added). Thus, where access occurs by means of a computer tool like the Assistant, a court must ask whether the defendant is a "person" who "exercise[s] control" over the "tool" in such a way "as to gain entry to [the plaintiff's] servers." *Id.* The answer here is "no." *Id.* "It is ***the [Comet] user***," not Perplexity, who "'accesses' Amazon's computers" when she enlists the Assistant "to carry out specific acts on Amazon.com." *Id.*

(emphasis added). Accordingly, it does not matter that "Perplexity may receive screenshots of the user's browser and may communicate instructions to the Assistant." *Id.* "[T]hose activities," the Ninth Circuit held, "do not mean that Perplexity has 'accessed' (gained entry) to Amazon's servers." *Id.* The Ninth Circuit reached the same conclusion under the CDAFA. *Id.* at 18 ("[T]he user (not Perplexity) accesses Amazon using the Assistant as an AI tool, and thus Amazon is unlikely to succeed on the merits of its CDAFA claim.").

Amazon's amended allegations plead no facts that would avoid the Ninth Circuit's determination that Perplexity does not "access" Amazon where the Assistant interacts with Amazon in response to user prompts. And Amazon's new tortious interference theory fares no better because, among other reasons, it depends on Amazon's nonviable CFAA and CDAFA claims.[7]

### A. Amazon Fails To State A Claim Under The CFAA

To plead a CFAA claim under 18 U.S.C. § 1030(a)(2), Amazon must allege each of five elements—that Perplexity **(1)** "intentionally accessed" an Amazon computer **(2)** "without authorization or exceeding authorized access," and that it **(3)** "thereby obtained information" **(4)** "from an[] [Amazon] computer," and that **(5)** "there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).[8] Amazon fails to adequately allege any, let alone all, of these elements.

#### 1. Amazon still cannot plausibly allege "intentional[] access[]"

As the Ninth Circuit already held, this case begins and ends on the first CFAA element. *See* 18 U.S.C. § 1030(a)(2) (requiring defendant's "intentional[] access[]" to a computer). The FAC's new "allegations," which merely recycle Amazon's failed legal arguments, only reinforce that conclusion. Where, as here, the alleged access occurs via an inanimate tool like the Assistant, the relevant question (as defined by the Ninth Circuit's opinion in this very case) is whether the defendant is a "person" who ***intentionally*** "exercise[s] control" over the "tool" so as "to gain entry

---

[7] Even if the Court does not dismiss both of Amazon's CDAFA and tortious interference claims, the Court should relinquish supplemental jurisdiction over those claims. *See infra* Part II.

[8] Amazon predicated its original CFAA claim on asserted violations of § 1030(a)(2) and § 1030(a)(4). Amazon has now dropped its § 1030(a)(4) theory. *See* FAC ¶¶ 87-97.

to [the plaintiff's] servers." CA9 Op. at 15. The answer here is no, because Perplexity's servers and the Assistant are computer equipment and software that cannot act with intent and that activate only in automatic response to (and in accordance with) human user prompts. *Id.* (holding that "[i]t is the user who 'accesses' Amazon's computers" and that Perplexity has not "'accessed' (gained entry) to Amazon's servers"). Amazon cannot avoid dismissal merely by restating the Ninth Circuit's rule as a legal conclusion. *E.g.*, FAC ¶ 5 (alleging that Perplexity "gains entry to Amazon's servers"); *see Fayer*, 649 F.3d at 1064 (courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations").

Amazon's "new" allegations on the "intentional[] access[]" element fall into three categories: (a) allegations and legal contentions Amazon already presented, unsuccessfully, to the Ninth Circuit; (b) allegations regarding Comet for iOS; and (c) wholly speculative allegations about purported access by Perplexity personnel. The allegations in the first two categories cannot support Amazon's claim in view of the Ninth Circuit's ruling, and Amazon cannot save the FAC by adding purely speculative allegations in the third category.

***Allegations The Ninth Circuit Rejected.*** On a fulsome record developed over four months of preliminary injunction proceedings, Amazon already offered many of the FAC's "new" allegations to the Ninth Circuit, which considered them and nevertheless ruled for Perplexity:

| **Many "new" allegations in the FAC . . .** | **. . . are contentions Amazon already made to the Ninth Circuit.** |
|---|---|
| The Assistant "bears no resemblance to the operation of a conventional browser like Safari." FAC ¶ 5. | "Perplexity's control of the Comet AI agent also distinguishes it from conventional browsers" like Safari. Amazon's Answering Br. [hereinafter Amazon Br.] at 23-24, No. 26-1444 (9th Cir. Apr. 22, 2026), Dkt. 36.1. |
| Perplexity's servers "determine what action the [Assistant] should take"; the Assistant "does [as] Perplexity directs." FAC ¶¶ 35, 37. | The Assistant is "controlled ***by Perplexity*** through instructions from Perplexity's servers." Amazon Br. at 23. |
| "The user need not even choose the Amazon Store." FAC ¶ 36. | In response to a user's prompt that does not mention Amazon, "Perplexity's servers say, 'Go to the Amazon Store.'" Oral Arg. at 15:57. |

