**HUESTON HENNIGAN LLP**
Moez M. Kaba, Esq. (SBN 257456)
mkaba@hueston.com
Christine Woodin, Esq. (SBN 295023)
cwoodin@hueston.com
Billy Joe McLain, Esq. (SBN 290682)
bmclain@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Hagan Scotten, Esq. (admitted *Pro Hac Vice*)
hscotten@hueston.com
1 Little W 12th Street
New York, NY 10014
Telephone: (212) 268-8150
Facsimile: (888) 866-4825

Attorneys for Plaintiff
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:25-cv-09514-MMC<br><br>**AMAZON.COM SERVICES LLC'S OPPOSITION TO PERPLEXITY AI, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STAY DISCOVERY**<br><br>**Date**: November 20, 2026<br>**Hearing Time**: 9:00 a.m.<br>**Courtroom**: 7<br>**Judge**: Maxine M. Chesney |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

A. The Ninth Circuit Vacated the Preliminary Injunction on a Limited Record ..... 3

B. The FAC Contains Numerous New Factual Allegations Demonstrating Perplexity Controls the Comet AI Agent's Entry into Protected Accounts ..... 4

C. Amazon Revoked Permission and Perplexity Evaded Its Technical Barriers ..... 5

D. Amazon's Loss and the Contracts with Which Perplexity Interfered ..... 6

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. The Ninth Circuit Did Not Decide Whether the FAC States a Claim ..... 7

1. Perplexity Mischaracterizes a Preliminary Ruling as a Final Judgment ..... 7

2. The Panel Addressed Only the Facts in Its Opinion ..... 9

B. The FAC Plausibly Alleges a CFAA Claim ..... 11

1. Perplexity Intentionally Accesses Amazon's Protected Computers ..... 11

2. Perplexity's Access Is Without Authorization ..... 17

3. The FAC Pleads More than $5,000 in Cognizable Loss ..... 19

C. The CDAFA Claim Independently Survives on the FAC's Allegations ..... 20

D. The FAC States a Claim for Intentional Interference with Contract ..... 21

1. Even If Independent Wrongfulness Is Required Here, the FAC Pleads It ..... 22

2. The FAC Identifies the Contracts and Their Counterparties ..... 23

3. The FAC Shows Perplexity's Knowledge and Intent ..... 24

E. Discovery Should Continue ..... 25

F. Alternatively, Amazon Should Be Granted Leave to Amend ..... 25

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Adjaye v. Cook*, 2024 WL 647636 (N.D. Cal. Feb. 15, 2024) ... 16

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ... 24

*Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083 (9th Cir. 2026) ... *passim*

*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019) ... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 7

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ... 7

*Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) ... 18

*Creative Computing v. Getloaded.com LLC*, 386 F.3d 930 (9th Cir. 2004) ... 20

*Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013) ... 8, 11

*Do No Harm v. Pfizer Inc.*, 126 F.4th 109 (2d Cir. 2025) ... 7

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ... 25

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) ... 13, 14, 18, 19

*Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ... 17

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ... 19

*Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758 (9th Cir. 1982) ... 9

*Intus Care, Inc. v. RTZ Assocs., Inc.*,
2024 WL 2868519 (N.D. Cal. June 5, 2024) .......... 23

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......... 7, 16, 19

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) .......... 13, 15, 19

*Moxie Pest Control (Utah), LLC v. Nielsen*,
164 F.4th 1195 (10th Cir. 2026).......... 19

*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024).......... 9

*Orantes-Hernandez v. Gonzales*,
504 F. Supp. 2d 825 (C.D. Cal. 2007).......... 10

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
220 F.R.D. 349 (N.D. Cal. 2003) .......... 3, 25

*Ranchers Cattlemen Action Legal Fund v. USDA*,
499 F.3d 1108 (9th Cir. 2007).......... 1, 2, 8

*Rosemond v. United States*,
572 U.S. 65 (2014) .......... 17

*S.F. Herring Ass'n v. Dep't of the Interior*,
946 F.3d 564 (9th Cir. 2019).......... 2, 10

*Sakamoto v. Duty Free Shoppers, Ltd.*,
764 F.2d 1285 (9th Cir. 1985).......... 9

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025).......... 16

*Silicon Valley Clean Energy v. Origis USA LLC*,
2026 WL 2353186 (N.D. Cal. Aug. 13, 2026).......... 17

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017).......... 15

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011).......... 7

*Stormans, Inc. v. Wiesman*,
794 F.3d 1064 (9th Cir. 2015).......... 1, 8

*U.S. Bank N.A. v. Vill. at Lakeridge, LLC*,
583 U.S. 387 (2018) .......... 8

*UMG Recordings, Inc. v. Glob. Eagle Ent. Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..... 24

*United States v. Corrales-Vazquez*,
931 F.3d 944 (9th Cir. 2019) ..... 9

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995) ..... 9

*United States v. Freter*,
31 F.3d 783 (9th Cir. 1994) ..... 17

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) ..... 18

*United States v. Nosal*,
930 F. Supp. 2d 1051 (N.D. Cal. 2013) ..... 13, 18

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ..... 11

*Van Buren v. United States*,
593 U.S. 374 (2021) ..... 15, 19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..... 7

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1983) ..... 2, 8

**California Cases**

*Crown Imports, LLC v. Superior Court*,
223 Cal. App. 4th 1395 (2014) ..... 23

*Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*,
120 Cal. App. 5th 885 (2026) ..... 23

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ..... 23

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ..... 22, 24

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
177 Cal. App. 3d 1120 (1986) ..... 3, 24

*Redfearn v. Trader Joe's Co.*,
20 Cal. App. 5th 989 (2018) ..... 23

*Thrifty-Tel, Inc. v. Bezenek*,
46 Cal. App. 4th 1559 (1996) ........ 23

**Federal Statutes**

18 U.S.C. § 1030 ........ 13, 19, 20

28 U.S.C. § 1367(c)(3) ........ 20

**California Statutes**

Cal. Civ. Code § 1709 ........ 23

Cal. Civ. Code § 1710 ........ 23

Cal. Penal Code § 502 ........ 20, 21

**Rules**

Fed. R. Civ. P. 8(d)(2) ........ 17

Fed. R. Civ. P. 12(b)(6) ........ 6, 11, 16, 17

# I. INTRODUCTION

At every turn, Perplexity has sought to conceal how its Comet AI agent operates. It disguises its AI agent's identity to evade Amazon's safeguards, and now it seeks to block discovery into how that technology works. To do so, Perplexity attempts another deception, mischaracterizing the Ninth Circuit's interlocutory ruling in a bid to obscure its conduct and evade liability based on facts the panel never considered, including facts that Perplexity concealed from the Ninth Circuit. Perplexity's motion strips the panel's conclusion of its express limitations and recasts a fact-bound determination as a categorical holding that only the user—and never Perplexity—can access Amazon through the Comet AI agent. *See* Mot. 1, 8, 10, 13, 20. The panel issued no such holding. It repeatedly confined its ruling to the limited record before it, expressly reserving whether, "on a different record or new facts, Perplexity may exercise control over the Assistant in such a way as to gain entry to Amazon's servers." *Amazon.com Servs., LLC v. Perplexity AI, Inc.*, 184 F.4th 1083, 1091–92 (9th Cir. 2026) (limiting its holding to "the current record," "these narrow facts," "the record before us," and "the state of technology only as presented in the filings in this case").[1] Perplexity's motion never acknowledges those repeated limitations. Instead, desperate to avoid discovery, Perplexity asks this Court to disregard them and erroneously transform a preliminary ruling into a final judgment on claims and facts the Ninth Circuit expressly left open.

