QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew Schapiro (admitted *Pro Hac Vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Renita N. Sharma (admitted *Pro Hac Vice*)
renitasharma@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

William Pilon (Bar No. 326487)
williampilon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Defendant Perplexity AI, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

Plaintiff,

vs.

PERPLEXITY AI, INC., a Delaware corporation,

Defendant.

Case No. 3:25-cv-09514-MMC

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STAY DISCOVERY**

Hon. Maxine M. Chesney
Courtroom 7

Hearing Date: November 20, 2026
Hearing Time: 9:00 a.m.

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE NINTH CIRCUIT'S PUBLISHED OPINION COMPELS DISMISSAL ..... 2

II. AMAZON FAILS TO STATE A CLAIM UNDER THE CFAA ..... 4

A. Amazon's 'Access' Arguments Fail ..... 4

1. The Comet Desktop Browser ..... 4

2. Comet for iOS ..... 6

3. Perplexity Personnel ..... 7

B. Amazon's 'Authorization' Arguments Fail ..... 9

C. Amazon's Damages Arguments Fail ..... 10

III. AMAZON FAILS TO STATE A CLAIM UNDER THE CDAFA ..... 11

IV. AMAZON FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE ..... 11

A. The Independent Wrongfulness Requirement Bars the FAC ..... 11

B. Amazon Fails To Identify Its Contractual Counterparties ..... 13

C. Amazon Fails To Allege Intentional Interference ..... 14

V. THE COURT SHOULD STAY DISCOVERY WHILE THIS MOTION IS PENDING ..... 15

VI. THE COURT SHOULD DENY LEAVE TO AMEND ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) .......... 14

*Amazon.com Servs., LLC v. Perplexity AI, Inc.* ["CA9 Op."],
184 F.4th 1083 (9th Cir. 2005) .......... 1-7, 11

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......... 10

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*,
273 F.3d 1229 (9th Cir. 2001) .......... 2

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) .......... 9

*BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*,
2010 WL 3853025 (N.D. Cal. Sept. 29, 2010) .......... 12

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) .......... 15

*Coal. to Def. Affirmative Action v. Brown*,
674 F.3d 1128 (9th Cir. 2012) .......... 3

*Crown Imports, LLC v. Superior Court*,
168 Cal. Rptr. 3d 228 (Ct. App. 2014) .......... 13

*Election Integrity Project Cal., Inc. v. Weber*,
113 F.4th 1072 (9th Cir. 2024) .......... 15

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .......... 6, 9, 10

*Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*,
345 Cal. Rptr. 3d 18 (Ct. App. 2026) .......... 13

*hiQ Labs, Inc. v. LinkedIn Corp.*,
2021 WL 1531172 (N.D. Cal. Apr. 19, 2021) .......... 2, 3, 11

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 13

*Intus Care, Inc. v. RTZ Assocs., Inc.*,
2024 WL 2868519 (N.D. Cal. June 5, 2024) .......... 13

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020) .......... 12, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 8, 9

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) .......... 6

*Moxie Pest Control (Utah), LLC v. Nielsen*,
164 F.4th 1195 (10th Cir. 2026) .......... 11

*In re Otter.AI Priv. Litig.*,
-- F. Supp. 3d --, 2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) .......... 3

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
225 Cal. Rptr. 120 (Ct. App. 1986) .......... 14

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*,
499 F.3d 1108 (9th Cir. 2007) .......... 2

*Redfearn v. Trader Joe's Co.*,
230 Cal. Rptr. 3d 98 (Ct. App. 2018) .......... 13

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) .......... 12

*Small v. Fritz Cos.*,
30 Cal. 4th 167 (2003) .......... 12

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 8

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .......... 10, 11

*Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*,
2025 WL 2459553 (C.D. Cal. Aug. 26, 2025) .......... 12

*Teran v. Superior Court*,
334 Cal. Rptr. 3d 299 (Ct. App. 2025) .......... 11

*United States v. Nagra*,
147 F.3d 875 (9th Cir. 1998) .......... 3

*United States v. Nosal*,
930 F. Supp. 2d 1051 (N.D. Cal. 2013) .......... 5

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 3, 11

*Wiggins v. County of Riverside*,
2025 WL 2631529 (C.D. Cal. Aug. 7, 2025) ... 8

*World Wide Rush, LLC v. City of Los Angeles*,
606 F.3d 676 (9th Cir. 2010) ... 15

**Statutes**

Computer Fraud and Abuse Act ("CFAA")
18 U.S.C. § 1030 ... 1, 2, 4-6, 9-13

18 U.S.C. § 1030(a)(2) ... 4, 10

18 U.S.C. § 1030(e)(11) ... 10

California Comprehensive Computer Data Access and Fraud Act ("CDAFA")
Cal. Penal Code § 502 ... 1, 2, 11-13

**Other Authorities**

Fed. R. Civ. P. 9(b) ... 12

Fed. R. Civ. P.12(b)(6) ... 9

## INTRODUCTION

Amazon cannot dispute that the Ninth Circuit held in a published opinion that, when the Assistant accesses Amazon.com to "carry out specific acts" a human user directs, "[i]t is ***the user***," not Perplexity, "who 'accesses' Amazon's computers" under the CFAA and CDAFA. Dkt. 114 ["CA9 Op."] at 15 (emphasis added). That legal conclusion ends this case. Amazon seeks to minimize the impact of the Ninth Circuit's decision by recasting it as limited to the "narrow facts" in the appellate record, but Amazon concedes (as it must) that the Ninth Circuit's legal conclusions are binding and it fails to plead any new facts that warrant a different result.