| **Many "new" allegations in the FAC . . .** | **. . . are contentions Amazon already made to the Ninth Circuit.** |
|---|---|
| The Assistant "navigat[es] purposefully," "automates clicks," and "behaves" like a "human shopper." FAC ¶ 37 (citation omitted). | Amazon offered the same quotations to ascribe the Assistant's actions to Perplexity. Amazon Br. at 22. |
| The Assistant "depends on a continuous connection to Perplexity's servers" and "stops operating" without it. FAC ¶ 41. | The Assistant is "fully dependent on Perplexity's servers to operate." Amazon Br. at 9 (citation omitted). |
| The Assistant "uses the user's [Amazon] credentials already stored in the Comet browser." FAC ¶ 41. | "The agent uses stored authentication cookies to access users' password-protected Amazon accounts without any user action." Amazon Br. at 8 n.2. |
| The Assistant actively "retrieve[s]" information "at Perplexity's direction"; the information is not just "passively" collected during ordinary browsing. FAC ¶ 42. | Unlike the "passive collection" in *BrandTotal*, 605 F. Supp. 3d at 1260, Perplexity "directs the Comet AI agent to actively navigate" Amazon. Amazon Br. at 24-25. |
| The Assistant sends screenshots and browsing history to Perplexity's servers. FAC ¶ 42. | Same. Amazon Br. at 8. |
| Perplexity knowingly updated Comet to evade Amazon's technological barriers, and this "was [not] an accident." FAC ¶ 57; *see id.* ¶¶ 64-65. | To test whether Perplexity evaded an earlier block by happenstance, Amazon then deployed a second technical block, and "Perplexity again circumvented the block." Amazon Br. at 11-12. |

Amazon's legal theory in its FAC—*i.e.*, that the Court should attribute to Perplexity certain automated activity by Perplexity's servers in response to, and in service of, a user's prompt—remains the same theory the Ninth Circuit rejected. CA9 Op. at 15. The Ninth Circuit explained that it did not matter that the Assistant's "agentic capabilities . . . go beyond the passive displays of a traditional web browser" or that Perplexity "receive[s] screenshots of the user's browser" and "communicate[s] instructions to the Assistant"—the Assistant nevertheless remains an inanimate computer "tool" that is "not a person" capable of "'intentional[] access[]' . . . for statutory purposes." *Id.* at 12, 15 (quoting 18 U.S.C. § 1030(a)(2)). This conclusion follows, the Ninth Circuit held, from the "CFAA's plain language." *Id.* at 14.

The Ninth Circuit's decision on this pure legal issue, which rested on its interpretation of the CFAA, constitutes the law of the case. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1241 (9th Cir. 2001) (the "interpretation of a statute" is a "purely legal issue"). This Court is thus bound to apply it. *Ranchers Cattlemen*, 499 F.3d at 1114 (Ninth Circuit's "conclusions on pure issues of law . . . are binding").

***Comet for iOS.*** Amazon's addition of allegations regarding Comet for iOS changes nothing. The FAC goes to great lengths to allege that—unlike the desktop version of the Comet Assistant on the user's computer, whose activity involves "no[] direct[] communicat[ion]" between Perplexity and Amazon computers or servers, CA9 Op. at 14—the Assistant on Comet for iOS uses "Perplexity's cloud servers," which "request pages directly from Amazon's servers" without any "user device touch[ing] Amazon's servers." FAC ¶ 66. But the Ninth Circuit made clear that intentional access under the CFAA does not turn on whether there is a direct connection between the plaintiff's and defendant's computers or other technical specifications. CA9 Op. at 14-15. Indeed, although the Ninth Circuit recognized that the desktop version of the Comet Assistant's activity did not result in any "direct[] communicat[ion]" between "Perplexity itself" and "Amazon's servers," that fact did not end the inquiry: the Ninth Circuit's very next sentence said, "***We must nevertheless determine*** whether Perplexity accesses Amazon.com through the Assistant." *Id.* at 14 (emphasis added). The Ninth Circuit answered that question in the negative because—regardless of whether a Perplexity computer connected directly to an Amazon computer—the "CFAA's plain language . . . contemplates access ***by a person***." *Id.* at 14-15 (emphasis added). And because the Assistant "is a tool, not a person," the only "person" who "gain[s] entry[] to Amazon's servers" is "the user," who activates and prompts the Assistant "to carry out specific acts." *Id.* at 15.[9] Because Amazon's FAC acknowledges that the Assistant on Comet for iOS, like its desktop counterpart,

[9] In fact, it was Amazon that urged the Ninth Circuit not to decide the case on the basis of server-to-server access. *See* Amazon Br. at 25 (arguing that lack of direct connection should not be dispositive). The Ninth Circuit's rule was also consistent with Perplexity's position. *See* Appellant's Reply Br. at 4-5, No. 26-1444 (9th Cir. May 6, 2026), Dkt. 56.1 (arguing that regardless of whether access was direct, the only intentional access was prompted by the Amazon user).