Settled Ninth Circuit law rejects that approach. Because preliminary-injunction decisions rest on incomplete records that often materially change as litigation proceeds, they ordinarily do not establish law of the case. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015) (earlier decision vacating a preliminary injunction did not establish law of the case); *Ranchers Cattlemen Action Legal Fund v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007) (preliminary-injunction decisions seldom settle questions definitively because they "must often be made hastily and on less than a full record"). As the Ninth Circuit has explained, "[b]ecause our review of the law applied by the district court is so limited and because the fully developed factual record may

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, and previous alterations.

be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions provides little guidance on the appropriate resolution of the merits." *Zepeda v. INS*, 753 F.2d 719, 724 (9th Cir. 1983). Thus, although the panel supplied the applicable legal standard, this Court "must apply" that standard "to the facts anew." *Ranchers Cattlemen*, 499 F.3d at 1114. Indeed, it is error to treat an earlier appellate decision as foreclosing new factual allegations the appellate court never considered. *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574–76 (9th Cir. 2019). Perplexity asks this Court to make that error.

The First Amended Complaint ("FAC") alleges precisely the conduct that the Ninth Circuit said would make Perplexity liable. The panel held that because an AI agent is a tool, not a statutory person, the key question is "whether Perplexity uses a tool (the Assistant) to 'access' Amazon's computers." *Amazon*, 184 F.4th at 1091. The FAC sets forth extensive new facts showing that Perplexity wields its AI agent as just such a tool, controlling it at every relevant step and determining where it goes, what information it requests, and what actions it takes inside Amazon's secure systems. FAC ¶¶ 35–41. For example, Perplexity, not the user, decides to send the Comet AI agent into Amazon when a user never mentions Amazon at all, and it overrides the user's choice when the user selects a different retailer, sending the agent to Amazon anyway. *Id.* ¶ 36. On Apple devices, Perplexity accesses Amazon's servers *directly*, using copied customer credentials, with no customer device in between—a fact that Perplexity chose to conceal from the Ninth Circuit to support a flawed argument that the panel rightly rejected. *Id.* ¶¶ 66–68, 93. And even where no user is ever involved, Perplexity accesses Amazon's password-protected spaces through its own engineers to develop, test, and validate its ability to enter Amazon's protected systems, including after Amazon deployed technical barriers designed to keep it out. *Id.* ¶¶ 39–40, 57, 64–65. Perplexity thereby exposes Amazon and its customers to the dangers of an unauthorized, covert AI agent—dangers that grow more apparent and more serious by the day. These facts, not previously alleged, show that Perplexity "exercise[s] control over the Assistant in such a way as to gain entry to Amazon's servers," *Amazon*, 184 F.4th at 1091, and defeat Perplexity's motion to dismiss.

The Ninth Circuit also all but invited the FAC's new tortious interference claim. *See id.* at 1092, 1094 n.5 (declining to "address whether in other contexts, including tort claims, Perplexity

can avoid liability for the Assistant's actions," and emphasizing that its ruling "does not impair Amazon's ability to regulate access to Amazon.com via private terms of service for its users"). Each of Perplexity's contrary arguments fails. Perplexity says Amazon identifies no independently wrongful conduct. Mot. 21–22. But that is not a legal requirement, and in any event the FAC alleges violations of the CFAA and CDAFA, as well as facts supporting deceit and trespass to chattels. FAC ¶¶ 43–45, 57, 64–65, 84–85. Perplexity says Amazon fails to identify its contractual counterparties. Mot. 22. But the FAC identifies the governing contracts and affected customers, whom California law does not require Amazon to identify by name. FAC ¶¶ 85, 110–12, 117; *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986). Perplexity says it lacked intent. Mot. 22–23. But the FAC asserts that Perplexity knowingly designed and deployed its agent to violate Amazon's contractual restrictions despite repeated warnings. FAC ¶¶ 110–17.

Perplexity also seeks to halt discovery into the very facts that the Ninth Circuit said should be developed. But Perplexity cannot show that its motion is "potentially dispositive of the entire case" and can be "decided absent additional discovery." *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 352 (N.D. Cal. 2003). The Court should deny Perplexity's motion and allow development of the fuller record the Ninth Circuit contemplated.

## II. STATEMENT OF FACTS

### A. The Ninth Circuit Vacated the Preliminary Injunction on a Limited Record

Amazon filed this action on November 4, 2025, and moved for a preliminary injunction the same day, seeking to stop Perplexity from using its Comet AI agent to enter Amazon's password-protected pages without authorization. Dkt. 1 ¶¶ 32–36. On March 9, 2026, this Court granted Amazon a preliminary injunction, finding that Amazon was likely to succeed on its CFAA and CDAFA claims. Dkt. 81 at 3–4, 7–8. Perplexity appealed. *Amazon*, 184 F.4th at 1088.

On appeal, Perplexity represented that it was "undisputed" that "no Perplexity computer ever has direct access to an Amazon computer." FAC ¶ 67. Perplexity made this claim central to its argument on appeal—as it had before this Court—because it contended that there could be no access under the CFAA if Perplexity routed its communications to Amazon through a user's

computer. Dkt. 35 at 10–11 ("At no point does any Perplexity server contact any Amazon server, as would be required for Amazon to establish that Perplexity 'access[ed]' Amazon's computers."); CA9 No. 26-1444, Dkt. 26.1 at 16, 23–24, 27 (same). But at the time Perplexity made that representation, it had already launched Comet for iOS, the functionality of which depended on Perplexity's servers accessing Amazon's servers *directly*. FAC ¶¶ 6, 66–67. Perplexity knew its representation was false but repeated it even after Amazon demanded a correction. *Id.* ¶¶ 67–68.

On August 4, 2026, the Ninth Circuit vacated the preliminary injunction. *Amazon*, 184 F.4th at 1094. The panel described the Comet AI agent as software that "takes screenshots of the browser view, sends those screenshots from the user's computer to Perplexity's servers, and receives instructions from Perplexity's servers on how to navigate Amazon.com." *Id.* at 1087. It concluded that "[o]n the current record" Amazon was not likely to prove that Perplexity accessed Amazon's computers. *Id.* at 1091, 1094. The panel expressly reserved whether, "on a different record or new facts, Perplexity may exercise control over the Assistant in such a way as to gain entry to Amazon's servers." *Id.* at 1091.

### B. The FAC Contains Numerous New Factual Allegations Demonstrating Perplexity Controls the Comet AI Agent's Entry into Protected Accounts

On September 21, 2026, Amazon filed the FAC. It contains new allegations demonstrating distinct ways Perplexity itself enters Amazon's protected computers, including accessing Amazon's servers directly through Comet for iOS (which Perplexity concedes was not before the Ninth Circuit, Mot. 6 n.5); controlling the Comet AI agent and directing it into Amazon's secure spaces even when a user names no retailer or chooses a different one; and accessing them through its own engineers. FAC ¶¶ 35–40, 66.

Perplexity controls and directs the Comet AI agent's entry into the Amazon Store. When a user prompts the Comet AI agent, the browser transmits webpage content, including password-protected Amazon pages, to Perplexity's servers. *Id.* ¶ 35. Perplexity's servers determine the Comet AI agent's next action and send it commands such as "click this, type that, navigate there," including the precise Amazon URLs to request. *Id.* ¶¶ 37–38. The Comet AI agent uses stored credentials to enter a signed-in account without a new sign-in, follows Perplexity's instructions,

takes actions no user requested, and stops functioning when it loses contact with Perplexity's servers. *Id.* ¶ 41. Perplexity also receives and retains the contents of protected pages for its own use. *Id.* ¶ 42. The FAC identifies concrete instances in which Perplexity chose to enter Amazon's secure pages without a user directing it there. When a user agreed to purchase a book the Comet AI agent had displayed on Barnes & Noble's website, the agent instead overruled the user, opened Amazon, and proceeded to checkout with the user's credentials. *Id.* ¶ 36. Similarly, when a user asked the Comet AI agent to "shop for AA batteries" and then "order for me," without mentioning Amazon, the agent opened Amazon, used the customer's stored login session, and proceeded to checkout. *Id.*

On Comet for iOS—i.e., Apple devices—Perplexity's servers applied the user's stored authentication data files to access "pages directly from Amazon's servers using . . . the user's copied cookie" and "receive Amazon's responses directly," including "secure, password-protected pages." *Id.* ¶ 66. In that sequence, the user's phone received only "screenshots of the Perplexity-operated session," but "[n]o user device touches Amazon's servers." *Id.* Put simply, "on iOS Perplexity's own computers directly gain entry to Amazon's computers, using Amazon customers' authentication credentials." *Id.*

Based on Perplexity's acknowledged practices, Amazon's observations of traffic on its site, and the speed with which Perplexity defeated Amazon's technical barriers, the FAC also asserts that Perplexity's engineers accessed Amazon's secure accounts to develop and test the Comet AI agent, including when implementing the updates that restored its access. *Id.* ¶¶ 39–40, 57, 64–65.