Unable to plead around the Ninth Circuit opinion, Amazon resorts to overstating its allegations in the FAC. Amazon does not allege that the Assistant acts at Perplexity's instruction rather than the user's. To the contrary, Amazon alleges that the Assistant only "perform[s] tasks in service of the user's end goals" and only after the user "ask[s]" it to act. FAC ¶ 33; *see id.* ¶ 35 ("user[s] prompt[] the Comet AI agent to achieve some goal"). Amazon's allegation that Comet for iOS directly accesses Amazon's servers misses the point—the FAC does not (and cannot) plausibly allege that Perplexity, rather than the user, ***causes*** that interaction. That was the crux of the Ninth Circuit decision, and it is dispositive here. Amazon's final Hail Mary allegation that Perplexity engineers "must have" accessed Amazon.com directly during testing is empty speculation contradicted by documents Amazon itself incorporated into the FAC. FAC ¶ 39.

Amazon similarly overstates the Ninth Circuit's opinion in arguing that the court "all but invited the FAC's new tortious interference claim." Dkt. 134 ["Opp."] at 2. Nothing in the Ninth Circuit's opinion suggested that Amazon could avoid dismissal simply by renaming its cause of action "tortious interference." Amazon fails to state a valid interference claim in any event. Amazon's argument that it does not need to plead independent wrongfulness turns on a hair-splitting, nonsensical distinction between "breaching" and "terminating" at-will contracts that courts have previously rejected. Amazon fails to plead the elements of deceit, trespass to chattels, or any other independent wrongdoing. Amazon admits that it must identify its contractual counterparties "in some manner," but fails to do so. Opp. 23-24 (citation omitted). And Amazon alleges no facts showing that Perplexity was "certain or substantially certain" that its development of Comet would

cause users to breach their adhesion contracts with Amazon. *Id.* at 24 (citation omitted).

The Ninth Circuit ruling should be the end of Amazon's baseless, anticompetitive harassment of Perplexity. Perplexity respectfully requests that the Court stay discovery, grant its motion, and dismiss Amazon's complaint in its entirety, without further leave to amend.

**ARGUMENT**

## I. THE NINTH CIRCUIT'S PUBLISHED OPINION COMPELS DISMISSAL

Amazon spends the first several pages of its argument trying to minimize the impact of the Ninth Circuit's decision on its claims. But it cannot avoid the Ninth Circuit's holding that, when the Assistant accesses Amazon to "carry out specific acts" a human user directs, "[i]t is ***the user***," not Perplexity, "who 'accesses' Amazon's computers" under the CFAA and CDAFA. CA9 Op. at 15 (emphasis added); *see id.* at 18. That holding, by itself, dooms Amazon's complaint.

***First***, Amazon tries to recharacterize the Ninth Circuit's decision as a mere "preliminary ruling." Opp. 7-9. But Amazon concedes (as it must) that the Ninth Circuit's legal conclusions are the law of the case. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108, 1114 (9th Cir. 2007); Opp. 8. The Ninth Circuit's decision turned on its legal conclusions that Perplexity does not "access" Amazon as that word is used in the CFAA and CDAFA. CA9 Op. at 14-18 (examining "plain language" of statutes and interpretive canons to conclude that "[i]t is the user who 'accesses' Amazon's computers"). The "interpretation of a statute" is a "purely legal issue," so the Ninth Circuit's conclusions are the law of the case. *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1241 (9th Cir. 2001). Amazon disputes none of this, and it ultimately admits that Perplexity's motion "turns on whether the FAC's allegations satisfy the panel's governing legal standard." Opp. 8.

Amazon notes the general principle that vacatur of a preliminary injunction does not "necessarily dispose[] of later proceedings." *Id.* at 8-9.[1] Perplexity has never suggested otherwise.

[1] Amazon cites *hiQ Labs, Inc. v. LinkedIn Corp.*, 2021 WL 1531172 (N.D. Cal. Apr. 19, 2021), which proves Perplexity's point. The court denied a motion to dismiss a breach-of-contract counterclaim where the Ninth Circuit's preliminary-injunction decision did not preclude the possibility that the plaintiff was bound by the contract. *Id.*, at *5-6. But the court deferred ruling on the motion to dismiss CFAA and CDAFA counterclaims pending a determination by the Supreme

Amazon's claims fail because the Ninth Circuit's legal conclusions foreclose them, not just because Amazon failed to obtain a preliminary injunction. *See Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1131-32 (9th Cir. 2012) (affirming dismissal of claim "precluded by" prior Ninth Circuit preliminary injunction decision). Indeed, another court in this district has already acknowledged that the Ninth Circuit's decision in this case applies at the pleading stage. *In re Otter.AI Priv. Litig.*, -- F. Supp. 3d --, 2026 WL 2351237, at *7 n.2 (N.D. Cal. Aug. 13, 2026). Amazon cites no contrary authority.