does not do ***anything*** unless "a user activates Comet's agent mode on iOS" and prompts the Assistant to "act[] for" him or her to accomplish his or her "request," the Ninth Circuit's rule applies equally to Comet for iOS and dooms Amazon's CFAA claim. FAC ¶ 66. Amazon's new claim for tortious interference effectively concedes this point by admitting that its customers, not Perplexity, are the ones who access Amazon.com using the Assistant and thereby violate Amazon's Conditions of Use. *E.g.*, FAC ¶ 113 (alleging that "customer[s] breach the Conditions of Use [as a] result [of] Comet AI agent session[s] in the Amazon Store").[10]

Amazon's amended allegations, including its Comet for iOS theory, fail for another reason beyond the plain text of the CFAA: the Ninth Circuit's reluctance to interpret the CFAA, which is "primarily a criminal statute," in a way that "could expose users themselves to criminal liability (under a conspiracy or aiding-and-abetting theory) for facilitating Perplexity's purported unauthorized access to Amazon's servers." CA9 Op. at 16 (citation omitted). Rather than account for this serious problem, Amazon's amended allegations exacerbate it, making clear that Amazon believes its customers affirmatively "manifest their assent . . . at multiple points" to Amazon's policy against outside AI agents and that its customers violate that policy when they use the Comet Assistant on Amazon.com. FAC ¶ 110; *see id.* ¶¶ 111-13. Amazon's CFAA theory, therefore, would allow a federal prosecutor to ***criminally indict*** Amazon customers who shop on Amazon.com using the Assistant. *See United States v. H.B.*, 695 F.3d 931, 937 (9th Cir. 2012) (aiding and abetting requires "knowing that the activity condemned by the law is actually occurring and intending to help the perpetrator" (citation modified)); *see also* CA9 Op. at 16-17 (holding that "it is unlikely that Congress would have exposed individual users to criminal liability under the CFAA by using the Assistant and Comet browser to access Amazon.com"); *United States v. Nosal*, 676 F.3d 854,

[10] If the Court disagrees and holds that Amazon's Comet for iOS allegations can independently establish CFAA "access" and can also independently satisfy the other CFAA elements, including at least $5,000 in losses traceable solely to Comet for iOS, the Court should nevertheless dismiss Amazon's claims to the extent they arise from any other version of Comet. *Cf. Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *6 (N.D. Cal. May 8, 2015) (dismissing claims "to the extent they are predicated on [certain] allegations").

856, 863 (9th Cir. 2012) (en banc) (holding in criminal "aiding and abetting" case that the CFAA does not "turn ordinary citizens into criminals").

***Speculative Allegations.*** Finally, Amazon has added conclusory allegations that "Perplexity's own engineers and employees use the Comet agent to access password-protected areas in the Amazon Store." FAC ¶ 39; *see id.* ¶ 40. These allegations—asserted upon mere "information and belief," *id.* ¶¶ 39-40—are nothing more than rank speculation. *E.g.*, *id.* ¶ 39 (speculating that Perplexity and its employees "must have" tested the Assistant on Amazon when they "initially develop[ed]" it). They are thus insufficient to avoid dismissal. *See Miller v. City of Los Angeles*, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) ("[A] plaintiff cannot avoid Rule 12 simply by slapping the 'information and belief' label onto speculative or conclusory allegations.").

These allegations also fail in substance for at least four reasons. ***First***, the FAC does not even try to establish that the allegations independently support $5,000 in losses, as required for CFAA liability. *Brekka*, 581 F.3d at 1132; *cf.* FAC ¶ 95 (alleging that "more than $5,000 in losses" stem "independently" from "Comet for iOS" but saying nothing about alleged access by Perplexity employees). ***Second***, any Perplexity "test[ing]" of the Assistant upon its "initial[] develop[ment]" (FAC ¶ 39), would have occurred before July 9, 2025 (*see id.* ¶ 33), and thus long before Amazon sent the letter(s) to Perplexity that allegedly removed the latter's authorization to access Amazon.com. *See infra* p. 16 (discussing CFAA notice issue). ***Third***, Amazon's assumption that "repeated[] submi[ssions] [of] the same search parameters" by anonymous "customer accounts" represented Perplexity's "own testing" (FAC ¶ 40) depends on an implausible inference that no other Assistant interactions with Amazon.com—of which there were nearly 200,000, *id.* ¶ 85—involved such searches. This enormous inferential gap cannot be crossed merely "[o]n information and belief." *Id.* ¶ 40; *see Saldana v. Wells Fargo Bank, N.A.*, 367 F. Supp. 3d 1063, 1067 (N.D. Cal. 2019) (on a motion to dismiss, a court need not accept "unwarranted deductions of fact" or "unreasonable inferences" (citation omitted)).