**C. Amazon Revoked Permission and Perplexity Evaded Its Technical Barriers**

On November 19, 2024, after discovering that Perplexity's "Buy with Pro" service placed orders through Perplexity-controlled Amazon accounts, Amazon informed Perplexity that it lacked permission to deploy AI agents in the Amazon Store. FAC ¶ 52. Perplexity agreed to stop but soon resumed its unauthorized access. *Id.* ¶¶ 52–53. After Perplexity launched the Comet AI agent, Amazon reaffirmed its prohibition, including through cease-and-desist correspondence. *Id.* ¶¶ 55, 59, 62. Perplexity publicly acknowledged Amazon's demands, *id.* ¶ 63, but continued to access Amazon's password-protected spaces anyway.

Amazon also enforced its prohibition through technological barriers. When Amazon deployed its first barrier, Perplexity told users it was "working to resolve" the restriction and circumvented it within twenty-four hours. *Id.* ¶¶ 56–57. Amazon then demanded that Perplexity stop evading its access controls and deployed a second barrier preventing Comet from accessing its password-protected pages. *Id.* ¶¶ 62, 64; Ex. 11 at 4. Within two days, Perplexity circumvented that barrier too, restoring its agent's access to customers' protected accounts. *Id.* ¶ 65.

**D. Amazon's Loss and the Contracts with Which Perplexity Interfered**

Perplexity's concealment has imposed substantial costs on Amazon. By disguising the Comet AI agent as Google Chrome, Perplexity made its automated traffic difficult to distinguish from legitimate customer activity. FAC ¶¶ 43–45. Amazon's engineers spent six weeks investigating that traffic and developing a digital fingerprint to identify it, only to repeat that work after Perplexity modified the Comet AI agent to evade Amazon's defenses. *Id.* ¶¶ 56–57, 81. Amazon also spent substantial resources developing and maintaining technological barriers, modifying its systems, and assessing, repairing, and restoring customer accounts affected by the Comet AI agent's activity. *Id.* ¶¶ 82–85. Since July 2025, eight Amazon engineers devoted at least 1,280 hours to investigating and remediating Perplexity's conduct, while Amazon's separate investigation of Comet for iOS caused more than $5,000 in additional losses. *Id.* ¶¶ 79–81.

Perplexity's conduct also interferes with Amazon's contractual relationships with its customers. Every Amazon customer agrees to Amazon's Conditions of Use when creating an account and placing orders. *Id.* ¶¶ 28, 110; Ex. 5. Those terms require AI agents to identify themselves, honor Amazon's prohibitions against access, and refrain from circumventing technological barriers. FAC ¶ 31. They also bind customers who use, allow, or enable an AI agent's deployment. *Id.* Perplexity knew these restrictions and deliberately designed and deployed Comet to violate them, causing Amazon customers to breach their contracts each time Perplexity directed its agent into their accounts after Amazon prohibited access. *Id.* ¶¶ 110–13, 117.

## III. <u>LEGAL STANDARD</u>

A complaint survives a Rule 12(b)(6) motion when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A defendant also may not use incorporated documents "to insert [the defendant's] own version of events into the complaint to defeat otherwise cognizable claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018). And an amended complaint is judged on its own allegations and "requires a new determination" of sufficiency. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (holding that applying law of the case to an amended complaint "was error").

## IV. ARGUMENT

### A. The Ninth Circuit Did Not Decide Whether the FAC States a Claim

#### 1. *Perplexity Mischaracterizes a Preliminary Ruling as a Final Judgment*

Perplexity's argument disregards the fundamentally different inquiries at the preliminary-injunction and pleading stages. To obtain a preliminary injunction, Amazon had to show likely success on the evidence then before the Court. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To survive a motion to dismiss, the FAC need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A plaintiff's burden at the preliminary injunction stage "is more onerous than the burden at the pleading stage," and a plaintiff denied preliminary relief may still proceed on a later-filed complaint. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119–22 (2d Cir. 2025). "[A]n amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits." *Askins*, 899 F.3d at 1043. The panel decided whether Amazon had shown likely success on a preliminary, incomplete record; this Court must decide whether the FAC plausibly states a claim.

Perplexity attempts to collapse those inquiries. Rather than confront the FAC's allegations, Perplexity compares some of them to Amazon's appellate briefing and dismisses the new facts as "contentions Amazon already made to the Ninth Circuit." Mot. 10–11. It then insists that the panel "considered them and nevertheless ruled for Perplexity." *Id.* at 10. On that faulty basis, Perplexity declares that "this case begins and ends on the first CFAA element," *id.* at 9, that the panel's ruling "constitutes the law of the case," *id.* at 12, and that it "straightforwardly applies to the FAC," *id.* at

25. But the panel articulated the legal standard—whether Perplexity uses the Comet AI agent as a tool to gain entry to Amazon's computers—and applied it to the limited preliminary-injunction record before it. *Amazon*, 184 F.4th at 1091. The panel never decided whether the original complaint pled its claims sufficiently, much less whether the subsequently filed FAC does so.

Perplexity's invocation of law of the case also disregards settled Ninth Circuit precedent. Decisions on preliminary injunctions ordinarily do not establish law of the case because they rest on incomplete records that may materially change as litigation proceeds. *Ranchers Cattlemen*, 499 F.3d at 1114; *Stormans*, 794 F.3d at 1076 n.5; *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (a preliminary-injunction decision "is just that: preliminary"). Indeed, "because the fully developed factual record may be materially different from that initially before the district court," an appellate court's "disposition of appeals from most preliminary injunctions provides little guidance on the appropriate resolution of the merits." *Zepeda*, 753 F.2d at 724.

Although the Ninth Circuit has recognized a narrow exception to this rule for a "fully considered appellate ruling on an issue of law made on a preliminary injunction appeal," it has emphasized that even then, the district court "must apply this law to the facts anew." *Ranchers Cattlemen*, 499 F.3d at 1114. In *Ranchers Cattlemen*, which Perplexity cites but misapplies, the Ninth Circuit held that the district court erred in concluding that its "hands [were] tied" by an earlier appellate ruling reversing a preliminary injunction. *Id.* at 1113–14. *Stormans* likewise expressly rejected the argument that a prior vacatur of a preliminary injunction necessarily disposed of later proceedings, because the dispute required the court to evaluate the factual record developed after the preliminary-injunction stage. 794 F.3d at 1076 n.5. The same is true here. Whether Perplexity uses the Comet AI agent as a tool to enter Amazon's computers turns on whether the FAC's allegations satisfy the panel's governing legal standard. *See U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018). They do.