***Second***, Amazon argues that the Ninth Circuit "addressed only the facts in its opinion." Opp. 9. To the extent Amazon means that the Ninth Circuit decision extends only to the facts and arguments explicitly mentioned in the opinion, that is wrong. While Amazon is correct that the law of the case "extends only to issues actually considered and decided," Opp. 9 (citation modified), Amazon does not identify any relevant fact or issue the Ninth Circuit did not already consider. The court's review expressly extended to the full "record before [it]." CA9 Op. at 17. That expansive evidentiary record included the same allegations in the FAC. Mot. 10-11. And in any case, Amazon does not identify any allegation in the FAC that would support a different legal conclusion.

***Finally***, Amazon attempts to sow doubt about the Ninth Circuit's ruling by doubling down on its falsehood that Perplexity misrepresented Comet's operations to the court. Opp. 10-11 & n.2; *see* Mot. 6 n.5. That argument is (1) untrue, (2) irrelevant under the Ninth Circuit's ruling, and (3) waived. As Perplexity has pointed out (and as Amazon ignores), Amazon could have raised Perplexity's supposed misrepresentations, and argued that Comet for iOS directly connects to Amazon's servers, before the Ninth Circuit. But it never did. Mot. 6 n.5. And "[w]hen a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the matter." *United States v. Nagra*, 147 F.3d 875, 882 (9th Cir. 1998). Regardless, Comet for iOS would not have changed the outcome of the appeal. As Amazon admits, the panel's analysis did not turn on the "directness" of the connection between Perplexity and Amazon's servers. Opp.

---

Court "in *Van Buren* ***and/or the instant case***" as to when a person "exceed[s] authorized access under the CFAA." *Id.* at *4 (emphasis added). The petition to the Supreme Court in "the instant case" was from the Ninth Circuit's preliminary-injunction decision. *Id.* This only confirms that preliminary-injunction decisions can provide determinative legal rulings.

11 n.2; *see also* Mot. 12. And none of Amazon's allegations about Comet for iOS (or any other supposedly new allegations) alter the rationale for the panel's decision—that Comet is a "tool" that responds to user prompts. CA9 Op. at 15; *see infra* Part II.

## II. AMAZON FAILS TO STATE A CLAIM UNDER THE CFAA

### A. Amazon's 'Access' Arguments Fail

Because the Ninth Circuit foreclosed its legal theory, Amazon resorts to mischaracterizing its own FAC to support its argument on CFAA "access[]." 18 U.S.C. § 1030(a)(2); *see* Opp. 11-17. Amazon concedes that under its interpretation of the CFAA, any customer who is familiar with this dispute and shops with the Assistant can be criminally indicted. Opp. 17. The Ninth Circuit has already "decline[d] to adopt Amazon's interpretation" of the statute, which would "criminalize a broad range of day-to-day activity." CA9 Op. at 16-17 (citation modified). Amazon claims to have plausibly alleged three "routes" by which Perplexity accessed Amazon.com, Opp. 12, but none suffices to prevent dismissal.

#### 1. The Comet Desktop Browser

The Ninth Circuit already rejected Amazon's arguments about the Comet desktop browser, the product at the heart of this case. Although it complains about alleged "cherry-pick[ing]" and "curat[ion]" in Perplexity's comparison of the FAC's allegations to Amazon's appellate arguments, Opp. 9, Amazon does not actually dispute that it already asserted these arguments on appeal. Indeed, Amazon does not explain why any excerpt from Perplexity's chart (Mot. 10-11) is "incomplete." Opp. 9. And Amazon's suggestion that its arguments to the Ninth Circuit "merely lurk[ed] in the record," *id.* (citation omitted), is belied by the Ninth Circuit's opinion. *Compare, e.g.*, Opp. 12 (Perplexity's "servers receive the contents of Amazon's protected pages, determine what the agent should click or type, and transmit commands directing those actions"), *with, e.g.*, CA9 Op. at 15 ("Perplexity may receive screenshots of the user's browser and may communicate instructions to the Assistant. But those activities, by themselves, do not mean that Perplexity has 'accessed' (gained entry) to Amazon's servers.").