***Finally***, documents that Amazon incorporated into its FAC contradict its speculation that Perplexity employees "engineered around" Amazon technological barriers. FAC ¶ 40; *see* Dkt. 35-2 ¶¶ 26-27 (Decl. of Dzianis Yarats); Dkt. 54 ¶¶ 5-10 (same); FAC ¶¶ 37-40 & nn.14-18

(incorporating these documents); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1122 (N.D. Cal. 2017) (court may consider "entire document, even if only portions were quoted or referenced in the Complaint," on 12(b)(6) motion). As the incorporated documents show, Perplexity "did not develop" any Comet update "in response to or to circumvent Amazon's blocking measures." Dkt. 35-2 ¶ 26. Regarding Amazon's alleged August 2025 block (FAC ¶ 56), Perplexity's August 2025 update to Comet had already "entered final testing before Amazon implemented" the alleged block, and the update was "not designed or intended to bypass or defeat any blocking actions taken by Amazon." Dkt. 35-2 ¶ 27. As for Amazon's alleged December 2025 barrier (FAC ¶ 64), Perplexity never witnessed it, Amazon has produced nothing since then to substantiate that it was real, and in any case, Perplexity took no action to evade any such barrier. *See* Dkt. 54 ¶ 10 (stating in January 2026 that "Perplexity has taken no intentional actions specifically to ensure the Assistant can interact with Amazon.com (as opposed to ensuring the Assistant could work with the internet generally) or to bypass or defeat any technical controls implemented by Amazon"). These allegations cannot save Amazon's speculative claim that Perplexity employees accessed Amazon.com themselves. *See Baldoza v. Bank of Am., N.A.*, 2013 WL 978268, at *13 (N.D. Cal. Mar. 12, 2013) (dismissing complaint because allegations were "contradicted by the documents incorporated by reference").[11]

In sum, the FAC still fails to plausibly allege Perplexity intentionally accessed an Amazon computer under the CFAA; the Court should thus dismiss the CFAA claim with prejudice. If the Court agrees, it need not reach any other issue. *See* CA9 Op. at 16 n.4 (remaining CFAA factors are "unnecessary to resolve this case" (citation omitted)); *infra* pp. 23-24 (argument on supplemental jurisdiction).

[11] If the Court instead concludes that Amazon's claim withstands dismissal based on Amazon's allegations about Perplexity's employees' "access," the Court should nevertheless dismiss Amazon's claims to the extent they arise from access by Comet users unaffiliated with Perplexity. *Cf. Gershman*, 2015 WL 2170214, at *6.

**2. Amazon fails to plausibly allege lack of authorization**

Amazon's CFAA claim also fails the other CFAA elements.[12] For example, Amazon must allege either that Perplexity accessed its computers "without authorization" or that it "exceed[ed] authorized access." 18 U.S.C. § 1030(a)(2). The FAC does not plausibly plead either theory.

***"[E]xceeds authorized access."*** Both "authorization" theories require that Perplexity had notice that its access was unauthorized or in excess of authorized access. *See* 18 U.S.C. § 1030(a)(2) (access without authorization must be "intentional[]"); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 & n.3 (9th Cir. 2016) (no CFAA liability until cease-and-desist letter "expressly rescinded" authorization so as to put defendant "on notice"). Amazon alleges that Perplexity received this notice when it told Perplexity that "the Comet AI agent is not authorized to access the Amazon Store without transparently identifying itself" and then sent Perplexity its cease-and-desist letter on October 31, 2025. FAC ¶ 60; *see id.* ¶ 62; *id.* Ex. 11.[13]

Amazon's CFAA claim thus asserts an "exceeds authorized access" theory. Amazon alleges that Perplexity accesses Amazon.com in excess of authorized access, not that it accesses Amazon.com without any authorization at all. Indeed, Amazon never purported to completely revoke Perplexity's access, demanding only that Perplexity "transparently identify Comet AI" consistent with Amazon's Conditions of Use. FAC Ex. 11 at 4.

Amazon's thus merely demanded Perplexity comply with its Conditions of Use. The Ninth Circuit has repeatedly held that "a violation of the terms of use of a website—without more—cannot establish liability under the CFAA." *Power Ventures*, 844 F.3d at 1067; *see Nosal*, 676 F.3d at 863.

***"[W]ithout authorization."*** Even if the FAC alleged that Perplexity accesses Amazon.com "without" any "authorization" whatsoever, Perplexity should still prevail. The claim fails because

[12] The Ninth Circuit did not reach these elements in light of its holding on "access," CA9 Op. at 15-16 & n.4, nor did it suggest that Amazon's arguments on these elements had any merit.

[13] Amazon's allegations about the discontinued "Buy with Pro" feature (FAC ¶¶ 48-52) fail because Amazon does not allege access via "Buy with Pro" after it complained in 2024. *See Power Ventures*, 844 F.3d at 1067 & n.3. Further, Amazon alleges no damages from Buy with Pro. *See* FAC ¶ 50 (Buy with Pro "risked" interfering in customer relationships and "potentially" deprived Amazon of revenue). Regardless, Buy with Pro was an "agentic AI" tool operating on users' "behalf," so the claim fails for the same reasons the Ninth Circuit gave regarding the Assistant. *Id.* ¶ 48.

Perplexity's alleged access to Amazon.com—a publicly available retail website—does not implicate any "private information" other than the Comet user's. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1197 (9th Cir. 2022) (CFAA does not apply to websites that do not "prevent the general public from viewing the information").

The CFAA does not forbid a user's authorized agent—here, the Assistant—from logging into a public website where the only information behind the password gate either belongs to that user or is also available outside the password gate. *See id.* at 1198-99. This is true regardless of whether the website owner—here, Amazon—purports to revoke the agent's authorization.