That is how litigation proceeds after a preliminary injunction is vacated on appeal. For example, in *Sierra Club v. Morton*, the Ninth Circuit reversed a preliminary injunction after concluding that the plaintiffs "were not likely to prevail on the merits." 348 F. Supp. 219, 219 (N.D. Cal. 1972). The plaintiffs amended, the defendants moved to dismiss on law-of-the-case

grounds, and this District denied the motion because, "notwithstanding the Court of Appeals' 'handwriting on the wall,' plaintiffs still have their right to proceed on the merits." *Id.* at 220. Later, in *Golden State Transit*, the Ninth Circuit vacated a preliminary injunction after concluding that the plaintiff had "little chance" of prevailing on its preemption claim. *Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758, 761–62 (9th Cir. 1982). The plaintiff nevertheless continued litigating that very claim beyond the motion-to-dismiss stage, proceeding to summary judgment before the district court, 563 F. Supp. 169, 172 (C.D. Cal. 1983), and ultimately obtaining a favorable decision from the Supreme Court on its preemption claim. 475 U.S. 608, 612, 618–20 (1986). More recently, the Ninth Circuit vacated substantial portions of a preliminary injunction in *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1123–25 (9th Cir. 2024). Undeterred, NetChoice amended its complaint and secured renewed preliminary relief, 770 F. Supp. 3d 1164, 1177–78 (N.D. Cal. 2025), which the Ninth Circuit went on to affirm in part based on a more developed record, 170 F.4th 744 (9th Cir. 2026). And again, in *hiQ Labs, Inc. v. LinkedIn Corp.*, this District rejected an argument that a contract counterclaim was "precluded by the findings of this Court and the Ninth Circuit" during earlier preliminary-injunction proceedings, finding that factual issues persisted, and denying the motion to dismiss that claim. 2021 WL 1531172, at *5–6, 11 (N.D. Cal. Apr. 19, 2021). Accordingly, a preliminary-injunction appeal is merely the first round in a larger fight, and one that cannot be called off before the parties have had a chance to develop their claims.

### 2. *The Panel Addressed Only the Facts in Its Opinion*

Perplexity attempts to evade this long line of authority by treating every argument Amazon made on appeal as a factual question the panel necessarily decided. Mot. 9–11. Its chart compares cherry-picked and incomplete passages from the FAC with similarly curated excerpts from Amazon's appellate briefing, then assumes that because the panel rejected preliminary relief, it must have rejected the factual allegations underlying each argument. But the law of the case extends only to issues "actually considered and decided," *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995), and "[c]ases are not precedential for propositions not considered, or for questions which merely lurk in the record." *United States v. Corrales-Vazquez*, 931 F.3d 944, 954 (9th Cir. 2019); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("unstated

assumptions on non-litigated issues are not precedential holdings"). That principle applies with even greater force to facts the appellate court never addressed. In *S.F. Herring*, the Ninth Circuit held that "the district court thus erred in treating our prior opinion as dispositive" of allegations "neither included in the complaint that was at issue in the prior appeal, nor addressed in our prior decision." 946 F.3d at 574–75 (rejecting the defendant's law-of-the-case argument).

Here, the panel went out of its way to make clear that its ruling was preliminary and narrow. In seven separate passages, the panel expressly limited its conclusion to only the specific facts and record before it. *See, e.g.*, *Amazon*, 184 F.4th at 1091 ("On the facts before us, we answer no."); *id.* ("On the current record, Amazon is not likely to succeed in proving the 'access' prong of its CFAA claim."); *id.* at 1092 (Perplexity did not access Amazon.com "under these facts"); *id.* ("On these narrow facts . . . we decline to adopt Amazon's interpretation."); *id.* ("Our holding here is limited to 'access' . . . on the record before us."); *id.* ("For now, this opinion reflects and applies to the state of technology only as presented in the filings in this case."); *id.* at 1094 n.5 ("On the facts before us, Amazon is simply unlikely to succeed in its attempt to regulate access by invoking the CFAA and the CDAFA."). Perplexity acknowledges none of these limits but instead reads the panel's opinion to implicitly hold that the Comet AI agent's actions can never be attributed to Perplexity. Mot. 11–13. The panel said no such thing. It expressly left open "whether, on a different record or new facts, Perplexity may exercise control over the Assistant in such a way as to gain entry to Amazon's servers." *Amazon*, 184 F.4th at 1091. That expressly reserved question cannot have been decided by implication. *See Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 836–37 (C.D. Cal. 2007) (the Ninth Circuit's "express refusal to address the government's argument belies plaintiffs' assertion that the appellate court necessarily, if implicitly, decided" the issue).

Comet for iOS further exposes the flaw in Perplexity's attempt to expand the Ninth Circuit's narrow ruling. The panel specifically described a browser operating *locally* on a user's device, without direct communication between Perplexity's computers and Amazon's servers. *Amazon*, 184 F.4th at 1087, 1091. But on Comet for iOS, Perplexity—not the user—runs the browser on its own servers, using copied customer credentials to access Amazon directly. FAC ¶ 66. Yet two

weeks after launching that product, Perplexity told the Ninth Circuit that it was "undisputed" that "no Perplexity computer ever has direct access to an Amazon computer" and that "Perplexity does not connect to . . . Amazon's servers or computer systems." *Id.* ¶ 67. Perplexity knew that those representations were false but made them and repeated them even after Amazon's counsel demanded a correction. *Id.* ¶¶ 67–68. The panel incorporated Perplexity's account into its opinion, stating that "Perplexity's servers never directly access Amazon's servers." *Amazon*, 184 F.4th at 1091. Perplexity's direct access to Amazon's servers through Comet for iOS was thus clearly not before the Ninth Circuit. Nevertheless, while conceding that "Comet for iOS was beyond the scope of the appeal," Mot. 6 n.5, Perplexity insists that the panel's ruling forecloses Amazon's claims based on that very product. That makes no sense.[2]

The Court must apply the Ninth Circuit's controlling access standard to the FAC under Rule 12(b)(6). But it cannot treat the denial of preliminary relief as a merits judgment on a different pleading and record because "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction ruling leaves "open the possibility that additional facts could be introduced . . . resulting in a different outcome." *Ctr. for Biological Diversity*, 706 F.3d at 1091. As explained herein, the new facts in the FAC more than sufficiently plead Amazon's CFAA, CDAFA, and tortious interference claims.

### B. The FAC Plausibly Alleges a CFAA Claim

#### 1. *Perplexity Intentionally Accesses Amazon's Protected Computers*

The FAC pleads new facts showing that Perplexity accesses Amazon's password-protected spaces by wielding the Comet AI agent as a tool to enter those systems, by communicating *directly*

[2] Perplexity argues that the panel's ruling did not "turn on whether there is a direct connection" between the parties' computers. Mot. 12. True, the panel rejected Perplexity's argument that access requires a direct server-to-server connection, explaining that Perplexity could be shown to have accessed Amazon's secure systems even where direct entry was absent. *Amazon*, 184 F.4th at 1090–91. But the panel expressly incorporated Perplexity's false account into its analysis. *Id.* at 1089 ("Perplexity explains that any Amazon data was first transmitted to the user's computer and then to Perplexity's servers via browser screenshots."); *id.* at 1091 ("Perplexity's servers never directly access Amazon's servers."). Perplexity cannot seriously maintain that the panel opinion governs allegations nowhere mentioned in that opinion, while asking this Court to disregard a false assertion by Perplexity that the panel twice recited in its dispositive analysis.

with Amazon's protected spaces through Comet for iOS, and by having its own employees enter Amazon's protected pages to develop and test the agent. FAC ¶¶ 35–42, 66, 92–93. The original complaint alleged that "Perplexity may receive screenshots of the user's browser and may communicate instructions to the Assistant." *Amazon,* 184 F.4th at 1091; Dkt. 1 ¶ 33. Based on what Amazon has since learned, the FAC's new allegations describe three distinct routes by which Perplexity gains entry to Amazon's computers. Each satisfies the panel's access standard and shows that "[t]he Comet AI agent is Perplexity's instrumentality, and its entry into Amazon's computers is Perplexity's entry." FAC ¶ 92.