To get around this fatal problem, Amazon misrepresents the allegations in the FAC, suggesting that the Assistant acts "contrary to" a user's "instructions" and conjuring a scenario

involving Barnes & Noble as an example. Opp. 12-13; *see also id.* at 5 (arguing that the Assistant "overrule[s] the user"). Amazon does not allege any such thing—nor could it, as it concedes that the Assistant only "perform[s] tasks in service of the user's end goals" and only after the user "ask[s]" it to act. FAC ¶ 33; *see id.* ¶ 35 ("user[s] prompt[] the Comet AI agent to achieve some goal").[2] What the FAC ***does*** allege—after Amazon evidently tried, unsuccessfully, to manufacture an instance in which the Assistant defied a user's commands—is merely that the Assistant might navigate to Amazon.com if the user gives an open-ended shopping request, such as telling it to "'buy' a particular book." FAC ¶ 36. In its Barnes & Noble scenario, the FAC alleges only that the Assistant initially "displayed the book on Barnes & Noble's website" and then switched to Amazon.com after another open-ended command, which did not specify Barnes & Noble, to "buy the paperback." *Id.* This allegation demonstrates that the Assistant acts ***consistently*** with the user's instructions—a far cry from "overrul[ing] the user." Opp. 5. And thus the CFAA attributes the actions of the Assistant, an automatic computer "tool," to the user who "cause[d]" the tool to act. CA9 Op. at 15, 18.

What is left is only speculation that the Assistant might "enter Amazon without the customer ever directing it there" in response to an open-ended prompt—a scenario Amazon already gave the Ninth Circuit. Opp. 12 (emphasis removed). Indeed, these were Amazon's words at oral argument: "Suppose the user gives a command [to] 'buy a 12-pack of paper towels.' . . . Perplexity's servers say, 'Go to the Amazon Store.' . . . The work is all done by Perplexity." Oral Arg. at 15:57. The Ninth Circuit said it did not matter, because the "focus of the inquiry" must remain "on the person"—here, the user—who "caus[es]" Perplexity's servers to respond to that prompt. CA9 Op. at 18. And although Amazon calls Perplexity a "fearmonger[]," it concedes that its theory would impose criminal liability on users that have knowledge of the dispute in this case, which has been widely publicized. Opp. 17 (arguing only that liability might not attach to a customer "without

---

[2] This concession forecloses Amazon's reliance on *United States v. Nosal*, in which an unauthorized person "ran his own searches" after an authorized person "handed over the computer terminal." 930 F. Supp. 2d 1051, 1063 (N.D. Cal. 2013). The FAC does not and cannot plead that the Assistant—which, as the Ninth Circuit held, is merely an inanimate tool—"runs [its] own searches" or does anything else absent a prompt from the user. *Id.*

know[ledge] that Amazon has revoked Perplexity's authorization"). The Ninth Circuit has rightly rejected this outcome, which would "transform[] whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved." CA9 Op. at 16.[3]

Nor does Amazon's invocation of *Power Ventures* and *BrandTotal* save its claim. Opp. 13-14. The Ninth Circuit already rejected this argument, concluding that neither case is a workable "analogue" to this litigation. CA9 Op. at 13. As the Ninth Circuit explained, the parties in *Power Ventures* did not dispute the CFAA's "access" element, and the *Power Ventures* panel therefore "assumed without discussion that Power 'accessed' Facebook for CFAA purposes." *Id.*; *see Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067-68 & n.4 (9th Cir. 2016) (Power admitted it accessed Facebook). Instead, the "analysis" in *Power Ventures* "was devoted to authorization, not access." CA9 Op. at 13. *Power Ventures* thus has nothing to say about the "access" element. The same is necessarily true of Amazon's reliance on *BrandTotal*, which (in relevant part) merely applied *Power Ventures* on the authorization, not access, element. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1267 (N.D. Cal. 2022).

Finally, Amazon vaguely gestures at "[r]ecent events" and "technological developments" that it did not plead in the FAC and makes no effort to connect to the CFAA. Opp. 14 (citing FAC ¶ 10 & n.7, which sets forth an article from before Amazon filed its original complaint more than a year ago). As Perplexity noted (Mot. 19 n.14) and Amazon does not dispute, Amazon has not pleaded a ***single*** example of a security incident involving use of the Assistant on Amazon.com, despite hundreds of thousands of such uses over nearly a year. Opp. 14; *see* FAC ¶ 85; *see* CA9 Op. at 20 ("Amazon's cyber-risk harm argument is also weak."); Dkt. 85 at 137:17 (this Court "wasn't blown away" by Amazon's "cyber security" arguments). Thus, the FAC does not state a CFAA claim related to Amazon customers' use of the Assistant on the Comet desktop browser.

**2. Comet for iOS**

Amazon's remaining "routes" of access likewise falter. Opp. 12. Regarding Comet for iOS,

---

[3] In interpreting the CFAA to avoid "expos[ing] individual users to criminal liability," the Ninth Circuit recognized it was making a legal ruling that would apply beyond the facts of this civil case between two private businesses—including to future criminal cases between individuals and the government. CA9 Op. at 17.