Amazon acknowledges that the Assistant accesses only the Comet user's Amazon account, with the user's permission, and no private information belonging to anyone else is at issue. *E.g.*, FAC ¶ 41; *cf. hiQ Labs*, 31 F.4th at 1201 (no liability for access to "publicly available data"). The CFAA has never been held to criminalize benign access like that Amazon alleges here (assuming any Perplexity access at all), where no one's "confidentiality" or "privacy" interests are at stake. *hiQ Labs*, 31 F.4th at 1197 (citation omitted). Amazon's claim also fails the authorization element.

**3. Amazon fails to plausibly allege cognizable "loss"**

Even if Amazon could allege facts that satisfy the other requirements, the FAC does not adequately allege an annual "loss" of at least $5,000. 18 U.S.C. § 1030(g); *see id.* § 1030(c)(4)(A)(i)(I), (e)(11). The CFAA's definition of loss is "narrow." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019). It is mostly limited to "cost[s]"—particularly costs associated with "restoring" computer "data" to "its condition prior to the offense"—and only encompasses "revenue lost" if such "revenue lost" was "incurred because of interruption of service." 18 U.S.C. § 1030(e)(11); *see Andrews*, 932 F.3d at 1263 ("The plain language of the CFAA treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'" (citation modified)).

Ninth Circuit precedent forecloses Amazon's reliance on its alleged advertising losses. The FAC admits that these alleged damages are not incurred costs but rather are "lost advertising revenue." FAC ¶ 118. But the FAC does not tie this speculative loss in revenue to any "interruption of service." 18 U.S.C. § 1030(e)(11). These alleged damages therefore are not cognizable losses

that can be included in Amazon's damages figure. *See Andrews*, 932 F.3d at 1262-63 (CFAA claim not cognizable where plaintiff alleged only that he was "denied" revenues he "might have received" because CFAA requires such harms to be tied to an interruption in service). Amazon cannot save this category of damages with the conclusory allegation that it "incurred costs restoring impaired accounts and data to their condition before Perplexity's conduct." FAC ¶ 83; *cf.* 18 U.S.C. § 1030(e)(11) ("loss" includes the "cost" of "restoring [] data . . . or information to its condition prior to the offense"). Indeed, the very next paragraph contradicts this claim, admitting that Amazon made "***modifications*** to [its] advertising systems" and ***added*** "***new*** detection mechanisms to identify and exclude automated traffic." FAC ¶ 84 (emphasis added).

No other category of alleged damages describes a technological harm sufficient to state a claim, either. In *Van Buren v. United States*, the Supreme Court recognized that the CFAA's reference to "loss" focuses on "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," so that the term "loss" "relates to costs caused by harm to computer data, programs, systems, or information services." 593 U.S. 374, 391-92 (2021) (quoting 18 U.S.C. § 1030(e)(11)); *see hiQ Labs*, 31 F.4th at 1195 n.12 (*Van Buren* "requires a showing" of technological harm). Amazon alleges $260,000 in damages, but that figure includes speculative lost advertising revenue (which is not cognizable under *Andrews*, regardless of *Van Buren*) and also includes another non-technological harm: Amazon's "effort and resources used to investigate and combat" Perplexity. Dkt. 1 ¶ 57 (original Amazon complaint tying the $260,000 to "effort and resources used to investigate and combat" Perplexity rather than technological harm—a clause that Amazon has now removed, *see* FAC ¶ 79); *cf. United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (amended complaint cannot "contradict the allegations in the original complaint"). The FAC's allegations (FAC ¶¶ 80-82, 85) that Amazon employees spent time blocking and unblocking user accounts and trying other ways to bar the Assistant from Amazon.com are therefore insufficient to state a claim for damages under *Van Buren*. *See* 593 U.S. at 391-92.

Even if *Van Buren*'s and *hiQ Labs*'s discussions of technological harms were dicta, Amazon's alleged damages still would not suffice. In *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195 (10th Cir. 2026), the Tenth Circuit held that *Van Buren* does not foreclose recovery

of costs attributable to investigating a CFAA violation. *Id.* at 1201. But the court added that "expenses related to business harms" do not qualify, even if they could otherwise be characterized as investigative costs. *Id.* (stating that not "***all*** investigative costs" are recoverable). Rather, recoverable investigative costs must stem from efforts to "identify[] the perpetrator or the method by which the offender accessed the protected information." *Id.* (citation omitted).

The harms Amazon alleges are not recoverable "losses" even under the more permissive *Moxie Pest* standard. Amazon alleges $260,000 in losses, but it does not show how it calculated that amount or specify what portion of those losses stems from efforts to "identify[]" Perplexity "or the method by which" Perplexity "accessed . . . protected information." *Id.* Assuming Amazon suffered any investigative losses, such losses more likely resulted from "engineering resources" Amazon allegedly used to "detect and filter out . . . non-human impressions [from the Assistant] before billing advertisers." FAC ¶ 84. Amazon's alleged implementation of technical blocks against the Comet Assistant also went well beyond "identifying the perpetrator or the method by which the offender accessed the [supposedly] protected information." *Moxie Pest*, 164 F.4th at 1201. Amazon's alleged "losses" are thus quintessential "business harms" that are not cognizable under the CFAA. *Id.*[14]