***First***, Perplexity uses the Comet AI agent as a tool to enter Amazon's protected systems. Perplexity designs the Comet AI agent, controls its operation from its own servers, selects the pages it visits, and determines each action it takes inside customers' password-protected accounts. FAC ¶¶ 35–42. Although a user's prompt may set a general objective, Perplexity decides how to accomplish it—including which websites to enter and what actions to take once inside. As Perplexity admitted in sworn discovery responses (which were not part of the preliminary injunction record), its servers process the user's instructions, direct the agent's execution, and collect and process the resulting data. *Id.* ¶ 35. That control is continuous and specific: its servers receive the contents of Amazon's protected pages, determine what the agent should click or type, and transmit commands directing those actions inside Amazon's systems. *Id.* ¶¶ 35–38. Without that connection to Perplexity, the agent cannot function. *Id.* ¶ 41. And Perplexity can modify the agent's behavior remotely, as it did when it repeatedly restored Comet's access after Amazon deployed barriers to prevent it. *Id.* ¶¶ 37, 41, 56–57, 64–65.

The FAC illustrates Perplexity's control through two actual transactions conducted in September 2026, after the panel ruled, in which Perplexity chose to enter Amazon *without the customer ever directing it there*. In the first, a user instructed the Comet AI agent to shop for AA batteries without mentioning Amazon or opening Amazon.com. *Id.* ¶ 36. Perplexity nevertheless directed the Comet AI agent into the Amazon Store, used the customer's stored login session to enter Amazon's password-protected pages, and proceeded to secure checkout. *Id.* In the second, the agent presented a book available from Barnes & Noble, and the user agreed to purchase that

book from the options presented on that retailer's site. *Id.* Rather than complete the purchase there, Perplexity instead sent the Comet AI agent to Amazon, added the book to the customer's Amazon cart, and proceeded to checkout. *Id.* In both transactions, the customer chose what to buy, but Perplexity chose whose computer system to enter, without—and even contrary to—a user's instructions. Perplexity then directed the individual requests, clicks, and transmissions that accomplished that entry. *Id.* ¶¶ 35–37. Perplexity attempts to excuse this conduct because a consenting customer initiated the transaction. Even if that were true in every case, a customer's participation does not negate Perplexity's own access, particularly where Perplexity independently chooses to enter systems from which Amazon has expressly excluded it. *See United States v. Nosal*, 930 F. Supp. 2d 1051, 1063 (N.D. Cal. 2013) (unauthorized person "accessed" a protected database where an authorized user "logged on to the computer using her credentials, then handed over the computer terminal" and the unauthorized person "ran his own searches").

Unable to dispute these concrete allegations at the pleading stage, Perplexity instead argues they are legally irrelevant because the Comet AI agent is "an inanimate tool" that "activate[s] only in automatic response to (and in accordance with) human user prompts." Mot. 9–10. But whether the Comet AI agent itself is a statutory person is beside the point. As the panel explained, the question is whether Perplexity—a corporation and therefore a "person" under the CFAA—uses the Comet AI agent as a tool to gain entry to Amazon's servers. *See* 18 U.S.C. § 1030(e)(12); *Amazon*, 184 F.4th at 1091. On the facts set forth in the FAC, the answer is "yes."

Nor does the use of automated software immunize a corporation from the consequences of its own unauthorized access. To the contrary, existing CFAA precedent confirms that companies can access protected computer systems through software operating within consenting customers' accounts. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067–68 (9th Cir. 2016) (holding that Power accessed Facebook's computers through software that used customers' accounts to obtain information and take actions after Facebook revoked the company's authorization); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260–67 (N.D. Cal. 2022) (holding that software that affirmatively requested information from Meta's servers through authenticated customer sessions was "materially indistinguishable" from *Power Ventures* and

violated the CFAA). Here, as in *Power Ventures*, Perplexity directs the Comet AI agent to use stored credentials, access protected pages, interact with customers' accounts, and transmit the resulting information to Perplexity—all after Amazon expressly prohibited its access. FAC ¶¶ 35–42, 52–65, 92. Nothing in the CFAA exempts Perplexity from liability just because it accomplishes those actions through an AI agent, rather than conventional software.

Indeed, Perplexity's proposed exemption for AI agents is particularly troubling given the nature of the technology at issue. Perplexity deploys a remotely controlled agent into accounts containing stored payment methods, shopping histories, addresses, and other sensitive financial information, creating vulnerabilities that could allow malicious actors to hijack Comet and obtain private information. *Id.* ¶¶ 41, 72–75. Those vulnerabilities are compounded by Perplexity's efforts to conceal the agent's identity, which interfere with Amazon's ability to distinguish automated activity from legitimate customer traffic and protect its customers. *Id.* ¶¶ 43–45, 75.

Recent events confirm Amazon's concerns, as each day brings more real security concerns arising from AI agents like Perplexity's, *id.* ¶ 10 & n.7, underscoring why Amazon must be able to identify, regulate, and, when necessary, prohibit agents entering its customers' protected accounts. The panel itself cautioned that "[t]he legal understanding of agentic AI will doubtless change as AI technology grows increasingly sophisticated." *Amazon*, 184 F.4th at 1092.[3] It is no wonder then that the panel expressly limited its ruling to "the state of technology only as presented in the filings in this case." *Id.* The FAC presents the very technological developments and concrete allegations of control that the panel recognized could warrant a different result.

---

[3] Since the Ninth Circuit ruled on August 4, 2026, the Comet AI agent continues to pose serious security risks. *See, e.g.*, Dana Elison, *Breaking the Patch: Perplexity's Hard Browser-Agent Boundary Fell Twice — What Enterprises Should Assume Now*, Forkast (Oct. 27, 2026), *available at* https://forkast.news/breaking-the-patch-perplexitys-hard-browser-agent-boundary-fell-twice-what-enterprises-should-assume-now/. Indeed, "[t]he cybersecurity capabilities of AI agents have made leaps over the past year, spawning worries about AI-enhanced cyberattacks, and stoking fears that highly capable agents may be slipping beyond the controls of the companies that create them, ushering a new, more dangerous era for artificial intelligence." Robert McMillan, *Cyberattack by Rogue AI Swarm Stokes Fears of Out-of-Control Agents*, Wall St. J. (Sept. 11, 2026), *available at* https://www.wsj.com/tech/ai/cyberattack-by-rogue-ai-swarm-stokes-fears-of-out-of-control-agents-473a0352. Given these concerns, banks that hold sensitive customer data have also restricted AI agents' access to authenticated customer accounts, just as Amazon has, to protect customers and systems. *See* Akila Quinio, Joshua Franklin, & Martin Arnold, *Citi Becomes Latest US Bank to Restrict AI Agents from Accessing Account*s, Fin. Times (Oct. 19, 2026), *available at* https://www.ft.com/content/f49c8e39-f07f-4177-9948-aabe55e5ed91.

***Second***, Comet for iOS provides an independent and even more direct basis for Perplexity's access. On Apple devices, Perplexity does exactly what it told the Ninth Circuit no Perplexity computer "ever" does. It dispenses with the customer's computer as the intermediary, FAC ¶¶ 66, 93, and instead, on its own servers, uses the customer's stored Amazon authentication credentials to request password-protected pages directly from Amazon's servers and receive their contents directly in return. *Id.* ¶ 66. Thus, on iOS, there is no need to prove Perplexity's access from its instructions to software. Rather, Perplexity's own computers communicate directly with Amazon's computers, transmit authentication credentials, request protected information, and receive it. That constitutes Perplexity's entry into Amazon's computer system under any understanding of the term. *See Amazon*, 184 F.4th at 1091; *Van Buren v. United States*, 593 U.S. 374, 388 (2021); *BrandTotal*, 605 F. Supp. 3d at 1260, 1268 (distinguishing software that processes data already sent to a user from software that communicates with the website's servers and holding that an operator's direct access to password-protected areas using customer credentials fell within the CFAA and CDAFA).

***Third***, the FAC shows access by Perplexity's own engineers and employees, with no users involved. Perplexity developed, tested, and repeatedly modified Comet to operate within Amazon's password-protected accounts. FAC ¶¶ 39–40. Its engineers used the agent to access account-specific pages, place products in shopping carts, and navigate checkout while developing and validating its capabilities. *Id.* They also tested the changes that defeated Amazon's barriers, including through accounts Perplexity or its employees controlled. *Id.* In sum, the FAC describes Perplexity's human employees intentionally entering protected computer systems on its behalf.