Amazon's argument that the iOS product involves "Perplexity's own computers communicat[ing] directly with Amazon's computers" is puzzling. *Id.* at 15. As Perplexity explained (Mot. 12-13 & n.9), the Ninth Circuit's ruling did not turn on whether Perplexity servers "directly communicate with Amazon's servers." CA9 Op. at 14 (holding that regardless, the court "must nevertheless determine whether Perplexity accesses Amazon.com through the Assistant"). Instead, it turned on ***which person***—natural or corporate—is "us[ing] a tool (the Assistant) to 'access' Amazon's computers." *Id.* at 15. "[T]he focus of the inquiry" was on who "caus[es] the access." *Id.* at 18. And the answer to that question was that "the user (not Perplexity) accesses Amazon using the Assistant as an AI tool." *Id.* Amazon concedes this point (Opp. 11 n.2) and raises no argument in response (*id.* at 15). Settling for mere repetition of its allegation of "direct[]" server-to-server access (*id.*), Amazon does not and cannot explain why the Ninth Circuit's rule—"focus[ing]" on which person "caus[es] [such] access," CA9 Op. at 18—would not apply equally to Comet for iOS regardless of the product's technical architecture. Amazon says nothing about this because it concedes that even if Comet for iOS uses "Perplexity's cloud servers," those servers are at all times "acting for ***an iOS user***." FAC ¶ 66 (emphasis added). The Ninth Circuit's rule thus mandates dismissal notwithstanding any new allegations about Comet for iOS. *See* CA9 Op. at 15 ("It is the user who 'accesses' Amazon's computer, with the help of the Assistant to carry out specific acts on Amazon.com.").

### 3. Perplexity Personnel

The Court should also reject Amazon's conclusory allegations that Perplexity employees accessed Amazon.com using the Assistant (i) when Perplexity "initially developed" Comet, FAC ¶ 39; and (ii) to restore the Assistant's access to Amazon.com after Amazon allegedly tried blocking the Assistant, *id.* ¶ 40. *See* Mot. 14-15. Amazon argues that these speculative allegations—made on mere "information and belief," FAC ¶¶ 39-40—should survive dismissal because the "circumstances" make the FAC's speculation "particularly compelling." Opp. 15. But Amazon does not even try to defend the allegations in the first category, concerning whether Perplexity employees "tested" the Assistant's "functionality on Amazon" when they "initially develop[ed]" Comet. FAC ¶ 39; *see* Opp. 15-16 (defending only the allegations in the second category). As for

the information in the second category, concerning Amazon's technical blocks, Amazon's most "compelling" allegation supposedly bridging the inferential gap is that it "observed accounts repeatedly submitting identical search parameters, consistent with systematic testing" of purportedly "restored" access. Opp. 15-16; *see* FAC ¶ 40. But the FAC does not connect this alleged activity, temporally or otherwise, to use of the Assistant, let alone to its use by Perplexity employees, and the allegation depends on the implausible inference that no one else ran such tests on Amazon.com, one of the world's most popular websites, during the (undefined) relevant period. FAC ¶ 40. Thus, "Plaintiff offers no supporting facts that would render [its] belief . . . anything more than speculative." *Wiggins v. County of Riverside*, 2025 WL 2631529, at *7 (C.D. Cal. Aug. 7, 2025) (distinguishing *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)).

Nor does Amazon deny that the FAC relies on sworn declarations that expressly disprove Amazon's allegation that Perplexity engineers "accessed Amazon to test and implement [Perplexity's alleged] circumvention" of Amazon technical blocks. Opp. 16. Instead, Amazon asks the Court to allow it to "cherry-pick[]" only the statements it likes from these declarations. *Id.* at 9; *see id.* at 16. Amazon insists the incorporation-by-reference doctrine permits this, *id.* at 16, but Amazon misstates the law. Amazon's own case makes clear that the doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). *Khoja* ***affirmed*** many of the district court's decisions to incorporate documents—which, unlike the declarations here, were unsworn hearsay. *Id.* at 1004-07. *Khoja* did limit use of the doctrine where the complaint "does not mention the document at all," where the complaint only "mention[s] [] the existence of [the] document" in passing, or where the complaint is otherwise "well-pled." *Id.* at 1002 (citation modified). But the FAC falls into none of these categories. The FAC relies in significant part on Perplexity's sworn declarations. *E.g.*, FAC ¶ 7 & n.1; *id.* ¶¶ 37-40 & nn.14-19; *cf. Khoja*, 899 F.3d at 1004 (affirming incorporation of blog post that was "only identifie[d] and quote[d] . . . once" because "[a]lthough the claims d[id] not turn on the blog post, [the plaintiff] did more than merely mention it"). And because Amazon's allegations regarding alleged access by Amazon customers fail, the FAC is not "well-pled" apart from its

reliance on Perplexity's declarations. *Khoja*, 899 F.3d at 1002. The Court should thus consider the declarations in full and dismiss Amazon's CFAA claim.[4]

Finally, Amazon fails to defend its conclusory allegations on the merits. It does not dispute that, once the allegations about access by Amazon customers are stripped from the case, the alleged access by Perplexity personnel must be shown to have given rise to at least $5,000 in damages. Opp. 20 n.5 (conceding that damages must occur "by reason of a violation" (citation omitted)). And, because it only defends its allegations about direct access by Perplexity engineers ***in response to*** alleged Amazon technical blocks, Amazon does not explain why its damages—which the FAC only quantifies to the extent Amazon incurred them ***before*** implementing the blocks—are cognizable. *See* FAC ¶ 79; *cf.* Dkt. 1 ¶ 57 (giving the same number in the original complaint). Nor does Amazon plead whether the alleged access by Perplexity engineers came before or after Amazon adopted its Agent Terms on May 30, 2025, about a month before Comet's release. Thus, Amazon's conclusory allegations of direct access by Perplexity employees fail in any case.[5]