### B. Amazon Fails To State A Claim Under The CDAFA

Amazon's CDAFA claim is meritless for the same reasons as its CFAA claim. As the Ninth Circuit recognized, "Amazon's CFAA and CDAFA claims rise and fall together." CA9 Op. at 18; *see Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) ("CDAFA claims generally rise or fall with CFAA claims because the [statutes'] necessary elements . . . do not differ materially" (citation modified)). The CDAFA, like the CFAA, "applies only to 'any person' who causes unauthorized access." CA9 Op. at 18 (citing Cal. Penal Code § 502(c)(7)). As discussed above with respect to the CFAA, where a human user engages the Assistant to perform tasks on

[14] A year after Amazon first said the Assistant causes irreparable harm to Amazon's interests in cybersecurity and advertising revenue, Amazon does not add in the FAC a single specific allegation that either of these speculative harms actually came to pass. Amazon's FAC actually shows that the Comet Assistant ***benefits*** Amazon. *See, e.g.*, FAC ¶ 36 (complaining that the Comet Assistant diverted business away from Amazon's competitor Barnes & Noble and toward Amazon.com).

Amazon, the "person . . . causing the access" is the user, not Perplexity. *Id.* Therefore, Amazon's CDAFA claim fails for the same reasons its CFAA claim does. *See id.* Though Amazon purports to raise claims pursuant to multiple subparagraphs under § 502(c) of the CDAFA, *see* FAC ¶¶ 100-03, each of those subparagraphs require that the defendant be the "person who commits" the relevant act (accessing or using computer services). The Ninth Circuit determined that this "person" is the human user who directs the Assistant to interact with Amazon, not Perplexity. CA9 Op. at 18. Thus, this Court should "arrive at the same conclusion" for Amazon's CFAA and CDAFA claims, *id.*—Amazon cannot state a claim under either statute.

Moreover, like its federal "analogue," the CDAFA focuses on "conduct such as hacking into and tampering with computer systems," not innocuous actions like the use of an online shopping tool. *See* CA9 Op. at 17 (quoting *Teran v. Superior Ct.*, 334 Cal. Rptr. 3d 299, 308 (Ct. App. 2025)). California courts have cautioned against "unconstrained" interpretations of the statute that would lead to "arbitrary and unreasonable consequences." *Teran*, 334 Cal. Rptr. 3d at 311. Exposing Californian Comet users to felony criminal liability for using a general-purpose browser tool to shop online is precisely the type of arbitrary and unreasonable outcome California courts caution against. Amazon's CDAFA claim should therefore be dismissed with prejudice.

### C. Amazon Fails To State A Claim For Tortious Interference With Contract

Amazon's new tagalong claim for tortious interference with contract—based on identical factual allegations, and fully dependent on its CFAA and CDAFA claims—also lacks merit. Amazon stakes this claim on its Conditions of Use, a quintessential Internet contract of adhesion. *See Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 763 (N.D. Cal. 2025) (discussing adhesive Internet contracts such as "browsewraps" and "clickwraps" (citation omitted)). "[M]ost people are only dimly aware of" browsewrap and clickwrap "agreements" like the Conditions of Use, and "virtually no one reads or understands" them. *Nosal*, 676 F.3d at 861; *see also id.* (stating that website "terms of service" are "vague and generally unknown").

To state a claim, Amazon must plausibly allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual

breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (citation omitted). Because the alleged contract here is "an at-will contract," Amazon must also plausibly allege that Perplexity "engaged in an independently wrongful act." *Id.* at 1148. This requirement ensures that tortious interference claims do not "chill[] legitimate business competition." *Id.*; *see id.* at 1145 (holding that independently wrongful act is required for claims based on at-will contracts like the Conditions of Use because such contracts "do not involve the same cemented economic relationships as contracts of a definite term" and are effectively "expectanc[ies]" to which the plaintiff "has no legal assurance" (citation modified)); *id.* at 1146 ("[H]arms resulting from a breach of such relationships are 'speculative.'" (citation omitted)).

At minimum, Amazon fails to allege such an independently wrongful act apart from legal conclusions that Perplexity violated the CFAA and CDAFA, and also fails to plausibly allege a counterparty or intentional acts designed to induce breaches of the Conditions of Use.

**1. Amazon fails to plausibly allege an independently wrongful act**

Amazon's Conditions of Use constitute an "at-will contract" because the contract "may be terminated, by its terms, at the prerogative of a single party." *Id.* at 1147. Indeed, Amazon's Conditions of Use provide that Amazon "reserves the right to refuse service, terminate accounts, terminate your rights to use Amazon Services, remove or edit content, or cancel orders ***in its sole discretion***." FAC Ex. 5 at p. 2 of 7 (emphasis added). Amazon customers can also terminate the Conditions of Use "at any time." *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1271 (11th Cir. 2023) (stating that plaintiffs "could have terminated" Amazon's Conditions of Use "at any time").