Perplexity tries to dismiss the FAC's employee-access allegations as "rank speculation" because they are pleaded on "information and belief." Mot. 14–15. But Perplexity alone possesses the records identifying which employees tested Comet, through which accounts, and when. Pleading on information and belief is proper where facts are "peculiarly within the possession and control of the defendant" or where the allegations make "the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). The circumstances make the FAC's facts particularly compelling. Perplexity admits that its software updates undergo extensive internal testing and it defeated Amazon's first access barrier within a day and its second within two

days. FAC ¶¶ 39–40, 56–57, 64–65. Moreover, Perplexity publicly committed to restoring that access, telling users it was "working to resolve" Amazon's first barrier before defeating it. *Id.* ¶¶ 56–57. Having made circumventing Amazon's technical block a stated priority, Perplexity cannot now argue that it is implausible that its engineers accessed Amazon to test and implement that circumvention. Amazon also observed accounts repeatedly submitting identical search parameters, consistent with systematic testing. *Id.* ¶ 40. Perplexity asks this Court to believe that its engineers repeatedly restored Comet's ability to enter Amazon's protected systems without ever testing whether their changes worked inside those systems. Common sense says otherwise, and Perplexity's "exclusive control and possession of critical facts" cannot "prevent plaintiffs from stating a plausible claim." *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1100 (9th Cir. 2025).

Nor can Perplexity rely on its own declarations to contradict the FAC at this stage. Perplexity relies on declarations submitted during preliminary-injunction proceedings in which Perplexity denied designing software to circumvent Amazon's barriers. Mot. 14–15. But Perplexity glaringly does *not* deny that its engineers directly accessed Amazon's secure systems for other reasons. And even where Perplexity does attempt a rebuttal, its self-serving declarations, submitted in support of Perplexity's litigation position, cannot disprove Amazon's contrary allegations. *Khoja*, 899 F.3d at 1002–03 (incorporation by reference cannot be used "to insert [the defendant's] own version of events into the complaint"). Those disputes belong in the discovery proceedings that Perplexity seeks to avoid, not on a motion testing the sufficiency of the pleading.

Perplexity's fallback request fares no better. It asks the Court to dismiss Amazon's CFAA claim "to the extent" the claim rests on particular versions of Comet or categories of access. Mot. 13 n.10, 15 n.11. But since its objections have no merit, there is nothing to dismiss. In any event, "'[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.'" *Adjaye v. Cook*, 2024 WL 647636, at *3 (N.D. Cal. Feb. 15, 2024) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). Amazon's CFAA claim pleads a single course of conduct via Perplexity's intentional entry into Amazon's password-protected systems, carried out through the agent its servers control, through its own servers on iOS,

and through its own personnel. FAC ¶¶ 87–97. A claim is stated if any pleaded route is plausible, and here, all of them are. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Perplexity's only authority for partial dismissal, offered under a "cf." signal, *see* Mot. 13 n.10, 15 n.11, is *Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *6 (N.D. Cal. May 8, 2015), which offered no discussion of the rule against piecemeal dismissal. Just months ago, the same court declined to dismiss "only a portion" of a claim, explaining that "what appears to be a majority of district courts ha[ve] concluded that Rule 12(b)(6) cannot be used to dismiss pieces of an otherwise adequately pleaded claim." *Silicon Valley Clean Energy v. Origis USA LLC*, 2026 WL 2353186, at *11 (N.D. Cal. Aug. 13, 2026).

Finally, Perplexity invokes the rule of lenity and claims that Amazon's theory "would allow a federal prosecutor to criminally indict Amazon customers." Mot. 13–14. That premise is false. Amazon does not contend that customers violate the CFAA by accessing their own accounts. Rather, Amazon alleges that Perplexity uses those accounts to enter Amazon's protected systems without Amazon's authorization. FAC ¶ 94. Nor does aiding-and-abetting liability support Perplexity's fearmongering. Such liability requires that a person act "with the intent of facilitating the offense's commission," an intent that "must go to the specific and entire crime charged." *Rosemond v. United States*, 572 U.S. 65, 71, 76 (2014). A customer who asks the Comet AI agent to buy an item, without knowing that Amazon has revoked Perplexity's authorization, that the agent defeats Amazon's barriers, or that Perplexity controls the agent, has none of that intent. And lenity applies only where a statute "is truly ambiguous," *Amazon*, 184 F.4th at 1092, not to the question whether particular facts establish a violation, *see United States v. Freter*, 31 F.3d 783, 786 n.3 (9th Cir. 1994) ("The rule of lenity is inapplicable" to "the question of whether evidence is sufficient to support a jury conviction."). Here, the Court need not be concerned with any ambiguity but rather need only apply the panel's holding that a corporation can access Amazon's secure systems using a tool like the agent, given sufficient control of the agent.

### 2. *Perplexity's Access Is Without Authorization*

The Ninth Circuit did not reach authorization or any other remaining CFAA element. *Amazon*, 184 F.4th at 1091 n.4. This Court, however, already found that Perplexity "accesses with

the Amazon user's permission *but without authorization by Amazon*, the user's password-protected account." Dkt. 81 at 3 (emphasis added). The FAC only reinforces that conclusion. Amazon repeatedly prohibited Perplexity from entering its protected systems, deployed technological barriers to enforce that prohibition, and observed Perplexity evade those barriers and resume its access. FAC ¶¶ 52, 55–57, 59, 64–65. That conduct is unauthorized under *Power Ventures*, 844 F.3d at 1067–68, and nothing in the panel's opinion disturbs that conclusion.

Perplexity nevertheless recycles the arguments this Court already rejected: Amazon supposedly never revoked authorization; the dispute concerns only compliance with Amazon's terms of use; customers consented to Comet's activity; and Amazon operates a public website. Mot. 16–17; Dkt. 35 at 11–13. The FAC forecloses each argument. Amazon expressly prohibited Perplexity's access, demanded that it stop, and deployed technological barriers to keep it out. FAC ¶¶ 52, 55–56, 59, 63–65; Ex. 11 at 4. And, as *Power Ventures* explained, Perplexity cannot invoke customer consent to override Amazon's revocation because access to a customer's protected account requires permission from both the customer and the company operating the computer system. 844 F.3d at 1067–68. Perplexity's reliance on *hiQ Labs, Inc. v. LinkedIn Corp.* also misses the mark: Even if some of Amazon's pages are public, others are password-protected, and the CFAA and CDAFA claims concern only those password-protected areas. 31 F.4th 1180, 1197–99 (9th Cir. 2022) (holding that *Power Ventures* governs where authorization "generally is required and has either never been given or has been revoked"); *see* FAC ¶¶ 3, 25, 36, 41–42, 90, 94, 102. The FAC makes clear that Perplexity continued entering Amazon's password-protected spaces after Amazon expressly revoked permission and, in so doing, acted without authorization.[4]

Perplexity again resorts to its own declarations, denying that it designed updates to circumvent Amazon's barriers or took steps to evade them. Mot. 14–15. The last time Perplexity asked a court to accept its representations as true, it falsely represented that its servers never connected directly to Amazon's. FAC ¶¶ 66–67. But whatever their accuracy, Perplexity's

[4] *Nosal*, on which Perplexity relies, addressed insiders who were authorized to enter yet misused what they found, *United States v. Nosal*, 676 F.3d 854, 863–64 (9th Cir. 2012) (en banc), but distinguished "outside hackers," who have "no authorized access to the computer at all," *id.* at 858. The latter describes Perplexity, which never secured permission to access Amazon's secure pages. *See Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 969–70 (N.D. Cal. 2013).

declarations merely present its competing account of the facts, which cannot override the FAC at this stage and only reinforces the need for discovery. *Khoja*, 899 F.3d at 1002–03; *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). In any event, Amazon's allegations of Perplexity's unauthorized access—which has now continued despite this litigation making clear its agent is not welcome—are supported by much, much more. FAC ¶¶ 52, 55, 59, 62–64.