### B. Amazon's 'Authorization' Arguments Fail

Even if the FAC plausibly alleged access, it cannot, and does not, plausibly allege that such access was without authorization or in excess of authorized access. Ironically, after spending pages arguing that preliminary injunction proceedings are "merely the first round in a larger fight," Amazon asks this Court to simply reapply its preliminary injunction ruling on the CFAA authorization element. Opp. 9; *see* Opp. 17-18. Amazon does not address Perplexity's argument—an argument Perplexity did not make at the preliminary injunction stage—that Amazon's cease-and-desist letter to Perplexity did not even purport to revoke the latter's authorization to access Amazon.com. Mot. 16; *see Power Ventures*, 844 F.3d at 1067 (no CFAA liability until cease-and-

---

[4] Amazon faults Perplexity for not denying in its declarations that its engineers used the Assistant to access Amazon.com for reasons other than "circumvent[ing] Amazon's barriers." Opp. 16. Perplexity submitted the declarations in response to Amazon's preliminary injunction motion, which accused Perplexity of circumventing Amazon's barriers (and did not accuse Perplexity engineers of using the Assistant). It is unremarkable that the declarations, submitted in response to a motion on which Amazon had the burden of proof, did not exceed the scope of Amazon's accusations.

[5] This Court is not bound by Amazon's out-of-circuit caselaw suggesting, contrary to caselaw from this district, that partial dismissal of a claim is inappropriate under Rule 12(b)(6). Opp. 16-17 (citing *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)).

desist letter "expressly rescinded" authorization). Rather, by its express terms, Amazon's letter merely demanded that Perplexity conform its access to Amazon.com to Amazon's Conditions of Use—namely, the provision requiring use of Amazon's preferred user-agent string. FAC Ex. 11 at 4. Amazon thus asserts an "exceeds authorized access" theory, not a "without authorization" theory. Mot. 16. Only the latter theory was at issue in *Power Ventures*. 844 F.3d at 1067; *see* 18 U.S.C. § 1030(a)(2) (covering access "without authorization ***or*** exceed[ing] authorized access" (emphasis added)). And because the alleged access in excess of Perplexity's authorization consisted solely of Perplexity's alleged violations of Amazon's Conditions of Use, Amazon's CFAA claim fails. *Id.* at 1067 n.3 (violation of terms of use insufficient for CFAA liability). Amazon has failed entirely to respond to Perplexity's argument, and thus has forfeited the authorization element. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

But even if the FAC asserts a "without authorization" theory, it still fails. Amazon does not dispute that no court has ever imposed CFAA liability on benign facts like those here, where the only arguably "private" information at stake belongs to the user who gave the Assistant permission to access it. Mot. 16-17; Opp. 17-19. This Court should not become the first to do so.

### C. Amazon's Damages Arguments Fail

Nor can Amazon plausibly allege cognizable "loss." Amazon again urges this Court to simply apply its prior ruling from the preliminary injunction proceedings (Opp. 19), even though Perplexity makes arguments it did not assert at that early stage. Mot. 17-19 (discussing *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)). Amazon ignores Perplexity's arguments. Amazon tries to distinguish *Andrews* by noting that it "concerned lost revenue, not the actual response costs Amazon pleads," Opp. 19, but Amazon does not dispute that the FAC's alleged advertising losses ***are*** lost revenue. Mot. 17 (citing FAC ¶ 118). Because these alleged losses are not tied to an "interruption in service," 18 U.S.C. § 1030(e)(11), they are not cognizable. Nor does Amazon dispute that its alleged "modifications to [its] advertising systems" and additions of "***new*** detection mechanisms to identify and exclude automated traffic," Mot. 18 (emphasis added) (quoting FAC ¶ 84), are likewise insufficient in light of the CFAA's focus on "***restoring***" computer "data" to "its condition prior to the offense." 18 U.S.C. § 1030(e)(11) (emphasis added). Amazon

has therefore forfeited these issues, as well. *See Pensioenfonds*, 802 F. Supp. 2d at 1132.

Finally, even if *Van Buren* and *hiQ Labs* did not restrict CFAA loss to technological harm, Amazon does not address Perplexity's argument that Amazon's alleged implementation of technical blocks—which lie at the core of Amazon's alleged damages, FAC ¶ 80—still does not fall within the more plaintiff-friendly *Moxie Pest* standard, which allows damages for investigative costs but only to the extent of "identifying the perpetrator or the method by which the offender accessed the [supposedly] protected information." *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1201 (10th Cir. 2026). Amazon forfeited these issues too. *See Pensioenfonds*, 802 F. Supp. 2d at 1132. Amazon plausibly pleads no element of a CFAA claim.[6]