Thus, to state a claim, Amazon must plausibly allege that Perplexity's interference was "independently wrongful." *Ixchel*, 9 Cal. 5th at 1148; *see Upper Deck Co. v. Miller*, 2024 WL 5119805, at *4 (W.D. Wash. Dec. 16, 2024) (applying California law). In one conclusory sentence, Amazon alleges that Perplexity's "independently wrongful" conduct is that it violated the CFAA and CDAFA. FAC ¶ 112. Because Amazon fails to plausibly allege a CFAA or CDAFA violation, its tortious interference claim necessarily fails as well. *See DeSoto Cab Co. v. Uber Techs., Inc.*,

2018 WL 10247483, at *14 (N.D. Cal. Sept. 24, 2018) (dismissing intentional interference claim where independently wrongful acts were based on claims the court had already dismissed).

**2. Amazon fails to specify a contractual counterparty**

Amazon's claim also fails because it does not identify a counterparty to the Conditions of Use. *See* FAC ¶ 110. It is not enough to allege that "enforceable contracts exist between Amazon and" unspecified "registered customers." *Id.*; *see UMG Recordings, Inc. v. Glob. Eagle Ent.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015) (interference plaintiffs "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties"). This is another independent ground for dismissal. *See UMG Recordings*, 117 F. Supp. 3d at 1101-02, 1115-16 (dismissing interference claim where it asserted only "contracts with various domestic and international airlines" but did not specifically allege "the identity of any third party with whom they had contracted"); *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at *9 (similar) (C.D. Cal. May 3, 2018).

**3. Amazon fails to plausibly allege intentional interference**

Amazon also has not plausibly alleged "intentional acts ***designed to induce*** a breach or disruption" of the purported contractual relationship between Amazon and its customers. *Ixchel*, 9 Cal. 5th at 1141 (citation omitted) (emphasis added). Amazon alleges only that Perplexity "develops and operates" a "web browser application" that generally "allows users to browse the internet and use Perplexity's AI tools." FAC ¶ 33. Beyond pure speculation unconnected to the Conditions of Use (*id.* ¶ 39), the FAC does not allege that Perplexity "designed" the Assistant to induce customer breaches of Amazon's Conditions of Use, or even that Perplexity had Amazon in mind at all when it initially developed Comet. *Ixchel*, 9 Cal. 5th at 1141 (citation omitted). The Internet contains hundreds of millions of websites, and Perplexity built the Assistant to enhance users' access to all of them—not Amazon.com specifically. FAC ¶ 33. Amazon does not (and cannot) allege that Perplexity even ***knew***, let alone intended, that Amazon customers would use the Assistant to breach Amazon's Conditions of Use when it developed Comet. *See Ixchel*, 9 Cal. 5th at 1148 (plaintiff must show defendant knew interference with contract "was certain or substantially certain to occur as a result of defendant's action" (citation modified)). Amazon did not add the applicable

contractual provision—the "Agent Terms"—to the Conditions of Use until May 30, 2025, about a month before Comet's initial release on July 9, and the FAC pleads no allegation showing Perplexity had notice of the Agent Terms in the interim. FAC ¶ 111; *see id.* ¶ 33.

Amazon's allegation that Perplexity tried to "defeat" Amazon's technological blocks does not save its claim. *Id.* ¶ 113. As explained above, the FAC incorporates documents contradicting this allegation. *See supra* pp. 14-15. The Court should dismiss the tortious interference claim.

## II. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION

If the Court dismisses Amazon's CFAA claim but not its CDAFA and/or tortious interference claim(s), it should decline to exercise supplemental jurisdiction over Amazon's state-law claims. Amazon's CFAA claim is the only "claim[] over which [the Court] has original jurisdiction"; accordingly, it "may decline to exercise supplemental jurisdiction" over the CDAFA and tortious interference claims if the sole federal claim falls away. 28 U.S.C. § 1367(c)(3). Where (as here) all federal claims are dismissed before trial, interests of "economy, convenience, fairness, and comity" presumptively "point toward declining" supplemental jurisdiction. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation omitted).

***First***, economy and convenience do not favor supplemental jurisdiction because this matter has not cost the federal system much time or money. "This case has not advanced beyond the pleading stage," *Sepulveda v. Taqueria y Carniceria Martinez LLC*, 2024 WL 69066, at *2 (N.D. Cal. Jan. 5, 2024) (declining supplemental jurisdiction), and "[f]ew federal resources have been expended" thus far, *Marcos v. Equity One Lenders Grp.*, 2011 WL 6225273, at *2 (N.D. Cal. Dec. 14, 2011) (same). The parties' dispute over Amazon's preliminary injunction motion, as well as Perplexity's present motion to dismiss, constitute the totality of substantive progress in this litigation. The parties have not "engaged in substantial discovery." *Gastelum v. Kohl's Inc.*, 2023 WL 2575825, at *11 (E.D. Cal. Mar. 20, 2023) (declining supplemental jurisdiction). They have not exchanged documents, designated expert witnesses, prepared expert reports, or conducted depositions. Thus, few sunk federal costs would be wasted if the Court relinquished jurisdiction.