### 3. *The FAC Pleads More than $5,000 in Cognizable Loss*

The FAC pleads CFAA loss many times over. The statute expressly covers the reasonable costs of "responding to an offense," assessing damage, and restoring affected systems. 18 U.S.C. § 1030(e)(11). Amazon alleges more than $260,000 in investigation and remediation costs, including approximately 240 engineer-hours identifying and fingerprinting Comet's unauthorized traffic, additional costs developing and maintaining technological barriers, and costs restoring affected customer accounts. FAC ¶¶ 79–85. Each category independently exceeds $5,000, as do Amazon's separate costs investigating Comet for iOS. *Id.* ¶¶ 81–83, 85, 95. These are precisely the costs of "analyzing, investigating, and responding" to unauthorized access that the Ninth Circuit held constitute CFAA loss. *Power Ventures*, 844 F.3d at 1066. Indeed, this Court already found "essentially undisputed evidence" that Amazon's response costs exceeded the statutory threshold, Dkt. 81 at 3, and the Ninth Circuit did not disturb that finding, *see Amazon*, 184 F.4th at 1091 n.4.

Perplexity repeats its argument that *Van Buren* restricts CFAA loss to technological harm. Mot. 18. This Court already rejected that argument. Dkt. 81 at 3–4 & n.2. So has the Tenth Circuit, explaining that *Van Buren* did not hold, "in dicta or otherwise, that the damages available when an individual does violate the CFAA are limited to technological harms." *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1200–01 (10th Cir. 2026); *accord BrandTotal*, 605 F. Supp. 3d at 1265 (declining "to construe *Van Buren* and *hiQ* as foreclosing" investigation costs). Thus, *Power Ventures* remains controlling, and Amazon's costs fall squarely within it.

Perplexity's remaining arguments similarly fail. It points to *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262–63 (9th Cir. 2019), but that case concerned lost revenue, not the actual response costs Amazon pleads. Perplexity also labels Amazon's costs as "business harms," demanding to know "what portion" of the $260,000 stems from identifying its intrusions. Mot. 18–

19. The CFAA requires only an aggregate loss of at least $5,000, not the itemized accounting at the pleading stage that Perplexity demands; that is what discovery is for. 18 U.S.C. § 1030(c)(4)(A)(i)(I).[5] In any event, the FAC alleges more than $5,000 in costs identifying Comet's intrusion and means of access. FAC ¶ 81.

Finally, Perplexity's request that the Court decline supplemental jurisdiction depends on dismissal of the CFAA claim, 28 U.S.C. § 1367(c)(3), and fails with it. *See id.* § 1367(a).

### C. The CDAFA Claim Independently Survives on the FAC's Allegations

The FAC asserts that Perplexity also violated the CDAFA. The statute prohibits anyone who "[k]nowingly and without permission accesses or causes to be accessed" a computer system, Cal. Penal Code § 502(c)(7), and defines "access" to include "gain[ing] entry to," "instruct[ing]," "caus[ing] input to," or "communicat[ing] with" that system, *id.* § 502(b)(1). Perplexity does all of those things. Its servers direct the Comet AI agent's entry into Amazon's password-protected accounts, determine the commands transmitted to Amazon's computers, and receive the resulting information. FAC ¶¶ 35–42, 92, 103–04. On iOS, Perplexity's servers communicate directly with Amazon's servers, requesting password-protected pages with customers' copied authentication cookies and receiving Amazon's responses, with "[n]o user device" in between. *Id.* ¶¶ 66, 90, 93. Further, Perplexity's own employees separately enter Amazon's protected pages to develop and test the Comet AI agent, including the updates that circumvented Amazon's technological barriers. *Id.* ¶¶ 39–40. The FAC further shows that Perplexity knowingly took, copied, and used protected account data, *id.* ¶¶ 42, 100; continued its access after Amazon expressly prohibited it, *id.* ¶¶ 52, 55–65; and caused substantial damage and loss, *id.* ¶¶ 79–85, 105. Thus, Perplexity's conduct falls squarely within the CDAFA's prohibitions. *See* Cal. Penal Code §§ 502(c)(2), (7), (e)(1).

---

[5] Perplexity's related suggestion that the FAC's employee-access allegations fail because the FAC does not plead $5,000 in loss attributable to them "independently," Mot. 14, invents an apportionment rule not found in the statute. Loss is measured by what the victim suffers "by reason of a violation," aggregated over a one-year period, "not from a particular intrusion." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 934 (9th Cir. 2004). Perplexity is one defendant, and its engineers' circumvention and the agent's resulting sessions are one course of conduct causing far more than $5,000 of loss. Perplexity's agent could not access Amazon at all without Perplexity's engineers, so all of Amazon's losses are attributable to their access.

Perplexity's only response is that the CDAFA claim rises and falls with the CFAA claim because both require identifying the person accessing or causing access. Mot. 19–20. The FAC satisfies the panel's rule because it pleads that Perplexity itself directs, executes, and causes that access (as the CDAFA broadly defines that term)—including when the customer never instructs the Comet AI agent to enter Amazon at all. FAC ¶¶ 35–36, 92–104. And the CDAFA expressly reaches anyone who "causes [a computer] to be accessed," Cal. Penal Code § 502(c)(7), meaning Perplexity cannot escape liability simply because it uses an AI agent to carry out its commands.

Nor does *Teran v. Superior Court* help Perplexity, because that decision distinguished the disclosure of public court records from the CDAFA's central concern with "hacking into and tampering with computer systems and data, and the disruptions and costs of such conduct." 112 Cal. App. 5th 371, 382 (2025). Here, Perplexity deliberately circumvents Amazon's barriers to enter password-protected accounts, obtains private data there, and interferes with Amazon's systems, making it the same type of intrusion *Teran* describes.

**D. The FAC States a Claim for Intentional Interference with Contract**

The FAC pleads that Perplexity knowingly caused Amazon customers to breach contractual restrictions that expressly prohibit what Perplexity designed the Comet AI agent to do. Every Amazon customer agrees to Amazon's Conditions of Use, including the Agent Terms, when registering and placing orders. FAC ¶ 110. Those terms prohibit customers from using or enabling an agent to access Amazon after Amazon has directed the agent to stop, from circumventing technological access restrictions, and from using account information for a third party's benefit. *Id.* ¶ 112. Perplexity knew those restrictions yet continued deploying the Comet AI agent into customers' protected accounts after Amazon expressly prohibited its access. *Id.* ¶¶ 111–16. In fact, even though Perplexity was informed by Amazon that circumventing technical blocks "would be improper and illegal," *id.* ¶¶ 43–45, 57, 64–65, Perplexity went ahead anyway, intentionally modifying the Comet AI agent to evade Amazon's technological barriers, and retaining protected account information for its own benefit. *Id.* Each resulting session breached the Conditions of Use, disrupted Amazon's contractual relationships, and imposed costs on Amazon, including the expense of blocking, repairing, and restoring affected customer accounts. *Id.* ¶¶ 85, 117–18.

Even though no party had argued that Perplexity had committed torts against Amazon, the Ninth Circuit expressly flagged that it was declining to address "whether in other contexts, including tort claims, Perplexity can avoid liability for the Assistant's actions," and that its decision "does not impair Amazon's ability to regulate access to Amazon.com via private terms of service for its users." *Amazon*, 184 F.4th at 1092, 1094 n.5. The FAC now pleads that claim.