## III. AMAZON FAILS TO STATE A CLAIM UNDER THE CDAFA

Because the Ninth Circuit ruling bars Amazon's CFAA claim, the CDAFA claim fails too, as the "claims rise and fall together." CA9 Op. at 18. "[T]he focus of the inquiry" for both statutes is "on the person accessing or causing the access." *Id.* As shown above, that "person" is the human user who engages the Assistant, not Perplexity. The allegations Amazon mentions, *see* Opp. 20-21, fail to state a CDAFA claim for the same reasons they cannot support a CFAA claim. Amazon also fails to distinguish *Teran v. Superior Court*, 334 Cal. Rptr. 3d 299 (Ct. App. 2025). There, as here, no "private data" is at issue—"the Assistant accesses only the Comet user's Amazon account, with the user's permission." Mot. 17. Amazon's argument that the CDAFA protects non-private data whenever it is behind a password gate is the same argument the court rejected in *Teran*. 334 Cal. Rptr. 3d at 309 ("internal policies and practices of the computer owner" cannot "transform the use of purely public data into something that can be prosecuted" under the CDAFA).

## IV. AMAZON FAILS TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE

### A. The Independent Wrongfulness Requirement Bars the FAC

Amazon does not dispute that its Conditions of Use is an at-will contract. Yet it argues that, even for at-will contracts, the independent wrongfulness requirement applies only to claims that a

[6] Amazon does not dispute that the Court should decline supplemental jurisdiction if the Court dismisses its CFAA claim, the sole basis for federal jurisdiction. Opp. 20. Thus, the Court need not reach Amazon's state-law claims (which also fail on the merits as discussed below).

defendant induced a third party to ***terminate*** a contract, not ***breach*** a contract. Opp. 21-23. This argument makes no sense, and Amazon cites no case adopting it.

Amazon relies entirely on a footnote in *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1153 n.7 (2004), which held a plaintiff must show independent wrongfulness to plead a claim for inducing termination of an at-will contract, and left open whether that requirement applied to claims for other breaches of at-will contracts. As Amazon notes, the California Supreme Court extended that holding in *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1143 (2020). *Ixchel* did not distinguish between breach and termination of an at-will contract. Rather, *Ixchel* held that the independent wrongfulness requirement applied to at-will contracts because "at-will contract[s] may be terminated, by [their] terms, at the prerogative of a single party," and thus, "[l]ike parties to a prospective economic relationship, parties to at-will contracts have no legal assurance of future economic relations." *Id.* at 1147. This rationale applies equally to claims for breach and termination of at-will contracts: in either case, the third party has no legal obligation to continue its relationship with the plaintiff. Amazon ignores cases expressly holding "the rule set forth in *Ixchel*" is "not limit[ed]" to "only when a third party causes a termination of a contract." *E.g.*, *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, 2025 WL 2459553, at *8 (C.D. Cal. Aug. 26, 2025).

Amazon does not dispute that it cannot support a tortious interference claim with legally insufficient CFAA and CDAFA claims. Opp. 21. Instead, Amazon argues that its tortious interference claim should survive even if its CFAA and CDAFA claims fail because it has also alleged facts showing deceit. *Id.* at 23. Deceit is a species of fraud and has the same elements: (1) a false representation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003). Moreover, a plaintiff must plead deceit, like other claims sounding in fraud, with specificity. *See BioResource, Inc. v. U.S. PharmaCo Distrib., Ltd.*, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010) ("While fraud and misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage, those allegations must satisfy Federal Rule of Civil Procedure 9(b)." (citation omitted)).

Amazon does not plead any of the elements of deceit, let alone with specificity. It does not

identify the who, what, where, how, and when of any purported misrepresentation; it simply alleges generally that the Assistant "transmits the same 'user-agent' string that is used by Google Chrome." Opp. 4-5 and 22-23. Nor does it show that the Assistant's use of the user-agent string is false. To the contrary, as Perplexity explained, the Assistant transmits the same user-agent string that Google Chrome uses because Comet, like Chrome, is built on top of Chromium. Mot. 5. Nor does Amazon allege that it (or anyone else) actually or reasonably relied on Comet's user-agent string. Indeed, Amazon alleges the opposite: that its engineers "detect[ed] Comet" and "trac[ed] it to Perplexity-controlled servers." FAC ¶ 80. Nor does Amazon allege scienter or intent. While Amazon argues that "the FAC shows" Perplexity knew and intended to mislead Amazon, Opp. 23, these allegations do not appear in paragraphs 43-45 of the FAC, which Amazon cites.

Amazon also argues that it has alleged trespass to chattels, but it has not. Opp. 23. Indeed, the case Amazon cites affirmed summary judgment dismissing a claim for trespass to chattels because there was no evidence of harm to the defendant's computer systems. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003). The same is true here; Amazon does not allege otherwise.

Tellingly, Amazon does not assert a claim for deceit, trespass to chattels, or any other tort. Amazon's cases establish only that while it does not need to assert "a separate, stand-alone tort cause of action," it still must plead that Perplexity has committed a tort against someone. Opp. 23 (citing *Crown Imports, LLC v. Superior Court*, 168 Cal. Rptr. 3d 228, 235-36 (Ct. App. 2014) (tort against a third party); *Redfearn v. Trader Joe's Co.*, 230 Cal. Rptr. 3d 98, 112 (Ct. App. 2018) (same);[7] *Intus Care, Inc. v. RTZ Assocs., Inc.*, 2024 WL 2868519, at *2 (N.D. Cal. June 5, 2024) (statutory violation with no private cause of action); *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, 345 Cal. Rptr. 3d 18, 27 (Ct. App. 2026) (plaintiff simply chose not to plead tort as separate cause of action)). Amazon fails to plead any tort against anyone, and thus fails to show that its tortious interference claim can survive independently of its CFAA and CDAFA claims.