***Second***, Amazon's claims raise novel and complex issues concerning the CDAFA's scope and California tort law, and comity demands that California courts be permitted to address those

issues in the first instance. *See* 28 U.S.C. § 1367(c)(1). Agentic AI is still a "nascent technology." CA9 Op. at 21. Whether and how the CDAFA and state common law apply to this evolving technology are questions that no California court has "directly addressed." *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 778 (E.D. Cal. 2020) (declining supplemental jurisdiction). Rather than attempt to resolve these "difficult and novel issue[s] . . . for the first time," the Court should permit California to develop its own law. *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1284 (S.D. Cal. 2002) (declining supplemental jurisdiction).

***Finally***, directing Amazon to pursue its state-law claims in California court would not result in any unfairness to Amazon. Amazon has not spent significant resources on this case in federal court, and if anything, it would benefit from having its state-law claims heard by a California court with specialized expertise in California law. *See Hummel v. Smith*, 2010 WL 415252, at *1 (W.D. Wash. Jan. 27, 2010) (declining supplemental jurisdiction "would not be unfair" where "[t]he state court more frequently handles issues" involving state law).

**III. THE COURT SHOULD STAY DISCOVERY WHILE THIS MOTION IS PENDING**

A court should stay discovery pending resolution of a motion to dismiss that (1) is "potentially dispositive of the entire case," and (2) "can be decided absent additional discovery." *Ledwidge v. FDIC*, 2025 WL 885845, at *2 (N.D. Cal. Mar. 21, 2025) (citation omitted); *see Pearl v. Coinbase Glob., Inc.*, 2024 WL 3048490 (N.D. Cal. June 17, 2024) (Chesney, J.) (staying discovery); *Greenspan v. Musk*, 2024 WL 4933334 (N.D. Cal. Dec. 2, 2024) (Chesney, J.) (same); Order Granting Def.'s Mot. to Stay Discovery; Vacating Hearing, *In re Wells Fargo Mortg. Modification Litig.*, No. 3:24-cv-1358 (N.D. Cal. Oct. 20, 2025), Dkt. 123 (Chesney, J.) (vacating hearing on motion to compel, *see* Dkt. 120 (No. 3:24-cv-1358), and staying discovery pending motion to dismiss because plaintiffs are "not entitled to discovery" if their complaint "is deficient" (quoting *Iqbal*, 556 U.S. at 686)).

Both conditions are satisfied here.

First, the instant motion is dispositive of the entire case. *See Ledwidge*, 2025 WL 885845, at *2. As discussed above, Amazon's claims have no legal merit—the Ninth Circuit has already rejected Amazon's theory of the case, and Amazon cannot offer any new allegations to revive it.

Amazon should not be permitted to harass Perplexity with discovery into claims that are not viable. *See Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

Second, the Court can decide Perplexity's motion to dismiss—which tests nothing more than the facial sufficiency of the allegations in Amazon's complaint—without additional discovery. *See Ledwidge*, 2025 WL 885845, at *2. The Ninth Circuit's ruling was purely legal, resting on interpretation of the CFAA's and CDAFA's "plain language." CA9 Op. at 14; *see id.* at 18 (CDAFA); *Ariz. Cattle Growers' Ass'n*, 273 F.3d at 1241 (the "interpretation of a statute" is a "purely legal issue"). It therefore straightforwardly applies to the FAC without the need for intrusive discovery. *See Ranchers Cattlemen*, 499 F.3d at 1114. And Amazon cannot complain that it has not had a chance to develop a factual record. The FAC incorporates extensive evidence developed over four months of preliminary injunction proceedings and three months of merits discovery. *See, e.g.*, FAC ¶ 35 (quoting Perplexity's "sworn interrogatory responses").

The Court should not allow Amazon a last-gasp fishing expedition to save its deficient claims.[15] Amazon failed for nearly two months following the Ninth Circuit ruling to pursue discovery, then belatedly threatened to move to compel while Perplexity had to respond to the FAC, then rejected Perplexity's offer to engage in more limited discovery during the pendency of this motion, before finally filing a motion to compel on the eve of Perplexity's responsive pleading. *See supra* pp. 6-7 & n.6; *see also Ledwidge*, 2025 WL 885845, at *2 ("[E]ngaging in discovery prior to adjudication of a strong motion to dismiss would represent a potential waste of resources." (citation modified)); *cf. Wagner v. Nat'l City Bank*, 2010 WL 2108408, at *4 (D. Conn. May 24, 2010) (denying motion for additional discovery where plaintiff had "failed to diligently pursue" it).

**<u>CONCLUSION</u>**

The Court should stay discovery and dismiss the FAC with prejudice.

---

[15] Amazon's motion to compel concedes it needs discovery to state a claim. Dkt. 127 at 9 (forecasting yet another amended complaint). Such plaintiffs are not entitled to discovery. *Iqbal*, 556 U.S. at 686. Perplexity will further respond if the Court does not vacate "further briefing" on the motion to compel. Order Vacating Hearing on Plaintiffs' Motion to Compel, *In re Wells Fargo Mortg. Modification Litig.*, No. 3:24-cv-1358 (N.D. Cal. Sept. 30, 2025), Dkt. 120 (Chesney, J.).

DATED: October 13, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By /s/ Daniel C. Posner
Daniel C. Posner
*Attorneys for Defendant Perplexity AI, Inc.*