**1. *Even If Independent Wrongfulness Is Required Here, the FAC Pleads It***

Perplexity first argues that Amazon must plead independently wrongful conduct because Amazon's customer contracts are terminable at will, Mot. 21, but the law does not impose any such requirement. In *Reeves v. Hanlon*, the California Supreme Court expressly reserved whether independent wrongfulness is required when a defendant induces "the breach of an otherwise enforceable term of an at-will contract," rather than its termination. 33 Cal. 4th 1140, 1153 n.7 (2004). *Ixchel* extended the independent-wrongfulness requirement to at-will contracts where a third party induced a contracting party to *terminate* its agreement pursuant to its terms, out of concern that "a competitor's good faith offer that causes a business to withdraw from an at-will contract could trigger liability." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1145–48 (2020). *Ixchel*'s concern is absent here. Perplexity induced no customer to terminate an Amazon contract and had no interest in ending those relationships. To the contrary, Perplexity uses customers' existing Amazon accounts to enter Amazon's protected systems and purchase items there. FAC ¶¶ 110–17. Rather than terminate a contract, Perplexity induced breaches of enforceable restrictions governing an ongoing contractual relationship—the very distinction *Reeves* reserved and *Ixchel* did not address. The Court need not decide whether that distinction places Amazon's claim outside *Ixchel*'s requirement, however, because the FAC satisfies it in any event.

As explained above, Perplexity's knowing and unauthorized entry into Amazon's protected systems violates the CFAA and CDAFA, and those same acts caused customers to breach Amazon's contractual access restrictions. FAC ¶¶ 35–45, 52–68, 92–112. Perplexity's conduct is therefore "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Ixchel*, 9 Cal. 5th at 1142.

The FAC also alleges other independently wrongful conduct. Where required, independent wrongfulness is "an element of the cause of action itself," *Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404–05 (2014), and "it is not necessary to also plead a separate, stand-alone tort cause of action," *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1006 (2018); *see Intus Care, Inc. v. RTZ Assocs., Inc.*, 2024 WL 2868519, at *2 (N.D. Cal. June 5, 2024) (alleged violations of a statute with no private right of action supplied independently wrongful conduct because California law "forecloses [the defendant's] argument that the alleged wrongful conduct must be privately actionable by the plaintiff"). Further, the California Court of Appeal recently rejected the argument Perplexity now makes, holding that allegations of underlying misconduct sufficed because the plaintiff had "*alleged facts* that, if proven," established independently wrongful conduct. *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, 120 Cal. App. 5th 885, 896–97 (2026) (emphasis added). Here, the FAC shows that Perplexity engaged in deceit because it knowingly disguised Comet's automated requests as ordinary human-operated traffic, intending to mislead Amazon into permitting access it otherwise would have blocked. FAC ¶¶ 43–45; Cal. Civ. Code §§ 1709–1710; *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567–68 (1996) (defendants' misrepresentation, conveyed by computer to plaintiff's network, supported fraud where the network relied on the misrepresentations to grant access to the network). Perplexity also circumvented Amazon's technological barriers, gained unauthorized entry into secure accounts, and concealed the Comet AI agent's identity to evade Amazon's restrictions. FAC ¶¶ 43–45, 52–65, 112–13. Those allegations of impaired systems and customer accounts constitute trespass to chattels, another form of wrongful conduct independent of the contractual breaches it caused. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51, 1357 (2003) (trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury," including where "the chattel is impaired as to its condition, quality, or value").

### 2. *The FAC Identifies the Contracts and Their Counterparties*

Perplexity next complains that Amazon has not identified the customers whose contracts were breached. Mot. 22. But California law does not require a contractual counterparty to be "specifically mentioned by name"; instead, it is enough that the counterparty is identified "in some

manner." *Ramona Manor*, 177 Cal. App. 3d at 1133. Likewise, the Ninth Circuit recognizes that a defendant "need not know exactly who is a party to the contract," so long as it knows it is interfering with a contractual relationship. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005). Here, the FAC identifies the contracts, attaches the governing terms, explains how customers assent to them, and specifies the provisions Perplexity caused customers to violate. FAC ¶¶ 31, 110–12; Ex. 5. It also identifies the affected counterparties as Amazon customers whose accounts Comet used after Amazon prohibited its access, including accounts Amazon identified, blocked, and subsequently restored. *Id.* ¶¶ 85, 117. For that reason, Perplexity's reliance on *UMG Recordings, Inc. v. Glob. Eagle Ent. Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015), is misplaced. There, the claimant failed to supply sufficient information identifying the third-party contracts or the rights allegedly disrupted, *id.*, but here, the FAC pleads both. In any event, identifying those customers by name serves no purpose except to trample their privacy because Perplexity knows exactly which customers it induced to breach, while its disguise of the agent as a human user deprives Amazon of the information needed to identify each of them. FAC ¶¶ 41–45.

### 3. *The FAC Shows Perplexity's Knowledge and Intent*

Finally, Perplexity argues that it developed Comet for use across the internet rather than to interfere with Amazon's contracts, Mot. 22–23, but all that is required is that the defendant knew interference was "certain or substantially certain to occur as a result of [its] action." *Ixchel*, 9 Cal. 5th at 1148. The FAC shows that and more. Amazon informed Perplexity in November 2024 that its agentic activity violated Amazon's contractual restrictions, added the Agent Terms before Comet launched in July 2025, and repeatedly notified Perplexity that Comet could not access the Store. FAC ¶¶ 52, 55, 59, 111; Ex. 11. Moreover, Amazon expressly invoked its Conditions of Use in its October 2025 cease-and-desist letter, and Perplexity's counsel subsequently acknowledged that those terms "prevent users from using this AI Agent." FAC ¶ 111. Perplexity nevertheless continued directing the Comet AI agent into Amazon's protected accounts and twice modified the software to defeat barriers Amazon erected to enforce its prohibition. *Id.* ¶¶ 57, 64–65, 113–16. Once Amazon identified the contractual prohibitions, Perplexity knew that continued deployment would cause customer breaches. It chose to continue anyway. *Id.* ¶¶ 117–18.

### E. Discovery Should Continue

Perplexity's request to stay discovery should be addressed through the referral of "all further discovery matters" to the magistrate judge. Dkt. 128. If the Court reaches the request, it should deny it. Discovery cannot be stayed pending a motion to dismiss unless the motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed," and can be "decided absent additional discovery." *Pac. Lumber*, 220 F.R.D. at 352. Under Perplexity's own authority, the Court must be "convinced that the plaintiff will be unable to state a claim for relief," and a motion that merely identifies curable defects does not qualify. Mot. 7 (quoting *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002)). Perplexity cannot make that showing for the reasons above. Nor are Amazon's efforts to move this case forward a "concession" that it needs discovery to state a claim, Mot. 25 n.15; rather, Amazon seeks evidence to prove allegations that it has already pleaded and to present the record the Ninth Circuit contemplated.

### F. Alternatively, Amazon Should Be Granted Leave to Amend

If the Court identifies any deficiency in the FAC, Amazon requests leave to amend. Amazon could plead more facts concerning Perplexity's evolving technology, including new, fast-developing facts showing its control over the Comet AI agent, direct access and employee access, as well as further details concerning affected customer accounts and contractual breaches. The panel expressly limited its decision to the state of technology presented in the preliminary record, recognizing that the legal understanding of agentic AI will change. *Amazon*, 184 F.4th at 1092. Further allegations could materially affect the analysis, particularly where this Court has not yet considered the tortious-interference claim. Leave to amend should thus be granted "with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

## V. <u>CONCLUSION</u>

The FAC pleads new and sufficient facts showing that Perplexity "uses a tool (the Assistant) to 'access' Amazon's computers." *Amazon*, 184 F.4th at 1091. It also pleads facts this Court already found likely to satisfy the other CFAA and CDAFA elements. And the tortious interference claim the Ninth Circuit invited pleads every required element under settled law. The motion to dismiss and to stay discovery should be denied.

Dated: November 3, 2026

HUESTON HENNIGAN LLP

By: ______________________________

Moez M. Kaba
Christine Woodin
Hagan Scotten
Billy Joe McLain

*Attorneys for Plaintiff*
*AMAZON.COM SERVICES LLC*