### B. Amazon Fails To Identify Its Contractual Counterparties

Amazon argues that it need not identify by name the counterparties to the Conditions of Use

---

[7] Moreover, *Ixchel* expressly disapproved of *Redfearn*. 9 Cal. 5th at 1148.

agreements, as long as it identifies them "in some manner." Opp. 23-24 (citation omitted). But Amazon fails to identify the counterparties to its agreements ***at all***. Instead, it argues that "Perplexity knows exactly which customers it induced to breach," and generally describes the customers at issue as those "whose accounts Comet used after Amazon prohibited its access, including accounts Amazon identified, blocked, and subsequently restored." Opp. 24. Amazon's argument disproves itself. Perplexity has no way of knowing whose accounts Amazon blocked or restored; that is information exclusively within Amazon's control and Amazon has not provided it.

The cases Amazon cites do not relieve it of the obligation to identify the specific counterparties at issue. *Ramona Manor Convalescent Hosp. v. Care Enters*., 225 Cal. Rptr. 120, 126 (Ct. App. 1986), involved a landlord-tenant dispute; the plaintiff identified the counterparty as the tenant. And in *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005), the plaintiff identified the counterparties through the creation of a bitstream. Amazon may be reluctant to "out" its customers who allegedly breached the Conditions of Use, but its refusal (or inability) to do so precludes it from stating a valid tortious interference claim.

### C. Amazon Fails To Allege Intentional Interference

Amazon fails to point to any allegations in the FAC that Perplexity was "certain or substantially certain" that its development of Comet would ***cause*** users to breach their contracts with Amazon. Opp. 24 (citation omitted). To the contrary, the FAC makes clear that Amazon's Conditions of Use did not prevent users from using AI agents when Perplexity was developing Comet; Amazon added the Agent Terms on May 30, 2025, about a month before Comet's release. FAC ¶ 29. Amazon does not identify any term that Perplexity induced its users to breach before that date. Nor does Amazon allege any action that Perplexity took after May 2025 that was intended to breach the new terms that Amazon added. Perplexity simply released the software it had already developed. Moreover, as the documents Amazon incorporates into its FAC confirm, Amazon's "barriers" were never effective in the first place. Mot. 14-15. All Amazon alleges is that Perplexity did not withdraw a product it had already developed when Amazon unilaterally adopted new terms of use (which do not bind Perplexity in any event) targeting AI agents a month before Perplexity's launch. That is not interference, and it is not illegal. It is lawful innovation and competition, which

Amazon, to its chagrin, has no right to squelch.

## V. THE COURT SHOULD STAY DISCOVERY WHILE THIS MOTION IS PENDING

Amazon concedes a court should stay discovery pending resolution of a case-dispositive motion to dismiss that requires no additional discovery to resolve. Opp. 25. That is the case here. Amazon argues that a motion that "merely identifies curable defects does not qualify" for a stay, but does not identify any facts that would cure the defects raised in this motion (which are legal in nature). *Id.* While Amazon previously speculated that it could develop "facts beyond what it has already pleaded in the FAC" through discovery to cure any pleading deficiency by amendment (Dkt. 127 at 9), it now recognizes that such speculation cannot defeat a motion to dismiss, and concedes that it only seeks "evidence to prove allegations that it has already pleaded." Opp. 25. Regardless, Amazon does not identify any additional discovery that could save its case. Amazon's deficient complaint does not entitle it to discovery, and the Court should not permit it to waste Perplexity's and the Court's resources on a fishing expedition. *See* Mot. 24-25.

## VI. THE COURT SHOULD DENY LEAVE TO AMEND

Amazon seeks yet another round of amendment, speculating that it "could plead more facts" that "could materially affect the analysis." Opp. 25. Amazon gives no hint as to what those additional facts would be, why Amazon failed to plead them in either of its two prior complaints, or how they would overcome the Ninth Circuit's controlling opinion. Where, as here, a plaintiff fails to articulate how an amendment would "cure the deficiencies" in a complaint or "why any [new] allegations or theories [were] previously unavailable," the court should deny further amendment. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1100 (9th Cir. 2024). Given that Amazon has already amended and has had opportunities to develop the record through the preliminary-injunction proceedings, this Court's "discretion to deny leave to amend is particularly broad." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 690 (9th Cir. 2010); *see Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 & n.9 (9th Cir. 2015). The Court should exercise that discretion to deny further amendment here.

## CONCLUSION

The Court should dismiss the FAC with prejudice and stay discovery until ruling.

DATED: November 10, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *\/s/ Daniel C. Posner*

Daniel C. Posner

*Attorneys for Defendant Perplexity AI, Inc.*